## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY,<br><br>Plaintiff,<br><br>v.<br><br>BREWER SCHOOL DEPARTMENT, GREGG PALMER, in his personal and official capacities, BRENT SLOWIKOWSKI, in his personal and official capacities, MICHELLE MACDONALD, in her personal and official capacities,<br><br>Defendants. | Case No. _____<br><br><br>**VERIFIED COMPLAINT 42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>**JURY TRIAL DEMAND** |

This is a Civil Action brought by Plaintiff Shawn McBreairty against Defendants Brewer School Department, Brewer Superintendent Gregg Palmer, Brewer High School Principal Brent Slowikowski, and Brewer High School English Teacher Michelle MacDonald. Mr. McBreairty brings a claim under 42 U.S.C. § 1983 for Defendants' violation of McBreairty's First Amendment rights, and he alleges as follows:

## THE PARTIES

1.      Plaintiff Shawn McBreairty is an educational advocate and journalist who resides in Hampden, Maine.

2.      Defendant Brewer School Dep't is a public school department in Brewer, Maine.

3.      Defendant Gregg Palmer is the Superintendent of Brewer School Department and, at all relevant times, worked in Brewer, Maine.  He is sued in his official and personal capacities.

4.      Defendant Brent Slowikowski is the Principal of Brewer High and, at all relevant times, worked in Brewer, Maine.  He is being sued in his official and personal capacities.

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

5.     Defendant Michelle MacDonald is a teacher at Brewer High and, at all relevant times, worked in Brewer, Maine.  She is being sued in her official and personal capacities.

## JURISDICTION AND VENUE

6.     This is a civil action arising under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution, thus this Court has subject matter jurisdiction over this civil action per 28 U.S.C. § 1331, and it has supplemental jurisdiction over the state law claims per 28 U.S.C. § 1367

7.     This Court has  personal jurisdiction over the Brewer School Department as it is an entity organized in the State of Maine and is headquartered in the City of Brewer, Maine, and the other defendants reside in this State.  The Court otherwise has personal jurisdiction over all defendants pursuant to M.R.S. § 704-A(2)(A) based on their transaction of business within the State and causing the torts alleged herein and the consequences thereof to occur within this State.

8.     Venue resides in this district pursuant to 28 U.S.C. § 1391(b)(1) & (2) as the Defendants reside in this District, and the events and omissions giving rise to Plaintiff's claim occurred in this District.

## FACTUAL BACKGROUND

9.     Plaintiff Shawn McBreairty is a journalist and an educational advocate who petitions for changes in education policy and law.

### A.     The Petition

10.     Brewer School Department enacted a new bathroom policy, which permits students to use the bathroom that corresponds to their gender identity, rather than their biological sex.

11.     HW and CG are students at Brewer High.[1]  *See* **Exhibit 1**, Declaration of HW (hereinafter "HW Decl.").

---

[1] Due to their age, all students are referred to solely by their initials.

- 2 -
Verified Complaint

12.     HW and CG support full civil rights, civil liberties, and equal treatment for all persons, whatever their gender identity.  Neither HW nor CG would tolerate bullying anyone on the basis of sexual identity nor sexual orientation.  *See* HW Decl. at ¶¶ 6-7.

13.     However, HW and CG have safety and privacy concerns when it comes to private spaces and the fact that some people take advantage of openness in the form of permissive bathroom policies in order to sexually assault girls.  *See* HW Decl. at ¶ 8.

14.     HW and CG were aware of a 2021 instance in Loudon County, Virginia, at Stone Bridge High School, in which a biological male posed as a female in order to sexually assault a girl.  *See Doe v. Loudon County School Board,* Case No. 1:23-cv-01358 (E.D. Va. filed Oct. 4, 2023); HW Decl. at ¶ 9.

15.     HW and CG were then made aware that HD, who is believed to be biologically male, had started using the girls' bathroom at Brewer.  *See* HW Decl. at ¶ 10.

