# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

SHAWN MCBREAIRTY,

        Plaintiff,

    v.

BREWER SCHOOL DEPARTMENT,
GREGG PALMER, in his personal and
official capacities, BRENT SLOWIKOWSKI,
in his personal and official capacities,
MICHELLE MACDONALD, in her personal
and official capacities,

        Defendants.

Case No. 1:24-cv-00053-LEW

**EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER
AND FOR A PRELIMINARY
INJUNCTION OR, IN THE
ALTERNATIVE, AN INJUNCTION
PENDING APPEAL**

Plaintiff Shawn McBreairty moves for a TRO and a preliminary injunction. He needs this relief to restore the *status quo ante* before Defendants infringed on his rights by restricting his right to publish a lawful article about a matter of public concern. McBreairty requires an injunction restraining the government from restricting or seeking to restrict his First Amendment rights through intimidation and threats of legal action.

McBreairty requests the entry of an injunction as soon as this court finds feasible so he may publish the now-censored Article at question. He has been forced to remove the article from publication under threat of legal sanctions from Defendant. McBreairty's First Amendment rights will not be protected without injunctive relief. McBreairty and the public interest will be irreparably harmed if this relief does not issue as soon as possible. In the alternative, McBreairty seeks an injunction pending appeal under Fed. R. Civ. P. 62(d).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1.0 INTRODUCTION

This is a case about the right of a citizen to publish an article that criticizes the government. To censor that criticism, Defendants threatened legal action if McBreairty did not remove his lawful article. Fearful of the government's threats, McBreairty succumbed to the threats and now seeks this Court's aid in upholding and defending the Constitution. The government's actions are unconstitutional and suppress legitimate journalism. Every day this censorship remains unchecked McBreairty and the public interest suffer. Plaintiff requests an immediate injunction.[1]

The public must be free to debate government actors, including those who manage and implement policy in public school systems. Speech is on matters of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U. S. 443, 453 (2011); *Kelley v. Bonney*, 606 A.2d 693, 710 (Conn. 1992) (discussions of public school teachers is a matter of public concern).

McBreairty's article discussed policy decisions by the Brewer School District, how students circulated a petition about those decisions, and how those students' petitioning activity was unlawfully suppressed by the government. This is all clearly a matter of public concern. The government has no right to suppress it, and must be held accountable for doing so.

---

[1] If this Court declines to enter the injunction, McBreairty requests that the Court err on the side of the Constitution and at grant an injunction pending appeal per Fed. R. Civ. P. 62(d). Such is proper if the movant makes "a strong showing that they are likely to succeed on the merits, that they will be irreparably injured absent emergency relief, that the balance of the equities favors them, and that an injunction is in the public interest." *Together Emples v. Mass Gen. Brigham Inc*., 19 F.4th 1, 7 (1st Cir. 2021). The test is nearly identical to the standard test for a preliminary injunction. *See Winter v. NRDC, Inc*., 555 U.S. 7, 20 (2008).

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

## 2.0    FACTS[2]

### 2.1    The Petition

Brewer School Department enacted a policy that permits students to use the bathroom corresponding to their gender identity, rather than their biological sex. Complaint at ¶ 10. HW and CG are students at Brewer High.[3] *See* Complaint at ¶11; ECF No. 1-1, Declaration of HW ("HW Decl."). HW and CG support civil rights and equal treatment for all persons, whatever their gender identity. Complaint at ¶ 12. Neither HW nor CG tolerate bullying of anyone due to identity or sexual orientation. *See* Complaint at ¶ 12; HW Decl. at ¶¶ 6-7.

Yet, HW and CG have safety and privacy concerns as to private spaces as *some* have taken advantage of such bathroom policies to commit sexual assault. *See* Complaint at ¶ 13; HW Decl. at ¶ 8. HW and CG knew of a 2021 case in Loudon County, Virginia, in which a biological male posed as a female to sexually assault a girl. *See Doe v. Loudon County School Board,* Case No. 1:23-cv-01358 (E.D. Va. filed Oct. 4, 2023); Complaint at ¶ 14; HW Decl. at ¶ 9.

HW and CG were then made aware that HD, who is believed to be biologically male, had started using the girls' bathroom at Brewer. *See* Complaint at ¶ 15; HW Decl. at ¶ 10. HD has a reported history of sexual assault at Brewer. Complaint at ¶ 16; HW Decl. at ¶¶ 11-12. In light of their concerns, HW and CG drafted a petition to try to convince Brewer High School and Defendant Principal Brent Slowikowski to change school policy to address their concerns. *See* Complaint at ¶ 17; HW Decl. at ¶ 13.

