UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BREWER SCHOOL DEPARTMENT, et al., | ) CASE NO. 1:24-cv-00053-LEW |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR TERMPORARY RESTRAINING ORDER OF DEFENDANTS BREWER SCHOOL DEPARTMENT, GREGG PALMER, AND BRENT SLOWIKOWSKI**

**INTRODUCTION**

In moving for a temporary restraining order, it is unclear what Plaintiff Shawn McBreairty is requesting that this Court do. Putting aside the roughly 50% of his Complaint and Motion that are devoted to discussing claims arising out of the Brewer School Department's ("Brewer" or "School Department") alleged squelching of a petition that McBreairty has absolutely no standing to assert, his claim comes down to this: The School Department, through counsel, requested that McBreairty remove four specific things from a post he made online.

- A photograph of four Brewer High School students in the girls' restroom at the high school;

- A statement about a gender expansive student at Brewer High School, naming the student and making fun of them for "playing dress up" and being emotional;

- False statements suggesting that the same Brewer High School student had sexually assaulted students; and

- A false and meanspirited statement that the child of Brewer High School teacher Michelle MacDonald is "a girl who pretends to be a boy on the male track team, usually coming in dead last."

1

The same email from counsel that made the request—and made absolutely clear that the request was directed only at the specific photograph and statements and not to the whole post—warned McBreairty that if he did not remove the specific content, "we will be forced to take further action." It did not specify what further action might be taken—whether the School Department would request protection of its students and staff member from the judicial system, or write a statement of its own in response, or do something else. McBreairty posted a copy of counsel's email and, thus, republished the inappropriate content. After a follow-up email from counsel asking McBreairty to once again remove the inappropriate content, he opted to take down the posts. He did so, he claims, because he was afraid of being sued.

McBreairty now comes to this Court claiming that his voluntary compliance with Brewer's request constitutes a violation of his constitutional rights and requesting emergency injunctive relief "against the Defendants[1] from taking action against him on account of publishing the Article and the letter." ECF Doc. 4, PageID #: 71 (Pl. Br. at 20). It is not clear whether he is requesting an order prohibiting Brewer from filing a civil action against him, or if he is looking for an advisory opinion that if Brewer were to sue him it would lose, or if he wishes for some other relief. Regardless, McBreairty fails to establish even one of the four prongs necessary for injunctive relief. Accordingly, his motion should be denied.

## STATEMENT OF FACTS

On February 12, 2024, McBreairty put a lengthy blog post on the internet. ECF Doc. 1-3. He criticized Brewer administrators for "pushing this trans-nonsense on minor children," PageID #: 31, asserted that Gender and Sexuality Alliances "are indeed 'like a religion,' but more like a cult. These cults are full of useful idiots[,]" PageID #: 32, accused the superintendent of being a

---

[1] Although McBreairty asks for relief against all "Defendants," his complaint does not contain a single allegation that would support a claim against any of the three individual Defendants.

"sexual narcissist," PageID #: 33 and characterized Brewer as being "pathetic," PageID #: 34. He exhorted parents to "[p]ull your kids now . . . as your local schools are being run by trans-stripper, groomer-clowns performing in female blackface," PageID # 33, concluding that "[u]ntil these school boards fear the will of parents with same kids more than they fear parents of insane kids, this crap will continue," PageID #: 34. In addition to sharing his views on these and other issues, he included a picture of four children in the girls' bathroom at Brewer High School, two defamatory comments about a particular student he calls HD in his complaint, and a defamatory statement making fun of the child of a Brewer High School teacher.

After McBreairty's post came out, word of it went through Brewer High School. HD was so upset that they stopped going to school. Palmer Decl. ¶ 8. Recently their mother communicated with Superintendent Palmer that her child would be using a gender-neutral bathroom for the remainder of the school year. She explained the decision as follows:

> This is what we feel is best for our family, for their academics and for the school.  Reading that article only strengthens the decision.  I have many strong feelings about how this group has gone about things and how they have villainized and victimized children.  They are not looking out for the greater good.  However, I can not allow my childs [sic] and my family's matters to be laid out for public debate and scrutiny.

