# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY, | |
| Plaintiff, | Case No. 1:24-cv-00053-LEW |
| v. | |
| BREWER SCHOOL DEPARTMENT, GREGG PALMER, in his personal and official capacities, BRENT SLOWIKOWSKI, in his personal and official capacities, MICHELLE MACDONALD, in her personal and official capacities, | **PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION** |
| Defendants. | |

When the school bully asks for your lunch money "or else," the precise contours of the "else" are not necessary to understand the threat. It works the same way when the government threatens a citizen for exercising his First Amendment rights. "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging" the legal threat. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). See also *Kennedy v. Warren*, 66 F.4th 1199, 1211 (9th Cir. 2023) ("To be sure, an official does not need to say 'or else' if a threat is clear from the context.").

The Brewer Defendants' Opposition (ECF No. 16) rests on the premise that the government may seek out disfavored opinions by someone it has on its "enemies list." Then, the government may threaten that citizen for exercising his First Amendment rights. If called out on it, the government may first deny what it did, no matter what the evidence shows, then claim "we weren't really serious." Meanwhile, the government knows what it did and why it did it – it does not want McBreairty to be able to express his views, because the government finds his views to lack the governmentally approved level of enlightenment.

> Madison would recoil. Individual liberty is both the cause and the result of personal fortitude. "The greatness of America lies not in being more enlightened than any other nation, but rather in her ability to repair her faults." Alexis de Tocqueville, Democracy in America, Volume 1, Chapter XII, Saunders and Otley (1935). That ability, in turn, depends on the free flow of ideas, especially those that are discomfiting. *United States v. Schwimmer*, 279 U.S. 644, 654 - 55, 49 S. Ct. 448, 73 L. Ed. 889 (1929) (Holmes, J.) ("[I]f there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought - not free thought for those who agree with us but freedom for the thought that we hate.)

*Norris v. Cape Elizabeth Sch. Dist. (In re A.M.)*, 422 F. Supp. 3d 353, 369 (D. Me. 2019) (Walker, U.S.D.J.) *aff'd* 969 F.3d 12, 27 (1st Cir. 2020).

The government must be enjoined, otherwise the First Amendment becomes meaningless. The government's actions here have chilled all of our First Amendment rights. Even in its Opposition, it doubles down on its desire to abuse its power to stifle speech it does not like. Madison would indeed *recoil*.

## 1.0    McBreairty Has Standing to Seek Injunctive Relief

A "chill on speech" is a "cognizable injury" for standing purposes where there is a "specific present objective harm or a threat of specific future harm." *Osediacz v. City of Cranston*, 414 F.3d 136, 142 (1st Cir. 2005) (citation omitted). "A plaintiff can also assert First Amendment standing to seek injunctive relief by plausibly alleging that he 'is chilled from exercising [his] right to free expression or forgoes expression in order to avoid enforcement consequences.'" *McBreairty v. Miller*, 2024 U.S. App. LEXIS 3991, *10 n.1 (1st Cir. Feb. 21, 2024) quoting *New Hampshire Right to Life Pol. Action Comm. v. Gardner,* 99 F.3d 8, 13 (1st Cir. 1996). Similarly, one who has alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest, but [which is] proscribed" where there "exists a credible threat of prosecution" also possesses standing to seek injunctive relief. *McBreairty, supra* at * 10, quoting *Babbitt v. United Farm Workers*, 442 U.S. 289, 297-98 (1979). Courts engage in "pre-enforcement review under

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List,*, 573 U.S. at 159; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-129 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").[1]

Defendants' actions show that McBreairty faces an imminent threat and, thus, has standing. Courts consider "a government's preliminary efforts to enforce a speech restriction or its past enforcement of a restriction to be strong evidence … pre-enforcement plaintiffs face a credible threat of adverse state action." *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010). The government now claims that it did not "threaten" McBreairty, but merely "requested" that he give in to government censorship. (ECF No. 16 at 1). This was no mere gentle suggestion—Attorney Hewey used the word "demand."[2] (ECF No. 1-5). "'*It sure would be a shame if someone messed up that pretty face*' would certainly be a criminal act if uttered by a stranger to a lone woman in a dark alley."[3] Here, the government would have us believe that this statement is a mere beauty tip. "[A] defendant need not explicitly threaten suit so long as his or her conduct effectively coerces the plaintiff to refrain from exercising claimed rights." *Sevigny v. United States*, 2014 U.S. Dist. LEXIS 98600, *14 (D.N.H. Jul. 21, 2014) (citing *MedImmune,* 549 U.S. at 132 n. 11); *see also Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995) ("[O]ne who may become liable ... should not be subject to manipulation by [a defendant] who

