IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA MCBREAIRTY, as personal representative of the Estate of Shawn McBreairty,<br><br>        Plaintiff,<br><br>  v.<br><br>BREWER SCHOOL DEPARTMENT, GREGG PALMER, in his personal and official capacities, BRENT SLOWIKOWSKI, in his personal and official capacities, MICHELLE MACDONALD, in her personal and official capacities,<br><br>        Defendants. | Case No. 1:24-cv-00053-LEW<br><br>**UPDATED MOTION FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, AN INJUNCTION PENDING APPEAL** |

      Plaintiff Patricia McBreairty, as personal representative of the Estate of Shawn McBreairty ("Plaintiff"), moves for a preliminary injunction restraining the government from restricting or seeking to restrict Plaintiff's First Amendment rights through intimidation and threats of legal action. Plaintiff requests the entry of an injunction so she may publish the currently-censored Article. The article was removed because of threats of legal sanctions from Defendants. Plaintiff's First Amendment rights will not be protected without injunctive relief. In the alternative, Plaintiff seeks an injunction pending appeal under Fed. R. Civ. P. 62(d).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0    INTRODUCTION**

      To censor criticism, Defendants threatened legal action if Shawn McBreairty did not remove lawful content from publication. The Defendants invoked criminal, civil, and administrative sanctions. Fearful of the government's threats, Shawn McBreairty succumbed to

the threats and now seeks this Court's aid in upholding and defending the Constitution.[1]

McBreairty had every right to publish his article and its illustrative photo when reporting on a matter of public concern. Speech is on matters of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U. S. 443, 453 (2011); *Kelley v. Bonney*, 606 A.2d 693, 710 (Conn. 1992) (discussions about public school teachers is a matter of public concern). The article discussed policy decisions by the Brewer School District, how students circulated a petition about those decisions, and how those students' petitioning activity was suppressed by the government. The government was acting unconstitutionally in threatening a citizen with criminal or civil action if he did not de-publish his article and illustration.[2]

**2.0   PROCEDURAL HISTORY**

Shawn McBreairty originally filed a verified complaint and motion seeking the preliminary injunction sought herein on February 22, 2024 (ECF Nos. 1 & 4). Defendants responded to the motion on March 1, 2024 (ECF Nos. 15 & 16). Mr. McBreairty replied on March 6, 2024 (ECF No. 23).[3] The next day, the Court ordered supplemental briefing on the question of whether the

---

[1] If this Court declines to enter the injunction, McBreairty requests that the Court err on the side of the Constitution and at grant an injunction pending appeal per Fed. R. Civ. P. 62(d). Such is proper if the movant makes "a strong showing that they are likely to succeed on the merits, that they will be irreparably injured absent emergency relief, that the balance of the equities favors them, and that an injunction is in the public interest." *Together Emples v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 7 (1st Cir. 2021). The test is nearly identical to the standard test for a preliminary injunction. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).
[2] Even though the original author, Shawn McBreairty, has passed away, his Estate has stepped into his shoes and retains the same desire to republish the article. *See* **Exhibit 1**, Declaration of Patricia McBreairty ("PM Decl.").
[3] As part of the responsive briefing, the parties were ordered to address whether Mr. McBreairty had standing, *i.e.* whether Attorney Hewy's threats were direct, imminent, and concrete. *See* Order of February 28, 2024 (ECF No. 12).

publication of the photograph in the article is protected under the First Amendment (ECF No. 24). The parties filed such briefs on March 12, 2024 (ECF Nos. 25, 26, 27).

On March 28, 2024, the Court denied the request for a TRO, but it reserved the remainder for further proceedings as to a preliminary injunction (ECF No. 30). The Court correctly determined that Mr. McBreairty had standing. However, the Court determined that the question of whether the request for injunctive relief might violate *Defendants*' claimed First Amendment rights precluded the ability to find a likelihood of success on the merits based on the record in the absence of an evidentiary hearing and, to the extent necessary, discovery. *Id.* Mr. McBreairty appealed (ECF No. 32), but the appeal was dismissed for lack of jurisdiction. (ECF No. 43). Before the further proceedings could be held, Mr. McBreairty passed away. (ECF No. 52). Plaintiff was substituted (ECF No. 58), and the Court ordered that Plaintiff should file this "updated motion for injunctive relief (ECF No. 56).

