UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA MCBREAIRTY, as Personal Representative of the Estate of Shawn McBreairty, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:24-cv-00053-LEW<br>) |
| BREWER SCHOOL DEPARTMENT, GREGG PALMER, BRENT SLOWIKOWSKI, and MICHELLE MACDONALD, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**ORDER ON MOTION FOR<br>PRELIMINARY INJUNCTION**

In this action, Plaintiff Patricia McBreairty, as the Personal Representative of the Estate of Shawn McBreairty, seeks preliminary injunctive relief based on a threat of "further action" delivered by Defendant Brewer School Department to her late husband concerning an article he authored and published on the website [your]NEWS and subsequently took down. Patricia McBreairty contends that the threat violated First Amendment principles embodied in the Fourteenth Amendment of the United States Constitution. For reasons that follow, her request for a preliminary injunction is denied.

**BACKGROUND**

In the winter of 2024, a controversy related to an epicene high school student ("the Student") erupted at the Brewer High School. Though not a member of the local

community, Shawn McBreairty, a self-published journalist, was outraged by the handling of the controversy and authored an article and posted it on the website [your]NEWS. In his opinion piece "*Girls' Bathrooms Are Not 'Safe Spaces' When Males Are Present*," McBreairty was critical of the Student as well as the individual defendants identified in the caption of this Order. Compl. Ex. 3 (ECF No. 1-3). McBreairty included several image files in his post, including one that showed the Student having a conversation with female students in the open space of the girls' bathroom. Its caption read: "Brewer, ME High School girls' bathroom photo of male [HD] (green hair and brown dress) provided by an anonymous source." *Id.* at 4. McBreairty reported that the Student posed a physical threat to the young women who used the bathroom, and backed the assertion based on social media posts and "unconfirmed reports."

Elsewhere in the article, McBreairty criticized the Brewer School Department's institution of a policy that allowed the Student to access the girls' bathroom, as well as actions taken by the Department and the individual defendants to quash a student-led, in-school petitioning effort opposing the policy. Concerning the individual defendants, McBreairty rebuked Defendant Michelle MacDonald, an English teacher (as well as her child, who happens to go to another school and has no connection to the controversy), and Defendant Gregg Palmer (Department Superintendent) and Brent Slowikowski (High School Principal) for their roles in supporting the restroom policy. McBreairty also criticized the Drummond Woodsum law firm for its role in counseling school clients to adopt such policies.

On February 13, 2024, in response to Mr. McBreairty's publication, Attorney Melissa Hewey of Drummond Woodsum, defense counsel in this action, expressly acting on behalf of the School Department, sent an email to McBreairty in which she demanded that he take down certain content in the article. Attorney Hewey acknowledged that "much" of the article expressed McBreairty's opinion on matters of public concern but stated that certain portions of the article did not deserve First Amendment protection because they were false, invaded the privacy of the subjects, and/or amounted to bullying and harassment under school department policies, citing the same. In terms of privacy, Attorney Hewey asserted that the article was unlawful because it "identifies the student specifically." She also objected to the inclusion of the group bathroom photograph because the Department believed it was taken without the consent of those depicted, "presumably in violation of 17-A M.R.S. § 511." Compl. Ex. 5 (ECF No. 1-5). She further stated, "we will be forced to take further action against you," if McBreairty did not comply with the demand. *Id.* The threat of further action was understood by McBreairty as a threat of litigation because Attorney Hewey represents another school district that filed suit against McBreairty for similar speech activity.[1]

Based on his prior experience with Attorney Hewey and/or Drummond Woodsum, Mr. McBreairty submitted to the demand and took down his entire article from the [your]NEWS website, but published Attorney Hewey's email on his X social media

---

[1] *Hermon School Department v. McBreairty*, Docket No. CV-2022-00056 (Penobscot Sup. Ct.). *See* ECF No. 23-2 (a complaint alleging that "Defendant Shawn McBreairty has engaged in bullying and harassing behavior toward [a] Hermon School Department employee" and "that such conduct violates Hermon School Department policy and state law," and requesting that "McBreairty should be enjoined from further conduct").

account. In response, Attorney Hewey authored another email in which she asserted that publication of her prior email on X was unlawful because the email included references to the allegedly objectionable content. Specifically, she demanded that McBreairty redact content related to the Student and MacDonald's child.

