# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| PATRTICIA MCBREAIRTY, as personal representative of the Estate of Shawn McBrearty, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BREWER SCHOOL DEPARTMENT, et al., | ) ) ) | CASE NO. 1:24-cv-00053-LEW
| Defendants. | ) ) |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS BREWER SCHOOL DEPARTMENT, GREGG PALMER, AND BRENT SLOWIKOWSKI WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56 and District of Maine Local Rule 56, Defendants Brewer School Department, Gregg Palmer, and Brent Slowikowski move for summary judgment on all counts in the Verified Complaint. The reason for this motion, as set forth more fully below and in the accompanying statement of material facts, is that there is no genuine issue of material fact and Defendants Brewer School Department, Superintendent Palmer, and Principal Slowikowski are entitled to judgment as a matter of law.

## STATEMENT OF FACTS

On February 12, 2024, Shawn McBreairty posted an article on the *[your]*NEWS website entitled "Girl's Bathrooms are Not 'Safe Spaces" When Males are Present."  SMF ¶ 1.  The article set forth at length Mr. McBreairty's views on a number of issues including use of bathrooms by transgender students, the performance and personal attributes of the Brewer administrators, and the academics at Brewer High School.  *Id.*  It also falsely suggested that a specific named student (HD), at the Brewer High School, had engaged in sexual assault; it

included a photograph of students in the Brewer High School girls' restroom; and it accused the child of a Brewer School Department employee of being a girl who pretends to be a boy and usually loses track races. *Id.*

After the post appeared online, the student Mr. McBreairty named stopped going to school and parents of the children pictured in the bathroom complained. SMF ¶¶ 2, 3. This caused the Brewer administration to decide that they needed to try to get Mr. McBreairty to take down the portions of the post that were defamatory or an invasion of privacy. SMF ¶ 6. Therefore, Brewer's counsel sent Mr. McBreairty an email acknowledging that most of the article contained his opinions on matters of public concern and that he had a right to express those opinions, but there were a few specific items in the article about a gender expansive Brewer High School student, other students, and a teacher, that were not protected speech because they were false, defamatory, and an invasion of privacy, that needed to be removed. SMF ¶ 9.

Although the School Department only requested that Mr. McBreairty remove the specific portions of his article that it did not believe constituted constitutionally protected speech, Mr. McBreairty chose to remove the entire article. SMF ¶ 11. In its place, Mr. McBreairty published counsel's February 13, 2024 email, which specifically referenced the content that was false, defamatory, and an invasion of privacy. *Id.* This prompted counsel for the School Department to send a follow up email to Mr. McBreairty dated February 14, 2024, asking him to remove the email as it had the effect of reposting the content that he was asked to remove. SMF ¶ 13. The photograph of the minor students in the bathroom remained on Mr. McBreairty's X account, SMF ¶ 14, and he appeared on an on-line show and displayed the picture thereafter, SMF ¶ 15.

2

In June of 2024, the students that were the subject of Mr. McBreairty's post graduated from Brewer High School and, thereafter, Brewer had no obligation to take any steps to protect them from his post. SMF ¶¶ 17, 18. Mr. McBreairty passed away on June 3, 2024. SMF ¶ 16.

Notwithstanding Mr. McBreairty's passing, and the fact that the School Department has made it clear that it will take no steps to prevent reposting of any content it previously objected to, Plaintiff, now Mr. McBreairty's Estate, has pressed forward with this lawsuit.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, "genuine" means that "a reasonable jury could resolve the point in favor of the nonmoving party," and a "material fact" is one whose "existence or nonexistence has the potential to change the outcome of the case." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011) (citations omitted). To raise a genuine issue of material fact, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999); *see also* Fed. R. Civ. P. 56(e). Although the Court "view[s] the evidence in the light most favorable to the nonmovant, 'as to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party.'" *In re Spigel,* 260 F.3d 27, 31 (1st Cir. 2001) (citation omitted).

