## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

PATRICIA MCBREAIRTY, as personal
representative of the Estate of Shawn
McBreairty,

        Plaintiff,

    v.

BREWER SCHOOL DEPARTMENT,
GREGG PALMER, in his personal and
official capacities, BRENT SLOWIKOWSKI,
in his personal and official capacities,
MICHELLE MACDONALD, in her personal
and official capacities,

        Defendants.

Case No. 1:24-cv-00053-LEW

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS BREWER SCHOOL
DEPARTMENT, GREGG PALMER,
AND BRENT SLOWIKOWSKI'S
MOTION FOR SUMMARY JUDGMENT**

Shawn McBreairty published an article that offended the government and he was threatened with sanctions including a threat of use of a criminal statute, civil claims, and administrative action if he did not remove it. Fearing the government's credible threat of action, he removed it. As a journalist, he then published the threat, but that, too, was met with a threat of sanctions, and Mr. McBreairty fearfully removed it. He is entitled to recover for the government's unlawful and unconstitutional deprivation of his rights. The government is not entitled to summary judgment and their motion for summary judgment (ECF No. 92) should be denied.

### MEMORANDUM OF POINTS AND AUTHORITIES

**1.0    INTRODUCTION**

To censor criticism, Melissa Hewey, for all Defendants, threatened criminal and civil action if Shawn McBreairty did not remove lawful content from publication. Defendants invoked criminal, civil, and administrative sanctions, including Brewer School Department Policies ACAD, ACAF, and JICK. Shawn McBreairty succumbed to the threats. His claims against the

defendants are meritorious.[1]

## 2.0    FACTS[2]

### 2.1    The Petition

Brewer School Department permits students to use the bathroom corresponding to their gender identity, rather than their biological sex. Complaint at ¶ 10.  HW and CG are students at Brewer High.[3] *See* Complaint at ¶11; ECF No. 1-1, Declaration of HW ("HW Decl."). HW and CG objected to this policy.  *See* Complaint at ¶ 13; HW Decl. at ¶ 8.  HW and CG drafted a petition to try to convince Brewer High School and Defendant Principal Brent Slowikowski to change school policy to address their concerns.   *See* Complaint at ¶ 17; HW Decl. at ¶ 13.  HW and CG distributed this petition to other students, and many students signed the petition.  *See* Complaint at ¶ 18; HW Decl. at ¶ 14.

The Defendants led HW and CG to believe that they would be prosecuted for a "hate crime" or sued by the school, and they would be disciplined by the school if they continued to circulate the petition.  *See* Complaint at ¶ 31; HW Decl. at ¶ 21.  HW and CG immediately ceased promoting the petition.  *See* Complaint at ¶ 34; HW Decl. at ¶ 23. Thereafter, HW and HW's father met with Superintendent Gregg Palmer and Brewer High School Principal Brent Slowikowski. Complaint at ¶ 36; HW Decl. at ¶ 25; ECF No. 1-2, Declaration of Phil Wells (hereinafter "PW Decl.") at ¶ 4.  At the second meeting, Superintendent Palmer and Principal Slowikowski reiterated the Brewer School Department would not permit nor tolerate the petition being circulated.  Complaint at ¶ 38;

---

[1] Even though the original author, Shawn McBreairty, has passed away, his Estate has stepped into his shoes and retains the same desire to republish the article.  *See* ECF No. 59-1, Declaration of Patricia McBreairty ("PM Decl.").

[2] The facts are supported by the Verified Complaint ("Complaint") and its exhibits, which have been adopted by the Estate.  *See* PM Decl. at ¶ 4.

[3] Due to their ages, all students are referred to solely by their initials.

Plaintiff's Opposition to Defendants Motion for Summary Judgment

HW Decl. at ¶ 26; PW Decl. at ¶ 6.   Superintendent Palmer and Principal Slowikowski reiterated that there would be adverse action taken against HW, and HW's father believed that those threats were aimed at him as well.  *See* Complaint at ¶ 39; HW Decl. at ¶ 27; Decl. at ¶ 7.

Mr. McBreairty wrote about the incident.  *See* Complaint at ¶ 43; PW Decl. at ¶ 10.

