UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

PATRICIA MCBREAIRTY, as                )
Personal Representative of the Estate    )
of Shawn McBreairty,                    )
                                        )
              Plaintiff                 )
                                        )
      v.                                )        No. 1:24-cv-00053-LEW
                                        )
BREWER SCHOOL DEPARTMENT,      )
GREGG PALMER, BRENT              )
SLOWIKOWSKI, and MICHELLE       )
MACDONALD,                              )
                                        )
              Defendants                 )

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND
MOTION FOR RULE 56(d) DISCOVERY**

The matter is before the Court on Defendants Brewer School Department, Gregg
Palmer, and Brent Slowikowski's Motion for Summary Judgment (ECF No. 92) and
Plaintiff Patricia McBreairty's Motion for Partial Summary Judgment (ECF No. 90) and
Motion for Leave to Conduct Rule 56(d) Discovery (ECF No. 103).

**BACKGROUND**

In this action, Patricia McBreairty, on behalf of her husband's estate ("the Estate"),
claims the Defendants violated her late husband's First Amendment rights by threatening
litigation in response to an article he published concerning a transgender student's access
to the girls' restroom at Brewer High School and the Defendants' involvement in related
matters. The Estate asserts three causes of action: (1) retaliation against the exercise of

First Amendment rights made applicable to the States under the Fourteenth Amendment, in violation of the United States Constitution, made actionable under 42 U.S.C. § 1983; (2) a parallel claim based on the Maine State Constitution, made actionable under 5 M.R.S. § 4682; and (3) a claim for declaratory judgment that certain Brewer School Department policies had and have no application to McBreairty or his Article.

Through their Motion for Summary Judgment, Defendants seek judgment in their favor on all claims asserted in McBreairty's Complaint. The Estate opposes the Motion, in part, with its own Motion for Rule 56(d) Discovery. The Estate has also filed its own Motion for Partial Summary Judgment, requesting affirmative relief on the declaratory judgment claim.

The following background narrative is based on the parties' Local Rule 56 statements of material facts and the record cited in support of their statements.[1] The narrative also relates some uncontested facts established in the pleadings and key exhibits. The narrative states the facts in the light most favorable to the Estate.[2]

---

The Brewer School Department permits students to use the restroom corresponding to their gender identity, rather than their biological sex. Depending on the circumstances of the student in question, Brewer's policy may or may not be compelled by Maine law. *See Doe v Regional Sch. Unit 26*, 86 A.3d 600, 606 (Me. 2014) (holding that a school

---

[1] *See* ECF Nos. 91, 93, 102, 105, 113, 115.

[2] To the extent the Estate seeks summary judgment on Count III, the facts are not in dispute.

discriminates on the basis of sex in violation of the Maine Human Rights Act if it treats students differently in regard to bathroom access solely because of their status as transgender).[3]

HW and CG are students at Brewer High School.  HW and CG objected to the restroom policy and started a petition in opposition to it.  The reaction of the school was not moderate.  Defendants admit that they said things to HW and CG that made them understand that they would not only be disciplined if they persisted with the petition effort, but that they would also be either prosecuted for a "hate crime" or sued by the School Department, perhaps both.  HW and CG immediately ceased promoting the petition.

Shawn McBrearty wrote about the controversy.  After reviewing evidence, speaking to witnesses, and doing research, on February 12, 2024, Mr. McBrearty published "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present" on the website *[your]NEWS* (hereafter "the Article"), Compl. Ex. 3 (ECF No. 1-3).  In the Article, Mr. McBrearty related his opinions about the underlying facts and concerns related to what

---

[3] The Maine Supreme Judicial Court did not hold that a student can gain access to any restroom based exclusively on transgender self-identification.  According to the Court:

> [W]e do not suggest that any person could demand access to any school facility or program based solely on a self-declaration of gender identity or confusion without the plans developed in cooperation with the school and the accepted and respected diagnosis that are present in this case.  Our opinion must not be read to require schools to permit students casual access to any bathroom of their choice.  Decisions about how to address students' legitimate gender identity issues are not to be taken lightly.  Where, as here, it has been clearly established that a student's psychological well-being and educational success depend upon being permitted to use the communal bathroom consistent with her gender identity, denying access to the appropriate bathroom constitutes sexual orientation discrimination in violation of the MHRA.

*Doe v. Regional Sch. Unit 26*, 86 A.3d at 607.

3

was happening at Brewer High School.  Much of the content was critical of the Brewer School Department's handling of the restroom access controversy related to student petition activity, but much of the Article was written as a kind of exposé-style piece focused on the high school senior who was using the girls' restrooms.  Among other things, McBreairty revealed to his audience the first and last name of the student (who I refer to as HD), shared HD's Instagram username, and wrote that "[h]e goes by the pronouns they/them on Instagram."  *Id.*  McBreairty said:

> He's been allowed by the administration to continue to enter female spaces for the last three months.  Even after students' concerns were reported.  He once stated he was "too emo for this school," but now he is literally playing dress up, because the school policy allows it to continue and no one has the balls to stop it.

*Id.*  McBreairty continued:

> There have been various social media posts that ". . . he is alleged to have touched some female student(s)."  Additional, yet unconfirmed reports state he is accused online of a "sexual assault" of a fellow student "in late 2021."  There was another post stating ". . . in [S]eptember of 2022 [I] was taken advantage of by [H.D.]."

*Id.* (omissions in original).  McBreairty wrote that "[s]ources state these are 'different people' making these serious claims.  Is the school aware of these claims?  Some say they are."  *Id.*[4]

McBreairty included in the Article a picture of four fully clothed students inside the girls' restroom who were standing around a paper towel dispenser with the caption:

---

[4] According to Superintendent Palmer, Mr. McBreairty's statement that HD had a documented history of sexual assault at the School is false.

