IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA MCBREAIRTY, as personal representative of the Estate of Shawn McBreairty,<br><br>    Plaintiff,<br><br>    v.<br><br>BREWER SCHOOL DEPARTMENT, and GREGG PALMER, in his personal and official capacities,<br><br>    Defendants. | Case No. 1:24-cv-00053-LEW<br><br>**MOTION TO DISQUALIFY DRUMMOND WOODSUM** |

The Defendants violated Shawn McBreairty's First Amendment rights by making specious threats to him, through counsel, in response to an article he authored concerning a transgender student's access to the girls' bathroom at Brewer High School. In ruling on separate motions for summary judgment, the Court has pointed out one of the central issues in this case is who requested, directed, or had other involvement in the February 2024 emails that attempted to silence Mr. McBreairty on behalf of the Defendants. The signed author of those emails is no longer Defendants' counsel of record; her co-counsel, copied on the seminal email, is now lead counsel as the case moves to a jury trial. For the reasons outlined below, there has emerged an unavoidable issue that should make it impossible for Drummond Woodsum to go forward representing the Defendants. Notwithstanding Attorney Melissa Hewey's proactive withdrawal as counsel, her firm's ongoing involvement in this case leaves the trial extremely susceptible to confusion for the factfinder, conflicts of interest, and avoidable disreputation. Drummond Woodsum should, with respect, be disqualified as counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

As the Court has clearly summarized, "the crux of the case consists in Attorney [Melissa] Hewey's initial email that threatened Shawn McBreairty with further action." ECF 118, p. 7. While prior-lead-counsel Attorney Hewey wrote the email, current-lead-counsel Attorney Jeana McCormick was copied to the original email. Verified Compl. Exhibit 6 (ECF No. 1-5). The Court has already declared that the legal arguments that Attorney Hewey used to cudgel Mr. McBreairty into silence were without merit, pointedly characterizing the email as "over-exuberant saber rattling" that was substantively "without legal justification." ECF No. 117 at p. 19. In its order granting Plaintiff partial summary judgment as to Count III, the Court wrote:

> It bears stating, as well, that the irony in this case is palpable. To respond to bullying the School Department enlisted legal counsel to demand revision upon threat of further action, despite the School Department's **blatant lack of standing** to pursue relief under any of the statutory provisions [the Hewey email] cited. The School Department **and its counsel** effectively determined that such a tactic was justified insofar as they would have performed some kind of public service. **That behavior cannot be condoned** under the statutes or policies on which the School Department relies and calls for declaratory relief to that effect.

(*Id.* at 29) (emphasis added). This email did not reveal some inspired interpretation of ambiguous law: its author(s) knew or should have known that the string of legal citations used to justify the demand provided no actual authority to silence Mr. McBreairty.

The emails had their desired effect, and the reasonableness of that effect is also an issue that is material to this motion. The context for Mr. McBreairty's response—to remove the post—is not attributable to his past dealings with any individually named Defendant so much as it was his dealings with Drummond Woodsum, as Attorney Hewey "had not long before sued McBreairty on behalf of another school department for substantially similar speech activity." ECF No. 117 at p. 12. Likewise, the question of who directed Hewey in her particular approach to issuing the demand was material to the Court's decision to grant summary judgment motions benefitting prior

Defendants.[1] Defendant Palmer has not confirmed the extent of his involvement in directing Attorney Hewey's email, but the Court has concluded that it is "natural to presume his participation." ECF No. 117 at p. 23.

Although Attorney Hewey withdrew from the case the day after the Court's ruling on the summary judgment motions, (ECF Nos. 121 & 122), Hewey's colleague at Drummond Woodsum, Kasia Park, simultaneously entered her appearance (ECF No. 120). Attorney McCormick, present in some capacity since the original email, remains counsel for Defendants.

**1.0     Legal Standard**

In adjudicating a motion to disqualify, the district court has "wide discretion" and the determination "ordinarily turns on the peculiar factual situation of the case then at hand." *In re Bushkin Assoc., Inc.,* 864 F.2d 241, 246 (1st Cir. 1989) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981)). The question of disqualification can be generated for a variety of reasons. As the First Circuit observed:

> It may be necessary, for instance, to assess the degree to which a lawyer's presence might taint the trial; the court's need to protect the integrity of the judicial process, enforce its rules against transgressors, and maintain public confidence in the legal profession; the litigants' interest in retaining counsel of their choosing; and the availability and relative efficiency of other sanctions.