16.     HD has a reported history of sexual assault at Brewer.   HW Decl. at ¶¶ 11-12.

17.     HW and CG drafted a petition to try to convince Brewer High School and Principal Brent Slowikowski to change school policy to address their concerns regarding the separation of biological males and females, among other places, in bathrooms and locker rooms.  *See* HW Decl. at ¶ 13.  A true and correct copy of the petition is reproduced below:



Petition to Keep Mens and Womens Biological Spaces to Their Respected Gender

We want to bring awareness to the fact that womens and mens public spaces should be biologically separated, it's about the privacy and restrictions that need to be upheld for both men and women, things such as bathrooms, locker rooms, sports, and types of changing areas or sanitary stations should all be based on whether you are a biological girl or boy. When these rights of privacy are taken away from anybody it is unfair. This is a petition to keep the basic human rights of privacy and comfort that have been around for hundreds of years, untouched and unchanged.

RANDAZZA | LEGAL GROUP

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

18.     HW and CG distributed this petition to other students, and many students signed the petition.  *See* HW Decl. at ¶ 14.

19.     Support for the petition was widespread.  In fact, it spanned across genders, gender identities, and multiple belief systems.  The diversity of the body of students supporting it was so broad and representative that even HD *themself* asked to sign the petition.  *See* HW Decl. at ¶ 15.

20.      No reasonable person could believe HD was troubled by, offended by, angered by, or hurt by the petition, as HD asked to sign the petition.  *See* HW Decl. at ¶ 16.

21.     It may seem surprising that HD would want to sign the petition, as it might have affected *them,* but the language of the petition was non-discriminatory, lacked any bias, cruelty or prejudice, and therefore it is not surprising that HD did not object to the petition.

22.     In fact, HD expressed delight at the petition.  *See* HW Decl. at ¶ 17.

23.     In contrast to HW and CG's beliefs in equality, Defendants seek to promote transgender *supremacy* in public schools, not equality.

24.     Transgender supremacy is a viewpoint that rather than trans and nonbinary persons being treated *equally*, that non-trans and binary persons must change their ways, adjust their lives, their beliefs, their needs, and set their concerns aside to accommodate, at all costs, transgender and nonbinary persons.  Dissent is not tolerated by trans-supremacists.  When confronted with dissent, trans-supremacists engage in abusive efforts to psychologically or physically harm those who dissent from this philosophy.

25.     One form of this abuse is the "taking oneself hostage" technique – where an adherent to trans-supremacy will claim that they are suicidal or prepared to engage in self-harm if there is any dissent from their viewpoint.

26.     Another form of this abuse is to claim that anyone who dissents from the trans-

Verified Complaint

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

supremacist viewpoint is "transphobic" or "hateful" and thus use such accusations to ostracize the dissenter or to encourage violence or other forms of abuse against those who dissent.

27.     For example, trans-supremacists sent rape threats to a student who signed the petition, to put them in fear of their well-being or safety. While HW supports equality, she does not support trans-supremacy. *See* HW Decl. at ¶ 18; *see also* HW Decl. at Exhibit A.

28.     The Brewer School Department, the Maine School Management Association, and the Maine Education Association (including the Brewer Education Association) adhere to a trans-supremacist viewpoint and pressure those in their spheres of influence to suppress dissent from the trans-supremacist viewpoint. *See, e.g.,* Brewer School Department Policy JB; MSMA Sample Policy JB; and MEA Racial & Social Equity Series/LGBTQ+ Issues in Public Schools.

29.     The Brewer High School Principal, Defendant Brent Slowikowski and Assistant Principal, Fred Lower, have adopted this viewpoint, and in response to the petition, they approached HW and CG and pulled them into a meeting.  At that meeting, they told the minors that the petition was "hate speech." *See* HW Decl. at ¶ 19.

30.     In that meeting, these governmental officials and authority figures told HW and CG that the petition was like "supporting racial segregation." *See* HW Decl. at ¶ 20.

31.     The Defendants' conduct threatened HW and CG, who were led to believe that they would be prosecuted, criminally, for a "hate crime" or sued by the school, and disciplined by the school if they continued to circulate the petition.   *See* HW Decl. at ¶ 21.

32.     While someone with legal training might understand that HW and CG could not *reasonably* be prosecuted nor sued for this activity, children should not be expected to know clearly-settled law.  On the other hand, the Principal and Vice-Principal knew or should have known that their actions would have caused such fear and apprehension in HW and CG, and that

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

clearly-established law would permit the students to circulate an innocuous petition, even if that petition challenged the government's preferred viewpoint.

33.     Any person of ordinary firmness would have been intimidated into ceasing their constitutionally protected activities at that point, and HW and CG were intimidated by the government's threats of legal action and school discipline.  *See* HW Decl. at ¶ 22.