//

//

---

[2] The facts are supported by the Verified Complaint ("Complaint") and its exhibits.
[3] Due to their ages, all students are referred to solely by their initials.

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

The petition was hardly offensive to any reasonable person. It read as follows:



Petition to Keep Mens and Womens Biological Spaces to Their Respected Gender

We want to bring awareness to the fact that womens and mens public spaces should be biologically separated, it's about the privacy and restrictions that need to be upheld for both men and women, things such as bathrooms, locker rooms, sports, and types of changing areas or sanitary stations should all be based on whether you are a biological girl or boy. When these rights of privacy are taken away from anybody it is unfair. This is a petition to keep the basic human rights of privacy and comfort that have been around for hundreds of years, untouched and unchanged.

Complaint at ¶ 17; HW Decl. at ¶ 13. HW and CG distributed this petition to other students, and many students signed the petition. *See* Complaint at ¶ 18; HW Decl. at ¶ 14.

Support for the petition was widespread. Complaint at ¶ 19. In fact, it spanned across genders, gender identities, and multiple belief systems. Complaint at ¶ 19. The diversity of the body of students supporting it was so broad and representative that even HD *themself* asked to sign the petition. *See* Complaint at ¶ 19; HW Decl. at ¶ 15.

No reasonable person could believe HD was troubled by, offended by, angered by, or hurt by the petition, as HD *asked to sign the petition*. *See* Complaint at ¶ 20; HW Decl. at ¶ 16. It may seem surprising that HD would want to sign the petition, as it might have affected *them,* but the language of the petition was non-discriminatory, lacked any bias, cruelty, or prejudice. Complaint at ¶ 21. In fact, HD expressed delight at the petition. *See* Complaint at ¶ 22; HW Decl. at ¶ 17.

In contrast to HW and CG's beliefs in equality, Defendants seek to promote transgender *supremacy* in public schools, not equality. Complaint at ¶ 23. *Transgender supremacy* is a viewpoint that rather than trans and nonbinary persons being treated *equally*, that non-trans and binary persons must change their ways, adjust their lives, their beliefs, their needs, and set their

concerns aside to accommodate, at all costs, transgender and nonbinary persons and those who seek to politically or socially gain from promotion of this viewpoint. Complaint at ¶ 24. Dissent is not tolerated by trans-supremacists. Complaint at ¶ 24. When confronted with dissent, trans-supremacists engage in abusive efforts to psychologically or physically harm those who dissent from this philosophy. Complaint at ¶ 24.

One form of this abuse is the "taking oneself hostage" technique – where an adherent to trans-supremacy will claim that they are suicidal or prepared to engage in self-harm if there is any disagreement with their viewpoint. Complaint at ¶ 25. Another form of this abuse is to claim that anyone who dissents from the trans-supremacist viewpoint is "transphobic" or "hateful" and thus use such accusations to ostracize the dissenter or to encourage violence or other forms of abuse against those who dissent. Complaint at ¶ 26. For example, trans-supremacists sent rape threats to a student who signed the petition to put them in fear of their well-being or safety. HW, while supporting equality, is against trans-supremacy. *See* Complaint at ¶ 27; HW Decl. at ¶ 18; HW Decl. at Exhibit A.

The Brewer School Department, the Maine School Management Association, and the Maine Education Association (including the Brewer Education Association) adhere to a trans-supremacist viewpoint, pressuring those in their spheres of influence to suppress dissent. Complaint at ¶ 28. Brewer High School Principal, Defendant Brent Slowikowski and Assistant Principal, Fred Lower, favor this viewpoint, to the exclusion of others, and in response to the petition, they approached HW and CG and pulled them into a meeting. Complaint at ¶ 29.

At that meeting, they told the minors that their petition was "hate speech." *See* Complaint at ¶ 29; HW Decl. at ¶ 19. In that meeting, these governmental officials and authority figures told HW and CG that the petition was like "supporting racial segregation." *See* Complaint at ¶ 30; HW

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

Decl. at ¶ 20. The Defendants' conduct threatened HW and CG, who were led to believe that they would be prosecuted, criminally, for a "hate crime" or sued by the school, and disciplined by the school if they continued to circulate the petition. *See* Complaint at ¶ 31; HW Decl. at ¶ 21.