Palmer Decl. ¶ 18. Nor is it only the transgender student and their parents who have been injured by the post. The parents of the three other students depicted in the photograph taken in the girls' bathroom also complained to Superintendent Palmer about pictures of their children in the bathroom at the high school being posted on the internet. Palmer Decl. ¶ 9. Finally, Michelle MacDonald, whose child was humiliated in the post, expressed her own distress from McBreairty's statement about her child. Palmer Decl. ¶ 10.

The School Department has an obligation under 20-A M.R.S. §§ 6553 and 6554 to protect its students and staff from bullying and hazing and its own Board polices impose upon it

3

an identical obligation. Accordingly, because of the significant negative effect the post had on both students and a staff member, Brewer, through counsel, asked McBreairty to remove certain very specific portions of the post. Brewer did not, as McBreairty states in his complaint and motion, ask him to remove the entire post. ECF Doc. 1, PageID #: 10 (Compl. ¶ 60); ECF Doc. 4. PageID#: 60 ( Pl. Br. at 9). To the contrary, the email specifically acknowledged his right to say most of the things he said. *See* ECF Doc. 1-5. PageID#: 40 ("we acknowledge that much of that post contains your opinions on matters of public concern and recognize your right to express them."). It requested only that he remove the picture of students in the bathroom, the two defamatory statements about HD, and the defamatory comment about MacDonald's child "pretend[ing] to be a boy" and lacking athletic prowess.[2] Nor did Brewer, as McBreairty contends, ECF Doc. 1, PageID #: 10 (Compl. ¶ 63), ECF Doc. 4, PageID#: 60 (Pl. Br. at 9), accuse McBreairty of criminal conduct or threaten him with criminal prosecution. Rather the email suggested only that the person who took the photograph may have violated the law. *See* ECF Doc. 1-5. PageID#: 40 ("As we understand it, this picture was taken without their consent, presumably in violation of 17-A M.R.S. Section 511."). The email concluded by requesting that McBreairty "[p]lease remove the referenced material" by the following day "or we will be forced to take further action against you." ECF Doc. 1-5, PageID #: 40.

In response to the email, McBreairty, who now claims he was fearful of litigation,[3] removed the entire post and substituted a copy of Brewer's email identifying the specific

---

[2] That this was the only content Brewer requested McBreairty take down highlights the absurdity of his suggestion that the request was made to censor McBreairty's unpopular ideas. Certainly, if that was the motivation, Brewer would have requested removal of the host of negative things he said about it and its administration.

[3] The thought that McBreairty was afraid of being sued is almost laughable given his penchant for suing school districts. *See McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79 (D. Me. 2022); *McBreairty v. Miller*, No. 1:23-CV-00143-NT, 2023 WL 3096787 (D. Me. Apr. 26, 2023); *McBreairty v. Hermon Sch. Dep't*, Penobscot County Superior Court Dkt. No. PENSC-AP-2023-3; *McBreairty v. MSAD 51*, Cumberland County Superior Court Dkt. No. CV-21-111.

4

portions that Brewer was requesting be removed. Because the email quoted the specific portions, Brewer pointed out that by posting the email he was simply republishing the same statements and, therefore, asked him to remove the email. McBreairty responded with anger, Palmer Decl. Ex. 1, but complied with the request. He continued, however, to ensure that the photograph of students in the bathroom and the defamatory comments about HD were publicized, including appearing on a podcast featuring both. Carolin Decl. ¶¶ 2-7.

## ARGUMENT

### I. Standard for Injunctive Relief

This Court considers four factors when considering a request for a temporary restraining order and a preliminary injunction: (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest. *Calvary Chapel of Bangor v. Mills*, 459 F. Supp. 3d 273, 282 (D. Me. 2020). Plaintiff, as the movant, bears the burden of "establishing that a temporary restraining order should issue." *McBreairty v. Sch. Bd. of RSU 22*, No. 1:22-cv-00206, 2022 WL 2835458, at *5 (D. Me. July 20, 2022). Indeed, "[i]njunctive relief is an extraordinary and drastic remedy that is never awarded as of right." *Calvary Chapel*, 459 F. Supp. 3d at 282 (alterations and quotations omitted); "[I]t is well established general law with respect to equitable injunctive relief that the Court is to bear constantly in mind that an injunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." *Saco Defense Sys. Div. Maremont Corp. v. Weinberger*, 606 F. Supp. 446, 450 (D. Me. 1985).