---

[1] In this case, the government seems to believe that since there is no *statute* being challenged, that there is no standing to sue. As if the threat of legal action is not enough, and the threat of enforcing administrative regulations, rather than state statutes is not enough.

[2] "[A]ssertions of counsel are not evidence." *United States v. Diozzi*, 807 F.2d 10, 14 (1st Cir. 1986) (addressing arguments made to the court).

[3] BOOK REVIEW: THE FALL OF THE CONFESSION ERA, Lawrence M. Solan & Peter M. Tiersma, Speaking of Crime: The Language of Criminal Justice (Chicago: University of Chicago Press, 2005). Pp. 289., 96 J. Crim. L. & Criminology 367, 374

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

uses careful phrases in order to avoid explicit threats, thus denying recourse to the courts ...").  The second threat came with the subject line of "Brewer Follow-up," intended to be read in the context with the first threat, where the consequence of not complying was a promise of "further action." In the face of these threats, and the contextual history of his prior interactions with the threats' author,  McBreairty complied.  (ECF No. 1 at ¶¶ 66 & 76).  *See also* __Exhibit 1__, Declaration of Shawn McBreairty ("McBreairty Decl.") at ¶ 4, and *Exhibit A* thereto.  "People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around."  *Bantam Books, Inc. v. Sullivan*, 372 U. S. 58, 68 (1963).

Defendants' counsel, on behalf of the government, sent a message that may not have spelled out precise threats in it, but no case has ever held that a governmental coercive threat must meet the pleading standards of Fed. R. Civ. P. 9.  The test is holistic and contextual.  The intent and effect of the threat was clear.  McBreairty understood what the government was laying down, especially in light of his experience dealing with the same exact signatory on behalf of similarly situated government entities.

This governmental harassment against his speech began in 2021 when the *same lawyer* made the *same* threat – to take legal action if McBreairty did not agree to censorship.  *See* McBreairty Decl. at ¶ 6, and *Exhibit C* thereto.  At that time, McBreairty complied out of fear of prosecution.  McBreairty Decl. at ¶ 7.  When he complied in 2021, he was not sued.

In 2022, he persisted in his First Amendment protected conduct, and he *was* sued. *See Hermon School Department v. McBreairty*, Docket No. CV-2022-00056 (Penobscot Sup. Ct., filed May 3, 2022). (ECF No. 1 at ¶ 65).  A copy of the complaint in that matter is attached as __Exhibit 2__. In *that* case, the government seeks to enforce local school district policies against McBreairty through a civil action.  Any reasonable person would, thus, understand the threat made by

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

DrummondWoodsum on behalf of Brewer School Department and its agents to come with *at least* the same consequences. When McBreairty knuckled under, he was left alone. When he did not, he was sued. Further, in this case, there was even the implication of a criminal prosecution where Defendant MacDonald lobbed accusations of a "hate crime." And, the threat was no mere empty threat: Counsel for the Brewer Defendants confirmed an intent to initiate an action against McBreairty. *See* **Exhibit 3**, Declaration of Marc J. Randazza ("Randazza Decl.") at ¶¶ 4-10. Defendants seek to preserve the right to do so. (ECF No. 16 at 13).[4] The threat is real, direct, concrete, and imminent.

McBreairty complied with the demand and suffered economic injury, rather than waiting to be sued or suffer other adverse action. This confers standing. In *Bantam Books v. Sullivan*, a Rhode Island agency was subject to injunction where it threatened publishers with investigation, informal sanctions, and possible criminal prosecution if they failed to recall publications the agency deemed objectionable. 372 U.S. 58, 59-69 (1963). The Supreme Court held that "standing has not been, nor could it be, successfully questioned" where plaintiffs already suffered injury. *Id.* at 64 n. 6. McBreairty possesses equal, if not greater, standing here.