## 3.0    FACTS[4]

### 3.1    The Petition

Brewer School Department permits students to use the bathroom corresponding to their gender identity, rather than their biological sex. Complaint at ¶ 10. HW and CG are students at Brewer High.[5] *See* Complaint at ¶11; ECF No. 1-1, Declaration of HW ("HW Decl."). HW and CG objected to this policy. *See* Complaint at ¶ 13; HW Decl. at ¶ 8. HW and CG drafted a petition to try to convince Brewer High School and Defendant Principal Brent Slowikowski to change school policy to address their concerns. *See* Complaint at ¶ 17; HW Decl. at ¶ 13. HW and CG distributed this petition to other students, and many students signed the petition. *See* Complaint at

---

[4] The facts are supported by the Verified Complaint ("Complaint") and its exhibits, which have been adopted by the Estate. *See* PM Decl. at ¶ 4.
[5] Due to their ages, all students are referred to solely by their initials.

¶ 18; HW Decl. at ¶ 14.

The Defendants led HW and CG to believe that they would be prosecuted for a "hate crime" or sued by the school, and disciplined by the school if they continued to circulate the petition. *See* Complaint at ¶ 31; HW Decl. at ¶ 21. HW and CG immediately ceased promoting the petition. *See* Complaint at ¶ 34; HW Decl. at ¶ 23. Thereafter, HW and HW's father met with Superintendent Gregg Palmer and Brewer High School Principal Brent Slowikowski. Complaint at ¶ 36; HW Decl. at ¶ 25; ECF No. 1-2, Declaration of Phil Wells (hereinafter "PW Decl.") at ¶ 4. At the second meeting, Superintendent Palmer and Principal Slowikowski reiterated the Brewer School Department would not permit nor tolerate the petition being circulated. Complaint at ¶ 38; HW Decl. at ¶ 26; PW Decl. at ¶ 6. Superintendent Palmer and Principal Slowikowski reiterated that there would be adverse action taken against HW, and HW's father believed that those threats were aimed at him as well. *See* Complaint at ¶ 39; HW Decl. at ¶ 27; Decl. at ¶ 7.

Mr. McBreairty wrote about the incident. *See* Complaint at ¶ 43; PW Decl. at ¶ 10.

### 3.2 The Article

Shawn McBreairty was a journalist and an Educational Advocate who petitioned for change in education policy and law. Complaint at ¶ 9. After reviewing evidence, speaking to witnesses, and doing more than reasonable research, on February 12, 2024, Shawn published "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present" on the website *[your]NEWS* (hereafter the "Article"). Complaint at ¶ 46; ECF No. 1-3. In the Article, Shawn discussed his opinions about the underlying facts and concerns. Complaint at ¶ 49. Shawn reported on the students' petition that, over the course of three days, garnered hundreds of signatures. Complaint at ¶ 50. Shawn reported how Brewer High School teacher Defendant Michelle MacDonald reacted negatively to the petition. Complaint at ¶ 51. Specifically, Shawn reported that MacDonald

threatened the students circulating the petition. He wrote about how Principal Brent Slowiskowki, precluded the students from circulating the petition. Complaint at ¶ 52. Shawn described MacDonald by quoting this Court's description of her in *Macdonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 252 (D. Me. Jan. 12, 2023). Complaint at ¶ 53. Shawn described the facts of the *MacDonald* case as including MacDonald harassing students who did not agree with her viewpoints. Complaint at ¶ 54.

Shawn then reported on and reproduced a letter from Palmer and Slowikowski that was sent to Brewer School Department Families, Students, and Staff addressing "hate directed at members of our school committee," while acknowledging, at least on the surface, "competing viewpoints," and instructing recipients to "celebrate students" notwithstanding those competing viewpoints. Complaint at ¶ 55. Shawn reported on the poor academic outcomes at Brewer High School, criticized the Defendants' law firm, and criticized the Brewer School Committee and its chair, Kevin Forest. Complaint at ¶ 56. Shawn provided his understanding of the holding in *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11 (Me. 2014). Shawn described Brewer School Department policies as being unsafe. Complaint at ¶ 58. Shawn encouraged the public to attend the February 12, 2024, Brewer School Committee meeting and provide public comment for the issues under consideration. Complaint at ¶ 59.