McBreairty again complied with the demand, but on February 22, 2024, McBreairty filed this civil action, claiming that the threat of a civil action conveyed by Attorney Hewey worked a deprivation of his speech rights. Although the Department was the only entity at whose behest Attorney Hewey purported to act, McBreairty included as defendants in this action Superintendent Palmer, Principal Slowikowski, and MacDonald.

In his Complaint (ECF No. 1), McBreairty demanded a jury trial and requested declaratory and injunctive relief and an award of damages against all four defendants based on the chilling effect of Attorney Hewey's demands. McBreairty alleged that Defendants "would or should know that this threat was baseless," *Id.* ¶ 65, but observed that counsel had previously filed suit against him under similar circumstances. Along with his Complaint, McBreairty filed a Motion for Temporary Restraining Order or Preliminary Injunction (ECF No. 4). In the Motion, McBreairty made no effort to distinguish among the Defendants and demanded that the Court enjoin them all "from taking action against him on account of publishing the Article and the letter" or "from taking any action to try to apply school policies" to him through such an action. Mot. for TRO/PI at 20. In effect, McBreairty wanted the Court to enjoin any future litigation against him by any named defendant so he would be free to publish his article without fear of legal reprisal.

After considering the parties' briefs and oral arguments, I denied McBreairty's request for a temporary restraining order but indicated I would hold an evidentiary hearing to consider entry of a preliminary injunction. Order on Mot. for TRO/PI (ECF No. 30). My stated concern was that there was as yet no evidentiary record to evaluate whether the "government officials" might legitimately "petition a court to redress grievances they harbor as a result of Plaintiff's expressive activity," and that a court order enjoining any and all litigation by all of the named defendants (three of whom are individuals discussed in McBreairty's article) could involve a more severe transgression against the First Amendment than the alleged affront to freedom that resulted from Attorney Hewey's "baseless" threats. Order on Mot. for TRO/PI at 1; Order on Mot. for Injunction Pending Appeal at 2 (ECF No. 41).

Despite the indication that he would receive a prompt hearing, McBreairty appealed the denial of the TRO. On May 16, 2024, the First Circuit dismissed McBreairty's appeal.

On June 3, 2024, McBreairty passed away. However, Plaintiff's counsel informed the Court that McBreairty's Estate wished to maintain both the action and the request for injunctive relief. Notice Re. Pl.'s Mot. for PI (ECF No. 55). On August 15, 2024, Patricia McBreairty, Mr. McBreairty's widow, filed a Motion to Substitute, seeking to be substituted as the party plaintiff in her capacity as Personal Representative of the Estate of Shawn McBreairty (ECF No. 57). The Motion to Substitute was granted (ECF No. 58).

On September 30, 2024, Patricia McBreairty filed the pending Updated Motion for Preliminary Injunction or, in the Alternative, an Injunction Pending Appeal (ECF No. 59). In her Declaration (ECF No. 59-1) in support of the Motion, Patricia McBreairty states that

it was Mr. McBreairty's intent that the media be published without redaction and that it is likewise her intent to publish the media, but only in the event that preliminary injunctive relief shields her and the Estate from litigation over the article's content. Despite my skepticism over the appropriateness of an injunction barring the individual defendants from petitioning the government for relief, Patricia McBreairty persists in her late husband's request that a preliminary injunction be entered against each and every named defendant. However, she now emphasizes that her request only runs against the individual defendants in their official capacities.

I held oral argument on December 4, 2024. During the hearing, it became apparent that the Brewer School Department's position has changed concerning the article at issue. Specifically, Attorney Hewey explained that the Student graduated in the spring of 2024 and that the School Department's remaining concerns over the content of the article are not sufficiently momentous for the Department to take any action if the article is republished.[2] Plaintiff was unmoved by this representation on the record and invited a more formal arrangement by way of a written waiver or stipulation, although I am uncertain what more that would add. I encouraged the parties to confer to determine if the plea for a preliminary injunction could be resolved by being withdrawn as it appeared that it should be, and observed that the merits would remain for adjudication in any event due to the substitution of the Estate as Plaintiff. As reflected in a Status Report (ECF No. 73), the parties were