3

## ARGUMENT

The Verified Complaint asserts three claims against the Brewer School Department, Superintendent Palmer, and Principal Slowikowski for violation of Mr. McBreairty's constitutional rights. Count I alleges First Amendment Retaliation pursuant to 42 U.S.C. § 1983, and Counts II and III allege violations of Mr. McBreairty's rights to freedom of speech, press, and petition, pursuant to the First Amendment and the Maine Constitution Article I, §§ 4 and 15 under 5 M.R.S. § 4682. There is no record evidence to support any of these claims.

### I. Defendants are Entitled to Summary Judgment on Plaintiff's First Amendment Retaliation Claim Pursuant to 42 U.S.C. § 1983

Count I alleges that Defendants violated Mr. McBreairty's First Amendment rights by retaliating against him through "Defendants' threat of action" on account of his article and his publication of the February 13, 2024 email. Verified Compl. ¶¶ 80-82. This claim appears to be asserted against all Defendants, including the Brewer School Department, and Gregg Palmer and Brent Slowikowski in their official and personal capacities. Verified Compl. ¶¶ 3-4, 79-82. A suit brought against an individual in their official capacity "is tantamount to a suit against the entity of which the official is an agent," *Burrell v. Hampshire Cty.*, 307 F.3d 1, 7, (1st Cir. 2002), whereas a suit against an individual in their personal capacity seeks to impose liability upon the individual, *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Where Plaintiff asserts this claim for violation of constitutional rights against the Brewer School Department and the individuals in their personal capacities, the reasons for judgment as a matter of law in favor of both the Brewer School Department and the individuals are discussed in turn below.

### A. The Brewer School Department is Entitled to Judgment as a Matter of Law Because There Is No Constitutional Violation and No Basis For Municipal Liability

The standard that Plaintiff must meet to establish liability of a municipal entity, such as the Brewer School Department, is governed by the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "Assessing liability against the [municipal entity] requires two basic elements: first, that plaintiff's harm was caused by a constitutional violation, and second that the [municipal entity] be responsible for that violation, an element which has its own components." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)). *See also Johnson v. City of Biddeford*, 665 F. Supp. 3d 82, 122 (D. Me. 2023), *aff'd,* 92 F.4th 367 (1st Cir. 2024) (explaining that municipal liability under *Monell* has these two basis elements).

### i.      No Constitutional Violation

As this Court explained, as to the first element under *Monell*, "if there is no underlying constitutional violation, there can be no municipal liability." *Johnson*, 665 F. Supp. 3d at 122 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)). The first step of the analysis is thus whether there was a constitutional violation that caused Mr. McBreairty harm and, specifically, whether the School Department subjected him to First Amendment retaliation.

"To prevail on a First Amendment retaliation claim, a 'plaintiff must prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subject to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action.'" *Currier v. Town of Gilmanton,* 621 F. Supp. 3d 233, 259 (D.N.H.)) (quoting *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012)).  In this case, Plaintiff can point to no facts in the record to support either element.

5

First, Mr. McBreairty's conduct that was the subject of the School Department's objection was not constitutionally protected. In its email to Mr. McBreairty, the School Department specifically recognized his right to express his opinion on the matters addressed in his post. It requested only that he remove four items: (1) a photograph of four Brewer High School students in the girls' restroom at the high school; (2) a statement about a gender expansive student at Brewer High School, naming the student, and making fun of the student for "playing dress up" and being emotional; (3) false statements suggesting that the same student had sexually assaulted students; and (4) a false and meanspirited statement that the child of Brewer High School teacher Michelle MacDonald is "a girl who pretends to be a boy on the male track team, usually coming in dead last." *See* SMF ¶ 9.

These specific items are not constitutionally protected speech. As the Maine Law Court has stated, "[t]he use of speech as part of conduct designed to threaten or harm other individuals will not find protection in either the Maine or the federal constitution." *Childs v. Ballou*, 2016 ME 142, ¶ 15, 148 A.3d 291. Speech that invades another's privacy, exploits the value of another's name or image, or is false or defamatory, is not constitutionally protected. *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) (recognizing that the Amendment does not bar application of state defamation law); *Levinsky's, Inc. v. Wal-Mart Stoeres, Inc.* 127 F.3d 122 1st Cir. 1997); *Nelson v. Maine Times*, 373 A.2d 1221, 1224 (Me. 1977); *Levesque v. Doocy*, 557 F. Supp. 2d 157, 160 (D. Me. 2008), *aff'd,* 560 F.3d 82 (1st Cir. 2009); *Childs v. Ballou*, 2016 ME 142, ¶ 15, 148 A.3d 291.