### 2.2    The Article

Shawn McBreairty was a journalist and an Educational Advocate who petitioned for change in education policy and law.   Complaint at ¶ 9. After reviewing evidence, speaking to witnesses, and doing more than reasonable research, on February 12, 2024, Shawn published "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present" on the website *[your]NEWS* (hereafter the "Article").   Complaint at ¶ 46; ECF No. 1-3.   In the Article, Shawn discussed his opinions about the underlying facts and concerns. Complaint at ¶ 49. Shawn reported on the students' petition that, over the course of three days, garnered hundreds of signatures. Complaint at ¶ 50.  Shawn reported how Brewer High School teacher Defendant Michelle MacDonald reacted negatively to the petition. Complaint at ¶ 51.   Specifically, Shawn reported that MacDonald threatened the students circulating the petition.  He wrote about how Principal Brent Slowiskowki, precluded the students from circulating the petition.   Complaint at ¶ 52.   Shawn described MacDonald by quoting this Court's description of her in *Macdonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 252 (D. Me.  Jan. 12, 2023).   Complaint at ¶ 53. Shawn described the facts of the *MacDonald* case as including MacDonald harassing students who did not agree with her viewpoints.  Complaint at ¶ 54.

Shawn then reported on and reproduced a letter from Palmer and Slowikowski that was sent to Brewer School Department Families, Students, and Staff addressing "hate directed at members of our school committee," while acknowledging, at least on the surface, "competing

viewpoints," and instructing recipients to "celebrate students" notwithstanding those competing viewpoints.  Complaint at ¶ 55. Shawn reported on the poor academic outcomes at Brewer High School, criticized the Defendants' law firm, and criticized the Brewer School Committee and its chair, Kevin Forest.  Complaint at ¶ 56.  Shawn provided his understanding of the holding in *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11 (Me. 2014).  Shawn described Brewer School Department policies as being unsafe.  Complaint at ¶ 58.  Shawn encouraged the public to attend the February 12, 2024, Brewer School Committee meeting and provide public comment for the issues under consideration.  Complaint at ¶ 59.

### 2.3    Brewer's Demands

On February 13, 2024, counsel for the defendants, Melissa Hewey of Drummond Woodsum, acting on their behalf, at their behest, under their actual and/or apparent authority, threatened Shawn that, if he did not remove the Article from circulation by noon the next day, Defendants would be "forced to take further action" against him.  Complaint at ¶ 60; ECF No. 1-5. Specifically, Defendants claimed that the Article invaded HD's privacy, violated Brewer School Department policies ACAD, ACAF, and JICK, and caused HD and MacDonald severe distress under 20-A M.R.S. Section 6553 and 6554. Complaint at ¶ 62.

While it may seem absurd to fear a threat of using Brewer School Department policies ACAD, ACAF, and JICK, against him, McBreairty's fear was not in a vacuum.  Previously, Attorney Hewey and Drummond Woodsum had filed a complaint against McBreairty seeking sanctions against him for violating identical policies in the Hermon school district.  (ECF No. 23-1).  The lower court had denied an Anti-SLAPP motion on those claims, and the Maine Supreme Court dismissed his appeal as moot when he perished.  *Hermon School Dept. v. McBreairty,*

Docket No. PENSC-CIV-2022-00056 (Penobscot Sup. Ct. May 16, 2023); *Hermon School Dept. v. Estate of Shawn McBreairty*, Docket No. Pen-23-191 (Me. Jan. 14, 2025).

Shawn lawfully obtained the photograph of HD, but Defendants asserted that Shawn could not lawfully publish it, claiming that he violated 17-A M.R.S. Section 511. Complaint at ¶ 63. 17-A M.R.S. Section 511 is a criminal statute. Shawn reluctantly and fearfully removed the article from publication.  Complaint at ¶ 66.

Depublishing the article for even a day caused an irrevocable deprivation of speech. Complaint at ¶ 67.  Shawn desired to republish the Article and intended to do so upon obtaining the requested injunction and/or prevailing in this action.  Complaint at ¶ 70.  His estate continues to desire to republish the Article.  PM Decl. at ¶ 5.  However, still the Defendants refused to retract their threats at any point when McBreairty was alive.

In place of the Article, Shawn published a copy of Defendants' threat.  Complaint at ¶ 71. That threat was from an agent of the government threatening formal legal action against Shawn. Complaint at ¶ 72.  Publishing the threatening email itself was reporting on an issue by a public body on a matter of public concern.  Complaint at ¶ 73.

On February 14, 2024, Defendants acknowledged the Article was removed, but newly demanded that the threatening email be removed because of the content they chose to identify and disclose.  Complaint at ¶ 74; ECF No. 1-6.  Shawn complied with this edict, but he intended to republish the demand letter upon prevailing in this matter.  Complaint at ¶ 76.  The Estate does as well.  *See* PM Decl. at ¶ 6.  Defendants' threats to enforce the policies are real; counsel for Defendants, Attorney Hewey, confirmed such on February 22, 2024.  *See* ECF No. 23-3. Shawn McBreairty suffered emotional distress on account of Defendants' unconstitutional acts.  ECF No. 1 at ¶ 95.