"Brewer, ME High School girls' bathroom photo of male [HD] (green hair and brown dress) provided by an anonymous source." *Id.* at 4. McBreairty also included a selfie picture of HD from Instagram with the caption, "[HD], a boy who is allowed to hang out in the girls room." *Id.*

McBreairty criticized the Department's institution of a policy that would permit HD to access the girls' restroom, as well as the Department's effort to quash a student-led, in-school petitioning effort opposed to the policy. McBreairty also criticized school personnel involved in that effort, specifically Defendants Michelle MacDonald, a teacher in the Brewer High School, Department Superintendent Gregg Palmer, and Brewer High School Principal Brent Slowikowski. McBreairty also criticized the law firm Drummond Woodsum for its role in counseling school clients to adopt such policies. Finally, in comments related to MacDonald, McBreairty took aim at MacDonald's minor child, who attended another area high school, calling the child out as transgender and making fun of the child's athletic performance.

The Brewer School Department decided to try to get Mr. McBreairty to take down the portions of the Article that it believed qualified as defamatory or invaded the privacy rights of students. The School Department decided to have its counsel send Mr. McBreairty an email. Neither Brent Slowikowski nor Michelle MacDonald had anything to do with the email being sent, but evidently Superintendent Palmer was involved in the decision-making process.

On February 13, 2024, counsel for the Brewer School Department sent Mr. McBreairty an email, Compl. Ex. 5 (ECF No. 1-5), with the following content:

Dear Mr. McBreairty,

I am writing on behalf of our client the Brewer School Department to demand that you remove certain content from your February 12, 2024 online post entitled "Girl's Bathrooms Are Not 'Safe Spaces' When Males are Present." If you are represented by counsel in this matter, please let me know and I will be glad to direct my correspondence to them.

Although we acknowledge that much of that post contains your opinions on matters of public concern and recognize your right to express them, there are certain portions that are not protected because they are either false or an impermissible invasion of the privacy of minors and have the effect of bullying and hazing a student and a teacher at the Brewer High School in violation of Board Policies ACAD, ACAF and JICK and Maine law. In particular:

First, there is a picture of Brewer High School students in the restroom. As we understand it, this picture was taken without their consent, presumably in violation of 17-A M.R.S. Section 511.

Second, there are the following two statements concerning a Brewer High School student that identifies the student specifically:

> [HD], aka "****" is a senior at Brewer High School. He goes by the pronouns they/them on Instagram and his profile name is "****." He's been allowed by the administration to continue to enter female spaces for the last three months. Even after students' concerns were reported. He once stated he was "too emo for this school," but now he is literally playing dress up, because the school policy allows it to continue and no one has the balls to stop it.

> There have been various social media posts that "... he is alleged to have touched some female student(s)." Additional, yet unconfirmed reports state he is accused online of a "sexual assault" of a fellow student "in late 2021." There was another post stating "... in September (sic) of 2022 i (sic) was taken advantage of by [HD]." Sources state these are "different people" making these serious claims. Is the school aware of these claims? Some say they are.

Third, there is a statement concerning the minor child of one of our teachers:

MacDonald has a transgender child who attends a different school (Hampden Academy. She's a girl who pretends to be a boy on the male track team, usually coming in dead last).

All of the above are invasions of privacy of the students you have referred to and are causing the Brewer High School student and the Brewer High School staff member who is the parent of the other student you refer to severe distress within the meaning of Maine statute, 20-A M.R.S. Sections 6553 and 6554.

Please remove the referenced material by noon on February 14, 2024 and confirm to me that you have done so or we will be forced to take further action against you.

M

Compl. Ex. 5 (ECF Doc. 1-5).

Because it is material to the Estate's request for a declaratory judgment on Count III, it bears repeating that the Department claimed in its email that it had grounds to threaten further action based on the assertion that content in the Article qualified as "bullying and hazing . . . in violation of Board Policies ACAD, ACAF and JICK." *Id.* Policy ACAD (ECF No. 4-3) is an anti-hazing policy. Among other things, it states that "[i]njurious hazing activities of any type, either on or off school property, by any student, staff member, group or organization affiliated with the Brewer School Department, are inconsistent with the educational process and shall be prohibited at all times." The Policy warns students, administrators, staff, and all other employees that violations of the hazing policy may result in disciplinary action. As for persons who do not fit into those categories, the Policy provides: "Persons not associated with the Brewer School Department who fail to abide by this policy may be subject to ejection from school property and/or other measures as may be available under the law." *Id.* Policy ACAF (ECF No. 4-4), "Workplace Bullying,"

regulates employees, students, parents, community members, and others involved in the school workplace. Policy JICK (ECF No. 4-5), "Bullying," similarly regulates only students, employees, volunteers, contractors, visitors, and school-affiliated organizations.

In opposition to the Estate's statement of fact that the School Department claimed in its email that Mr. McBreairty violated these policies, the Department qualifies the statement to assert that a portion of the Article's content violated the policies. Defs.' Opposing Stmt. (ECF No. 102) ¶¶ 28-29. Though a person of ordinary firmness likely would not be silenced by the threat of an application of these or similar school policies, McBreairty's fear was based on a prior experience in which Attorney Hewey and Drummond Woodsum had filed a complaint against McBreairty seeking sanctions against him for violating identical policies in the Hermon school district. (ECF No. 23-1). Additionally, the email advised McBreairty of Maine criminal law and tort law and threatened further action. Moreover, Mr. McBreairty was aware that the School Department had even threatened some of its students with prosecution or civil liability for participation in a petition drive. Whether counsel's underlying legal threat was frivolous or not, there is a fair inference that McBreairty correctly anticipated that counsel would file suit against him on behalf of the School Department if he did not comply with the demand.