*Id*. In the present case, the subject of this motion—Drummond Woodsum—is not targeted as a "transgressor" against rules, *per se*. However, while it was prudent and appropriate for Attorney Hewey to have withdrawn in the aftermath of the Court's summary judgment orders, the prophylactic effect of her removal can only partly be realized so long as her colleagues and

---

[1] The Court specifically granted summary judgment for Defendant Brent Slowikowski, concluding that "Neither Brent Slowikowski nor Michelle MacDonald had anything to do with the email being sent…." ECF No. 117 at p. 5. In granting MacDonald's separate summary judgment motion, the Court emphasized the factual issue of whether the record would "support a finding that MacDonald caused or ratified the harm generated by Attorney Hewey's emails." ECF No. 118 at p. 6.

collaborators remain as trial counsel. The other attorneys at Drummond Woodsum, likely involved in the decision-making process that led to the 'unjustified' email, are coextensively implicated in the process that led to Defendants' unconstitutional conduct. To ensure a fair and efficient trial (and to mitigate against the waste and expense of a mistrial), the Court should, respectfully, disqualify Drummond Woodsum.

**2.0     Analysis**

The tone, tactics, and intentions of the Hewey emails to Mr. McBreairty are fundamental to the merits of the case and, necessarily, anchored in the communications between the Defendants and counsel. Drummond Woodsum Attorney Hewey is, in fact, the very nexus of any party's liability—or rather, her emails are. For Attorney Hewey to be acting on behalf of any Defendant and thus implicate the Defendant in the curtailment of Mr. McBreairty's rights, some level of agency is required, and the Court has already focused on the evidence—direct, implied or unavailable—pertaining to the involvement of particular Defendants in shaping the demand sent to Mr. McBreairty. But the ongoing involvement of Drummond Woodsum feeds unresolved concerns about likely confusion at trial and latent conflicts of interest.

There is no question that Attorney Hewey herself would be disqualified from acting as trial counsel, given her centrality to the issues and the necessity of her testimony. Me. R. Prof. Conduct. 3.7(a).[2] Were she to act as trial counsel, there would be a "danger that the performance of the dual roles of counsel and witness will create confusion on the jury's part ..., 'raising the possibility of the trier according testimonial credit to [counsel]'s closing argument,' ... or, conversely, weighing

---

[2] At the very least, her testimony is *highly likely* necessary due to (a) Mr. McBreairty's unavailability to comment on her past, similar threats that were acted upon, and (b) the likelihood that Defendant Palmer's testimony reveals a lack of personal knowledge as to the legal frivolity of the asserted rationales for removing the contents of the article. Attorney Hewey's testimony could corroborate or impeach the extent to which Defendant Palmer knew that any effort to shut down a private citizen's protected speech was unconstitutional, and may prove central to the case, if not damages.

the testimony as if it were argument." *Ahern v. Scholz*, 85 F.3d 774, 792 (1st Cir. 1996) (quoting *United States v. Johnston*, 690 F.2d 638, 643 (7th Cir. 1982). In 'wearing two hats' in the courtroom, Attorney Hewey would necessarily be vouching for the motives and methods of the Defendants in a capacity that blurs lines between testimony and advocacy, given her clear fingerprints on the state actors' actions in silencing Mr. McBreairty. The violation of Rule 3.7 would clearly harm Plaintiff, and Hewey's disqualification would be plainly necessary.

However, because Plaintiff cannot ascertain the dimensions of Attorney Hewey's role, the problems cannot be said to begin and end at Hewey. "The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted). Attorney McCormick presumes to serve as trial counsel in this case. She was copied on the email that Hewey sent, confirming prior knowledge of the issue and corresponding involvement in the effort to shut down Mr. McBreairty's protected speech. Attorney Hewey may not have even spoken to Defendant Palmer before sending the consequential emails.[3] It is, in fact, quite likely that there were conversations between Defendants and other members of the "education law" practice group at Drummond Woodsum. If Attorney McCormick was involved in interfacing with Defendants, identified the specious laws to be cited in Hewey's demand email, or otherwise contributed to critical decision-making on the Defendants' behalf, the emergence of that information at trial will cast a shadow over the proceeding if not undermine the integrity of the judicial process.

---

[3] Defendant Palmer's earlier-submitted declaration states only that, after being made aware of certain individuals "feeling bullied" or distressed by Mr. McBreairty's protected speech, "[W]e decided that we had to try to get Mr. McBreairty to take the portions of the post down that were defamatory or invaded the privacy of our students and, therefore, our counsel sent him an email . . ." ECF No. 16-1 at ¶ 11. The pronoun "we," used twice in short succession, is deliberately ambiguous as to the involved parties, since it would seem that revealing those decisionmakers may subject "them" to liability.

The probable revelation that Defendant Palmer's communications were not solely with Hewey but involved Hewey's co-counsel—a fact not known right now except by Defendants and their counsel—then for all the reasons Hewey would need to be disqualified, those same issues apply in equal force to Attorney McCormick. And perhaps Attorney McCormick outsourced her research to Attorney Park, or Attorney Park relayed the message from Brewer School Department that Mr. McBreairty was posting articles that needed to be silenced, and Attorney McCormick was copied by Attorney Hewey specifically to signal a litigation-forward posture. Drummond Woodsum is a set of Matryoshka dolls, each one easily tethered to the Defendants who used their professional services to infringe speech, and each counselor radiating with the potential to introduce extreme harm and confusion as trial counsel over these contested issues. Even if the remedy of disqualification is prophylactic (due to the lack of discovery conducted in the case), the proximity between Hewey and McCormick—and presumably anyone else within the education practice area of Drummond Woodsum—is hardly invented. Addressing this issue too late jeopardizes the integrity of the trial.