34.     HW and CG immediately ceased promoting the petition, and immediately went silent on any viewpoint that could be seen as challenging the trans-supremacist viewpoint.  *See* HW Decl. at ¶ 23.

35.     HW and CG desired to continue their petition activity, but feared doing so.  *See* HW Decl. at ¶ 24.

36.     Thereafter, HW and HW's father met with Superintendent Gregg Palmer and Brewer High School Principal Brent Slowikowski. HW Decl. at ¶ 25. *See also* **Exhibit 2**, Declaration of Phil Wells (hereinafter "PW Decl.") at ¶ 4.

37.     HW's father is not an attorney.  *See* PW Decl. at ¶ 5.

38.     At the second meeting, Superintendent Palmer and Principal Slowikowski reiterated the Brewer School Department would not permit nor tolerate the petition being circulated.  HW Decl. at ¶ 26. *See also* PW Decl. at ¶ 6.

39.     Superintendent Palmer and Principal Slowikowski reiterated that there would be adverse action taken against HW, and HW's father also believed that those threats were aimed at him as well.  *See* HW Decl. at ¶ 27.  *See also* PW Decl. at ¶ 7.

40.     Given threats made by the Defendants, HW and HW's father left the meeting in fear of criminal prosecution, civil action, or school discipline, or a combination of all three if HW and / or CG continued to circulate their petition.  *See* HW Decl. at ¶ 28. *See also* PW Decl. at ¶ 8.

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

41.     The Defendants stated that the petition constituted "hate speech" and could be a "hate crime."  *See* HW Decl. at ¶ 29. *See also* PW Decl. at ¶ 9.

42.     HW and CG desire to continue circulating their petition, but lacked any knowledge of how to do so without prosecution or other punishment. *See* HW Decl. at ¶ 30.

43.     HW's father communicated with Plaintiff, McBreairty in order to seek help in bringing attention to this issue, to seek public support for HW and CG's rights, and to influence public opinion against the suppression of their First Amendment rights.  *See* PW Decl. at ¶ 10.

44.     "The right to petition is one of  the most precious of the liberties safeguarded by the Bill of Rights and is made applicable to the states by the Fourteenth Amendment." *Nader v. Me. Democratic Party*, 2012 ME 57, P21 (internal citation and quotation marks omitted).

45.     School bathroom policy is an issue under consideration by both the Superintendent and Principal, who are executive officials of the Brewer School Department, and the Brewer School Committee, its legislative arm, and the petition was in connection with such issue, it is reasonably likely to encourage them to consider or review the issue, and it is reasonably likely to enlist public participation in an effort to effect such consideration.

## B.     The Article

46.     After reviewing evidence, speaking to witnesses, and doing more than reasonable research on the topic and facts, on February 12, 2024, Plaintiff Shawn McBreairty published an article entitled "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present" on the website *[your]NEWS* (hereafter the "Article").

47.     The Article was published at the URL: https://yournews.com/2024/02/12/2739739/girls-bathrooms-are-not-safe-spaces-when-males-are-present/

- 7 -
Verified Complaint

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

48.     A true and correct copy of the Article, as archived by the Wayback Machine,[2]

appears at **Exhibit 3**, attached.  *See also* **Exhibit 4** (Authenticating Declaration of Cassidy S.

Flavin, hereinafter "CSF Decl.") at ¶ 8.

49.     In this article, McBreairty discussed his opinions about a biological male who had

been using the girls' bathroom, and who had been reported to have assaulted other students and

the petition that the minors had circulated.   *See* **Exhibit 3.**

50.     In the Article, Mr. McBreairty reported on a petition that, over the course of three

days, garnered hundreds of signatures in paper form.  *See id.*

51.     In the Article, Mr. McBreairty reported on the response of Brewer High School

teacher Michelle MacDonald to the petition.  *See id.*

52.     Specifically, Mr. McBreairty reported that MacDonald unlawfully and retaliatorily

threatened the students circulating the petition that she would have them charged with hate crimes

and that MacDonald, through Brewer High School Principal Brent Slowiskowki, precluded the

students from circulating the petition on campus.  *See id.*

53.     McBreairty described MacDonald by quoting this Court's description of her in

*MacDonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 252 (D. Me.  Jan. 12, 2023):