Any reasonable school official or lawyer would know that HW and CG could not *reasonably* be prosecuted nor sued for this activity. But, children should not be expected to know clearly-settled law. Complaint at ¶ 32; *R.A.V. v. St. Paul*, 505 U.S. 377, 382-83 (1992) ("The First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed.") (citations omitted); *Tinker v. Des Moines Ind. Sch. Dist*, 393 U.S. 503 (1969). At the same time, the Principal and Vice-Principal knew or should have known that their actions would have caused such fear and apprehension in HW and CG, and that clearly-established law would permit the students to circulate an innocuous petition, even if that petition challenged the government's preferred viewpoint. Complaint at ¶ 32.

Any person of ordinary firmness would have been intimidated into ceasing their constitutionally protected activities at that point, and HW and CG were intimidated by the government's threats of legal action and school discipline. *See* Complaint at ¶ 33; HW Decl. at ¶ 22. HW and CG immediately ceased promoting the petition, and immediately went silent on any viewpoint that could be seen as challenging the trans-supremacist viewpoint. *See* Complaint at ¶ 34; HW Decl. at ¶ 23. HW and CG desired to continue their petition activity, but feared doing so. *See* Complaint at ¶ 35; HW Decl. at ¶ 24.

Thereafter, HW and HW's father met with Superintendent Gregg Palmer and Brewer High School Principal Brent Slowikowski. Complaint at ¶ 36; HW Decl. at ¶ 25; ECF No. 1-2, Declaration of Phil Wells (hereinafter "PW Decl.") at ¶ 4. HW's father is not an attorney. *See* Complaint at ¶ 37; PW Decl. at ¶ 5. At the second meeting, Superintendent Palmer and Principal

Slowikowski reiterated the Brewer School Department would not permit nor tolerate the petition being circulated. Complaint at ¶ 38; HW Decl. at ¶ 26; PW Decl. at ¶ 6. Superintendent Palmer and Principal Slowikowski reiterated that there would be adverse action taken against HW, and HW's father believed that those threats were aimed at him as well. *See* Complaint at ¶ 39; HW Decl. at ¶ 27; Decl. at ¶ 7. Given threats made by the Defendants, HW and HW's father left the meeting in fear of criminal prosecution, civil prosecution, or school discipline, or a combination of all three if HW and / or CG continued to circulate their petition. *See* Complaint at ¶ 40; HW Decl. at ¶ 28; PW Decl. at ¶ 8. Defendants stated that the petition constituted "hate speech" and could be a "hate crime." *See* Complaint at ¶ 41; HW Decl. at ¶ 29; PW Decl. at ¶ 9. HW and CG desire to continue circulating their petition, but lacked any knowledge of how to do so without prosecution or other punishment. *See* Complaint at ¶ 42; HW Decl. at ¶ 30.

HW's father, unsure of his rights, but with a belief that the public needed to know about the defendants' actions, reached out to, in order to seek help in bringing attention to this issue, to seek public support for HW and CG's rights, and to influence public opinion against suppression of First Amendment rights. *See* Complaint at ¶ 43; PW Decl. at ¶ 10.

### 2.2    The Article

Plaintiff Shawn McBreairty is a journalist and an Educational Advocate who petitions for change in education policy and law. Complaint at ¶ 9. After reviewing evidence, speaking to witnesses, and doing more than reasonable research on the topic and facts, on February 12, 2024, Plaintiff published an article entitled "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present" on the website *[your]NEWS* (hereafter the "Article"). Complaint at ¶ 46; ECF No. 1-3.

In the Article, McBreairty discussed his opinions about the two minors' experiences and the underlying facts and concerns. Complaint at ¶ 49. McBreairty reported on the petition that,

over the course of three days, garnered hundreds of signatures. Complaint at ¶ 50. McBreairty reported how Brewer High School teacher Defendant Michelle MacDonald reacted to the petition. Complaint at ¶ 51. Specifically, McBreairty reported that MacDonald unlawfully and retaliatorily threatened the students circulating the petition that she would have them charged with hate crimes and how MacDonald, through Brewer High School Defendant Principal Brent Slowiskowki, precluded the students from circulating the petition in class. Complaint at ¶ 52.

McBreairty described MacDonald by quoting this Court's description of her in *Macdonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 252 (D. Me. Jan. 12, 2023). Complaint at ¶ 53. McBreairty described the facts of the *MacDonald* case as including MacDonald harassing students who did not agree with her trans-supremacist viewpoint. Complaint at ¶ 54.