If McBreairty "cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm. Wireless Serv., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). Here, McBreairty cannot show a substantial likelihood of success on the merits of his First Amendment claims and, he is accordingly, not entitled to relief. Further, he is not entitled to the "drastic" relief sought because none of the remaining factors tip in his favor. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944-45 (2018) ("As a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits.").

**II.     McBreairty Cannot Show That He Has a Likelihood of Success on the Merits**

**A. McBreairty has No Standing to Bring Claims Relating to the Petition**

Under Article III of the United States Constitution, a plaintiff must demonstrate that he has standing in order to be entitled to any remedy from this Court, including declaratory relief. *California v. Texas*, 141 S. Ct. 2104 (2021). "The constitutional core of standing requires that a plaintiff make a tripartite showing: []he must demonstrate that []he has suffered an injury in fact, that [his] injury is fairly traceable to the disputed conduct, and that the relief sought promises to redress the injury sustained." *Osediacz v. City of Cranston*, 414 F.3d 136, 139 (1st Cir. 2005).

Half of McBreairty's complaint and brief in support of his motion for a temporary restraining order is devoted to a diatribe on transgender rights and characterization of the Defendants in this case as "transgender supremacists" because Brewer School Department Board policy requires that students be allowed to use the restroom that is consistent with the gender with which they identify. Although McBreairty has his legal opinions, it is, in fact, settled law in this state that public school students must be permitted to use the restroom that corresponds to their gender identity. S*ee Doe v. Reg'l Sch. Unit 26*, 2014 ME 11, 86 A.3d 600; Maine Human

Rights Commission Guidance, available at

https://www.maine.gov/mhrc/sites/maine.gov.mhrc/files/inline-files/CCmemo.education.so_.pdf

("Students must be permitted to use the toilet, locker room, and shower facilities corresponding to their gender identity").

McBreairty, however, alleges in his complaint that students have been distributing a petition in opposition to the policy and that administrators have impermissibly shut the petition down.[4] He accuses the Defendants of being "transgender supremacists" who "engage in abusive efforts to psychologically or physically harm those who dissent from [their] philosophy." ECF Doc. 4, PageID # 56 (Pl. Br. at 5). And he suggests that the rights of a student and parent in Brewer have been violated because they wish to petition but fear doing so. The problem with this claim, if it is indeed a claim, is that McBreairty has no standing to assert it. McBreairty does not live in Brewer, he does not have children in schools in Brewer, and he does not work in Brewer. In short, he has no ties to the School Department that would give him any injury in fact.

### B. McBreairty Lacks Standing to Bring a First Amendment Retaliation Claim

As the party invoking federal jurisdiction, McBreairty "bears the burden of establishing standing." *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014). McBreairty attempts to carry that burden in a conclusory fashion, relying solely on the doctrine of "pre-enforcement action under the First Amendment" articulated in *Mangual v. Rotger-Sabat,* 317 F.3d 45, 57 (1st Cir. 2003). ECF Doc. 4, PageID #: 61 (Pl. Br. at 10-11). This cursory attempt falls short.

Pre-enforcement challenges recognize two types of injuries that may confer Article III standing: the first is an alleged intention to engage in a course of conduct protected by the First

---

[4] The facts relating to the petition are very much in dispute and there is much in the description of the events surrounding the petition contained in the complaint and the declarations McBreairty has submitted in support of his motion for a temporary restraining order that Brewer will prove are false if those facts become relevant. Because McBreairty has no standing to assert those claims, Brewer does not address them in the context of this opposition.

7

Amendment but proscribed by statute where there exists a credible threat of prosecution; the second is when a plaintiff is chilled from exercising his right to free expression or forgoes expression in order to avoid enforcement consequences. *Blum*, 744 F.3d at 796. McBreairty appears to assert both. Fatal to both claims here: "[t]he Supreme Court has long held that as to both sorts of claims of harm, '[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury *as a result of the statute's operation or enforcement*.'" *Id.* (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)) (emphasis added). Here, McBreairty has not identified what specific statute's operation or enforcement would result in his injury. Accordingly he has failed to allege an injury-in-fact sufficient to establish standing for a First Amendment pre-enforcement action.