The government claims that it was not targeting the entire *article* but only four items that the government wants censored. The government wants "just" a photo and three statements in the article removed. That is not how the threat recipient understood it and there is no evidence it did not mean "take down the article." Further, this is as much of a red of a herring as red herrings come. Nobody ever seeks to censor *each and every word* of an offending publication. But, there

---

[4] Whether McBreairty could defend such action and invoke the Maine Anti-SLAPP action is unrelated to whether he can obtain a pre-enforcement injunction.

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

is no "censorship is okay as long as it is not complete censorship" rule.  The government has no more right to edit four things it wants suppressed than it does to demand total silence.

McBreairty wants to publish the *entire original* article, as is his First Amendment right, without the government demanding that he edit it to comport with the government's preferences. McBreairty faces the threat of government action if he refuses.  He has standing to seek the injunction of such action, including the attempted enforcement of policies against him.

## 2.0    Plaintiff is Likely to Succeed on the Merits

Challenging the government is "paradigmatically protected by the First Amendment." *White v. Lee*, 227 F.3d 1214, 1226 (9th Cir. 2000).  That is what McBreairty was doing. McBreairty was retaliated against and threatened with further action if he did not bend.  The Defendant had no right to issue any threats at all.  And while its policies *might* be constitutional on their face, their employment against McBreairty can not survive an as applied challenge.

### 2.1    McBreairty Will Prevail on His Retaliation Claim

The government's credibility is a shallow pool overall, but it evaporates completely when they claim that McBreairty's publication is not protected by the First Amendment.   The government claims that McBreairty has no right to publish the photo, because the mere publication of it constitutes an invasion of privacy.  However, it is clearly established law that the government may not impede the publication of content that is lawfully obtained by the publisher. This is clearly established law.  *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007).[5]  Even *stolen top secret documents* are lawful to publish.  *See New York Times Co. v. United States*, 403 U.S. 713 (1971).  If one can publish The Pentagon Papers,

---

[5] The government ignores these cases.  Yet, even if the content was unlawfully created, which McBreairty doubts, it is clearly established law that if a publisher obtains even illegally created content, the government has no power to suppress its publication.  *See Jean, supra.*

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

what interest does the government have in trying to suppress anything here?  None.

The government then argues that since McBreairty writes for pay, that is a "commercial benefit" stripping the speech of protection.  (ECF No. 16 at 15-16).  They invoke the tired trope that the First Amendment only applies if publishers give away content for free.  The government is quoting from, without citation, *Rosecrans v. Airamedic, LLC*, 2017 U.S. Dist. LEXIS 47719, *16 (D. Me. Mar. 30, 2017), which was not addressing the First Amendment *right to publish*, but rather the elements of a "misappropriation of likeness" claim.  "That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-502 (1952).  "*Heed Their Rising Voices*," the publication at issue in *New York Times v. Sullivan* was a paid advertisement.  376 U.S. 254, 256 (1964); *accord Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988) (profit motive irrelevant when determining whether speech is political or commercial).

The government claims the speech lacks any First Amendment protection if it is an "invasion of privacy"  (ECF No. 16 at 15).  Assuming, *arguendo,* the ability for the government to claim privacy rights for others, "invasion of privacy" yields to the Constitution.  "[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order."  *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103 (1979).  The government's next position is that the publication was "defamatory," therefore it has license to try and censor it.  The threats themselves do not say anything about defamation.  ECF Nos. 1-5 & 1-6.  But, now they argue that "MacDonald's child 'pretend[ing] to be a boy'" and "lacking athletic prowess" and statements about there being reports of H.D. committing sexual assault are