### 3.3 Brewer's Demands

On February 13, 2024, counsel for the defendants, acting on their behalf, at their behest, under their actual and/or apparent authority, threatened Shawn that, if he did not remove the Article from circulation by noon the next day, Defendants would be "forced to take further action" against him. Complaint at ¶ 60; ECF No. 1-5. Specifically, Defendants claimed that the Article invaded

HD's privacy, violated Brewer School Department policies ACAD, ACAF, and JICK, and caused HD and MacDonald severe distress under 20-A M.R.S. Section 6553 and 6554. Complaint at ¶ 62.

Shawn lawfully obtained the photograph of HD, but Defendants asserted that Shawn could not lawfully publish it, claiming that he violated 17-A M.R.S. Section 511. Complaint at ¶ 63. 17-A M.R.S. Section 511 is a criminal statute. Shawn reluctantly and fearfully removed the article from publication. Complaint at ¶ 66.

Depublishing the article for even a day causes an irrevocable deprivation of speech. Complaint at ¶ 67. Even in the absence of any financial incentive, Shawn wished to have his views circulated, as a matter of participation in our democracy, and he suffered injuries that are non-pecuniary in nature, but are even more important than his pecuniary losses. Complaint at ¶ 69. Shawn desired to republish the Article and intended to do so upon obtaining the requested injunction and/or prevailing in this action. Complaint at ¶ 70. His estate continues to desire to republish the Article. PM Decl. at ¶ 5. However, still the Defendants refuse to retract their threats.

In place of the Article, Shawn published a copy of Defendants' threat. Complaint at ¶ 71. That threat was from an agent of the government threatening formal legal action against Shawn. Complaint at ¶ 72. Publishing the threatening email itself was reporting on an issue by a public body on a matter of public concern. Complaint at ¶ 73.

On February 14, 2024, Defendants acknowledged the Article was removed, but newly demanded that the threatening email be removed because of the content they chose to identify and disclose. Complaint at ¶ 74; ECF No. 1-6. Shawn complied with this edict, but he intended to republish the demand letter upon obtaining a preliminary and/or permanent injunction in this matter. Complaint at ¶ 76. The Estate does as well. *See* PM Decl. at ¶ 6.

**4.0    LEGAL STANDARD**

Injunctive relief, per Fed. R. Civ. P. 65, should be issued if: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) the balance of equities tips in plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

**5.0    LEGAL ARGUMENT**

**5.1    Plaintiff has Standing**

When a plaintiff "is chilled from exercising [his] right to free expression or forgoes expression in order to avoid enforcement consequences he … demonstrates constitutional standing." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003).; (collecting cases). Twice, Defendants prevented Shawn from publication—demanding he remove the Article discussing Defendants' policies and the petition, and demanding he remove the demand. Facing a credible threat of legal action should he republish one or both, or otherwise report on these matters, the Court found Shawn has standing; the Estate now stands in his shoes.[6]

**5.2    Plaintiff is Likely to Prevail on the Merits of His Claims**

Plaintiff bring three claims against Defendants: a) First Amendment retaliation: 42 U.S.C. § 1983; b) 5 M.R.S. § 4682 for violation of the First Amendment and of Art. I., §§ 4 & 15 of the Maine Constitution; and c) a declaratory judgment that the Defendants may not try to apply their internal policies to an external party. 42 U.S.C. § 1983 provides a remedy for infringement of constitutional rights. *Alfano v. Lynch*, 847 F.3d 71, 74 n.1 (1st Cir. 2017). For relief under 5 M.R.S. § 4682, Plaintiff alleged facts to establish that Defendants intentionally interfered with

---

[6] Although the Court already determined there is standing, Plaintiff otherwise incorporates by reference the arguments made in Mr. McBreairty's reply, ECF No. 23 at 2-6 and the exhibits thereto.