---

[2] From early in this case, the School Department has made arguments indicative of its special concern for the welfare of the Student, although it has also continued to mention the other students depicted in the photograph taken inside the bathroom. *See* ECF No. 16 at 17.

not able to reach a mutually satisfactory agreement, though it remains the case that the School Department clearly indicated in open court that it no longer has an interest in pursuing its threat of further action due to the graduation of the Student. Furthermore, the paper trail associated with the parties' discussion of a stipulation that could moot the preliminary injunction motion contains a consistent representation from counsel for the School Department. Specifically, Attorney Hewey indicated that her client was prepared to accept a stipulation along the following lines:

> An explicit agreement that Plaintiff and their assigns may freely publish the Article, letter, and photograph, resolving that portion of the Updated [Motion for Preliminary Injunction] seeking to ensure future publication.

*See* ECF No. 73 at 2; ECF No. 73-3 at 1.

## PRELIMINARY INJUNCTION STANDARD

A preliminary injunction "is an 'extraordinary and drastic remedy'" that "is never awarded as of right." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These "four elements are not of equal prominence." *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020). Rather, the "most important is whether the movant has demonstrated a likelihood of success on the merits." *Id.*

**DISCUSSION**

Plaintiff Patricia McBreairty comes before the Court as Personal Representative of the Estate of Shawn McBreairty. She attests that she intends to republish the media that Shawn McBreairty took down because that was his intent before his death and it is likewise her intent to publish once the threat of litigation is addressed. Patricia McBreairty not only wants to engage in this expressive activity, but states that the activity would be financially beneficial to the Estate because a market exists for it.

Defendants maintain that Shawn McBreairty's death has rendered moot any claim for injunctive relief that would enjoin future litigation concerning McBreairty's speech activity. Related to the Defendants' assertion of mootness, but having greater primacy, the Court has an independent obligation to determine whether the current plea for a preliminary injunction involves a "real and immediate threat of repeated injury." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *see also Murthy v. Missouri*, 603 U.S. 43, 56–57 (2024) ("Federal courts can only review statutes and executive actions when necessary 'to redress or prevent actual or imminently threatened injury to persons caused by . . . official violation of law.'" (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 492 (2009)); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). *See also Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 48 (1st Cir. 2006).

Given Shawn McBreairty's death, the graduation of the Student, and (most recently) Patricia McBreairty's entry into the litigation as the representative of Shawn McBreairty's Estate, arguably the burden rests with Patricia McBreairty to persuasively demonstrate that there remains an "imminently threatened injury" in need of injunctive relief. "[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" *Laidlaw*, 528 U.S. at 190 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Alternatively, the burden might rest with the Department to show that its voluntary cessation of the threat of further action is bona fide. "[A] defendant invoking the voluntary-cessation doctrine [to moot a case or part of a case] 'bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 45 (1st Cir. 2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Whichever burden applies in this case, I find that the dyad of a death and a graduation sound mootness as far as the preliminary injunction effort is concerned.

When it comes to the question of whether the threatened injury is certainly impending, I find, based on Attorney Hewey's representations in open court, made on behalf of the Brewer School Department, that the ongoing preliminary injunction motion no longer concerns a real and immediate threat of repeated injury. *Cf. Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 45 (1st Cir. 2024). Assuming, however, that a more

9

"formidable burden" of voluntary-cessation governs this scenario, I find that the School Department has demonstrated convincingly its voluntary cessation of its threat of further action because Attorney Hewey's blunt, open-court representation is a reasonable assessment of the diminishing value of the School Department's interest in challenging the content of the article. In particular, upon the graduation of the Student, the sensitivity of the article in terms of its impact on a member of the school community is dramatically reduced to the point of vanishing. This explains the School Department's position voiced by its counsel at the oral argument that it "has no interest" in the article should Mrs. McBreairty wish to publish it.