Here, the targets of Mr. McBreairty's statements that the School Department objected to were not public figures, nor were they even adults. They were children and online publication of their private emotions, feelings about their gender, and visits to the bathroom is not what the U.S.

6

Constitution was intended to protect. In *Nelson v. Maine Times*, 373 A.2d 1221, 1224 (Me. 1977), the Law Court discussed the tort of invasion of privacy and explained that "if a person reasonably constituted could anticipate that such an appropriation could cause mental distress and injury to another who was possessed of ordinary feelings and intelligence, such an appropriation would be tortious" and the publication must "benefit the tortfeasor." The statements Mr. McBreairty made concerning his targets' gender identity, emotional state and athletic prowess were clearly an invasion of their privacy. And Mr. McBreairty's suggestion that the student HD was guilty of sexual assault was undisputedly false on this record and, therefore, clearly defamatory.

      Second, Mr. McBreairty was not subject to any adverse action by the School Department. Although Plaintiff has long characterized the School Department's email as threatening criminal or civil action, the email did no such thing. It merely states "we will be forced to take further action against you." SMF ¶ 9. This does not meet the requirement that the action "deter a reasonably hardy person from exercising his or her constitutional rights." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43, n.11 (1st Cir. 2012) (citing *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011)). *See also Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468 (2022) (holding that censure by public college system's board of board member who had been outspoken and critical of board did not constitute adverse action for purposes of First Amendment retaliation claim, noting that the censure was a form of speech by elected representatives and the censure did not prevent the board member from doing his job). As the Supreme Court in *Wilson* explained, lower courts have taken different approaches to identifying material and immaterial adverse actions. *Id.* at 477. For example, some courts "have asked whether the government's challenged conduct would 'chill a person of ordinary firmness' in the plaintiff's position from engaging in 'future

7

First Amendment activity.'" *Id.* (citing *Nieves v. Bartlett*, 587 U.S. 391, 396 (2019)). Other courts have "whether a retaliatory action 'adversely affected the plaintiff's ... protected speech'." *Id.* (citing *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). *See also* S*ullivan v. Carrick,* 888 F.2d 1 (1st Cir. 1989) (finding no First Amendment retaliation where disciplinary board's letter did not intimidate plaintiff or chill his speech).

As an initial matter, there is no doubt here that the School Department's conduct did not chill Mr. McBreairty from continuing to speak out about these issues. He kept the post on his X account and talked about it on an online broadcast. SMF ¶ 15.

Nor would that singular phrase in counsel's email, "we will be forced to take further action against you," deter a reasonably hardy person in Mr. McBreairty's shoes, believing that the specific content was constitutionally protected. This is particularly true where such a person would have Maine's anti-SLAPP statute available to remedy any legal action that was brought in violation of one's constitutional rights. 14 M.R.S. § 556; *Hearts with Haiti, Inc. v. Kendrick,* 2019 ME 26, ¶ 14, 202 A.3d 1189 ("The purpose of the anti-SLAPP statute is to protect against *meritless* claims brought to delay, distract, and punish activists for speaking out.").[1]

### ii. No Municipal Liability

The second step in the *Monell* analysis is whether the School Department is responsible for any constitutional violation that may have occurred. It is well established that a municipal entity, including a school department, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "In other words, a municipality cannot be held liable under § 1983 for the actions of its employees based solely on a theory of *respondeat superior*." *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002) (citing *Monell*, 436 U.S. at

---

[1] The anti-SLAPP remedy was well known to Mr. McBreairty as evidenced by his repeated reference to the state court anti-SLAPP motion he filed in *Hermon School Department v. McBreairty.*

691). "Rather, liability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury." *Id.*

Federal courts recognize "four types of practices that permit a § 1983 suit against a municipality: (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference." *Doe v. City of New York*, 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018) (internal quotations and citations omitted). There is no record evidence, let alone allegations in the Verified Complaint, that could lead a factfinder to conclude that the February 13, 2024 email sent by counsel, on behalf of the Brewer School Department, falls within one of these four types of practices.