**3.0    LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Fed. R. Civ. P. 56, partial summary judgment may be granted to resolve a claim or defense, or part of a claim or defense. *See* Fed. R. Civ. P. 56(a), (g). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

**4.0    LEGAL ARGUMENT**

Plaintiff brings three claims against Defendants:  a) First Amendment retaliation: 42 U.S.C. § 1983; b) 5 M.R.S. § 4682 for violation of the First Amendment and of Art. I., §§ 4 & 15 of the Maine Constitution; and c) a declaratory judgment that the Defendants may not try to apply their internal policies to an external party. 42 U.S.C. § 1983 provides a remedy for infringement of constitutional rights. *Alfano v. Lynch*, 847 F.3d 71, 74 n.1 (1st Cir. 2017).  For relief under 5 M.R.S. § 4682, the facts establish that Defendants intentionally interfered with Plaintiff's constitutional rights. *See* 5 M.R.S. § 4682; *Andrews v. Dep't of Envt. Prot.*, 1998 ME 198, ¶ 23, 716 A.2d 212.  There is no dispute that Defendants were acting under color of state law or threatened Shawn.  And Defendants interfered with/transgressed Plaintiff's constitutional rights. Nor, as set forth in Plaintiff's own motion for partial summary judgment (ECF No. 90) could the policies apply to Mr. McBreairty or his estate.  Thus, Defendants are not entitled to summary judgment.

### 4.1    Defendants Violated Plaintiff's Rights

For their first defense, Defendants claim that *Monell* bars liability for Brewer School Department and qualified immunity bars liability as against Palmer and Slowikowski in their individual capacities. Both defenses rely on the argument that no rights were violated—this is incorrect.

#### 4.1.1    Defendants' Threats Violated Plaintiff's Speech

The government does not get to threaten citizens for publishing truthful information. Even stolen top secret documents are lawful to publish. *See New York Times Co. v. United States*, 403 U.S. 713 (1971). The right to publish is the bedrock for freedom of speech and of the press. *See McMillan v. Carlson*, 369 F. Supp. 1182, 1185 (D. Mass. 1973) ("The right to publish is firmly embedded in the First Amendment and is central to the constitutional guarantee of free speech and a free press.") (collecting cases); *Branzburg v. Hayes*, 408 U.S. 665, 727 (1972) ("the right to publish is central to the First Amendment and basic to the existence of constitutional democracy.").

Defendants' actions were unconstitutional viewpoint discrimination. "[D]isfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (internal quotation marks omitted). "A viewpoint need not be political; any form of support or opposition to an idea could be considered a viewpoint." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring in part) ("The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses.")). Defendants prohibited Shawn from criticizing students, staff, their actions, and policies on an

ongoing debate on matters of public concern.   This is unconstitutional content/viewpoint discrimination.

Content-based and viewpoint-based restrictions are subject to strict scrutiny. *See McCullen v. Coakley*, 573 U.S. 464, 478 (2014), "[s]uch 'requires the government to demonstrate that the restriction advances a 'compelling interest' and is 'narrowly tailored to achieve that interest,'" *Signs for Jesus v. Town of Pembroke*, 977 F.3d 93, 101 (1st Cir. 2020) (*quoting Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015)).  Such restrictions must also be "necessary."  *R.A.V.,* 505 U.S. at 395. The demands for censorship serve no compelling interest and are not narrowly tailored. When First Amendment protections exist, "claimed justifications for denying or burdening free speech are to be subjected to careful and rigid scrutiny."   *McMillan*, 369 F. Supp. at 1186. Defendants have the burden to establish whether their infringement "furthers an important or substantial governmental interest; [that] the governmental interest is unrelated to the suppression of free expression; and [that] the governmental interest is unrelated to the suppression of free expression; and [that] the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id*. (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968).  Defendants have not, and cannot, meet their burden on strict scrutiny.