Mr. McBreairty removed the entire Article from the website *[your]NEWS* and published a copy of counsel's email dated February 13, 2024, on his Twitter/X account. On February 14, 2024, counsel for the School Department sent Mr. McBreairty a second email with the subject line "Brewer Follow-up." Verified Compl. Exhibit 6 (ECF No. 1-6).

The full text of the February 14, 2024 email reads:

8

Dear Mr. McBreairty,

As an initial matter, I want to thank you for complying with our request to remove the image and certain content from your post in response to the email I sent you yesterday.  I understand that instead, you posted a screenshot of the email I sent you. What you may not have been aware of is that my email quoted verbatim the inappropriate content so by posting the email on X, you have effectively re-posted the inappropriate content.

Please redact the information regarding the BHS student from your second picture and the information regarding the staff member's child on the third page.

Thank you for your prompt attention to this demand.

*Id.*

In addition to the foregoing events, Defendants offer the following statements in support of an argument related to mootness.  Mr. McBreairty passed away on June 3, 2024. HD and the other students pictured in the Article no longer attend Brewer High School. Brewer has no obligation to protect former students and therefore does not intend to try to prevent anyone from posting the content it previously objected to.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that has the potential to determine the outcome of the litigation.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Oahn Nguyen Chung v. StudentCity.com*, *Inc.*, 854 F.3d 97, 101 (1st Cir. 2017).  To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material

issues in her favor. *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999).

## A.    Defendants' Motion for Summary Judgment

In its Complaint, the Estate attributes to every named defendant, and not just the School Department, responsibility for Attorney Hewey's threat of further action. Compl. (ECF No. 1) ¶ 60. The Estate alleges that the threat was state action in violation of Shawn McBreairty's speech rights protected by the First Amendment of the United States Constitution and Article I of the Maine Constitution. It asserts its claims pursuant to 42 U.S.C. § 1983 (Count I) and 5 M.R.S. § 4682 (Count II). The Estate also requests a declaratory judgment as to the inapplicability of Brewer's school policies in relation to Shawn McBreairty's private publishing activity (Count III).

The School Department, Superintendent Palmer, and Principal Slowikowski ("Defendants") challenge all of the Estate's claims in their shared Motion for Summary Judgment. The Estate opposes the Motion on the merits and, in the alternative, requests leave to conduct discovery if its opposition is wanting in some regard. I address the challenges in order, by count, reserving the Estate's Rule 56(d) Motion for separate discussion after consideration of Defendants' Motion for Summary Judgment.

### 1.    Count I

Defendants argue that counsel's emails did not violate Shawn McBreairty's speech rights because the portions of the Article that legal counsel demanded he take down were not protected by the First Amendment (or Article I of the Maine Constitution). They claim that publication of the photograph of students, the positive identification of HD by name,

false statements concerning HD's supposed assaultive behavior, and false and meanspirited statements concerning MacDonald's child were invasions of privacy and defamatory, and therefore the School Department's demand did not threaten consequences for protected speech activity.  Mot. for Summ. J. at 6-7.  Defendants also argue that the threat of further action was not daunting enough to chill the speech of a reasonably hardy individual.  *Id.* at 7-8.  Paradoxically, Defendants further contend that a demand email written by legal counsel expressly on behalf of the Brewer School Department is not municipal action.  *Id.* at 8-12.  Finally, Defendants argue that there is no evidence that would support a personal liability claim against Superintendent Palmer or Principal Slowikowski.  I address each contention below, beginning with municipal action.

### a.  Municipal liability

In terms of municipal liability, it is true that a municipality or municipal entity cannot be held liable for the unconstitutional acts of its employees without there being some form of municipal agency behind the acts in question.  *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).  However, the Brewer School Department can be liable where, as here, it is the driving force behind the alleged deprivation.  *Id.*; *Wadsworth v. Nguyen*, 129 F.4th 38, 66 (1st Cir. 2025).  Given that the alleged deprivation is the product of a demand and threat leveled by the Brewer School Department's retained legal counsel at the Department's direction, Defendants' contention that there can be no municipal liability in this case makes no sense unless Defendants are toying with the notion that retained counsel acted at their own direction, which I will not indulge.  Counsel's email on behalf of the School Department was, quite clearly, municipal action.

11

b. *Threatening behavior*

Defendants challenge the Estate's ability to carry its burden of proving that Mr. McBreairty suffered an adverse action in reprisal for his publishing activity substantially because of his engagement in protected speech. *See Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 37 n.4 (1st Cir. 2024) (relating standard for liability). They maintain that counsel's threat of further action was neither adverse nor targeted at protected speech. In terms of proving that the threat was meaningfully adverse, courts generally inquire whether a reprisal would chill or deter a reasonably hardy individual from engaging in continued speech activity. *Ortolano v. City of Nashua*, --- F. Supp. 3d ---, 2025 WL 755407 (D.N.H. Mar. 10, 2025); *Pollack v. Reg'l Sch. Unit 75*, 12 F. Supp. 3d 173, 188 (D. Me. 2014).