The questions about the nature and scope of Defendants' dealings with certain personnel at Drummond Woodsum point to another problem: namely, the conflict of interest between law firm and client. While the former rules of professional conduct required automatic disqualification of a law firm if an individual attorney was compromised, the modern Rules of Professional Conduct allow that a firm may be disqualified if "testifying lawyer would also be disqualified by Rule 1.7 or Rule 1.9 from representing the client in the matter, other lawyers in the firm will be precluded from representing the client by Rule 1.10" unless the client gives informed consent. See M.R. Prof. Conduct 3.7 cmt. (7). M.R. Prof. Conduct 1.7 bars representation if there is any "significant risk that the representation of [a client] would be materially limited . . . by a personal

interest of the lawyer." M.R. Prof. Conduct 1.7(a)(2). In this case, the aforementioned nexus between Defendants' liability and the Hewey emails generates a tension between litigation choices that benefit the Defendants, and those that may benefit Drummond Woodsum.

The full extent of the communications between Drummond Woodsum and the Defendant decision makers who shut down Mr. McBreairty's speech may not, in fact, come to light unless and until Defendants assert an advice of counsel defense. They must consider it an option: "the fact of the consultation and the purport of the advice obtained *should* be factored into the totality of the circumstances and considered in determining the [official's] entitlement to qualified immunity." *Cox v. Hainey*, 391 F.3d 25, 34 (1st Cir. 2004) (emphasis added). It seems reasonable to anticipate that Defendants will, eventually, assert the defense, since they transparently deferred to Hewey (and Drummond Woodsum) in conveying the censorious email that gives rise to their liability. Yet to assert reliance on advice of counsel would force a waiver of attorney-client privilege in order to "prevent the privilege from being used for the purpose of prejudicing an opponent's case by providing only selective disclosure." *United States v. Locascio*, 357 F. Supp. 2d 536, 550 (E.D.N.Y. 2004) (citation omitted). The attorney-client privilege "cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

While it is not Plaintiff's job to express concern for Defendants' wellbeing, the circumstances suggest that a conflict of interest exists between Defendants and Drummond Woodsum. Defendants seem to be poised to bypass an obviously available qualified immunity defense to *protect* their *attorneys*, rather than their attorneys defending the Defendants. Defendants have dabbled in *non sequitur* defenses while curiously ignoring the obvious.[4]

---

[4] Bizarrely—and unsuccessfully—Defendants have attempted incredulous variations of an adjacent concept, such as arguing that the underlying action (emails from Defendants' counsel on behalf of Defendants) was "not municipal action." See Order ECF No. 117 at p. 11.

Defendants' apparent quiet on this issue may have an explanation: Drummond Woodsum *could*, theoretically, catch themselves embroiled in wider controversy, as private actors may be liable for unconstitutional state action "if, with respect to the activity at issue, the private entity is engaged in a traditionally exclusive public function; is 'entwined' with the government; is subject to governmental coercion or encouragement; or is willingly engaged in joint action with the government." *Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 26 (1st Cir. 2002). Contextually, this need not be nailed down as an explanatory reason for the issue to—at a minimum—raise serious concerns about evident disconnects between Defendants and their counsel.

There are other competent municipal defense lawyers in Maine—Drummond Woodsum is not special. Trial is almost three months away and there is no voluminous discovery record; it would be simple enough for any replacement to get up to speed. Thus, disqualification would result in no prejudice to Defendants; if anything, disinterested new counsel is in their best interest.

WHEREFORE Plaintiff respectfully requests this Honorable Court disqualify Attorneys Park and McCormick, and any other attorney affiliated with Drummond Woodsum, from representing Defendants in this matter.

Dated: September 5, 2025.                             Respectfully Submitted,

/s/ *Stephen C. Smith*                                Marc J. Randazza (*pro hac vice*)
Stephen C. Smith, Bar No. 8270                          *Lead Counsel*
Steve Smith Trial Lawyers                             Jay M. Wolman (*pro hac vice*)
191 Water Street                                      RANDAZZA LEGAL GROUP, PLLC
Augusta, MA 04330                                     30 Western Avenue
info@mailtriallaw.com                                 Gloucester, MA 01930
Tel: (207) 622-3711                                   Tel: (888) 887-1776
Fax: (207) 707-1036                                   Email: ecf@randazza.com

                                                      Attorneys for Plaintiff,
                                                      Patricia McBreairty