> *The Plaintiff, Michelle MacDonald, has worked as an English teacher at Brewer*
> *High School since 2007. In addition to teaching, MacDonald also served as the*
> *Curriculum Leader—a department chair—for seven years and as the co-advisor*
> *for the school's Gender and Sexuality Alliance ("GSA").  MacDonald has a*
> *transgender child who attends a different school. First Am.. MacDonald states that*
> *she "is well known for her advocacy on behalf of LGBTQ+ students," and alleges*
> *that, beginning in 2017, she started experiencing pushback, hostility, and even*
> *retaliation in response to that advocacy.*

---

[2]     The     URL     on     the     Wayback     Machine     for     the     Article     is
https://web.archive.org/web/20240214003203/https://yournews.com/2024/02/12/2739739/girls-bathrooms-are-not-safe-spaces-when-males-are-present/

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

(internal citations omitted in Article).[3]  *See id.*

54.     Mr. McBreairty described the facts of the *MacDonald* case as including MacDonald harassing those who did not agree with her trans-supremacy viewpoint. *See id.*

55.     Mr. McBreairty then reported on and reproduced a letter from Superintendent Palmer and Principal Slowikowski from the prior day, February 11, 2024, to the Brewer School Department Families, Students, and Staff addressing "hate directed at members of our school committee," while acknowledging, at least on the surface, "competing viewpoints," and instructing recipients to "celebrate students" notwithstanding those competing viewpoints.  *See id.*

56.     In the Article, Mr. McBreairty proceeded to report on the poor academic outcomes at Brewer High School, criticized the law firm of DrummondWoodsum, and criticized the Brewer School Committee and its chair, Kevin Forest.  *See id.*

57.     Mr. McBreairty provided his understanding of the holding in *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11 (Me. 2014), which he described as only permitting a student assigned male at birth to use the girls' bathroom in the instance of a medically-diagnosed condition of gender dysphoria, as well as certain policies of Brewer School Department relating to transgender students.  *See id.*

58.     In the Article, Mr. McBreairty described Brewer School Department's policies as being unsafe, referring to the Virginia instance where a cis-female student was sexually assaulted in a high school bathroom by a trans-female student.  *See id.*

59.     Thus, in concluding the Article, Mr. McBreairty encouraged members of the public to attend the February 12, 2024, Brewer School Committee meeting and provide public comment

---

[3] In the Article, Mr. McBreairty also identified the school and provided context that MacDonald's child, who identifies as male, competes on the male track team.  *See id.*

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

for the issues under consideration.  *See id.*

### C.  Defendants' Chilling Demands

60.    The very next day, on February 13, 2024, counsel for the Defendants, acting on their behalf, at their behest, and under their authority, threatening Mr. McBreairty that, if he did not remove the Article by noon the following day, Defendants would be "forced to take further action" against him.

61.    A true and correct copy of the threatening email is attached as **Exhibit 5** and threatens to take legal action against McBreairty for his journalism and advocacy and it further seeks to enforce Brewer Board Policies ACAD, ACAF and JICK against McBreairty, when he is not subject to those policies.

62.    Specifically, Defendants claimed that the Article invaded the privacy of HD, violated Brewer Board Policies ACAD, ACAF and JICK, and caused HD and MacDonald severe distress under 20-A M.R.S. Section 6553 and 6554.

63.    McBreairty lawfully obtained the photograph in the article, but Defendants further asserted that McBreairty could not lawfully publish the lawfully obtained photograph, claiming that by publishing it, he was in violation of 17-A M.R.S. Section 511.

64.    At all relevant times herein, Mr. McBreairty had a clearly established right to publish a lawfully-acquired photograph.  *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007).

65.    While Defendants would or should know that this threat was baseless. Nevertheless, McBreairty has experience with such threats, where he was sued on similar theories in the matter of *Hermon School Department v. McBreairty*, Docket No. CV-2022-00056 (Penobscot Sup. Ct., filed May 3, 2022).  In that case, there was (is) an attempt to sue McBreairty to impose school

RANDAZZA | LEGAL GROUP

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

policies against him.  Accordingly, his concerns are well founded and real.

66.     Knowing the threat of legal action, even bogus legal action, to be credible (from experience) and fearing such further legal action, Mr. McBreairty reluctantly caused the Article to be removed from publication.