McBreairty then reported on and reproduced a letter from Superintendent Palmer and Principal Slowikowski from the prior day, February 11, 2024, to Brewer School Department Families, Students, and Staff addressing "hate directed at members of our school committee," while acknowledging, at least on the surface, "competing viewpoints," and instructing recipients to "celebrate students" notwithstanding those competing viewpoints. Complaint at ¶ 55.

In the Article, McBreairty proceeded to report on the poor academic outcomes at Brewer High School, criticized the Defendants' law firm, and criticized the Brewer School Committee and its chair, Kevin Forest. Complaint at ¶ 56. McBreairty provided his understanding of the holding in *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11 (Me. 2014).

McBreairty described Brewer School Department policies as being unsafe, referring to the Virginia instance described above. Complaint at ¶ 58. McBreairty encouraged the public to attend the February 12, 2024, Brewer School Committee meeting and provide public comment for the issues under consideration. Complaint at ¶ 59.

### 2.3    Brewer's Demands

On February 13, 2024, counsel for the defendants, acting on their behalf, at their behest, under their authority, threatened McBreairty that, if he did not remove the Article from circulation by noon the next day, Defendants would be "forced to take further action" against him.  Complaint at ¶ 60; ECF No. 1-5.

Specifically, Defendants claimed that the Article invaded the privacy of HD, violated Brewer School Department policies ACAD, ACAF, and JICK, and caused HD and MacDonald severe distress under 20-A M.R.S. Section 6553 and 6554. Complaint at ¶ 62.   McBreairty lawfully obtained the photograph of HD, but Defendants asserted that McBreairty could not publish it, claiming that he was in violation of 17-A M.R.S. Section 511. Complaint at ¶ 63.

McBreairty has a clearly established right to publish lawfully-acquired information.  *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007). Complaint at ¶ 64. While the "privacy" claim was factually baseless, speaking on matters of public concern overrides any right to privacy. See, e.g., *Florida Star v. B.J.F.*, 491 U.S. 524 (1989); *Daury v. Smith*, 842 F.2d 9, 14 (1st Cir. 1988).   While Defendants should have known their threat was baseless, the same Attorney and firm filed suit against him on similar unsupportable theories in *Hermon School Department v. McBreairty*, Docket No. CV-2022-00056 (Penobscot Sup. Ct., filed May 3, 2022).   Complaint at ¶ 65. Knowing the threat of legal action, even a bogus one, to be credible and fearing such further legal action, Mr. McBreairty reluctantly and fearfully removed the article from publication.  Complaint at ¶ 66.

Depublishing the article for even a day causes an irrevocable deprivation of his speech. Complaint at ¶ 67.  Even in the absence of any financial incentive, McBreairty wishes to have his views circulated, as a matter of participation in our democracy, and he has suffered injuries that

are non-pecuniary in nature, but are even more important than his pecuniary losses. Complaint at ¶ 69. He desires to republish the Article and intends to do so upon obtaining the requested injunction and/or prevailing in this action. Complaint at ¶ 70.

In place of the Article, Mr. McBreairty published a copy of Defendants' threat. Complaint at ¶ 71. That threatening email was from an agent of a governmental entity threatening to take formal legal action against Mr. McBreairty on account of his Article, which was speech on a matter of public concern. Complaint at ¶ 72. Publishing the threatening email itself was reporting on an issue by a public body on a matter of public concern. Complaint at ¶ 73.

On February 14, 2024, Defendants acknowledged that the Article had been removed, but newly demanded that the threatening email be removed because of the content they chose to identify and disclose in the email. Complaint at ¶ 74; ECF No. 1-6. McBreairty complied with this government edict, but he intends to republish the demand letter upon obtaining a preliminary and/or permanent injunction in this matter. Complaint at ¶ 76.

## 3.0    LEGAL STANDARD

FRCP 65 provides for temporary restraining orders and preliminary injunctions. *See* Fed. R. Civ. P. 65(a) and (b). Injunctive relief should be issued if: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) the balance of equities tips in plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

## 4.0    LEGAL ARGUMENT

### 4.1    Plaintiff Has Standing

When a plaintiff "is chilled from exercising [his] right to free expression or forgoes expression in order to avoid enforcement consequences he … demonstrates constitutional

standing." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003).; (collecting cases). Twice, Defendants prevented Mr. McBreairty from publication and he has foregone reporting—demanding he remove the Article discussing Defendants' policies and the petition, and demanding he remove the demand. Facing a credible threat of legal action should he republish one or both, or otherwise report on these matters, McBreairty has standing.