The closest thing that McBreairty identifies are the "school policies" that he seeks to enjoin the school from applying to him. But Brewer has not threatened to enforce any school policies against McBreairty in this case. To the contrary, the mention of school policies in the email is self-evidently in reference to Brewer applying those policies to itself. The policies require the School Department to protect its student and teachers from harm, which it did in asking McBreairty to take down a picture of minors in a school bathroom, as well as three discrete false and defamatory statements in a much longer rant of a post (the remainder of which the School Department made no request of any kind). Thus, to the extent that his pre-enforcement assertion of standing is grounding in school policies, it must fail.

Additionally, the nebulous possibility of a lawsuit, without identification of the specific claims and the theory of liability, is insufficient to establish injury-in-fact even where there is an allegation of the chilling of speech. *See e.g. Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*, 968 F.3d 264, 272 (3d Cir. 2020) (Plaintiffs "claims are not ripe largely for the

8

same reasons they fail to satisfy the injury-in-fact requirement—they require speculation about whether the County will sue and what claims it would raise." ). Even a threatened defamation action cannot sustain a pre-enforcement challenge. *Cooper v. US Dominion, Inc.*, No. 21-CV-02672-PAB-STV, 2022 WL 4386002, at *6 (D. Colo. Sept. 22, 2022) (Plaintiffs' allegations that they had not engaged in defamatory statements and that letters demanding they cease-and-desist from defamatory statements "chilled their and potential class members' speech are not sufficient to for Article III standing"), *aff'd in part, vacated in part, remanded,* No. 22-1361, 2023 WL 8613526 (10th Cir. Dec. 13, 2023).

Finally, even if the standing analysis for a pre-enforcement action articulated in *Mangual* were applicable here (it is not), *Mangual* applied an outdated "objectively reasonable likelihood" standard in its injury-in-fact analysis, which has since been rejected by the Supreme Court and replaced with "a more stringent injury standard for standing than [the First Circuit] has previously employed in pre-enforcement challenges on First Amendment grounds." *Blum*, 744 F.3d at 798 (citing *Mangual* as an example of the outdated standard). McBreairty's failure to identify the statute or policy that he seeks to enjoin plainly fails to establish injury-in-fact under this stricter "certainly impending" standard. *See id.* If McBreairty cannot articulate what statute or policy is about to be enforced against him, then he has necessarily failed to establish that such nebulous harm is "certainly impending." Indeed, the amorphous nature of the injunctive relief McBreairty requests demonstrates his failure to meet this "certainly impending" standard.  The Court should be able to look to the specific relief requested and determine whether that relief is redressing "certainly impending"[5] harm. McBreairty seeks to enjoin the school "from taking

---

[5] The apparent rationale for the requirement that a plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *Blum*, 744 F.3d at 796, is wholly lacking here where the School Department has no governmental jurisdiction over a statute or policy that it could enforce against McBreairty. Unlike the broad criminal jurisdiction of the state over the plaintiff at issue in *Mangual*, Brewer's

action against him on account of publishing the Article." He does not identify the *specific* action he seeks to enjoin and that is because he has failed to allege any specific "certainly impending" action that could be enjoined. Thus, he has failed in his burden to establish Article III standing.

### C. McBreairty Cannot Prove a First Amendment Retaliation Claim

Even if he has standing, McBreairty cannot demonstrate a likelihood of success on his First Amendment claims because the specific speech at issue was not constitutionally protected and because Brewer did not take any adverse action against him. "'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "To prevail on a First Amendment retaliation claim, a 'plaintiff must prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subject to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action.'" *Currier v. Town of Gilmanton*, 621 F. Supp. 3d 233, 259 (D.N.H.) (quoting *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012)); s*ee also Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013).

1. **The School Department has not taken any adverse action against McBreairty and, thus, he does not have an actionable First Amendment claim.**

McBreairty's First Amendment claims are based on his assertion that the School Department threatened him with criminal or civil action. ECF Doc. 4, PageID #: 64 (Pl. Br. at 13). That is, however, not what happened. All the School Department did was say that it would

---

jurisdiction is limited by statute to school matters within the district. McBreairty is not employed by the School Department, does not attend Brewer schools, and is not the parent of a student who attends a school in Brewer. Where, as here, it is not clear what jurisdiction the School Department would have over McBreairty, it must be even more clear that he has failed to establish that some nebulous harm of an amorphous lawsuit violating his First Amendment rights is "certainly impending."