defamatory.  There is room for disagreement as to whether someone who dresses the part of the opposite gender is "pretending" or not.  This may be an unenlightened cultural view.  But, McBreairty has every right to hold and express this view.  "Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch*, 418 U.S. 323, 339-40 (1974).  "Lacking athletic prowess" is not actionable defamation.[6]  The statement about H.D. is that "there have been various social media posts" making such allegations.  McBreairty provides evidence of these accusations. (ECF No. 1 at ¶ 16; ECF No. 1-1 at ¶¶ 11-12). *See also* McBreairty Decl. at ¶ 5 and *Exhibit B* thereto.  The government even acknowledges the accusation at ¶ 5 of Palmer's Declaration (ECF No. 16-1).[7]  Brewer brushes off girls' complaints of being assaulted, since those complaints cut against their political goals. This not only is fertile ground for a Title IX lawsuit by the girls, but it is the kind of situation that screams out for journalistic coverage.  It is undisputed that there *have been* such accusations. While the Court should find the accusations credible, it is unnecessary; the burden falls on the government to prove they are materially false, and the *ipse dixit* of Palmer is insufficient to meet its burden.  *Pan Am Sys. v. Atl. Northeast Rails & Ports, Inc.*, 804 F.3d 59, 66 (1st Cir. 2015) (discussing burden in defamation matters on statements of public concern).  Thus, Defendants do not show Plaintiff's speech was unprotected.  Further, the Defendants have no standing to vindicate H.D.'s reputational rights.  If H.D. believes that they have been defamed, then they can sue

---

[6] If it is, Mac Jones would make far more in defamation claims than on his 2024 NFL contract.
[7] Palmer claims that this accusation was without merit.  However, H.W. has contrary information. Presumably, by the time this hearing is over, the government will have abandoned its defamation theory, but if the government persists in this weak argument, the entire investigatory file will need to be produced in discovery.

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

McBreairty for defamation.[8]  This governmental entity does not threaten every journalist who gets something wrong—they only target McBreairty for the content of his speech and for his viewpoint.

Defendants argue that they did not take any adverse action against McBreairty.  Once more, they argue their threat was apparently just a lie or a bluff.  This is not a credible argument in light of their use of counsel who is known to bring these types of claims.  DrummondWoodsum is the legal equivalent of Chekhov's gun.[9]  Further, while the government calls the demand letter its own protected speech, their own cases show that it is an adverse action where it is "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow."  (ECF No. 16 at 12 quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 689 (4th Cir. 2000)).  "[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."  *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).  "Generally speaking, an interaction will tend to be more threatening if the official refuses to take 'no' for an answer and pesters the recipient until it succumbs.  Urgency can have the same effect."  *Missouri v. Biden*, 83 F.4th 350, 383 (5th Cir. 2023) (cleaned up).  Here, the government was both persistent, sending repeated demands, and urgent, demanding compliance within 24 hours.  This "governmental speech" claim might be valid if the government had simply published an op-ed, but that is not what they did.  When Lucky Luciano said "nice business here, sure would be a shame if it burned down," even he lacked the audacity to claim that it was nothing more than traditional Sicilian poetry.

---

[8] In light of the source material provided to McBreairty, (McBreairty Decl. at ¶ 5 and *Exhibit B* thereto) such a claim would likely be unwise, and met with an anti-SLAPP motion.

[9] "If you say in the first chapter that there is a rifle hanging on the wall, in the second or third chapter it absolutely must go off. If it's not going to be fired, it shouldn't be hanging there." Anton Chekhov. (From S. Shchukin, MEMOIRS (1911), as quoted in https://www.writingclasses.com/toolbox/ask-writer/whats-this-business-about-chekhovs-gun.)

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

The government claims that McBreairty's *other* speech elsewhere proves that he was not chilled here (ECF No. 16 at 14). This is unsupportable. The publication of the Article (and demand) was chilled—they were removed and there is no legitimate dispute as to that point. *See* McBreairty Decl. at ¶ 4 and *Exhibit A* thereto. "Informal measures, such as the 'threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment also." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting *Bantam Books, supra* at 67). "The relevant inquiry is not whether the defendant was successful in completing the retaliatory act as intended, or whether the act was successful in preventing the plaintiff from engaging in further speech; rather, it is whether the act as actually completed 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights'" *Mattei v. Dunbar*, 217 F. Supp. 3d 367, 376 (D. Mass. 2016) quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Attorney Hewey's threatening letter would deter any person of ordinary firmness from publishing the Article, especially in light of the fact that the same legal theories threatened are literally the subject of a pending lawsuit against McBreairty. The fact that McBreairty did not cease speaking everywhere, about everything, and then hide under his bed is not a defense. The government's position is "*but did you die?*"[10] That is not how the adverse action analysis works.