Plaintiff's constitutional rights. *See* 5 M.R.S. § 4682; *Andrews v. Dep't of Envt. Prot.*, 1998 ME 198, ¶ 23, 716 A.2d 212.  There is no dispute that Defendants were acting under color of state law or threatened Shawn.  And Defendants interfered with/transgressed Plaintiff's constitutional rights.

Plaintiff is likely to prevail on the constitutional claims.  Prohibiting criticism of Defendants and reporting on a petition is unconstitutional viewpoint and content-based discrimination. In their letter, Defendants purport to recognize Shawn's right to report on and opine on matters of public concern, but then concoct pretextual reasons to demand they be removed. They raise a concern with a) a picture of HD; b) statements that identify and discuss HD; and c) the statements about MacDonald and her motivations.  Yet, reporting on high school students or teachers is not unprotected or uncommon speech.  For example, on July 15, 2023, the *Bangor Daily News* published "*Weeks in the Maine Woods are Brewer High School's Answer to Absenteeism*".  *See* ECF No. 4-1.[7] That article was laudatory of Brewer High School and Defendant Superintendent Palmer naming minor students and teachers, and showing pictures of them. Nobody minded being praised—and, no one minds that HD and MacDonald's child were publicly identified as an Honor Roll students.[8]  But, when Shawn did the same, on a different subject matter, and with a negative opinion, he was threatened by the government with legal action for criticizing them.  "Informal measures, such as the 'threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment also." *White v. Lee*, 227

---

[7] Available online at https://www.bangordailynews.com/2023/07/15/bangor/brewer-high-school-woods-program-joam40zk0w/ . *See also* ECF No. 4-2, Authenticating Declaration of Cassidy S. Flavin ("CSF Decl.") at ¶ 4.

[8] *See* BDN Community, "Hampden Academy quarter 2 honor roll", BANGOR DAILY NEWS (Feb. 21, 2024), at https://www.bangordailynews.com/2024/02/21/bdn-maine/hampden-academy-quarter-2-honor-roll-2/ (ECF No. 4-6; CSF Decl. at ¶ 8); Shauna McGinnis, "Q2 Honor Roll 2024", BREWER HIGH SCHOOL NEWS (Feb. 2, 2024), at https://www.brewerhs.org/o/brewer-high-school/article/1441811 (ECF No. 4-7; CSF Decl. at ¶ 9).

F.3d 1214, 1228 (9th Cir. 2000) (quoting *Bantam Books, supra* at 67). "The relevant inquiry is not whether the defendant was successful in completing the retaliatory act as intended, or whether the act was successful in preventing the plaintiff from engaging in further speech; rather, it is whether the act as actually completed 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights'" *Mattei v. Dunbar*, 217 F. Supp. 3d 367, 376 (D. Mass. 2016) quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Attorney Hewey's threat would deter any person of ordinary firmness from publishing.

Defendants claim Plaintiff is free to re-publish, but there will be adverse action. That is not freedom. The First Amendment "guarantees not only freedom from government censorship, but also freedom from official retaliation on the basis of protected speech." *Mattei v. Dunbar*, 217 F. Supp. 3d 367, 373 (D. Mass. 2016) (*citing Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

Defendants' actions are viewpoint discrimination. "[D]isfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (internal quotation marks omitted). "A viewpoint need not be political; any form of support or opposition to an idea could be considered a viewpoint." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring in part) ("The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses.")). Defendants prohibited Shawn from criticizing students, staff, their actions, and policies on an ongoing debate on matters of public concern. This is unconstitutional content/viewpoint discrimination.

Content-based and viewpoint-based restrictions are subject to strict scrutiny. *See McCullen v. Coakley*, 573 U.S. 464, 478 (2014), "[s]uch 'requires the government to demonstrate that the

restriction advances a 'compelling interest' and is 'narrowly tailored to achieve that interest,'" *Signs for Jesus v. Town of Pembroke*, 977 F.3d 93, 101 (1st Cir. 2020) (*quoting Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015)). Such restrictions must also be "necessary." *R.A.V.,* 505 U.S. at 395. The demands for censorship serve no compelling interest and are not narrowly tailored.

Defendants claim the speech is unprotected due to "falsity," without identifying a single falsehood. ECF No. 1-5. Particularly where the media is reporting on the government's conduct, it is chilling to imagine giving the government the power to decide which reporting is "false".