I also observe that several circuit courts augment the "formidable" standard in voluntary-cessation scenarios when the party backing down is a government body. In effect, they reason that government actors are entitled to a presumption of good faith and that representations of an intent to end a challenged practice should be accepted absent reason for doubt, evidence to the contrary, or a record demonstrating that the change is solely a convenient response to litigation. *See Clark v. Governor of New Jersey*, 53 F.4th 769, 778 (3d Cir. 2022), *cert. denied sub nom. Clark v. Murphy*, 143 S. Ct. 2436 (2023); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019); *People for the Ethical Treatment of Animals v. United States Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019); *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018); *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017); *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017); *see also* 13C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3533.7 (3d ed. 2008) ("Courts are more likely to trust public defendants to honor a professed commitment

to changed ways; individual public defendants may be replaced in office by new individuals, with effects that have little parallel as to private defendants; remedial calculations may be shaped by radiations of public interest; administrative orders may seem to die or evolve in ways that leave present or future impact unclear.").

Although the *Berge* Court did not mention the presumption that government actors act in good faith and, to my knowledge, the First Circuit has not expressly adopted that gloss on the voluntary-cessation analysis outside of a state legislative context, *Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016), I conclude that the changes in circumstances that have arisen in this case and Attorney Hewey's representation in open court are as compelling in terms of the voluntary-cessation inquiry as the circumstances and representations at issue in *Berge*. In the final analysis, it is clear both that the School Department has revoked its threat to take further action and that its change of position reflects a reasoned response to intervening events and is not merely a cynical attempt to avoid a preliminary injunction. I am therefore persuaded that there is no reason to expect that the allegedly wrongful behavior will recur in the event Patricia McBreairty publishes the article as originally authored by her husband.

This ruling does not prejudice Plaintiff from pursuing the merits of the case through the conclusion of litigation. It merely reflects the reality that the School Department has effectively revoked its threat of litigation, thereby removing the real and immediate threat

of present and prospective injury.[3]  I turn now to the supposed threat posed by the individual defendants.

Although Patricia McBreairty requests an injunction against the individual defendants in their official capacities, Reply at 4 (ECF No. 63), that supposed threat is chimerical, entirely of Plaintiff's imagination.  In the first place, such a threat was not actually communicated.  The threat of further action was made, expressly, on behalf of the Brewer School Department.  Finding that the threat was made on behalf of the individual defendants would be contrary to the language contained in Attorney Hewey's first email.  If more were needed to dispatch this argument to its appropriate destination, here goes: the individual defendants do not possess the authority to file a civil action to represent the interests of the School Department or High School.[4]  So if one were to imagine that which

---

[3] Because no real and immediate threat looms at this time, there may be no need to address Defendants' challenge that Shawn McBreairty's death, standing alone, mooted the cause for prospective relief.  When it comes to the impact of a plaintiff's death on a claim for declaratory or injunctive relief, typically death will moot the claim.  *See*, *e.g.*, *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 49 (1st Cir. 2006); *Procurador De Personas Con Impedimentos v. Municipality of San Juan*, 541 F. Supp. 2d 468, 473 (D.P.R. 2008); *Glanz v. Vernick*, 750 F. Supp. 39, 43 (D. Mass. 1990).  However, in some cases a suitable plaintiff can be substituted to maintain the claim, provided it is apparent that the substitute "could benefit from the relief and . . . is likely to experience the same or similar harm as the original plaintiff in the future." *Light v. Town of Livermore*, No. 1:21-cv-00266-JAW, 2022 WL 4016809, at *12 (D. Me. Sept. 2, 2022); *see also Goodwin*, 436 F.3d at 48 (finding a claim for injunctive relief concerning employment was mooted by the original plaintiff's death because the death "eliminated any reasonable anticipation that" he or the representative of his estate could "be faced with a recurrence of the alleged harm").  Here, it is not merely the death of Shawn McBreairty that would moot the claim now pressed by the Estate, but rather the combination of Shawn McBreairty's death and the School Department's change in position concerning the need for any further action following the Student's graduation from high school.  When both of these developments are factored together, it is plain that, even if the Estate could benefit from the preliminary injunction, the Estate is not likely to experience the same or similar harm complained of by Shawn McBreairty, which may have been sufficient for the Court to resort to the extraordinary remedy of a preliminary injunction.

[4] Plaintiff's conception of an "official capacity" lawsuit brought by one of the individual defendants is an odd formulation.  As discussed in the body of this order, there is in fact no basis in the law to believe that a superintendent, principal, or teacher could ever institute an "official capacity" lawsuit on behalf of a municipality.  They could only bring a lawsuit to vindicate their personal rights.