   a. *Policy*

There is no basis for liability upon an unconstitutional official policy. An "official policy" for municipal liability purposes includes things such as "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. There is no record evidence, or even an allegation, that the School Department had any official policy of violating the constitutional rights of citizens posting on social media like McBreairty.[2]

---

[2] The only policies that Plaintiff has even raised in this case are those referred to in the email that require the School Department to protect students and employees from bullying and hazing. *See* Order on Motion to Preliminary Injunction, n.5 (ECF Doc. 74, PageID #: 662) (explaining that "Maine school boards have a duty to address 'workplace bullying'"). Whether by design or confusion, Plaintiff has repeatedly erroneously asserted that the Brewer School Department proposed to somehow enforce its own board policies *against* him which, of course is not the case. School board policies can impose requirements on the conduct of those in the school community (e.g. students, staff, parents, vendors) but not on the public at large. The school policies apply to McBreairty only in the sense that when he engages in conduct that bullies Brewer students or staff, the School Department has the obligation to see that they are protected.

### b. *Custom*

There is no basis for liability upon a custom or practice. "Although municipalities' policies 'not authorized by written law' can nevertheless be actionable, they must be 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Abdisamad v. City of Lewiston*, 960 F.3d 56, 60 (1st Cir. 2020) (quoting *Monell*, 436 U.S. at 691). "[T]he plaintiff must show that the custom was 'so well settled and widespread that the policymaking officials of the municipality had either actual or constructive knowledge of it and yet did nothing to end the practice.'" *Off. of Pub. Guardian v. Elliot Hosp.*, 626 F. Supp. 3d 520, 531 (D.N.H. 2022) (internal citation omitted). Therefore, "establishing the existence of a municipal custom requires more than proof that a particular course of action happened on one occasion." *Id.* There is no record evidence, or even an allegation, that the Brewer School Department had previously engaged in conduct of the kind McBreairty complains of. The undisputed record shows that on February 13, 2024, the School Department, through counsel, sent an email to Mr. McBreairty, and a follow up email on February 14, 2024. These isolated communications do not establish a custom or practice.

### c. *Failure to Train*

There is no basis for liability on a failure to train theory. A municipality can be liable under a failure to train theory "where the [municipality's] failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Deliberate indifference requires notice of the training's deficiency. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). There is no allegation or record evidence that this case arises out of a failure to train, or that the Brewer School Department knew or should have known that a failure to train would result in First Amendment retaliation.

10

*d. Final Decisionmaker*

There is no basis for liability based on the actions or decisions of a municipal official with final decision-making authority. While a municipal policy "may be established by a single decision by municipal policymakers under appropriate circumstances," liability of the municipality will only attach where the "decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Kelley*, 288 F.3d at 9. Here, the email was sent by counsel on behalf of the School Department. Plaintiff does not allege, nor could it allege, that counsel for a School Department is a final decisionmaker. Put differently, counsel does not have authority independent of the elected representatives of the School Board to make decisions, let alone establish School Department policy.

The undisputed record also establishes that Principal Slowikowski had nothing to do with the February 13, 2024 email. SMF ¶ 6. To the extent that there is any question as to whether Superintendent Palmer could be considered a final decisionmaker in this context, the answer is no as a matter of law. Under Maine law, local school boards are granted broad authority over the management of their public schools including, among other things, the authority to select a superintendent, determine the course of study, and manage school property. *See generally* 20-A M.R.S. § 1001. And it is the school board, not the superintendent, that is authorized under state law to "adopt policies that govern school administrative units." *Id.* at § 1001(1-A). As this Court noted, "Superintendent Palmer is empowered under Maine law to 'enforce or cause to be enforced all rules of the school board,' 20-A M.R.S. § 1055(7), but that is a far cry from authority to file civil actions on behalf of the City of Brewer or its School Department." Order on Motion to Preliminary Injunction (ECF Doc. 74, PageID #: 662). It is the elected officials who serve the

11

School Department who are the final decisionmakers. Order on Motion to Preliminary Injunction (ECF Doc. 74, PageID #: 662).