Prohibiting criticism of Defendants and reporting on a petition is unconstitutional viewpoint and content-based discrimination. In their letter, Defendants purport to recognize Shawn's right to report on and opine on matters of public concern, but then concoct pretextual reasons to demand they be removed.  They raise a concern with a) a picture of HD; b) statements that identify and discuss HD; and c) the statements about MacDonald and her motivations.  Yet, reporting on high school students or teachers is not unprotected or uncommon speech.  For example, on July 15, 2023, the *Bangor Daily News* published "*Weeks in the Maine Woods are*

*Brewer High School's Answer to Absenteeism*".  *See* ECF No. 4-1.[4] That article was laudatory of Brewer High School and Defendant Superintendent Palmer naming minor students and teachers, and showing pictures of them.  Nobody minded being praised—and, no one minds that HD and MacDonald's child were publicly identified as Honor Roll students.[5]  But, when Shawn did the same, on a different subject matter, and with a negative opinion, he was threatened by the government with legal action for criticizing them.  Thus, Defendants engaged in unconstitutional viewpoint discrimination.

### 4.1.2    Defendants Took Adverse Action Against Plaintiff

The First Amendment "guarantees not only freedom from government censorship, but also freedom from official retaliation on the basis of protected speech." *Mattei v. Dunbar*, 217 F. Supp. 3d 367, 373 (D. Mass. 2016) (*citing  Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  "Informal measures, such as the 'threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment also."  *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting *Bantam Books, supra* at 67).  "The relevant inquiry is not whether the defendant was successful in completing the retaliatory act as intended, or whether the act was successful in preventing the plaintiff from engaging in further speech; rather, it is whether the act as actually completed 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights'"  *Mattei v. Dunbar*, 217 F. Supp. 3d 367, 376 (D. Mass. 2016) quoting

---

[4] Available online at  https://www.bangordailynews.com/2023/07/15/bangor/brewer-high-school-woods-program-joam40zk0w/ . *See also* ECF No. 4-2, Authenticating Declaration of Cassidy S. Flavin ("CSF Decl.") at ¶ 4.

[5] *See* BDN Community, "Hampden Academy quarter 2 honor roll", BANGOR DAILY NEWS (Feb. 21, 2024), at  https://www.bangordailynews.com/2024/02/21/bdn-maine/hampden-academy-quarter-2-honor-roll-2/  (ECF No. 4-6; CSF Decl. at ¶ 8); Shauna McGinnis, "Q2 Honor Roll 2024", BREWER HIGH SCHOOL NEWS (Feb. 2, 2024), at https://www.brewerhs.org/o/brewer-high-school/article/1441811 (ECF No. 4-7; CSF Decl. at ¶ 9).

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). While Defendants should have known their threat was baseless, the same Attorney and firm filed suit against Shawn on similarly unsupportable theories in *Hermon School Department v. McBreairty*, Docket No. CV-2022-00056 (Penobscot Sup. Ct., filed May 3, 2022). Complaint at ¶ 65. Attorney Hewey's threat would deter any person of ordinary firmness from publishing. Defendants' threats were adverse actions. *Berge v. Sch. Comm. of Gloucester*, 107 F.4th, 33, 44 (1st Cir. 2024); *Cantrell v. Brunswick Me. Police*, 2024 U.S. Dist. LEXIS 77118, at *19-20 (D. Me. Apr. 29, 2024).

Although Mr. McBreairty might not have deleted a tweet and may have spoken about the matter on a podcast, the article was removed. The email was removed. Hewey made no threats about the tweet or podcast, so Mr. McBreairty was not chilled as to those. Mr. McBreairty's history with Hewey demonstrated the threat of civil, criminal, or administrative charges was real. Thus, her threats were adverse action.

### 4.1.3    The Speech is Constitutionally Protected

Defendants assert that the photograph, statements about the student, and statements regarding MacDonald are not constitutionally protected. They are incorrect. Defendants claim the speech is unprotected due it being "false or defamatory," without demonstrating a single falsehood. Particularly where the media is reporting on the government's conduct, it is chilling to imagine giving the government the power to decide which reporting is "false."

> It cannot be the duty, because it is not the right, of the state to protect the public against false doctrine. The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech and religion. In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the truth from the false for us.[6]

---

[6] *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J. concurring).

While there were no false statements in the article, even if there were, that does not give the government any power to threaten to take action against the publisher. There is no "general exception to the First Amendment for false statements." *United States v. Alvarez*, 567 U.S. 709, 718 (2012). The government is a poor arbiter of truth. History is replete with examples of governments lying to their constituents. As Justice Black observed in *New York Times v. United States*, 403 U.S. 713, 717 (1971):

> [o]nly a free and unrestrained press can effectively expose deception in government. And paramount among the responsibilities of a free press is the duty to prevent any part of the government from deceiving the people and sending them off to distant lands to die of foreign fevers and foreign shot and shell … In revealing the workings of government that led to the Vietnam war, the newspapers nobly did precisely that which the Founders hoped and trusted they would do.