The record reveals that the School Department threatened Mr. McBreairty with further action in an email from counsel who had not long before sued McBreairty on behalf of another school department for substantially similar speech activity. The threatening email, furthermore, contained statutory citations suggesting criminal as well as civil violations and potential repercussions. Separately, Mr. McBreairty was aware that the School Department had gone so far as to threaten some of its students that it would pursue a hate crime criminal prosecution or civil charges against them for engaging in petition activity. Under the circumstances, the finder of fact could readily conclude that counsel's email would deter a reasonably hardy person who shared the same past experience and perspective as McBreairty from continuing to publish the content in question.[5]

---

[5] In *Berge*, the First Circuit observed that, "in a situation like this," "[i]f the First Amendment means anything . . . it is that public officials cannot . . . threaten a person with legal action under an obviously

c. *Protected speech*

Defendants argue that Attorney Hewey's demands on behalf of the School Department were measured and only targeted the content in Mr. McBreairty's Article that was not protected by the First Amendment. However, Defendants fail to demonstrate that this is so with regard to some of the content the School Department demanded he take down and, for that reason, summary judgment is not warranted.[6]

Generally speaking, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). Of course, there are exceptions. For example, the government is empowered to make reasonable, content-based decisions about what speech is allowed on government property that is not fully open to the public. *See Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674-75 (1998). But where, as here, speech is expressed through private channels that are as open to discourse as public spaces, "the government's ability

---

inapt statute simply because he published speech they did not like." 107 F.4th at 43. *See also Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022); *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019); *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

[6] I do not address each and every demand made by the School Department. In particular, I do not comment on the defamation contention concerning the supposed physical threat posed by HD because the Estate can overcome Defendants' Motion for Summary Judgment so long as the School Department's demands and threat targeted some other, protected content. If, at the conclusion of trial, the evidence makes it appropriate to do so, I can instruct the jury that a verdict for the Estate cannot be based on the demand to the extent it sought removal of assertions about HD's supposed dangerousness. But given that the School Department threatened litigation as to a wider range of content, I do not see this as a proper occasion to enter summary judgment on a defamation question about which I know next to nothing other than what Defendants tell me is Superintendent Palmer's opinion on the matter.

to restrict speech in such locations is very limited." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (internal quotation marks omitted). And with good reason.

> To permit the continued building of our politics and culture, and to assure self-fulfillment for each individual, our people are guaranteed the right to express any thought, free from government censorship. The essence of this forbidden censorship is content control. Any restriction on expressive activity because of its content would completely undercut the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."

*Mosley*, 408 U.S. at 95-96 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Under our Nation's free speech traditions, debate on matters of public concern "is often vituperative, abusive, and inexact." *Watts v. United States*, 394 U.S. 705, 708 (1969). Even speech that is likely to be extremely offensive to some who read or hear it is generally protected against civil actions designed to exact retribution for its offensiveness. *See*, *e.g.*, *Synder v. Phelps*, 562 U.S. 443, 451-52 (2011).

The Supreme Court has identified certain categories of speech that are outside the bounds of the First Amendment, including incitement, obscenity, and fighting words, and it has also indicated that legislatures are not free to expand the list however they see fit. *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 791 (2011) ("[N]ew categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated."). In effect, the Court has rejected efforts to expand the list based exclusively on legislative balancing acts. "[W]ithout persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, a legislature may not revise the 'judgment [of] the American people,' embodied in the First

Amendment, 'that the benefits of its restrictions on the Government outweigh the costs.'" *Id.* at 792 (quoting *United States v. Stevens*, 559 U.S. 460, 470 (2010)).

However, it remains possible that a particular engagement in speech activity may be "of such slight social value as a step to truth that any benefit that may be derived from [it] is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (2023) (concerning "a statute narrowly drawn and limited to define and punish specific conduct lying within the domain of state power, the use in a public place of words likely to cause a breach of the peace"). "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution . . . ." *Cantwell v. State of Connecticut*, 310 U.S. 296, 309-10 (1940) (similarly addressing whether face-to-face speech was apt to produce an immediate breach of the peace).

> In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification . . ., and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy.

*Cantwell*, 310 U.S. at 310.

To my understanding, *Chaplinksky* no more than *Cantwell* can fairly be read to usher in a new era of shielding the populace from the harsher overtones of moralist invective simply because it could qualify as bullying or hazing if expressed within the protective confines of a public school.

The Supreme Court has elsewhere observed that First Amendment protection is "often less rigorous" when the matters addressed are "of purely private significance." *Synder*, 562 U.S. at 452. "[R]estricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest [because] 'there is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas'; and the 'threat of liability' does not pose the risk of 'a reaction of self-censorship' on matters of public import." *Id.* (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 760 (2011) (cleaned up)). However, "[s]peech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 453 (first quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983), and then quoting *San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (per curiam)). Whether speech concerns a public or private matter is determined based on content, form, and context as revealed by the whole record. *Id.* The content, form, and context factors are not individually determinative. *Id.* A court must "evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Id.* at 454.

Here, the Article's title, subject matter, and content addressed a matter of public concern, specifically a local controversy related to a school policy allowing transgender students to choose which restroom to access and student agitation concerning a particular biological-male student who was granted access to the girls' restrooms. In his Article, Mr. McBreairty included information concerning the student, HD, whose public conduct had

motivated some students to engage in the petition effort and who was then, in fact, the focal point of a controversy within the Brewer public schools that was of interest to, at the very least, the local community.  The Article was published on a private website, not a school newspaper.  Unkind and unsympathetic words were employed, but they were by no means likely to produce a breach of the peace in the sense of what the *Cantwell* or *Chaplinsky* Courts contemplated as necessary to justify censorship.  All of these factors point in the direction of speech on a matter of public concern, lacking attributes (with the exception of one possibly defamatory remark[7]) that would justify a threat of litigation.