67.     McBreairty earns money by his articles being circulated.  And, thus, depublishing the article for even a day costs him financially as well as causes an irrevocable deprivation of his First Amendment rights.

68.     By de-publishing the article, McBreairty lost income.

69.     Even in the absence of any financial incentive, McBreairty wishes to have his views circulated, as a matter of participation in our democracy, and he has suffered injuries that are non-pecuniary in nature, but are even more important than his pecuniary losses.

70.     He desires to republish the Article and intends to do so upon obtaining the requested injunction and/or prevailing in this action.

71.     In place of the Article, Mr. McBreairty published a copy of Defendants' threat.

72.     That threatening email was from an agent of a governmental entity threatening to take formal legal action against Mr. McBreairty on account of his Article, which was speech on a matter of public concern.

73.     Publishing the threatening email itself was reporting on an issue by a public body on a matter of public concern.

74.     On February 14, 2024, Defendants acknowledged that the Article had been removed, but now demanded that the threatening email be removed because of the content they chose to identify and disclose in the email.

75.     A true and correct copy of the Feb. 14, 2024, demand is attached as **Exhibit 6**.

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

76.     McBreairty complied with this demand, but he would republish the letter upon obtaining a preliminary and/or permanent injunction in this matter.

77.     Defendants are out of control with respect to their desire to suppress any criticism of their practices, and they will not control themselves within the bounds of the First Amendment and the Maine Constitution unless there is injunctive relief forcing them to do so.

78.     Realizing that the continued government-sponsored harassment and censorship would never end until the Defendants were enjoined, McBreairty retained the undersigned and sought vindication of his legal rights.

## CLAIMS FOR RELIEF

### *Count I*
**Violation of the First Amendment to the United States Constitution: Retaliation**
**(42 U.S.C. 1983 – First Amendment)**

79.     Plaintiff realleges each allegation in the preceding paragraphs.

80.     Defendants' threat of action against Mr. McBreairty's speech on account of the Article is unconstitutional and violates his First Amendment rights to freedom of speech and expression, and freedom of petition.

81.     Defendants' threat of action against Mr. McBreairty's speech on account of his publication of the February 13, 2024, email is unconstitutional and violates his First Amendment rights to freedom of speech and expression, and freedom of petition.

82.     Defendants retaliated against Mr. McBreairty for exercising his First Amendment rights to freedom of speech and expression, and freedom of petition.

83.     It is clearly established that there is a First Amendment right to publish lawfully-acquired information, and that clearly established right includes criticism of government employees and governmental policies and practices.

Verified Complaint

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

84.     Defendants' restriction on Plaintiff's speech is content-based and viewpoint discriminatory and is in violation of the Free Speech Clause of the First Amendment and the Right to Petition the Government Clause of the First Amendment.

85.     Plaintiff may recover his damages and obtain declaratory and injunctive relief against Defendants, including the natural person defendants individually and in their official capacities, for the deprivation of his rights per 42 U.S.C. § 1983.

86.     Plaintiff has suffered pecuniary and nonpecuniary damages as a result of Defendants' unconstitutional actions and is entitled to damages as a result of its actions, including, but not limited to, lost income, emotional distress and incurring legal fees.

87.     Plaintiff intends to republish the Article and demand letter once he no longer faces the threat of Defendants to act against him on account of such publication.  Plaintiff, therefore, requires a declaration that such publication was lawful and an injunction against Defendants from taking the threatened or any other action against him on account of the Article or demand letter.

### _Count II_
### Violation of the Article I Section 4 and Section 15 of the Maine Constitution and the First Amendment
### (5 M.R.S. § 4682 Free Speech and Right to Petition)

88.     Plaintiff realleges each allegation in the preceding paragraphs.

89.     Defendants' threat of action against Mr. McBreairty's speech is unconstitutional and violates his rights to freedom of speech, press, and petition under the First Amendment and the Maine Constitution, Art. I, §§ 4 & 15.

90.     Defendants' threats against Mr. McBreairty's speech on account of the publication of the February 13, 2024, email is unconstitutional and violates his rights to freedom of speech, press, and petition under the First Amendment and the Maine Constitution, Art. I, §§ 4 & 15.