### 4.2    Plaintiff is Likely to Prevail on the Merits of His Claims

McBreairty bring three claims against Defendants: a) First Amendment retaliation: 42 U.S.C. § 1983; b) 5 M.R.S. § 4682 for violation of the First Amendment and of Art. I., §§ 4 & 15 of the Maine Constitution; and c) a declaratory judgment that the Defendants may not try to apply their internal policies to McBreairty, an external party. 42 U.S.C. § 1983 provides a remedy for infringement of constitutional rights. *Alfano v. Lynch*, 847 F.3d 71, 74 n.1 (1st Cir. 2017). For relief under 5 M.R.S. § 4682, Plaintiffs allege facts to establish that Defendants intentionally interfered with their constitutional rights. *See* 5 M.R.S. § 4682; *Andrews v. Dep't of Envt. Prot.*, 1998 ME 198, ¶ 23, 716 A.2d 212. There is no legitimate dispute that Defendants were acting under color of state law or threatened Mr. McBreairty—thus, the only issue that may require discussion is whether they interfered with/transgressed his constitutional rights. They did.

Plaintiff is likely to prevail in his constitutional claims. "The right to petition is one of the most precious of the liberties safeguarded by the Bill of Rights and is made applicable to the states by the Fourteenth Amendment." *Nader v. Me. Democratic Party*, 2012 ME 57, P21 (internal citation and quotation marks omitted). School bathroom policy is an issue under consideration by both the Superintendent and Principal, who are executive officials of the Brewer School Department, and the Brewer School Committee, its legislative arm, and the petition was in connection with such issue, it is reasonably likely to encourage them to consider or review the

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

issue, and it is reasonably likely to enlist public participation in an effort to effect such consideration. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56-57 (1st Cir. 2003); Complaint at ¶ 45.

Prohibiting criticism of Defendants and reporting on a petition is unconstitutional viewpoint and content-based discrimination. In their letter, Defendants purport to recognize McBreairty's right to report on and opine on matters of public concern, but then concoct pretextual reasons to demand they be removed. They raise a concern with a) a picture of HD; b) statements that identify and discuss HD; and c) the statements about MacDonald and her motivations. Yet, reporting on high school students or teachers is not unprotected speech. For example, on July 15, 2023, the *Bangor Daily News* published an article "*Weeks in the Maine Woods are Brewer High School's Answer to Absenteeism*". *See* **Exhibit 1**.[4] *See also* **Exhibit 2**, Authenticating Declaration of Cassidy S. Flavin ("CSF Decl.") at ¶ 4. That article was laudatory of Defendant's school, Brewer High School, and Defendant Superintendent Palmer, naming minor students and teachers, and showing pictures of them. Nobody minded being praised—and, no one minds that HD and MacDonald's child were publicly identified as an Honor Roll students this month.[5] But, when McBreairty did the same, on a different subject matter, and with a negative opinion, he was threatened by the government with legal action for criticizing them.

Defendants' actions are viewpoint discrimination. "[D]isfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (internal quotation marks omitted). "A viewpoint need not be political; any

---

[4]Available online at https://www.bangordailynews.com/2023/07/15/bangor/brewer-high-school-woods-program-joam40zk0w/

[5] *See* BDN Community, "Hampden Academy quarter 2 honor roll", BANGOR DAILY NEWS (Feb. 21, 2024), at https://www.bangordailynews.com/2024/02/21/bdn-maine/hampden-academy-quarter-2-honor-roll-2/ (**Exhibit 6**; CSF Decl. at ¶ 8); Shauna McGinnis, "Q2 Honor Roll 2024", BREWER HIGH SCHOOL NEWS (Feb. 2, 2024), at https://www.brewerhs.org/o/brewer-high-school/article/1441811 (**Exhibit 7**; CSF Decl. at ¶ 9).

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

form of support or opposition to an idea could be considered a viewpoint." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring in part) ("The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses.")). Defendants prohibited McBreairty from criticizing students, staff, their actions, and policies on an ongoing debate on matters of public concern. This is unconstitutional content/viewpoint discrimination.