"be forced to take further action." That statement does not constitute adverse action sufficient to support McBreairty's claim.

In the first place, Brewer's action in this case—informing McBreairty that specific content in his blog post about minors was unlawful and needed to be removed—was itself an exercise of First Amendment rights. The First Circuit has made clear that "[n]ot only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern." *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 143 (1st Cir. 2016) (quoting *Goldstein*, 719 F.3d at 30). In *Najas*, a real estate developer alleged that the water district and its superintendent retaliated in violation of the First Amendment, which was premised upon the developer's advocacy for the project, when the superintendent opposed the development project and said that it would contaminate the Town's water supply and potentially harm babies at various public meetings. *Id.* at 142-43. The court explained that the water district superintendent "had a duty . . . to raise objections he deemed valid and it is hard to find any allegations in the complaint that [the superintendent] was doing anything more than fulfilling his duty" and "the plaintiffs' allegations that [the superintendent's] concerns were imagined and raised simply to get even with plaintiffs is 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'" *Id.* at 143 (quoting *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

In *Goldstein*, a hedge fund operator who described himself as "an outspoken critic of excessive regulation of hedge funds" alleged that the secretary of state retaliated in violation of the First Amendment by, among other things, including the operator's name in a website announcement of an enforcement proceeding. The First Circuit explained that the secretary's use of the operator's name was itself speech and noted that "Courts have not been receptive to

11

retaliation claims arising out of government speech." *Goldstein*, 719 F.3d at 30 (citing *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 417 (4th Cir. 2006) (" When the challenged government action is government speech, there is no retaliation liability—even if the plaintiff can demonstrate a substantial adverse impact—unless the government speech concerns 'private information about an individual' or unless it was 'threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow.'") (quoting *Suarez*, 202 F.3d at 689)). *See also Charles v. Cote*, No. 06-74-P-C, 2006 WL 2700671, at *4 (D. Me. Sept. 18, 2006) ("[S]tatements made by defendants pursuant to their own First Amendment rights which the plaintiffs perceive as hostile to them or their position do not constitute a First Amendment violation.") (citing *Seamons v. Snow*, 84 F.3d 1226, 1237 (10th Cir. 1996) (holding that government's efforts to persuade plaintiffs not to speak publicly about hazing incident, together with government's own protected statements, did not violate the First Amendment)).

      In a case such as this, where a non-member of the school community posts photographs and statements about minors that have the effect of hazing and bullying students and staff in violation of school policy and state law, the School Department has an obligation to speak up and request that the information be removed. The request quoted the specific content that the School Department believed was unlawful. Further, the School Department's request expressly acknowledged that much of the content reflected McBreairty's opinions on matters of public concern and recognized his right to express those opinions. As the First Circuit warned, "[a]llowing a plaintiff to weave a First Amendment retaliation claim out of something so mundane as a government official's issuance of a true statement, not couched in inflammatory terms, about a matter of public concern would trivialize the Constitution." *Goldstein v. Galvin*, 719 F.3d 16, 31 (1st Cir. 2013).

Relatedly, McBreairty's request that the Court enjoin the School Department from bringing a civil action against him is particularly problematic because the right to bring a civil action is itself protected by the First Amendment. *See, e.g.*, *Thurlow v. Nelson*, 2021 ME 58, ¶ 9, 263 A.3d 494 (discussing the constitutional interests of the right to access courts and the right to petition the government). By filing his complaint and motion for a temporary restraining order, it appears that McBreairty is attempting to bypass the established process for challenging a civil action that one believes was brought in retaliation for exercising First Amendment rights. If someone like McBreairty is sued, and he believes that the lawsuit is without merit and in violation of his First Amendment rights, then his recourse is through Maine's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute.[6] 14 M.R.S. § 556; *Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 14, 202 A.3d 1189 ("The purpose of the anti-SLAPP statute is to protect against *meritless* claims brought to delay, distract, and punish activists for speaking out."). The anti-SLAPP statute is thus the civil procedural mechanism in place that allows governmental entities (among others) to file a civil lawsuit against someone believed to be in violation of the law while simultaneously ensuring that the governmental entity is not pursuing a meritless lawsuit against someone for exercising their First Amendment rights. *Maietta Const., Inc. v. Wainwright*, 2004 ME 53, ¶ 6, 847 A.2d 1169, 1173 ("Section 556 was designed to combat litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants.") (internal quotations omitted). If the mere threat of further action, which could include, among other things, filing a civil lawsuit, was itself an adverse action under the First Amendment, then there would be no need for the anti-SLAPP law.