Defendant McDonald separately argues that she, herself, did not take adverse action because Attorney Hewey was not acting for her. (ECF No. 15). Yet, McDonald does not waive any claims she may bring against McBreairty, for herself or her child. Rather, she incorporated by reference the government's response, which included the notion of potential action, and

---

[10] *See* Know Your Meme, "But Did You Die?" https://knowyourmeme.com/memes/but-did-you-die (*last visited* March 5, 2024).

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

argument that the speech was unprotected defamation.  Attorney Hewey and her firm acted with apparent (if not actual at the time) authority on behalf of McDonald, and with full authority of the government.  "Apparent authority is authority that, although not actually granted, the principal knowingly permits the agent to exercise or that the principal holds the agent out as possessing." *Remmes v. Mark Travel Corp.*, 2015 ME 63, P22.  Remember, the government's lawyers are claiming violations privacy rights and reputational rights – on McDonald's behalf.  She could have disclaimed or waived Hewey's threats.  She refuses.  McDonald has allowed—if not ordered— Hewey to act on her behalf and she has taken no action to repudiate those actions, thus meeting the first element.  Thus, as there also is no disagreement that McBreairty's protected speech motivated Defendant's adverse actions, he has a substantial likelihood of success on his retaliation claim.

### 2.2    McBreairty Will Succeed in His Claims Regarding the Policies

Who might need to file a lawsuit enjoining the government from applying policies to a citizen, when those policies clearly do not apply to that citizen?  Nobody in America, it would seem, *except McBreairty*.  Courts "do not take a speaker's communications in isolation.  Instead, we look to the tenor of the parties' relationship and the conduct of the government in context." *Missouri v. Biden*, 83 F.4th at 383 (cleaned up).

This is not the first time, nor even the second time, that McBreairty has been targeted by Defendants' law firm for the same exact thing – speech that cuts against their socio-political viewpoint.  This harassment began in 2021 when the *same lawyer* made the *same* kind of threat. *See* McBreairty Decl. at ¶ 6, and *Exhibit C* thereto.  McBreairty complied out of fear of prosecution.  McBreairty Decl. at ¶ 7.  His compliance avoided a lawsuit.  In 2022, he persisted in his First Amendment protected conduct, and he got sued.  This time, he was threatened, and rather

than persisting and being abused, he seeks this Court's shelter.

McBreairty's as-applied challenge to the policies is likely to succeed.  He is already a defendant in a lawsuit, wherein Attorney Hewey herself has argued that school policies "**unquestionably**" apply to McBreairty.[11]  The government suing a citizen because his opinions violate "school policy," may seem far-fetched.  But that is *exactly what McBreairty has experienced from the very same person who threatened him here* – and which is why McBreairty needs an injunction that stops the government from seeking to apply *these* policies to him.

> Although we acknowledge that much of that post contains your opinions on matters of public concern and recognize your right to express them, there are certain **portions that are not protected because** they are either false or an impermissible invasion of the privacy of minors **and have the effect of bullying and hazing a student and a teacher at the Brewer High School in violation of Board Policies ACAD, ACAF and JICK and Maine law**.

(ECF No. 1-5, emphasis added).  This could not be clearer.  Defendants claimed that his publication was not protected because it "[has] the effect of bullying … in violation of Board Polices ... and Maine law."  The government loses even more credibility claiming that "the mention of school policies in the email is self-evidently in reference to Brewer applying those policies to itself."  The lack of candor in this statement shows palpable desperation, but deserves no credit.

McBreairty is seeking to avoid the identical kind of action brought by the same firm, employed for the same purpose.  "Past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical."  *Susan B. Anthony List,* 573 U.S. at 164 (cleaned

---

[11] This is a quote from the very attorney who threatened Plaintiff:  "Mr. McBreairty falsely states that the School Department admitted that its Workplace Bullying Policy does not apply to him.  In fact what the School Department pled is not that the policy does not apply to McBreairty – **it unquestionably does**."  *Hermon School Dep't v. McBreairty*, Law Court Docket No. PEN-13-191 (Me. Filed Oct. 27, 2023) (Red Brief. at 25, internal citation omitted, emphasis added).  This is the identical theory that has been used by Attorney Hewey to threaten McBreairty on behalf of Defendants here.  If that position has been abandoned now that it is inconvenient, then this position should be *formally and irrevocably* abandoned – not just off the cuff to try and evade an injunction.