> It cannot be the duty, because it is not the right, of the state to protect the public against false doctrine. The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech and religion. In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the truth from the false for us.[9]

While there were no false statements in the article, even if there were, that does not give the government any power to threaten to take action against the publisher. There is no "general exception to the First Amendment for false statements." *United States v. Alvarez*, 567 U.S. 709, 718 (2012). The government is a poor arbiter of truth. History is replete with examples of governments lying to their constituents. As Justice Black observed in *New York Times v. United States*, 403 U.S. 713, 717 (1971):

> [o]nly a free and unrestrained press can effectively expose deception in government. And paramount among the responsibilities of a free press is the duty to prevent any part of the government from deceiving the people and sending them off to distant lands to die of foreign fevers and foreign shot and shell … In revealing the workings of government that led to the Vietnam war, the newspapers nobly did precisely that which the Founders hoped and trusted they would do.

That is why the First Amendment protects freedom of the press. To accept Defendants' censorship as a necessary, compelling government interest would make the term "abuse of discretion" blush

---

[9] *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J. concurring).

with embarrassment. At worst, the government disagrees with Shawn's opinions. "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch*, 418 U.S. 323, 339-40 (1974). Further, the burden falls on the government to prove the statements are materially false, and there is no evidence of such. *Pan Am Sys. v. Atl. Northeast Rails & Ports, Inc.*, 804 F.3d 59, 66 (1st Cir. 2015) (discussing burden in defamation matters on statements of public concern).

Nor is it unprotected merely because the speech was monetized. "That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-502 (1952). "*Heed Their Rising Voices*," the publication at issue in *New York Times v. Sullivan* was a paid advertisement. 376 U.S. 254, 256 (1964); *accord Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988) (profit motive irrelevant when determining whether speech is political or commercial).

Defendants also claim the statements and photo are "an impermissible invasion of the privacy of minors and have the effect of bullying and hazing a student and a teacher at the Brewer High School in violation of Board Policies ACAD, ACAF and JICK and Maine law." ECF No. 1-5. The Maine criminal law cited was 17-A M.R.S. Section 511, and 20-A M.R.S. Sections 6553 & 6554. *Id.* Mr. McBreairty violated none of them and, moreover, "invasion of privacy" yields to the Constitution. "[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103 (1979). Shawn (and the Estate) had a clearly established right to publish lawfully-

acquired information. *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007). Complaint at ¶ 64. Even *stolen top secret documents* are lawful to publish.[10] *See New York Times Co. v. United States*, 403 U.S. 713 (1971). While the "privacy" claim was factually baseless, speaking on matters of public concern overrides any right to privacy. See, e.g., *Florida Star v. B.J.F.*, 491 U.S. 524 (1989); *Daury v. Smith*, 842 F.2d 9, 14 (1st Cir. 1988). While Defendants should have known their threat was baseless, the same Attorney and firm filed suit against Shawn on similarly unsupportable theories in *Hermon School Department v. McBreairty*, Docket No. CV-2022-00056 (Penobscot Sup. Ct., filed May 3, 2022). Complaint at ¶ 65. There is no expectation of privacy in a public place—any girl (or, here, anyone who identifies themselves as female) could lawfully be present in the bathroom and observe who was there. *See Rivera-Rivera v. United States*, No. 11-2132, 2013 U.S. App. LEXIS 26419, at *1 (1st Cir. Nov. 5, 2013) (finding a lack of a "legitimate expectation of privacy" in a "public restroom"). The fact that it is the public portion of *a bathroom* is of no moment—matters of public concern can occur there. This was not a photograph of individuals engaged in private acts.[11] The statute only applies where there is a "justifiable expectation" of privacy (*State v. Strong*, 2013 ME 21, ¶ 17, 60 A.3d 1286, 1291), and per the First Circuit's decision in *Rivera-Rivera, supra,* there is no such expectation here.