12

does not exist in the record; to wit, that Attorney Hewey threatened out of circulation Mr. McBreairty's article on behalf of the individual defendants in their official capacities, such a threat would obviously have been all hat but no cattle.  The only party in this case that could conceivably file an official proceeding against Patricia McBreairty concerning the content of the article is the School Department itself, and that would require action on the part of the City of Brewer's elected representatives.  Unilateral action on the part of one of the individual defendants would not suffice.  Neither Superintendent Palmer nor Principal Slowikowski can institute a legal proceeding in his own name as substitute for the City of Brewer or its School Department.[5]  Nor can MacDonald, as a teacher, bring an action in her own name on behalf of the municipality, school department, or public school for which she works.

Because none of the individual defendants has the capacity to bring the official capacity civil action that Patricia McBreairty asks me to enjoin there is no real threat of imminent harm.  This fear is a nonjusticiable bugbear.  Additionally, even if I proceeded

---

[5] Superintendent Palmer is empowered under Maine law to "enforce or cause to be enforced all rules of the school board," 20-A M.R.S. § 1055(7), but that is a far cry from authority to file civil actions on behalf of the City of Brewer or its School Department.  Indeed, Maine law does not even indicate that a municipal school board has authority to pursue any and all manner of litigation concerning the interests of its schools or community stakeholders.  *See*, *e.g.*, 20-A M.R.S. § 1001(5) (providing limited authority to school boards to sue or be sued in relation to plans or programs for the payment of employee insurance premiums and other employee benefits) *and compare* 20-A M.R.S. § 2412 (providing that a "public charter school" has the power to "sue and be sued in its own name") and § 3613 (providing that an "interstate school district" is its own "body corporate and politic" with power to sue and be sued).  In relation to bullying, Maine school boards have a duty to address "workplace bullying" with a clear statement that it is prohibited and a process for investigating and responding to incidents.  *Id.* § 1001(22).  This law modifies the relationship of school boards and school employees, but it does not authorize litigation by school boards against third parties who might bully school employees.

13

past the question of whether there exists a justiciable preliminary injunction controversy, Patricia McBreairty has failed to demonstrate a likelihood of success on the merits or an irreparable injury in the absence of preliminary injunctive relief precisely because the only defendant to the litigation who could chill her speech has disclaimed on the record any desire to do so and the official litigation by way of the other defendants she says is chilling her speech activity, despite the absence of any threat to do so, quite plainly cannot be instituted by the individual defendants.[6]

## CONCLUSION

Because Plaintiff's idea of a threat of officially-sponsored litigation undertaken by the individual defendants is illusory (and was not actually communicated on their behalf, in any event), it would be imprudent to enjoin them against engaging in petitioning activity in their official capacities. The same is not true of the Brewer School Department. However, the School Department's counsel stipulated in open court that the Department has no abiding interest in the content of the article now that the student upon whom the article focused has graduated and is no longer a member of the school community. Although, as I have indicated in my prior rulings, the case may well be developed on the merits that Plaintiff has sustained a constitutional harm by the School Department, at present the School Department's concession that it will not take further action related to the publication of the article, Mr. McBreairty's death, and the Student's graduation from

---

[6] Once again, Patricia McBreairty has abandoned any claim for injunctive relief against the individual defendants in their personal capacities. I therefore express no opinion concerning their ability to bring a civil action against Patricia McBreairty in their own names in the event Patricia McBreairty republishes the article.

the school remove from the case any threat of an imminent present or prospective harm in need of preliminary injunctive relief. Accordingly, Plaintiff's Updated Motion for a Preliminary Injunction or, in the Alternative, an Injunction Pending Appeal (ECF No. 59) is DENIED.[7]

        SO ORDERED.

        Dated this 10th day of January, 2025.

                                          /s/ Lance E. Walker
                                          Chief U.S. District Judge

---

[7] In regard to Plaintiff's alternative request for an injunction pending appeal, it is denied for the same reasons. Furthermore, given the considerable travel of this case, it appears likely that the Court could rule on the merits of cross-motions for summary judgment in about the time it might take the First Circuit to review an appeal of this Order.