Accordingly, the School Department is entitled to judgment as a matter of law of Plaintiff's claim for First Amendment retaliation pursuant to section 1983.

### B. The Individual Defendants, Sued in their Personal Capacities, Are Entitled to Judgment as a Matter of Law

Plaintiff appears to have brought this claim against Superintendent Palmer and Principal Slowikowski in their personal capacities, even though the email was not sent on their behalf, and they entitled to qualified immunity.

A government official is entitled to qualified immunity unless the plaintiff can prove "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Whether a right was clearly established "has two aspects: '(1) the relative clarity of the governing law to a reasonable official on the date of the alleged wrong and (2) whether the specific characteristics of the situation confronted by the official would have made it clear to a reasonable official how the governing law applied in the given situation.'" *Ablordeppey v. Walsh*, 85 F.4th 27, 33 (1st Cir. 2023) (quoting *Lawless v. Town of Freetown*, 63 F.4th 61, 67 (1st Cir. 2023)). A constitutional right is clearly established if "every reasonable official would have understood that what he is doing violates that right" at the time of his conduct. *Tayler v. Barkes*, 575 U.S. 822, 135 (2015).

Plaintiff's claim fails at the outset because there is no record evidence that Superintendent Palmer or Principal Slowikowski took any action that violated Mr. McBreairty's constitutional rights. It is undisputed that the email threatening further action dated February 13, 2024, was sent by counsel, on behalf of the Brewer School Department only. SMF ¶ 8. The email clearly stated

12

"I am writing on behalf of our client the Brewer School Department to demand that you remove certain content from your February 12, 2024 online post…." Nowhere in the email does it say that it is being sent on behalf of Superintendent Palmer, Principal Slowikowski, or any other individuals. SMF ¶ 8. Based on the plain language of the email, this Court previously concluded that "[t]he threat of further action was made, expressly, on behalf of the Brewer School Department." Order on Motion for Preliminary Injunction (ECF Doc. 74, PageID #: 661). For this reason alone, Plaintiff cannot prevail on its claim for First Amendment retaliation against Superintendent Palmer and Principal Slowikowski.

While there is no need to go on to the second prong of the qualified immunity analysis, Plaintiff cannot demonstrate that Superintendent Palmer or Principal Slowikowski violated his clearly established rights. Here, the email from counsel, on behalf of the School Department (not any individuals), acknowledged that much of Mr. McBreairty's article contained his opinions on matters of public concern and recognized his right to express those opinions. SMF ¶ 8. The email went on to identify specific items that the School Department did not believe were constitutionally protected due to their false, defamatory and invasive content, and requested that those specific items be removed. SMF ¶ 8. Even if the individuals could somehow be tied to this email, not every reasonable public official would have realized that asking someone to remove specific content that they believed was unlawful would violate someone's constitutional rights. Further, not every reasonable public official would have realized that a general statement saying "we will be forced to take further action" would violate someone's constitutional rights.

Therefore, the individual defendants are entitled to judgment as a matter of law on Plaintiff's claim for First Amendment retaliation under section 1983.

## II. Defendants are Entitled to Summary Judgment on Plaintiff's Freedom of Speech and Right to Petition Claim Under First Amendment and the Maine Constitution Article I, §§ 4 and 15

Counts II and III are brought under the Maine Civil Rights Act ("MCRA"), 5 M.R.S. § 4682, and allege a violation of Mr. McBreairty's rights to free speech and to petition. The MCRA affords a private right of action to "[a] person whose exercise or enjoyment of the rights secured by the United States Constitution or the laws of the United States or of the rights secured by the Constitution of Maine or the laws of the State has been interfered with, or attempted to be interfered with." 5 M.R.S.A. § 4682(1-A). However, both the Maine Law Court and this Court have recognized that "[t]he Maine Civil Rights Act does not apply to claims where there is no claim of real or threatened violence." *Hewes v. Pangburn*, No 1:21-CV-00125-JDL, 2022 WL 823924, at \*12 (D. Me. 2022); *Bagley v. Raymond Sch. Dept.*, 1999 ME 60, ¶ 10, n.5, 728 A.2d 127 ("The Maine Civil Rights Act is inapplicable to the claims presented. It applies when there has been the use or threat of 'physical force or violence' in an effort to interfere with the exercise of a constitutional right. No claim of violence, real or threatened has been presented by the parents.").