That is why the First Amendment protects freedom of the press. To accept Defendants' censorship as a necessary, compelling government interest would make the term "abuse of discretion" blush with embarrassment. At worst, the government disagrees with Shawn's opinions. "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch*, 418 U.S. 323, 339-40 (1974). Further, the burden falls on the government to prove the statements are materially false, and there is no evidence of such. *Pan Am Sys. v. Atl. Northeast Rails & Ports, Inc.*, 804 F.3d 59, 66 (1st Cir. 2015) (discussing burden in defamation matters on statements of public concern). **Defendants offer no evidence of falsity**, let alone attempt to do so. Their Statement of Material Facts (ECF No. 93) is **utterly silent** on that question.[7] Thus, they fail on defending that its purportedly actionable defamation.[8]

---

[7] The claim on p. 7 of their motion that a suggestion that HD committed sexual assault is "undisputedly false on this record" without a citation or demonstration that the actual statement is actionable.

[8] They also fail to attempt to demonstrate requisite fault, whether it be negligence or actual malice, on these matters of public concern, per *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974).

Nor is it unprotected merely because the speech was monetized or, as they now claim, "exploit[ed] the value of another's name or image"—all news and accompanying photographs feature the names and likenesses of newsmakers. "That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-502 (1952). "*Heed Their Rising Voices*," the publication at issue in *New York Times v. Sullivan* was a paid advertisement. 376 U.S. 254, 256 (1964); *accord Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988) (profit motive irrelevant when determining whether speech is political or commercial).

Defendants also claim the statements and photo were prohibited invasions of privacy. They were not and, moreover, "invasion of privacy" yields to the Constitution. "[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103 (1979). Shawn (and the Estate) had a clearly established right to publish lawfully-acquired information. *See, e.g., Berge v. Sch. Comm. of Gloucester,* 107 F.4th 33 (1st Cir. 2024); *Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007). Complaint at ¶ 64. Even *stolen top secret documents* are lawful to publish.[9] *See New York Times Co. v. United States*, 403

---

[9] The Supreme Court has established a robust First Amendment right to publish information—even illegal information—and has built strong, tall, and obvious barriers against any governmental intrusion into that right. *See e.g., Fla. Star v. B. J. F.,* 491 U.S. 524 (1989); *Smith v. Daily Mail Pub. Co*., 443 U.S. 97 (1979); *Okla. Pub. Co. v. Dist. Court of Okla*., 430 U.S. 308 (1977); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975); *Miami Herald v. Tornillo*, 418 U.S. 241 (1974); *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971); *N.Y. Times v. United States*, 403 U.S. 713 (1971) ("Pentagon Papers"); *N.Y. Times v. Sullivan*, 376 U.S. 254 (1964); *Grosjean v. Am. Press Co*., 297 U.S. 233 (1936); *Near v. Minnesota*, 283 U.S. 697 (1931).

U.S. 713 (1971). While the "privacy" claim is factually baseless, speaking on matters of public concern overrides any right to privacy. *See, e.g., Florida Star v. B.J.F.*, 491 U.S. 524 (1989); *Daury v. Smith*, 842 F.2d 9, 14 (1st Cir. 1988). There is no expectation of privacy in a public place—any girl (or, here, anyone who identifies themselves as female) could lawfully be present in the bathroom and observe who was there. *See Rivera-Rivera v. United States*, No. 11-2132, 2013 U.S. App. LEXIS 26419, at *1 (1st Cir. Nov. 5, 2013) (finding a lack of a "legitimate expectation of privacy" in a "public restroom"). The fact that it is the public portion of *a bathroom* is of no moment—matters of public concern can occur there. This was not a photograph of individuals engaged in private acts.[10] The statute only applies where there is a "justifiable expectation" of privacy (*State v. Strong*, 2013 ME 21, ¶ 17, 60 A.3d 1286, 1291), and per the First Circuit's decision in *Rivera-Rivera, supra,* there is no such expectation here. In light of the foregoing, Defendants fail to show they did not violate Plaintiff's First Amendment Rights.