The School Department conveyed in its emails and continues to assert here that all content concerning, identifying, or depicting specific students at school amounts to an illegal invasion of privacy, especially when the students are identified by name.  However, the identification of persons engaged in public conduct of which the public has a legitimate concern is the kind of information a community ordinarily exchanges openly without fear of liability.  This, too, favors the finding that the Article addressed a matter of public rather than private concern, even if the relative significance of the Article to the wider, general public might have been the same if HD's identity had been withheld.  Shielding the identity of a person when describing a matter of public concern he or she is involved in is essentially a political or ethical preference and as such is susceptible to selective treatment based on the shifting mores of the time and place.  It does not appear to be dictated by any legal

---

[7] See footnote 6, *supra*.

tradition, though in regard to minors it may well be in good taste.[8]  *See Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979) (declaring unconstitutional state law prohibiting the publication of the name of a juvenile court defendant without prior court approval).  In any event, the School Department has failed to articulate a solid legal tradition proscribing speech merely because it identifies by name a child who is in the eye of the storm of a public controversy.[9]

On balance, considering the totality of the circumstances, the School Department threatened Mr. McBreairty with legal consequences for speech related to a matter of political, social, or general concern to the community, having as much legitimate news interest as much other content found in our Nation's newspapers, periodicals, and online fora.  In demanding the removal of any and all content that identified HD the School Department considerably overstepped.[10]  Standing alone, the School Department's threat over the identification of students is enough to ensure that a verdict for the Estate would

---

[8] As this case illustrates, it would be disingenuous to presume that the prevailing attitudes of the general public have removed the topic from the arena of public concern.  Court pronouncements such as *Doe v. Regional School Unit 26*, 86 A.3d 600 (Me. 2014), do not render a public debate moot, and Defendants appear to acknowledge this fact.

[9] There is no contention in this case that HD was misidentified.

[10] The School Department's insistence that its hazing and bullying policies were also implicated was also misguided insofar as Mr. McBreairty's publishing activity is concerned.  I discuss this at greater length in relation to Count III, below.  To the extent the School Department suggests that bullying language is not protected by the First Amendment, I am not persuaded that that is the law.  *Brown*, 564 U.S. at 791 ("[N]ew categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated."); *Watts*, 394 U.S. at 708 (observing that under the Nation's free speech traditions, debate on matters of public concern "is often vituperative, abusive, and inexact").  There is, as well, a whole other level to the Department's overstep, namely its faulty presumption that it would have standing to pursue the litigation it threatened.

not rest exclusively on unprotected speech activity.  But the demand targeted even more content without legal justification.

The School Department also took issue with the Article's inclusion of a photograph of high school students in the girls' restroom.  The origin of the photograph is uncertain, but it was not taken by Shawn McBreairty.  Seemingly, another Brewer High School student took the picture and shared it to document the presence of HD in the restroom. Shawn McBreairty obtained the image from another source.  McBreairty's publication of the image did not offend 17-A M.R.S. § 511, contrary to what Attorney Hewey said in her demand letter, because § 511 criminalizes "[i]nstalling or us[ing] in a private place without the consent of the person or persons entitled to privacy in that place, any device for observing, photographing, recording" events in that place, something Shawn McBreairty did not do.  While it would have been appropriate for the School Department to simply inform McBreairty of the statute and attempt to persuade him to remove the photograph from the Article, voluntarily, for the sake of those depicted in it, a warning of criminal or civil consequences coupled with a threat of future action was over-exuberant saber rattling.

Under Maine law, false light invasion of privacy consists in a publication concerning a person that is false and would be highly offensive to a reasonable person, provided that the speaker "had knowledge of or acted in reckless disregard as to the truth or falsity of the publicized matter."  *Levesque v. Doocy*, 557 F. Supp. 2d 157, 164 (D. Me. 2008).  Without all of these attributes, a publication naming and concerning a student who is a participant in a matter of public concern is not an unlawful "false light" invasion of privacy.  Maine privacy law also imposes liability against "one who gives publicity to a

19

matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Nelson v. Maine Times*, 373 A.2d 1221, 1225 (Me. 1977) (quoting Restatement (Second) Torts § 652D). However, "[m]erely exposing a person to undesired publicity is insufficient per se to constitute a tort even though the exposure was unauthorized. Conjoined with the exposure, publicity must be given to matters concerning the private, as opposed to the public, life of the person involved." *Id.*

Defendants' argument concerning the elements of state privacy tort law is not convincing. Concerning content addressed to HD, the record does not compel the finding that Mr. McBreairty knew or acted in reckless disregard of the truth. And even though there is evidence that the Article was highly offensive to HD, it was also of legitimate concern to the public and related to HD's public life in the Brewer High School. As for the photograph of multiple students in the common area of a restroom, the content is not offensive, let alone highly offensive.

### d. Summary as to Count I

Because the record can support the conclusions that the School Department's email was municipal conduct, conveyed a sufficient threat to deter a person of reasonable firmness in the exercise of speech rights, and went so far as to demand the removal of protected content, the claim in Count I is viable and summary judgment is not warranted insofar as the School Department is concerned.

### 2. *Count II*

Defendants argue that the Maine Constitution claim is not actionable because Maine law requires that a person's exercise or enjoyment of rights be interfered with by means of real or threatened violence.  Defs.' Mot. at 14.  That argument is outdated.  The Maine Legislature revised 5 M.R.S. § 4682, effective October 25, 2023, by removing the real or threatened violence requirement.  In their Reply (ECF No. 114) at 6-7, Defendants pivot to another provision of state law, 5 M.R.S. § 4684-A, which provision is not the basis for the claim asserted in Count II, and raise for the first time new arguments not presented in their Motion for Summary Judgment, which I decline to consider.  *See Donovan v. Nappi Distributors*, 703 F. Supp. 3d 135, 259 (D. Me. 2023); D. Me. Loc. R. 7(c).  Count II will advance alongside Count I.