RANDAZZA | LEGAL GROUP

Verified Complaint

91.     Defendants retaliated against Mr. McBreairty for exercising his rights to freedom of speech and expression, and freedom of petition under the First Amendment of the U.S. Constitution and the Maine Constitution, Art. I, §§ 4 & 15.

92.     It is clearly established that there is a right to publish lawfully-acquired information, and that clearly established right includes criticism of government employees and governmental policies and practices.

93.     Defendants' restriction on Plaintiff's speech is content-based and viewpoint discriminatory and is in violation of the First Amendment of the U.S. Constitution and the Maine Constitution, Art. I, §§ 4 & 15.

94.     Plaintiff may recover his damages and obtain declaratory and injunctive relief against Defendants, including the natural person defendants individually and in their official capacities, for interfering with his rights per 5 M.R.S. § 4682.

95.     Plaintiff has suffered pecuniary and nonpecuniary damages as a result of Defendants' unconstitutional actions and is entitled to damages as a result of its actions, including, but not limited to, lost income, emotional distress and incurring legal fees.

Plaintiff intends to republish the Article and demand letter once he no longer faces the threat of Defendants to act against him on account of such publication.  Plaintiff, therefore, requires a declaration that such publication was lawful and an injunction against Defendant Brewer School Department from taking the threatened or any other action against him on account of the Article or demand letter.

//

//

//

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

### *Count III*
### Violation of the First Amendment to the United States Constitution and Violation of the Article I Section 4 of the Maine Constitution – Declaratory Relief
### (5 M.R.S. § 4682 Free Speech and Right to Petition)

96.     Plaintiff realleges each allegation in the preceding paragraphs.

97.     Defendants claim that Brewer School Department Policies ACAD, ACAF, and JICK apply to Plaintiff, despite his not being a member of the school community, nor being on campus at any time that Defendants sought to apply them to him.

98.     At all relevant times, none of those Brewer School Department Policies apply nor applied to McBreairty, nor could they, in this context.

99.     Even if some Board Policies might apply to McBreairty, Brewer School Department Policies ACAD, ACAF and JICK, do not apply to McBreairty, relative to the facts giving rise to this Complaint.

100.    To the extent Brewer School Department Policies ACAD, ACAF, and/or JICK might be applied to McBreairty relative to the facts giving rise to this Complaint, such would be unconstitutional under the First Amendment and Maine Constitutions as-applied.

101.    Plaintiff, therefore, requires a declaration from this Court that Brewer School Department Policies ACAD, ACAF, and/or JICK do not govern or restrict his publication of the Article, the letter, and/or any and all related matter.

### REQUESTS FOR RELIEF

WHEREFORE, Plaintiff Shawn McBreairty asks this Court to issue and or award:

A.      A preliminary and permanent injunction enjoining Defendants from interfering with Plaintiff's right to lawfully engage in constitutionally protected expression including, but not limited to, publication of the Article and the demand letter;

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

B.      Declaratory judgment that Board Policies ACAD, ACAF and JICK and otherwise do not apply to McBreairty, and injunctive relief stopping Defendants from taking legal action to enforce such actions against him;

C.      Actual Damages in an amount to be determined at trial;

D.      Nominal Damages;

E.      Attorneys' fees and expenses under 42 U.S.C. § 1988 and 5 M.R.S. § 4683;

F.      Any further relief the Court deems appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by. Jury on all causes of action.

Dated: February 22, 2024.                          Respectfully Submitted,

/s/ Robert J. Morris                          Marc J. Randazza (*pro hac vice forthcoming*)
Robert J. Morris, II (ME Bar No. 010402)          *Lead Counsel*
HOUSER, LLP                                    RANDAZZA LEGAL GROUP, PLLC
400 TradeCenter, Suite 5900                   30 Western Avenue
Woburn, MA 01801                              Gloucester, MA 01930
Tel: (339) 203-6498                           Tel: (888) 887-1776
Email: rmorris@houser-law.com                 Email: ecf@randazza.com

                                              *Attorneys for Plaintiff,*
                                              *Shawn McBreairty*

Verified Complaint

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00

## VERIFICATION OF COMPLAINT

I, Shawn McBreairty, am the Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 02 / 22 / 2024 _____          By:_____

                                                        Shawn McBreairty

**RANDAZZA** | LEGAL GROUP

Doc ID: 7f54927c52b3e242140d10d6423d83e9f3e38c00