Content-based and viewpoint-based restrictions are subject to strict scrutiny. *See McCullen v. Coakley*, 573 U.S. 464, 478 (2014), "[s]uch 'requires the government to demonstrate that the restriction advances a 'compelling interest' and is 'narrowly tailored to achieve that interest,'" *Signs for Jesus v. Town of Pembroke*, 977 F.3d 93, 101 (1st Cir. 2020) (*quoting Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015)). Such restrictions must also be "necessary." *R.A.V.,* 505 U.S. at 395. The demands for censorship serve no compelling interest and are not narrowly tailored.

Defendants claim the speech is unprotected due to falsity, without identifying a single falsehood. ECF No. 1-5. Particularly where the media is reporting on the government's conduct, it is chilling to imagine giving the government the power to decide which reporting is "false" in its sole opinion, and to give it the power to threaten a journalist with criminal or civil action if that journalist does not get in line with what the government says is "true."

> It cannot be the duty, because it is not the right, of the state to protect the public against false doctrine. The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech and religion. In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the truth from the false for us.[6]

---

[6] *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J. concurring).

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

While there were no false statements in the article, even if there were, that does not give the government any power. There is no "general exception to the First Amendment for false statements." *United States v. Alvarez*, 567 U.S. 709, 718 (2012). Even assuming *arguendo* there was a false statement, the government may not claim that an article must be censored because it is false. The government does not get to decide truth or falsity, especially when it comes to the "true" or "false" opinions. The government is a poor arbiter of truth, especially when it may have a vested interest in stifling the dissemination of unflattering, yet accurate, information. History is replete with examples of governments lying to their constituents. As Justice Black observed in *New York Times v. United States*, 403 U.S. 713, 717 (1971):

> [o]nly a free and unrestrained press can effectively expose deception in government. And paramount among the responsibilities of a free press is the duty to prevent any part of the government from deceiving the people and sending them off to distant lands to die of foreign fevers and foreign shot and shell … In revealing the workings of government that led to the Vietnam war, the newspapers nobly did precisely that which the Founders hoped and trusted they would do.

That is why the First Amendment protects freedom of the press. To accept such censorious motives as a legitimate government interest would be an abuse of discretion, to say the least. To accept this as a necessary, compelling government interest would make the term "abuse of discretion" blush with embarrassment at being associated with such analysis.

Defendants also claim the statements and photo are "an impermissible invasion of the privacy of minors and have the effect of bullying and hazing a student and a teacher at the Brewer High School in violation of Board Policies ACAD, ACAF and JICK and Maine law." ECF No. 1-5. The Maine law cited was 17-A M.R.S. Section 511, and 20-A M.R.S. Sections 6553 & 6554. *Id.* Mr. McBreairty violated none of them.

Policy ACAD, the "Hazing" policy, which is enforced by Defendant Palmer on behalf of Defendants, restricts actions only by those who are part of the Brewer school system. That means

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

students, staff members (administrators, faculty members, and other employees), and groups and organizations affiliated with Brewer School Department—not outside journalists like McBreairty. *See* **Exhibit 3**.[7] *See also* CSF Decl. at ¶ 5. Policy ACAF, the "Workplace Bullying" policy, also enforced by Defendant Palmer for Defendants, fares no better—by its terms, it regulates employees, students, parents, community members, and others involved in the school. *See* **Exhibit 4**.[8] *See also* CSF Decl. at ¶ 6. Policy JICK, the "Bullying" policy, again, enforced by Defendant Palmer for Defendants, regulates only students, employees, volunteers, contractors, visitors, and school-affiliated organizations. *See* **Exhibit 5**.[9] CSF Decl. at ¶ 7. If teachers may not be "compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work," then, McBreairty, a non-teacher, cannot have his rights infringed when writing about such matters himself. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Defendants have no authority to regulate off-campus speech by unaffiliated persons, let alone reporters like McBreairty. *Compare Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038 (2021) (observing the very little leeway schools have to regulate a *student's* off-campus speech).

Similarly, the statutory provisions cited are not properly invoked. Under 17-A M.R.S. § 511, only a person entering or engaging in surveillance could be in violation of another's privacy. McBreairty did not take the relevant photograph, nor did he trespass. McBreairty was provided the photograph by a news source. Since he acquired it lawfully, he has a clearly established right

---

[7] Available at https://docs.google.com/document/d/1IoMtrBrOiuRXhbjeQf2wZSVU1m-H7sAzMY1KdxJq0-4/edit.