---

[6] McBreairty is in fact familiar with Maine's anti-SLAPP statute. *See, e.g.*, *Hermon School Department v. Shawn McBreairty*, PENSCV-CIV-2022-00056, Order Denying Special Motion to Dismiss.

Second, the email request does not meet the requirement that it "deter a reasonably hardy person from exercising his or her constitutional rights," *Currier v. Town of Gilmanton*, 621 F. Supp. 3d 233, 258 (D.N.H.), *reconsideration denied,* 636 F. Supp. 3d 269 (D.N.H. 2022) (quoting *D.B. ex rel. Elizabeth B.*, 675 F.3d at 43), not only because it was not sufficiently specific but also because, as discussed above, the School Department itself has no power to take enforcement action against McBreairty.

Third, the email did not chill McBreairty's speech. In *Sullivan v. Carrick*, 888 F.2d 1 (1st Cir. 1989), the state chiropractic disciplinary board received a complaint about the plaintiff and sent him a letter informing him that the board scheduled a disciplinary hearing. The plaintiff filed a lawsuit against the chairman of the board alleging that the chairman violated his First Amendment rights by scheduling a disciplinary hearing in retaliation for plaintiff's prior testimony to the board. *Id.* at 2. The First Circuit explained that the inference plaintiff wanted the court to draw, that the chairman's letter scheduling a disciplinary hearing "somehow had the potential to chill his freedom of speech—is, on this record, too implausible to be accorded weight. Where a chilling effect is speculative, indirect or too remote, finding an abridgment of First Amendment rights is unfounded." *Id.* at 4. Further, "an actual hearing might at least present itself as evidence of a possible violation. But no hearing was ever held. To hold that a violation of constitutional rights occurred, under the circumstances stated, would be to trivialize the First Amendment." *Id.* The First Circuit concluded that the facts indicate that the plaintiff "was anything but intimidated" by the letter as evidenced by the present lawsuit and his motion to dismiss the disciplinary board complaint. *Id.* The same is true here. Although McBreairty purported to remove his post out of fear, he has continued to publish and talk about the offending material, indicating that his speech here was not chilled. *See* Carolin Decl. ¶¶ 2-7.

**2. The specific speech at issue is not protected under the First Amendment.**

In addition to McBreairty's inability to prove that he was subject to some adverse action, he cannot prove that the specific content the School Department asked him to remove was constitutionally protected speech.

McBreairty's use of the photograph of the minor students in the girls' bathroom at the high school constitutes an invasion of privacy under Maine law and, thus, is not constitutionally protected speech. In *Nelson v. Maine Times*, 373 A.2d 1221, 1224 (Me. 1977), the Law Court discussed the tort of invasion of privacy and explained that "if a person reasonably constituted could anticipate that such an appropriation could cause mental distress and injury to another who was possessed of ordinary feelings and intelligence, such an appropriation would be tortious" and the publication must "benefit the tortfeasor." Here, a reasonable person could have anticipated that posting a photograph of four minor students from the high school girls' bathroom could cause the students mental distress and injury. This is particularly true in a case such as this where the photograph was taken and posted without the students' knowledge or consent and used for the purpose of McBreairty's own personal gain. ECF Doc. 1, PageID# 11(Compl. ¶¶ 67-69) (averring that McBreairty makes money off of this activity). Moreover, publication of the photograph caused all four students and their families to suffer mental distress and injury as well as the staff member. Palmer Decl. ¶¶ 9-10.