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction

up); *see also City of Houston v. Hill*, 482 U.S. 451, 459 n.7 (1987).  This is not some gossamer whimsy of a concern on Plaintiff's part.  Had he not sued, he would *unquestionably* be a defendant in yet another frivolous claim by the government. (*See* Randazza Decl. at ¶¶ 4-11).  His as applied challenge is ripe, and the shifting sands of the government's position should not be used to erode the constitutional foundation upon which all of our First Amendment rights stand.

The parties appear to agree that the Defendants cannot *directly* enforce the policies against him.  McBreairty is not required to sit around and wait to see when they are good and ready to attempt to use the courts to do so.  He is entitled, under Section 1983 and the Declaratory Judgments Act, to file this lawsuit, and have a federal court protect his federal rights.  Upon receiving a demand, one need not wait to be sued to have a justiciable controversy. *See, e.g., Am. Ins. Co. v. Evercare Co*., 430 F. App'x 795, 799 (11th Cir. 2011).  Defendants claim they have (self-imposed)[12] "obligations to prevent and address hazing and bullying" to make demands upon Plaintiff.  (ECF No. 16 at 18).  Yet, they have no such authority, and Plaintiff is entitled to injunctive relief to preclude Defendants here from repeating what their lawyers did (and explicitly seek to continue to do) in the *Hermon* case.

## 3.0     The Remaining Factors Favor Injunctive Relief

Plaintiff is suffering irreparable harm.  Deprivation of First Amendment rights is a *per se* irreparable harm to Plaintiff and the public alike. *See, e.g., Norris*, supra at 367 (recognizing the right of the public to receive expression concerning the operation of the public schools).  It is audacious that the government calls the censorship they demanded "self-imposed"—they

---

[12] Defendants claim that these policies are required by the State of Maine, but the state hazing statute (20-A M.R.S. § 6553) has no relationship to the contents of McBreairty's article, as that only speaks to the type of hazing occasioned by group membership, like archetypical fraternity or sports team hazing.  Similarly, the bullying statute (20-A M.R.S. § 6554) exempts First Amendment protected speech and otherwise only precludes bullying on school grounds.

threatened McBreairty.  Even if one were to believe they only demanded *partial* censorship—the censorship of a single word is no more permissible than censorship of an entire corpus of work.

Similarly, the balance of harms favors Plaintiff.  No one will be harmed in any legally cognizable sense by McBreairty being free to publish.  Defendants present no evidence of harm to any other person—not even their straw figure, H.D.  Defendants' interests in campus bullying and hazing are enforceable *on campus*, but not against the press.  *See, e.g., Norris, supra*.  To the extent they would purport to be able to enforce their policies against McBreairty, those interests yield to the Constitution.  No one is stopping Defendants from telling McBreairty they don't like his speech—they simply cannot bully him with a threat that he must remove the content "or else."

**4.0    Conclusion**

In light of the foregoing, the Court should recognize that McBreairty has a First Amendment right to publish the Article in its original form without government interference. To give effect to this recognition, the government must be enjoined from any further threats, enforcement actions, or claims against McBreairty for publishing the Article or the Demand. The Court should enjoin enforcement of Board Policies ACAD, ACAF and JICK against McBreairty.

Dated: March 6, 2024.                          Respectfully Submitted,

*/s/ Robert J. Morris*
Robert J. Morris, II (ME Bar No. 010402)        Marc J. Randazza (*pro hac vice*)
HOUSER, LLP                                                       *Lead Counsel*
400 TradeCenter, Suite 5900                       RANDAZZA LEGAL GROUP, PLLC
Woburn, MA 01801                                      30 Western Avenue
Tel: (339) 203-6498                                       Gloucester, MA 01930
Email: rmorris@houser-law.com                 Tel: (888) 887-1776
                                                                       Email: ecf@randazza.com

                                                                       *Attorneys for Plaintiff,*
                                                                       *Shawn McBreairty*

Case No. 1:24-cv-00053-LEW

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this 6th day of March, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Robert J. Morris
Robert J. Morris

Plaintiff's Reply in Support of Motion for a Temporary
Restraining Order and for a Preliminary Injunction