---

[10] The Supreme Court has established a robust First Amendment right to publish information—even illegal information—and has built strong, tall, and obvious barriers against any governmental intrusion into that right. *See e.g., Fla. Star v. B. J. F.,* 491 U.S. 524 (1989); *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979); *Okla. Pub. Co. v. Dist. Court of Okla.*, 430 U.S. 308 (1977); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975); *Miami Herald v. Tornillo*, 418 U.S. 241 (1974); *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971); *N.Y. Times v. United States*, 403 U.S. 713 (1971) ("Pentagon Papers"); *N.Y. Times v. Sullivan*, 376 U.S. 254 (1964); *Grosjean v. Am. Press Co.*, 297 U.S. 233 (1936); *Near v. Minnesota*, 283 U.S. 697 (1931).

[11] Nor is presence in a stall in a public restroom fully protected from outsiders. "Even when an individual has entered a stall, there is no legitimate expectation of privacy to the extent he may be seen by someone in the common area of the restroom." *Wright v. Bella Vista Police Dep't*, 452 F. Supp. 3d 830, 841 (W.D. Ark. 2020), citing *United States v. White*, 890 F.2d 1012 (8th Cir. 1989).

Policy ACAD, the "Hazing" policy, which is enforced by Defendant Palmer on behalf of Defendants, restricts actions only by those who are part of the Brewer school system, not outside journalists like Shawn McBreairty. *See* ECF No. 4-3.[12] *See also* CSF Decl. at ¶ 5. Policy ACAF, the "Workplace Bullying" policy, also enforced by Defendant Palmer for Defendants, fares no better—by its terms, it regulates employees, students, parents, community members, and others involved in the school. *See* ECF No. 4-4.[13] *See also* CSF Decl. at ¶ 6. Policy JICK, the "Bullying" policy, again, enforced by Defendant Palmer for Defendants, regulates only students, employees, volunteers, contractors, visitors, and school-affiliated organizations. *See* ECF No. 4-5.[14] CSF Decl. at ¶ 7. If teachers may not be "compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work," then, Shawn, a non-teacher, cannot have his rights infringed when writing about such matters himself. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Defendants have no authority to regulate off-campus speech by unaffiliated persons, let alone reporters like Shawn McBreairty. *Compare Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038 (2021) (observing the very little leeway schools have to regulate a *student's* off-campus speech). Nevertheless, Attorney Hewey asserts they do with a degree of religious certainty. *See Hermon School Dep't v. McBreairty*, Law Court Docket No. PEN-13-191 (Me. Filed Oct. 27, 2023) ("Mr. McBreairty falsely states that the School Department admitted that its Workplace Bullying Policy does not apply to him. In fact what the School Department pled is not

---

[12] Available at https://docs.google.com/document/d/1IoMtrBrOiuRXhbjeQf2wZSVU1m-H7sAzMY1KdxJq0-4/edit.
[13] Available at https://docs.google.com/document/d/1JHV73KUPXvYzITkxnC7N5uD4BjIxYjb0grMtBpGV2cY/edit.
[14] Available at https://docs.google.com/document/d/1EMBuAyVph-cAhc2VNOU-xuAjRgNFWO24Q917-61LltU/edit.

that the policy does not apply to McBreairty – **it unquestionably does**.") (Red Brief. at 25, internal citation omitted, emphasis added).

Similarly, the statutory provisions cited are not properly invoked. Under 17-A M.R.S. § 511, only a person entering or engaging in surveillance could be in violation of another's privacy. Shawn did not take the relevant photograph, nor did he trespass. McBreairty was provided the photograph by a news source. Since he acquired it lawfully, he has a clearly established right to publish that lawfully-acquired information. *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007). A "stranger's illegal conduct does not suffice to remove the First Amendment shield[.]" *Jean* at 25, quoting *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001). As with the policies, 20-A M.R.S. § 6553(2) only applies to a "student, staff member, group or organization affiliated with the public school," making it inapplicable to McBreairty. Similarly, 20-A M.R.S. § 6554(3) highlights that it only applies to conduct on school grounds, and McBreairty was not on school grounds. "If the First Amendment means anything in a situation like this, it is that public officials cannot — as they did here — threaten a person with legal action under an obviously inapt statute simply because he published speech they did not like." *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 43 (1st Cir. 2024) (denying qualified immunity when school officials threatened a citizen-journalist over a publication). In fact, *Berge* makes it abundantly clear that Defendants are wrong. In that case, just like this one, a government entity did not like something a citizen journalist published (in that case, a video) so they sent the journalist a demand that further legal action would be taken, and cited a criminal statute in their demand. There is not the slightest iota of legal nor logical daylight between this case and the *Berge* case. In that case, in an almost identical factual and legal scenario, it was so painfully obvious that the First Circuit did something most courts are not inclined to do – it denied the government actors qualified immunity. *Berge* controls here.