## III. Defendants are Entitled to Dismissal of Count III Because it is Moot

Unlike Counts I and II, which seek damages in addition to prospective relief, Count III seeks only prospective declaratory and injunctive relief. *Compare* Verified Compl. ¶¶ 85-87, 94-95, *with* Verified Compl. ¶ 101. Because Count III seeks only relief that cannot benefit the estate now that the Mr. McBreairty has died, the students that were the subject of the social media post have graduated, and the defendants have stated that they would take no action against a

republication of the social media post by the estate, it must be dismissed as moot.[3] This Court previously held that the School Department's voluntary cessation of any threat against the estate moots a claim for preliminary injunctive relief. Order on motion for Preliminary Injunction (ECF Doc. 74, PageID #: 658-666) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) and *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 45 (1st Cir. 2024)). That same analysis applies equally to the claims for declaratory relief in Count III, which should be dismissed in its entirety as moot for the same reasons previously discussed by this Court.

The First Circuit holds that the death of a plaintiff generally moots any claim for prospective injunctive relief. *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 49 (1st Cir. 2006); *Light v. Town of Livermore*, No. 1:21-CV-00266-JAW, 2022 WL 4016809, at *12 (D. Me. Sept. 2, 2022); *Procurador De Personas Con Impedimentos v. Municipality of San Juan*, 541 F. Supp. 2d 468, 473 (D.P.R. 2008); *Glanz v. Vernick*, 750 F. Supp. 39, 43 (D. Mass. 1990). Other Circuits agree that the First Circuit is in good company in holding that the death of a plaintiff generally moots "claims for prospective relief, whether injunctive or declaratory." *Lancaster v. Sec'y of Navy*, 109 F.4th 283, 289–90 & n.3 (4th Cir. 2024) (collecting cases).[4]

But the death of Mr. McBreairty is not the only event that has overtaken the circumstances of this suit. The other is the graduation of the students that are the subject of the article at issue here. SMF ¶ 16. Count III seeks a prospective declaration that the School Department's policies prohibiting cyber-bullying and hazing of students would not apply to

---

[3] Additionally, as already alluded to above in footnote 2, there is no actual controversy between the parties on this issue. The Brewer School Department does not and has never claimed that Mr. McBreairty must follow its Board policies. With no actual controversy, this Court may not issue a declaration. *See* 28 U.S.C. § 2201.

[4] For this same reason, Plaintiff's request for injunctive relief in Counts I and II should be dismissed as moot.

publication of the social media post. But these policies protect only current students and do not apply to former students, and the former students that were the subject of the article have since graduated. SMF ¶¶ 16-17. The First Circuit has held that claims for declaratory and injunctive relief about application of school policies to particular students become moot when those students graduate and the policies no longer apply to them. *Harris v. Univ. of Massachusetts Lowell*, 43 F.4th 187, 192 (1st Cir. 2022). So too here. Where Count III seeks a declaration about whether policies prohibiting cyber-bullying and hazing of students apply to an article about particular students, those claims are moot now that the students have graduated and so those policies would not be applicable to any republication of the social media post.

Because Count III seeks only declaratory relief regarding application of school policies to a particular article about now former students, where the original author died, and the students have graduated such that any republication of the article by the estate would target former students no longer protected by the policy, and where Defendants have expressly stated that they would not take action against republication by the estate, Count III must be dismissed in its entirety.

## CONCLUSION

For the reasons above, Defendants Brewer School Department, Gregg Palmer, and Brent Slowikowski respectfully request that this Court enter summary judgment in their favor on all counts in the Complaint.

Dated: February 20, 2025

/s/ Melissa A. Hewey
Melissa A. Hewey
Jeana M. McCormick
*Attorneys for Defendants*
*Brewer School Department, Gregg*
*Palmer, and Brent Slowikowski*

16

DRUMMOND WOODSUM
84 Marginal Way, Ste. 600
Portland, ME  04101
(207) 772-1941
mhewey@dwmlaw.com
jmccormick@dwmlaw.com