### 4.2    *Monell* Does Not Bar Recovery

Brewer is liable under *Monell* for the official acts taken by its counsel at the decision and direction of its agents. "[I]t is when [the] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only

---

[10] Nor is presence in a stall in a public restroom fully protected from outsiders. "Even when an individual has entered a stall, there is no legitimate expectation of privacy to the extent he may be seen by someone in the common area of the restroom." *Wright v. Bella Vista Police Dep't*, 452 F. Supp. 3d 830, 841 (W.D. Ark. 2020), citing *United States v. White*, 890 F.2d 1012 (8th Cir. 1989).

once or to be taken repeatedly."). A municipal government is liable when it has caused the deprivation of a constitutional right through an official policy or custom. *See Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 181 (1st Cir. 2011). It is disingenuous for Brewer to disclaim liability. Hewey's demands were expressly on behalf of Brewer (and the others). Brewer itself admits "the Brewer School Department decided that it had to try to get Mr. McBreairty to take down" the speech it did not like, rendering it official policy. ECF No. 93, Brewer Statement of Material Facts at ¶ 6. Either she was officially speaking for Brewer or she was acting without Brewer's authority, and there is no evidence of the latter.

Alternately, Brewer is liable because Superintendent Palmer retained and directed Hewey for the purpose of threatening Shawn McBreairty. "One way of establishing a policy or custom is by showing that 'a person with final policy making authority' caused the supposed constitutional injury." *Rodríguez*, 659 F.3d at 181 (quoting *Welch v. Ciampa*, 542 F.3d 927, 941–42 (1st Cir.2008)). Municipal liability may be imposed for a single decision by a final policy maker. *Rodríguez–García v. Miranda–Marín*, 610 F.3d 756, 770 (1st Cir. 2010). As the Court noted, "Superintendent Palmer is empowered under Maine law to 'enforce or cause to be enforced all rules of the school board,' 20-A M.R.A. § 1055(7)[.]" (ECF No. 74, PageID #: 662). While he may not, as the Court noted, be able to direct the filing of civil actions, he did direct the adverse action here—Hewey's threatening communications. Brewer, in its motion, does not argue that Palmer was not the final decisionmaker as to Hewey's actions; in fact, they take pains to distinguish Slowikowski as having nothing to do with it (which is false, as his actions caused Palmer/Brewer to through Hewey). Thus, Brewer is not entitled to summary judgment under *Monell*.

### 4.3    Qualified Immunity Does Not Bar Recovery

Defendants Palmer & Slowikowski do not enjoy qualified immunity.[11] Public officials are given qualified immunity from personal liability for violating the Constitution for actions taken in the exercise of discretionary functions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *Barton v. Clancy*, 632 F.3d 9, 21 (1st Cir. 2011). Courts apply a two-prong analysis in determining qualified immunity. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).  These prongs are "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Id*.  Defendants are not entitled to qualified immunity.  Defendants violated clearly established rights.

The right to publish without government interference under the First Amendment is clearly established, long-cherished, and jealously guarded.  *See McMillan*, 369 F. Supp. at 1185 ("The right to publish is firmly embedded in the First Amendment and is central to the constitutional guarantee of free speech and a free press.") (collecting cases*); see also Red Linon Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 390 (1969) ("It is the purpose of the First Amendment to preserve

---

[11] To the extent applicable, Plaintiff challenges the intertwined doctrines of *Monell* and qualified immunity to the extent they would combine to make no person or entity liable for a violation of constitutional rights under Section 1983, doctrines which undermine the intent and language of the statute.  *See, e.g., Ventura v. Rutledge*, 398 F. Supp. 3d 682, 697 n.6 (E.D. Cal. 2019) ("[T]his judge joins with those who have endorsed a complete re-examination of the doctrine which, as it is currently applied, mandates illogical, unjust, and puzzling results in many cases."); *Manzanares v. Roosevelt Cty. Adult Det. Ctr.*, 331 F. Supp. 3d 1260, 1294 n.10 (D.N.M. 2018) ("Judges and scholars alike have thus increasingly arrived at the conclusion that the contemporary doctrine of qualified immunity is unmoored from any lawful justification.") (citation and quotation marks omitted); *Zadeh v. Robinson*, 928 F.3d 457, 480-81 (5th Cir. 2019) (Willet, J., concurring-in-part and dissenting-in-part) ("Indeed, it's curious how this entrenched, judge-created doctrine excuses constitutional violations by limiting the statute Congress passed to redress constitutional violations.").  Plaintiff recognizes that this Court must follow these doctrines until the Supreme Court reconsiders its approach, which Plaintiff would challenge in this case.