### 3. *Count III*

Defendants argue that the declaratory judgment claim in Count III should be dismissed because it has become moot due to the graduation of HD and the other Brewer High students discussed and depicted in the Article and because Mr. McBreairty is deceased.  They say that the same analysis applies to the declaratory judgment claim as the preliminary injunction motion that I recently denied on mootness grounds.  Defs.' Mot. at 14-16; *see also* Order on Mot. for Prelim. Inj. (ECF No. 74) at 8-12.

The Federal Declaratory Judgment Act provides that courts of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," in any "case of actual controversy within its jurisdiction."  28 U.S.C. § 2201(a).

While I agree with Defendants that the case no longer holds out the prospect of prospective injunctive relief, I am not convinced that the requested declaratory relief has only prospective significance. In Count III, the Estate alleges that "at all relevant times," the policies neither "apply nor applied" to the Article or its publication. Ver. Compl. ¶ 98. Furthermore, the Estate alleges that the policies "do not govern . . . [McBreairty's] publication of the Article." *Id.* ¶ 101. The requested declaratory relief clearly addresses in part a retrospective concern over the legality of the School Department's past conduct.[11] Declaratory relief concerning past wrongs is not prohibited and, in this case, there likely is public utility in a declaration concerning the matter. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 110 F.4th 295, 323 & n.23 (1st Cir. 2024); Restatement (Second) of Judgments § 33 cmt. a (Am. L. Inst. 1982). Consequently, Defendants' request for the entry of summary judgment against Count III will be denied.[12]

### 4. *Personal Liability Claims*

Finally, Defendants argue that the record does not support a finding that the individual defendants would be liable to the Estate in a personal capacity. Defendants' primary contention is that the demand emails were sent by legal counsel for the School

---

[11] Retrospective declaratory relief designed to give notice to governmental actors is inappropriate in actions against a state, based on the sovereign immunity doctrine applied pursuant to the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 68-69 (1985). But this is not a case subject to the Eleventh Amendment.

[12] Defendants separately contend that there is no controversy to resolve because the School Department "does not and has never claimed that Mr. McBreairty must follow its Board policies." Defs.' Mot. at 15 n.3. However, it is evident that the School Department interprets its policies as requiring it to conduct itself toward Mr. McBreairty in the manner it did, including by threat of further action. Defs.' Mot. at 9 n.2 (asserting that the School Department "has the obligation" to employ such measures). Even the Defendants' mootness argument turns on this idea, asserting that Count III is moot because the School Department no longer has the "obligation" to act. Defs.' Mot. 3, 9 n.2.

Department on behalf of the School Department, not on their personal behalf. Defs.' Mot. at 12-13. The record does in fact indicate that Attorney Hewey delivered the demand and, more significantly, the first email's threat on behalf of the School Department. On the other hand, Defendants have not actually put forward evidence that Superintendent Palmer was not a participant in the decision-making process concerning the email and it would be natural to presume his participation. Superintendent Palmer only avers that Principal Slowikowski and Ms. MacDonald were not participants in the process.

Given Defendants' presentation, I am not persuaded that summary judgment should enter on the personal capacity claim against Palmer. In effect, the "stream of controversy has [not] been purified by the exclusion of any genuine issues of material fact," *Gen. Elec. Co. v. U.S. Dynamics*, *Inc*., 403 F.2d 933, 934 (1st Cir. 1968), and so the onus is not shifted to the Estate to produce and prove the details of Palmer's participation or direction. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and . . . demonstrat[ing] the absence of a genuine issue of material fact."). In fact, Palmer's own affidavit suggests his role in the matter, and for present purposes this justifies an inference in favor of the Estate that Palmer was, in fact, involved. Palmer Decl. (ECF No. 16-1) ¶¶ 11-12.[13]

---

[13] The declaration states, in relevant part:

> 11. As a result of the disruption and emotional distress that the post was causing to students and a staff member, we decided that we had to try to get Mr. McBreairty to take the portions of the post down that were defamatory or invaded the privacy of our students and, therefore, our counsel sent him an email . . . .

I recognize that in the Order on Motion for Preliminary Injunction, at pages 12-13, I denied injunctive relief against all of the individual defendants, including Palmer, but I did so based on the fact that they could not bring the threatened legal claims in their own names, and it was requested in the preliminary injunction motion, essentially, that the Court enjoin them from doing something they lacked the legal capacity to do. In contrast, at present the question is whether there can be personal liability for having directed the sending of a threatening email, which is a different matter. Based on my review of the summary judgment record, there is a fair inference that Palmer was directly involved in the matter.[14]

However, given the evidence that Principal Slowikowski[15] was not a participant, a summary judgment challenge is set forth for the Estate to overcome by evidence capable of raising a genuine issue. Due to a failure on the Estate's part to conduct discovery, that evidence is missing, making the entry of summary judgment in favor of Principal Slowikowski appropriate, unless relief is warranted on the Estate's Motion for Rule 56(d) Discovery, the next topic of discussion.

---

12. Neither Brent Slowikowski nor Michelle MacDonald had any role in this email being sent.

[14] Defendants argue that the individual defendants would be entitled to summary judgment, in any event, based on the doctrine of qualified immunity. I find that argument unconvincing based on the principles sent out in *Houston Community College System*, 595 U.S. at 474, *Nieves*, 587 U.S. at 398, and *Hartman*, 547 U.S. at 256, as recently explained in *Berge*, 107 F.4th at 43. *See also Berge*, 107 F.4th at 44 ("Surely no sensible official reading these long-on-the-books opinions could believe that that [threatening a baseless action] — assuming it represents an adverse action — was not a burden on Berge's First Amendment right to publish on a matter of public concern.").