[8] Available at https://docs.google.com/document/d/1JHV73KUPXvYzITkxnC7N5uD4BjIxYjb0grMtBpGV2cY/edit.

[9] Available at https://docs.google.com/document/d/1EMBuAyVph-cAhc2VNOU-xuAjRgNFWO24Q917-61LltU/edit.

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

to publish that lawfully-acquired information. *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007). As with the policies, 20-A M.R.S. § 6553(2) only applies to a "student, staff member, group or organization affiliated with the public school," making it inapplicable to McBreairty. Similarly, 20-A M.R.S. § 6554(3) highlights that it only applies to conduct on school grounds, and McBreairty was not on school grounds.

Even if, somehow, these policies could be applied to Mr. McBreairty, there is no compelling interest in their necessary application to the Article and the government's threat of prosecution if it is not censored was not narrowly tailored to whatever that compelling interest might be. The first issue highlighted by Defendants was the "picture of Brewer High School students in the restroom." The students are dressed. None of them are engaged in private bodily functions. Rather, they are standing as a group near the door where any person identifying as female, adult or juvenile, or personnel of any gender entitled to be present might observe them. And, as noted above, under *Bartnicki* and *Jean*, there can be no compelling interest in restricting McBreairty's publication of a lawfully-acquired image (even if the photographer him/her/theirself may have unlawfully created it). This would be the issue in *Jean*, where the First Circuit presumed, *arguendo*, that a video was unlawfully made. However, since Jean was not the one who unlawfully made it, the government had no authority to censor the video.

Defendants' second issue is that McBreairty made two statements that identified HD. There is no compelling interest in precluding the publication of student names. The *Bangor Daily News* article cited above did so. Schools publish their Honor Roll list routinely identifying students—the *Bangor Daily News* did so this week and identified MacDonald's child, and *Brewer High School itself identified HD earlier this month*. Newspapers report on school plays, athletics, and academic competition results naming students. There is no genuine, let alone necessary

compelling, interest in prohibiting the publication of student names. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) clearly established that even publishing the name of a minor rape victim is protected. Accordingly, what interest does the government believe it has here, that falls outside of this clearly established law?

Defendants' third issue is the statement concerning Defendant MacDonald's child. However, this statement expressly quoted the line "MacDonald has a transgender child who attends a different school" from *Macdonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 252 (D. Me. Jan. 12, 2023), and provided commentary thereon regarding the child's activities at that school. Not only is there no compelling interest in precluding discussion of the child, it was used to highlight Defendant MacDonald's bias against the petitioning students at Brewer. Quoting from judicial proceedings is protected under Maine law under the fair report privilege. *See, e.g., Kampf v. Maine Publ. Corp.,* 1998 Me. Super. LEXIS 259, *2-3 (Cumberland Cty. Sup. Ct. Oct. 20, 1998) (citing Restatement (Second) of Torts, § 611 (1977) and determining the privilege would be recognized in Maine). This privilege protects those who "fairly and accurately report certain types of official or governmental action", rendering them immune from lawsuits arising out of such reports. *Yohe v. Nugent*, 321 F.3d 35, 42 (1st Cir. 2003). Defendants, therefore, have no compelling interest in restricting McBreairty's report on Defendant MacDonald's prior litigation, the outcome thereof, and her biases as to the petitioners.[10]

Neither have Defendants set forth a compelling interest in demanding the removal of their threats. In fact, that is even more abhorrent. The government threatened a journalist and then threatened the journalist for publishing the threat. The sole basis is that the threat reprints the content Defendants want to censor. ECF No. 1-6. However, it was Defendants' choice as to what

---

[10] And, as noted above, statements about MacDonald's child, as with HD, are protected speech.

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

to include, and the reporting of the takedown demand is itself an issue of public concern and an official proceeding protected under the fair report privilege. Yet, believing that McBreairty has somehow forfeited his Constitutional rights, they did it just the same.