McBreairty's suggestion that his conduct posting the photograph is akin to the local newspaper posting photographs of students in public spaces engaged in public activities or publishing their names as part of the honor roll has already been rejected by this Court. "In 2016, the Court of Appeals for the First Circuit noted a difference between 'situations in which the defendant makes an incidental use of the plaintiff's name, portrait or picture and those in which

15

the defendant uses the plaintiff's name, portrait or picture deliberately to exploit its value for advertising or trade purposes.'" *Levesque v. Doocy*, 557 F. Supp. 2d 157, 160 (D. Me. 2008), *aff'd,* 560 F.3d 82 (1st Cir. 2009) (citing *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 27 (1st Cir. 2016) (quoting *Tropeano v. Atl. Monthly Co.*, 400 N.E.2d 847, 850 (Mass. 1990)). By virtue of his own complaint, McBreairty has admitted that he used this photograph of four minor students for his own commercial benefit. Such exploitation of minors is not protected conducted.

In addition to being an invasion of privacy, McBreairty's statements about HD and the staff member's child are false and defamatory and, therefore, not entitled to constitutional protection. The Maine Law Court has explicitly held that "[t]he use of speech as part of conduct designed to threaten or harm other individuals will not find protection in either the Maine or the federal constitution." *Childs v. Ballou*, 2016 ME 142, ¶ 15, 148 A.3d 291. In Maine, common law defamation consists of: (1) false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (citing *Restatement (Second) of Torts* § 558 (1977)). Further, "[a] statement of opinion may be actionable if it implies the existence of undisclosed defamatory facts." *Ballard v. Wagner*, 2005 ME 86, ¶ 12, 877 A.2d 1083.

McBreairty's statements about HD's alleged sexual assaults are false, Palmer Decl. ¶4, and to the extent that he contends they are opinions, they clearly imply the existence of undisclosed defamatory facts. Likewise, his statements about a staff member's child being "a girl who pretends to be a boy" is a false statement. The staff member's child is transgender.

McBreairty's publication of this false statement caused harm not only to the staff member but to her child in the form of emotional distress.[7]

### D. The Claim for a Declaration that McBreairty is not Bound By Brewer Policies Has No Likelihood of Success

Finally, McBreairty argues that he is entitled to a temporary restraining order because he has a reasonable likelihood of success on the merits of his request for a declaration that Board policies ACAD (hazing), ACAF (workplace bullying), and JICK (bullying of students) do not apply to him. Under Maine law, school administrative units are required to adopt policies prohibiting injurious hazing [8] and workplace bullying and bullying[9] of students. These three policies were adopted in Brewer in response to that requirement and they essentially track the statutory definitions.

There can be no real dispute that the portions of McBrearty's post that Brewer objected to fall within the definitions of bullying and hazing. He made fun of the gender identity of a Brewer High School student by accusing them of "playing dress-up," he falsely suggested that they had assaulted other students, and he displayed a picture of students in the most private of places – a restroom. Moreover, his actions did, in fact, interfere with HD's ability to access their education because they left school.

---

[7] McBreairty's complaint shies away from this statement and inaccurately states that he "provided context that MacDonald's child, who identifies as male, competes on the male track team." Compl. ¶ 53, n.3. Notably, the letter did not request that McBreairty remove any other portions of his post that referred to MacDonald or her child. ECF Doc. 1, PageID #: 8 (Compl. ¶¶ 51-54) (discussing statements about MacDonald in post).
[8] Injurious hazing "means any action or situation, including harassing behavior, that recklessly or intentionally endangers the mental or physical health of any school personnel or a student enrolled in school or any activity expected of a student as a condition of joining or maintaining membership in a group that humiliates, degrades, abuses or endangers the student, regardless of the student's willingness to participate in the activity." 20-A M.R.S. § 6553(A).
[9] Bullying is defined to include written oral and electronic expressions that "2) Interferes with the rights of a student by: (a) Creating an intimidating or hostile educational environment for the student; or (b) Interfering with the student's academic performance or ability to participate in or benefit from the services, activities or privileges provided by a school; or (3) Is based on a student's actual or perceived characteristics identified in Title 5, section 4602 or 4684-A, or is based on a student's association with a person with one or more of these actual or perceived characteristics or any other distinguishing characteristics and that has the effect described in subparagraph (1) or (2)" and includes cyberbullying. 20-A M.R.S. § 6554(2)(B), (C).