The government tries to argue that the photograph was unlawfully created. So what? It is clear from the photo itself that it was not unlawfully created, but let us assume it was. In *Jean*, the First Circuit presumed, *arguendo*, that a video was unlawfully made. However, since Jean was not the one who unlawfully made it, the government had no authority to censor the video. In *Berge*, Mr. Berge made the video, but waived any argument about a right to record. He simply argued that if it was lawfully made, then he had a right to publish it. *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 43 (1st Cir. 2024). The First Circuit agreed. Here, if the government wishes to argue that Jean and Berge should be overturned, then it certainly may do so. However, they control at this level.

Defendants' second claim is that McBreairty made two statements that identified HD. The government has no power to suppress the publication of a student's name. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) clearly established that even publishing the name of a minor rape victim is protected. Accordingly, what interest does the government believe it has here, that falls outside of this clearly established law?

Defendants' third claim is the statement concerning Defendant MacDonald's child.[15] However, this statement expressly quoted the line "MacDonald has a transgender child who attends a different school" from *Macdonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 252 (D. Me. Jan. 12, 2023), and provided commentary thereon regarding the child's activities at that school. Not only is there no compelling interest in precluding discussion of the child, it was used

---

[15] MacDonald previously argued that Attorney Hewey was acting on her behalf, but she submitted no sworn statement to that effect and Attorney Hewey was acting with apparent authority. "Apparent authority is authority that, although not actually granted, the principal knowingly permits the agent to exercise or that the principal holds the agent out as possessing." *Remmes v. Mark Travel Corp.*, 2015 ME 63, P22. Moreover, the request for injunctive relief speaks to MacDonald in her official capacity, and Attorney Hewey undoubtedly represents the government.

to highlight Defendant MacDonald's bias against the petitioning students at Brewer. Quoting from judicial proceedings is protected under Maine law under the fair report privilege. *See, e.g., Kampf v. Maine Publ. Corp.,* 1998 Me. Super. LEXIS 259, *2-3 (Cumberland Cty. Sup. Ct. Oct. 20, 1998) (citing Restatement (Second) of Torts, § 611 (1977) and determining the privilege would be recognized in Maine). This privilege protects those who "fairly and accurately report certain types of official or governmental action", rendering them immune from lawsuits arising out of such reports. *Yohe v. Nugent*, 321 F.3d 35, 42 (1st Cir. 2003). Defendants, therefore, have no compelling interest in restricting Shawn's report on Defendant MacDonald's prior litigation, the outcome thereof, and her biases as to the petitioners.[16]

Neither have Defendants set forth a compelling interest in demanding the removal of their threats from publication. In fact, that is even more abhorrent. The government threatened a journalist and then threatened the journalist for publishing the threat. The sole basis is that the threat reprints the content Defendants want to censor. ECF No. 1-6. However, it was Defendants' choice as to what to include in their threat, and the re-publication of a governmental threat is itself an issue of public concern and an official proceeding protected under the fair report privilege.

As much as some find discussions of gender policy uncomfortable, uncomfortable discussions must be had. Robust debate is why the First Amendment, and the Maine corollaries, exist. Some students invoked the petition process. A teacher and administrators threatened them. A journalist wrote about the controversy. Defendants want to stifle one side of this debate with threats of legal action. They have no legitimate interest in doing so.