an uninhibited marketplace of ideas.... It is the right of the public to receive suitable access to social, political, esthetic, moral and other ideas and experiences...."); *Branzburg v. Hayes*, 408 U.S. 665, 727 (1972) ("the right to publish is central to the First Amendment and basic to the existence of constitutional democracy."); *Kleindienst v. Mandel*, 408 U.S. 753, 771 (1972) ("The First Amendment involves not only the right to speak and publish but also the right to hear, to learn, to know.").  "[S]peech that can be fairly considered as relating to any matter of political, social, or other concern to the community or that is a subject of legitimate news interest — *i.e.,* a subject of general interest and of value and concern to the public — definitely fits the bill." *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 42 (1st Cir. 2024)(cleaned up, and highlighting the protections in publishing on matters of public concern.  Defendants admit that the publications were on matters of public concern. (ECF No. 92, PageID #: 821).  Thus, "[i]f the First Amendment means anything in a situation like this, it is that public officials cannot — as they did here — threaten a person with legal action under an obviously inapt statute simply because he published speech they did not like."  *Berge*, *supra* at 43.  Despite an awareness of the holding in *Berge*, Defendants make no effort to distinguish it.  Plaintiff could not possibly be liable under the statute and policies cited in Hewey's letter, and no reasonable actor could believe he was.  Thus, Palmer and Slowikowski cannot enjoy qualified immunity.

Instead, Defendants argue causation, that the letter was not sent by Hewey on Palmer/Slowikowski's behalf.  Palmer admits, however, that "we decided that we had to try to get Mr. McBreairty to take the portions of the post down" that were disfavored.  (ECF No. 16-1 at ¶ 11).  "We" necessarily includes Palmer himself.  While Palmer asserts that Slowikowski had no role in the email being sent, his assertion is conclusory and further discovery is required.  If he was part of the "we", then Palmer himself appears to belie his own conclusion.  Slowikowski has

submitted no testimony from himself.  Given the involvement of Slowikowski as alleged generally in the Verified Complaint (ECF No. 1), there is, at a minimum, a genuine issue of material fact in dispute as to Slowikowski's role.  Thus, neither Palmer nor Slowikowski are entitled to summary judgment on the question of causation, whether under a qualified immunity theory or otherwise.

### 4.4    The MCRA Claim is Valid; Defendants Ignore a Statutory Amendment

Plaintiff's claims under 5 M.R.S. § 4682 are valid.  Defendants' citation to *Hewes v. Pangburn*, 2022 U.S. Dist. LEXIS 48822, at *35 (D. Me. Mar. 18, 2022), and *Bagley v. Raymond Sch. Dep't*, 1999 ME 60, ¶ 10 n.5, 728 A.2d 127, 131 n.5, for the proposition that any such claims require a use or threat of physical force demonstrates either a shocking lack of candor or incompetence.  In 2023, the Maine legislature enacted 2023 Me. SP 365 which, by its title, "Extend[ed] the Protections of the Maine Civil Rights Act to Actions That Cause Emotional Distress or Fear of Violence[.]"  The amendment introduced a disjunctive clause, such that, independently, interference with the state or the Federal constitutions by " Engaging in any conduct that would cause a reasonable person to suffer emotional distress or to fear death or bodily injury to that person or to a close relation" is now actionable, without any force or threat against person or property.  5 M.R.S. § 4682(1-A)(B)(5).  Shawn McBreairty suffered emotional distress on account of Defendants' unconstitutional acts. ECF No. 1 at ¶ 95.  Given Hewey's history of taking adverse action against McBreairty, *e.g.,* ECF No. 23-1 at ¶ 6 & ECF No. 23-2, it was reasonable for McBreairty to suffer emotional distress. Any reasonable person would suffer emotional distress when threatened by Defendants and their counsel, especially in light of Attorney Hewey's history.

Even under the now-superseded standard, Defendants are not entitled to summary judgment.  All government action is fundamentally under the threat of physical force—Eric Garner died because he sold loose cigarettes in violation of tax law. *See Matter of Carr v. de Blasio*, 297

A.D. 3d 124 (1st Dept. N.Y. 2021); Petitt, Skylar, *Tyranny Prevention:  A "Core" Purpose of the Second Amendment,* 492 S.ILL.U.L.J. 492 & n. 165 (2020) ("All law is ultimately enforced at gunpoint.")  Whether it be physically arresting McBreairty for alleged criminal action or taking civil action (as court officers/marshals use physical force to enforce judgments), Hewey's threat of legal action necessarily was a threat of the use of physical force.  Thus, Defendants are not entitled to summary judgment on the MCRA claims.