[15] The Estate also wants to hold high school teacher Michelle MacDonald liable. I address that claim in a companion order on Ms. MacDonald's separate motion for summary judgment.

## B.    Plaintiff's Motion for Rule 56(d) Discovery

The Estate seeks leave to conduct discovery consisting of depositions of Attorney Hewey and the individual defendants.  More specifically, it wants to inquire concerning these individuals' respective review of and reaction to the Article, their communications about the Article and its author, the truth of the statements in the Article, expectations of privacy associated with the photo of students in the restroom, communications with counsel, receipt and review of the emails sent to Mr. McBreairty, what kind of further action was intended if he did not comply, and the extent of any alleged harm to members of the student body.  Mot. for Rule 56(d) Discovery (ECF No. 103) at 3-4.  The Estate asserts that if the Court allowed discovery into these matters, it could demonstrate, among other things, "Palmer's authority" and "the roles of the individual defendants." *Id.* at 4.

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  The purpose of subsection (d) is to "protect a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion." *Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022) (cleaned up) (quoting *Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc.*, 730 F.3d 23, 29 (1st Cir. 2013)).  "[T]he crucial inquiry under Rule 56(d) is whether the movant has had a full and

fair opportunity to conduct discovery needed to mount an effective opposition to a summary judgment motion." *Id.*

"[D]iscovery under the aegis of Rule 56(d) need not be authorized wholesale but, rather, may be tailored to the circumstances at hand." *Id.* The movant seeking discovery is required to explain its present inability to produce the evidence needed for its opposition, provide a plausible basis to believe that the evidence can be assembled within a reasonable time, and articulate how the anticipated evidence would inform the court's analysis of the pending summary judgment motion. *Id.* at 725. But "[w]hen a party has had a full and fair opportunity to obtain relevant facts earlier in a case and has forgone that opportunity, there will seldom be good cause to grant the party's request for additional discovery through the medium of Rule 56(d)." *Id.* at 726.

In terms of my prior discussion of the absence of evidence to support a personal liability claim against Principal Slowikowski, I fail to see how the proposed discovery would bear fruit. As I explained in the recent Order on Motion for Preliminary Injunction, Principal Slowikowski did not have the authority to direct matters undertaken by the School Department's legal counsel. For example, he could not instruct counsel to refrain from doing something that the School Department or its superintendent directed. Nor is there cause to infer that he, in sole consultation with counsel, would have authorized an email that was expressly sent on behalf of the School Department. Clearly, authorization for this act would have come from higher up, meaning the School Department via the Brewer School Committee or Superintendent Palmer, or both.

As to all the other matters itemized in the request, none is essential to overcoming summary judgment, which I have denied to both the Brewer School Department and Superintendent Palmer.  As to these matters, the Estate does not need to "justify its opposition," which I have effectively sustained by denying Defendants' Motion for Summary Judgment.  Fed. R. Civ. P. 56(d).

For these varied reasons, I deny the Motion for Rule 56(d) Discovery.  In terms of the Rule 56(d) factors, the Estate has not demonstrated that the proposed discovery "would influence the outcome of the pending summary judgment motion." *Emigrant Residential*, 37 F.4th at 725.  Moreover, I do not see good cause on this record for Rule 56(d) discovery since the Estate neglected to conduct discovery during the scheduled discovery period.  *See* Order (ECF No. 106) on the Estate's Objection (ECF No. 89) to Magistrate Judge Nivison's Order on Motion to Continue Procedural Order and Reset Scheduling Order (ECF No. 86).

## C.    Plaintiff's Motion for Summary Judgment on Count III

The Estate has moved for summary judgment in its favor on its third count seeking declaratory relief.  It requests a judgment stating that, as a matter of law, Brewer School Department Policies ACAD, ACAF, and JICK did not apply to Shawn McBreairty and cannot apply to his Estate upon republication.  Pl.'s Mot. for Partial Summary J. (ECF No. 90) at 1.  The Estate filed its Motion before my ruling that prospective relief has been mooted by the graduation of HD and the other students depicted in the group photograph and the School Department's indication that it no longer has a sufficient interest to object if the Article is republished.  But while the need for prospective injunctive relief may be

moot, the need for retrospective declaratory relief is not.  For reasons that follow, I will

grant summary judgment to the Estate on Count III.

To refresh the reader's recollection, in the February 13 email, the School

Department wrote, in part:

> Although we acknowledge that much of that post contains your opinions on matters of public concern and recognize your right to express them, <u>there are certain portions that are not protected because they</u> are either false or an impermissible invasion of the privacy of minors and <u>have the effect of bullying and hazing a student and a teacher at the Brewer High School in violation of Board Policies ACAD, ACAF and JICK</u> and Maine law.

Compl. Ex. 5 (emphasis added).

In opposition to Plaintiff's Motion for Partial Summary Judgment, Defendants cite

Maine law and argue that the School Department was required to act in the manner it did.