Students, staff, and the Brewer electorate have the right to know what is occurring in the schools (these are not mutually exclusive—some of the seniors are undoubtedly registered voters). As much as some find discussions of gender policy uncomfortable, uncomfortable discussions must be had. Robust debate is why the First Amendment, and the Maine corollaries, exist. Single-sex bathrooms exist and they exist for a reason. Some states require that bathrooms be exclusively single-sex. *See e.g,* Okla. Stat. tit. 70, § 1-125. As the author of the Oklahoma bill put it, "It's about safety, it's about protection" and that "[t]he goal of this bill is to protect our children." *See* "Oklahoma governor signs transgender bathroom bill", INDEPENDENT (May 26, 2022).[11] Some courts hold that Title IX, 28 U.S.C. § 1681(a), requires schools to allow transgender students to use the bathroom of the gender with which they identify. *See, e.g., Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020) *cert den'd* No. 20-1163 (June. 28, 2021). Should schools do more to protect transgender students from bullying? Are students at risk from transgender students in walled-off spaces, and should there be a different concern when it is a biological male entering a female-designated space? HD has a reputation of sexual assault against girls. HD was in the girls' bathroom. Some girls want to protect themselves and invoked the petition process. A teacher and administrators threatened the girls for the exercise of their freedom of petition. Defendants cannot simply stifle one side of this debate and reports of these occurrences with threats of legal action. They have no legitimate interest in doing so.

---

[11] Available at https://www.independent.co.uk/news/world/americas/us-politics/kevin-stitt-ap-danny-williams-oklahoma-city-democrats-b2088276.html

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

### 4.3    Plaintiff Has Been Irreparably Harmed; the Harm Must be Enjoined

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[A] plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Assn'n of Club Owners v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Thus, if the plaintiff demonstrates a likelihood of success on the merits of its First Amendment claim, they necessarily also establish irreparable harm. *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012).

### 4.4    The Balance of Equities Tips in Plaintiff's Favor

When the government restricts speech, the balance of hardships weighs in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) ("insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech.") Failing to grant the requested injunction will continue to deprive McBreairty of his constitutional rights. Defendants will suffer no harm. An injunction will restore the rights guaranteed by the U.S. and Maine Constitutions.

### 4.5    Injunctive Relief is in the Public Interest

"Protecting rights to free speech is *ipso facto* in the interest of the general public." *McBreairty v. RSU22* at *31-32. Other members of the public are chilled from speaking their minds as well. They see McBreairty threatened for merely mentioning government employees and publishing events that happened, and then threatened for reporting on the threat. Which citizen of ordinary firmness would risk speaking reporting on controversial issues if this is tolerable?

Further, even members of the public who do now wish to speak have a right to read McBreairty's reporting. Even the government is harmed if it cannot hear how its employees are performing. How can a government operate effectively if it never hears feedback? The

Emergency Motion for Temporary Restraining Order and Preliminary Injunction

government will create the illusion that it is operating with a unanimous mandate, and perhaps even fool itself into continuing negative policies, because nobody would dare to criticize them. Enjoining that self-inflicted harm is in the public interest.

### 4.6 At Most, a Minimal Bond Should Be Required

A bond should only be required if the enjoined party will suffer harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002). Defendants will suffer no harm. An injunction will repair the *status quo* and allow the First Amendment to flourish. McBreairty requests that the injunction issue with no bond required.

## 5.0 CONCLUSION

This Court recognized that "[e]xpression of . . . school-related concerns at the podium during the public comment period of School Board meetings constitutes speech that is protected under the First Amendment." *McBreairty v. RSU22,* 616 F. Supp. 3d 78, 89 (D. Me. Jul. 20, 2022). There is no less protection for such speech in an online publication.

McBreairty wishes to engage in his civic-minded reporting and activism and republish the Article and threatening demand. The Court should enter a preliminary injunction against the Defendants from taking action against him on account of publishing the Article and the letter as these actions are unconstitutional. Further, the Court should enjoin the Defendants from taking any action to try to apply school policies to McBreairty.

Should the Court decline to enter such injunction, Mr. McBreairty requests alternative relief in the form of an injunction pending appeal. Fed. R. Civ. P. 62(d).

## <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiff believes that oral argument may assist the court. This matter involved significant Constitutional issues that oral argument will help to address.

Dated: February 22, 2024.                    Respectfully Submitted,

/s/ Robert J. Morris
Robert J. Morris, II (ME Bar No. 010402)
HOUSER, LLP
400 TradeCenter, Suite 5900
Woburn, MA 01801
Tel: (339) 203-6498
Email: rmorris@houser-law.com

Marc J. Randazza (*pro hac vice forthcoming*)
        *Lead Counsel*
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
Email: ecf@randazza.com


*Attorneys for Plaintiff,*
*Shawn McBreairty*

RANDAZZA | LEGAL GROUP

Emergency Motion for Temporary Restraining Order and Preliminary Injunction