17

McBreairty's suggestion that he has a First Amendment right to bully and haze students at Brewer High School is incorrect. The First Amendment does not protect the kind of statements that are at issue in this case. McBreairty, however, asserts that the policies "do not apply" to him, and requests injunctive relief "stopping Defendants from taking legal action to enforce such actions against him." ECF Doc. 1, PageID#: 16. To be clear, Brewer has no intention of taking legal action – or any other kind of action – to enforce its own policies "against" McBreairty. The reason those policies were referenced in the email, and the reason that they are relevant here is that those policies and the state law pursuant to which they were adopted, impose obligations on Brewer to protect its students and staff. It was in furtherance of the obligations to prevent and address hazing and bullying that Brewer sent the email. There is no dispute over this issue and thus no need for any declaration or injunctive relief relating to the Board policies.

### III.   McBreairty Has Failed to Establish the Remaining Factors for Injunctive Relief

#### A. McBreairty Has Not Established Irreparable Harm

This Court has explained that "a showing of irreparable harm must be 'grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.'" *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 842 F. Supp. 2d 386, 387–88 (D. Me.), *aff'd,* 695 F.3d 145 (1st Cir. 2012) (quoting *Charlesbank Equity Fund II v. Blinds to Go,* 370 F.3d 151, 162 (1st Cir.2004)). "Thus, a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown." Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.).

Here, McBreairty's analysis of the irreparable harm prong of the injunctive test is cursory at best as he simply asserts that he has demonstrated irreparable harm because he has a likelihood

of success on the merits. As set forth above, he does not have a likelihood of success on the merits. Further, McBreairty has failed to demonstrate that there is a "presently existing actual threat." He is seeking an injunction "to prevent the possibility of some future remote injury" if the School Department were to take some unspecific "further action."

To the extent that McBreairty has been injured at all, he has created his own injury. At no time did the School Department ask him to remove his entire post. Indeed, his post is quite lengthy and discusses numerous topics that Brewer never requested he remove. In terms of Brewer's request that he remove a photograph and three specific statements that constituted an invasion of privacy, were defamatory, and had the effect of bullying or hazing, such a request that someone remove unprotected speech from a publication or else further action will be taken does not cause irreparable harm.

### B. The Balance of Harms and Public Interest Weigh Against Injunctive Relief

McBreairty's argument that the equities tip in his favor is premised on the erroneous assumption that Brewer restricted his speech. McBreairty chose to remove the post. By contrast, the four students in the photograph have all been harmed, including HD who has been harmed extensively by the photograph and McBreairty's false and defamatory statements that suggest HD has engaged in sexual assault.

Additionally, if the Court enters an injunction in favor of McBreairty, then the defendants will be harmed because such an injunction would mean that the School Department cannot take even modest action to protect its students and staff from privacy violations and bullying and hazing. As the case law and school policies discussed above demonstrate, the school department has an obligation to protect its students and staff. Moreover, it is consistent with the underlying principles of the First Amendment that a governmental entity be allowed to tell an individual if

his speech is believed to be harmful and not protected and for the governmental entity to inform the individual that it may take further action of some kind if the individual disagrees.

Brewer understands and supports the importance of different viewpoints and public debate, which is evident by its express acknowledgement that McBreairty had the right to publish the vast majority of his article and did not request that he take it down in its entirety. What Brewer does not understand or support is violating the rights of its students and staff.

## **CONCLUSION**

Shawn McBreairty is not entitled to injunctive relief in this case.[10] He has no standing, he has no likelihood of success on the merits, and he cannot meet the other prongs on the test for injunctive relief. His motion should therefore be denied.

Dated:  March 1, 2024

/s/ Melissa A. Hewey
Melissa A. Hewey
Jeana M. McCormick
*Attorneys for Defendants*
*Brewer School Department, Gregg*
*Palmer, and Brent Slowikowski*

DRUMMOND WOODSUM
84 Marginal Way, Ste. 600
Portland, ME  04101
(207) 772-1941
mhewey@dwmlaw.com
jmccormick@dwmlaw.com

---

[10] Apparently in recognition of the weakness of his case, McBreairty requests that if this Court denies his motion, it should nonetheless enter the injunction it has denied pending a possible appeal. As McBreairty correctly points out, the test for entry of an injunction pending appeal is nearly identical to the test for entry of an injunction in the first place. His request should therefore be denied for all of the reasons discussed above.