Defendants' threatened frivolous litigation can and should be enjoined, and the "remedy" of simply waiting to get sued and expending all the resources necessary for defense – is no remedy

---

[16] And, as noted above, statements about MacDonald's child, as with HD, are protected speech.

at all. Although the Court correctly quoted *Tomaiolo v. Mallinoff*, 281 F.3d 1, 11 (1st Cir. 2002) as to avoiding "an interpretation of § 1983 so broad as to encompass petitions for government action[,]" the *Tomaiolo* decision expressly thereupon cited to "*Munoz Vargas v. Romero Barcelo*, 532 F.2d 765, 766 (1st Cir. 1976) ('There is no remedy . . . against private persons who urge the enactment of laws, regardless of their motives.')." That is, the Order of this Court failed to appreciate that the case it relied on pronounced a policy against enjoining "private persons," not government entities and officials, as Defendants are here. "The Free Speech Clause restricts government regulation of private speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). In contrast, "a state entity[] itself has no First Amendment rights[.]" *Student Gov't Ass'n v. Board of Trustees*, 868 F.2d 473, 481 (1st Cir. 1989). Thus, *Tomaiolo* is inapposite.

Moreover, any putative litigation by the government would be sham litigation, both objectively baseless and subjectively motivated by an unlawful purpose. It is objectively baseless as, for the reasons set forth above, there would be no viable causes of action for alleged violation of privacy rights of non-parties or of inapplicable school policies or state law, especially as it is all based on Plaintiff's protected speech and clearly-established right to publish. And, as previously set forth, any such suit would be subjectively motivated by Defendants' unconstitutional desire to chill disfavored speech. Thus, Plaintiff has a substantial likelihood of success.

### 5.3 Plaintiff Has Been Irreparably Harmed; the Harm Must be Enjoined

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[A] plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Ass'n of Club Owners v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Thus, a likelihood of success on the First Amendment claim necessarily also establishes irreparable harm. *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012).

### 5.4 The Balance of Equities Tips in Plaintiff's Favor

When the government restricts speech, the balance of hardships weighs in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) ("insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech.") Failing to grant the requested injunction will continue to deprive the estate of its constitutional rights. Defendants will suffer no harm. An injunction will restore the rights guaranteed by the U.S. and Maine Constitutions.

### 5.5 Injunctive Relief is in the Public Interest

"Protecting rights to free speech is *ipso facto* in the interest of the general public." *McBreairty v. RSU22* at *31-32. Other members of the public are chilled from speaking their minds as well. They see Shawn McBreairty threatened for merely mentioning government employees and publishing events that happened, and then threatened for reporting on the threat. Which citizen of ordinary firmness would risk speaking reporting on controversial issues if this is tolerable? Further, members of the public have a right to read Shawn's reporting. Even the government is harmed if it cannot hear how its employees are performing.

### 5.6 At Most, a Minimal Bond Should Be Required

A bond should only be required if the enjoined party will suffer harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002). Defendants will suffer no harm. An injunction will repair the *status quo* and allow the First Amendment to flourish. Plaintiff requests that the injunction issue with no bond required.

### 6.0 CONCLUSION

Plaintiff wishes to republish the Article and threatening demand. The Court should enter a preliminary injunction against the Defendants preventing them from taking action against

Plaintiff on account of such and from taking any action to try to apply school policies to Plaintiff. Specifically, they should be enjoined from continuing to threaten criminal sanctions or civil sanctions, or administrative sanctions against any publication of the article or the photograph.

Should the Court decline to enter such injunction, Plaintiff requests alternative relief in the form of an injunction pending appeal.  Fed. R. Civ. P. 62(d).

## REQUEST FOR ORAL ARGUMENT

Plaintiff believes that oral argument may assist the court.  This matter involved significant Constitutional issues that oral argument will help to address.

Dated: September 30, 2024.                                         Respectfully Submitted,

/s/ Robert J. Morris                                                         Marc J. Randazza (*pro hac vice*)
Robert J. Morris, II (ME Bar No. 010402)            *Lead Counsel*
HOUSER, LLP                                                              RANDAZZA LEGAL GROUP, PLLC
400 TradeCenter, Suite 5900                                    30 Western Avenue
Woburn, MA 01801                                                  Gloucester, MA 01930
Tel: (339) 203-6498                                                   Tel: (888) 887-1776
Email: rmorris@houser-law.com                         Email: ecf@randazza.com

*Attorneys for Plaintiff,
Patricia McBreairty*

Case No. 1:24-cv-00053-LEW

## CERTIFICATE OF SERVICE

I hereby certify that, on September 30, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Robert J. Morris
Robert J. Morris