### 4.5    Count III is Not Moot

In Count III, Plaintiff seeks declaratory relief that Brewer Policies ACAD, ACAF, and JICK do not govern or restrict publication of the Article, the letter, and/or any and all related matter.  Defendants assert that this count is now moot because a) Mr. McBreairty is deceased; b) the affected students have graduated and are no longer covered by the policies; and c) Defendants have asserted they would not take action against the Estate for republication.  When a defendant asserts that an event has mooted a case, "it bears the heavy burden of persuading the court that there is no longer a live controversy."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC) Inc.*, 528 U.S. 167, 189 (2000); *Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013); *Conservation Law Found. v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004) (finding that the party invoking the doctrine of mootness has the burden of establishing mootness).  Defendants have not met their burden.

As to Mr. McBreairty's death, the threats were as to the publication of the Article and the letter—they were not personal to Shawn McBreairty.  The Estate plans to republish them.  Thus, his passing does not moot the claim.

For starters, the Defendants are simply lying about the mootness doctrine by stating that since HD graduated, they have no further interests here.  But the threat encompassed issues

surrounding teachers and other students at the school.  This was discussed at the preliminary injunction hearing, but despite the ongoing concerns being raised, the Court appears to have overlooked it in its order.  Nevertheless, even if the threat did not warrant a preliminary injunction, HD's graduation does not moot the case; if they threatened him then on behalf of students in a photo and teachers, the fact that HD graduated is of no effect.

As to the graduation of the students, Defendants are essentially arguing that they can violate the Constitution so long as they are doing it relative to high school seniors.  If Mr. McBreairty had not passed, the capable-of-repetition doctrine would apply. *Gulf of Me. Fishermen's Alliance v. Daley*, 292 F.3d 84, 89 (1st Cir. 2002).   The logical bankruptcy of this argument is stark – *every constitutional violation involving a high school senior will become moot within nine months – a blink of an eye in litigation time.*

But that doctrine does not end the inquiry.  Defendants do not show that the self-imposed obligation to take action on behalf of students does not apply to alumni.  In essence, they are merely asking the Court to take their word that they won't take action against the Estate.  This is a credibility determination unfit for summary judgment, and even if they have finally decided that they do not want to violate the Constitution anymore, they must answer for their violations in the past.  They cannot simply play "hide and seek" with the Constitution.

Moreover, this bleeds into the third argument, that they have asserted that they will not attempt to enforce the policies regarding the Article and letter if they are republished.  Yet, the "voluntary cessation" doctrine serves as an exception to mootness. *Friends of the Earth*, 528 U.S. at 189 ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice") (citations omitted).  When a defendant voluntarily ceases committing the offending activity, courts impose additional

requirements to ensure that the defendant is not "temporarily alter[ing] questionable behavior" in order to evade judicial review. *Catholic Bishops*, 705 F.3d at 54 (citation omitted). Voluntary cessation does not render a case moot unless the defendant meets the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. at 55 (citations omitted). They do not meet this burden. They have not repudiated the letter—not a single defendant has. The defendants in *Berge* successfully mooted a declaratory relief claim because "defendants' counsel represented that no defendant reserves *any* right to take *any* action against" the plaintiff. 107 F.4th at 45 (emphasis in original). In contrast, neither Brewer nor Palmer. Slowikowski, or MacDonald have made such a representation. Thus, Count III is not moot.

**5.0    CONCLUSION**

Defendants violated Plaintiff's right to free speech when they threatened criminal, civil, and administrative action on account of the publication of the Article and the threatening email. They are accountable for their actions, which fly in the face of clearly-established law. They cannot avoid liability for the actions taken by Hewey, their appointed agent, nor can they do so with tricks like ignoring statutory amendments and purported claims of mootness. In light of the foregoing, Defendants' motion for summary judgment should be denied.

Dated: March 13, 2025.                              Respectfully Submitted,

/s/ Robert J. Morris                                Marc J. Randazza (*pro hac vice*)
Robert J. Morris, II (ME Bar No. 010402)            *Lead Counsel*
HOUSER, LLP                                         RANDAZZA LEGAL GROUP, PLLC
400 TradeCenter, Suite 5900                         30 Western Avenue
Woburn, MA 01801                                    Gloucester, MA 01930
Tel: (339) 203-6498                                 Tel: (888) 887-1776
Email: rmorris@houser-law.com                       Email: ecf@randazza.com

                                                    Attorneys for Plaintiff,
                                                    Patricia McBreairty

Case No. 1:24-cv-00053-LEW

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 13, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


/s/ Robert J. Morris
Robert J. Morris