Defs.' Mem. of Law in Opp'n (ECF No. 101) at 1, 3-4.  They cite 20-A M.R.S. §§ 6553

and 6554, in which the Maine Legislature prohibited hazing and bullying in public schools

and directed Maine school boards to adopt policies designed to protect students against the

same.  They also cite 20-A M.R.S. § 1001(22), which requires school boards to adopt

policies to prevent and address the bullying of school employees.[16]  Defendants contend

that there is no controversy here because they agree that the hazing and bullying laws and

related school policies did not technically apply to Mr. McBreairty, but in the same breath

they assert that the laws and policies obliged the School Department to try to protect its

students and staff from Mr. McBreairty's Article, including by means of a threat of further

---

[16] In terms of scope, a plain language reading of each of the cited provisions reflects that their application is limited to persons, groups, organizations, and activities associated or affiliated with the public schools, not to journalists or others who lack a school association or affiliation. *Id.* §§ 1001(22), 6553(2), 6554(3), (4).

action that, under the circumstances, a reasonable person might interpret as a threat of litigation.

Defendants' argument in opposition is specious, but it helpfully reveals the need for declaratory relief as to Count III. Neither Maine law prohibiting hazing and bullying in schools nor school policies implemented pursuant to the same, grant to school boards or their counsel a license to threaten litigation whenever someone unaffiliated with the public schools speaks critically about a matter of public interest occurring in the schools and, in the process, identifies students or staff and criticizes them, even if the language employed would qualify as hazing or bullying in the context of school policies.

It bears stating, as well, that the irony in this case is palpable. To respond to bullying the School Department enlisted legal counsel to demand revision upon threat of further action, despite the School Department's blatant lack of standing to pursue relief under any of the statutory provisions it cited. The School Department and its counsel effectively determined that such a tactic was justified insofar as they would have performed some kind of public service. That behavior cannot be condoned under the statutes or policies on which the School Department relies and calls for declaratory relief to that effect. Plaintiff's Motion for Partial Summary Judgment will be granted.[17]

---

[17] Because the First Amendment is drawn to preserve the right of "the people" to petition for redress of grievances, U.S. Const. Am. I, it is perhaps natural to construe the First Amendment Petition Clause as protecting only "the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes," *Borough of Duryea*, *Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011), while extending no protection at all to municipal entities engaged in similar conduct. "The right to petition allows *citizens* to express their ideas, hopes, and concerns to their government and their elected representatives." *Id.* (emphasis added). Yet municipalities have much in common with persons, being, in fact, a collection of persons organized at the local level. Though they may exercise a degree of sovereign power delegated by the state, municipalities are often regarded as persons under federal law. For example, they are subject to liability as persons under the Civil Rights Act, 42 U.S.C. § 1983, even though their agents are considered

## CONCLUSION

It is natural for adults to endeavor to protect minors from the harsh light of a journalistic effort that wants to make them Exhibit A in a polemic. Even though it may be against their commercial interest, professional journalists often impose on themselves an obligation not to identify a minor in an article about a controversial matter of public concern when the matter would expose the minor to the scorn or derision of some members of the public. However, such professional journalistic standards are not dictated by the First Amendment or by Maine privacy law, anti-hazing and anti-bullying law, or related school policies. The Brewer School Department's assertion that it was unlawful for Mr. McBreairty to identify or depict students involved in the Brewer High School controversy over transgender restroom access in fact lacks grounding in the law, and the School

---

to exercise their authority under color of state law. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978). Municipalities are also regarded as persons under antitrust laws. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38 (1985) ("Municipalities . . . are not beyond the reach of the antitrust laws by virtue of their status because they are not themselves sovereign."). And unlike the states, municipalities do not enjoy sovereign immunity under our federalist system. *Jinks v. Richland Cnty., S.C.*, 538 U.S. 456, 466 (2003).

For these and perhaps other reasons, "it [is not] out of the question that a municipality could have First Amendment rights." *Creek v. Vill. of Westhaven*, 80 F.3d 186, 192 (7th Cir. 1996). At least in terms of municipal speech, "[t]here is at least an argument that the marketplace of ideas would be unduly curtailed if municipalities could not freely express themselves on matters of public concern." *Id.* at 193. Consider too that, "[t]o the extent . . . a municipality is the voice of its residents—is, indeed, a megaphone amplifying voices that might not otherwise be audible—a curtailment of its right to speak [or petition] might be thought a curtailment of the unquestioned First Amendment rights of those residents." *Id.*

On the other hand, a municipality's threat or institution of legal proceedings it has no standing to pursue on behalf of one or more of its constituents for the very purpose of curtailing private speech runs against the grain of First Amendment bedrock. The City of Brewer and its School Department may well be genuinely concerned over speech that defames or invades the privacy of one or more members of its community, but those harms and any resulting causes of action belong to the individuals concerned, not to the City or the School Department. And as for criminal charges, a municipality might justifiably warn of pressing charges, but not "under an obviously inapt statute simply because [McBreairty] published speech they did not like." *Berge*, 107 F.4th at 43.

Department's recalcitrant contention that it was obliged to act as it did is an even more misguided position that necessitates declaratory relief.

For the reasons set out in this Order, Defendants' Motion for Summary Judgment (ECF No. 92) is DENIED IN PART and GRANTED IN PART.  Summary judgment on Counts I, II, and III is GRANTED exclusively in favor of Defendant Brent Slowikowski, who is hereby DISMISSED from the case.  Defendants' Motion for Summary Judgment is otherwise DENIED as to Defendants Brewer School Department and Gregg Palmer.

Plaintiff's Motion for Partial Summary Judgment (ECF No. 90) is GRANTED. Summary judgment is GRANTED to Plaintiff exclusively on Count III.  Specifically, it is DECLARED that Brewer School Department Policies ACAD, ACAF, and JICK did not apply to Shawn McBreairty or his Article and did not oblige, compel, or justify the conduct by the Brewer School Department and its legal counsel that gave rise to this civil action.

Plaintiff's Motion for Leave to Conduct Rule 56(d) Discovery (ECF No. 103) is DENIED.

SO ORDERED.

Dated this 6th day of May, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge