# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

PATRICIA MCBREAIRTY, in her
capacity as Personal Representative
of the Estate of Shawn McBreairty,

        Plaintiff,

v.

BREWER SCHOOL DEPARTMENT
and GREGG PALMER,

        Defendants.

No. 1:24-cv-00053-JAW

## DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO SUICIDE AND STATEMENTS OF EMOTIONAL DISTRESS AND CAUSATION

Superintendent Gregg Palmer and the Brewer School Department submit this motion *in limine* seeking an order excluding any evidence related to Shawn McBreairty's suicide as well as any out-of-court statements he made about his alleged emotional distress or its cause, if offered into evidence by the plaintiff, through Patricia McBreairty or any other witnesses, at trial. This motion is brought in the alternative to the defendants' earlier motion *in limine*, which requests an order barring the plaintiff from presenting any evidence of compensatory damages at trial as a Fed. R. Civ. P. 37 sanction. *See generally* ECF No. 171. Even if some such evidence is allowed for Shawn McBreairty's alleged emotional distress, it must be significantly limited. The grounds for this motion are set forth in the memorandum incorporated below.

## FACTUAL BACKGROUND

On February 12, 2024, Shawn McBreairty ("McBreairty") posted an article on his *[your]*NEWS website entitled "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present." ECF No. 1-3, at 1-6. Aside from his views on issues on transgender students and their use of public

school bathrooms, McBreairty's article publicized a photograph of Brewer High School students—who were minors—inside the school's bathroom.  *See id.*  The photograph was taken without consent and published by McBreairty without consent.  McBreairty also singled out one of those students by name and suggested they had engaged in sexual assault, *see id.*, and derided another minor who was not a student at Brewer High School but the child of a teacher at the school—the defendant Michelle MacDonald, who was granted summary judgment.  *See* ECF No. 118.

After the article was published online, the minor student named in the article and shown in the unauthorized photograph stopped attending school.  *See* ECF No. 16-1 ¶ 8.  That student's parent and the parents of the other students pictured in the photograph complained that it violated their children's privacy rights.  *See id.* ¶ 9.  So the Brewer school administration directed its attorney, Melissa Hewey of Drummond Woodsum, to request that McBreairty remove the photograph and not call the minor student out by name, telling him that he was otherwise entitled to publish his opinion on the issues.  *See id.* ¶ 11; ECF No. 1-5, at 1.

In response, and instead of taking down the unauthorized photograph and editing his article, McBreairty voluntarily removed the entire post and replaced it with a copy of Attorney Hewey's email to him.  *See* ECF No. 16-1 ¶¶ 14-15.  This prompted Attorney Hewey to send a follow up email, dated February 14, 2024, out of concern that McBreairty's gamesmanship in this respect did not remove reference to the minor student's name.  *See id.* ¶ 15; ECF No. 1-6, at 1.  McBreairty took down the post, and a few days later sued the Brewer School Department alleging violation of his constitutional right to free speech.  *See* ECF No. 16-1 ¶ 16; *see generally* ECF No. 1.

This was not McBreairty's first dispute of this nature, nor was it his first time litigating these issues.  *See generally McBreairty v. School Board of RSU22 et al.*, No. 1:22-cv-00206-NT; *McBreairty v. Miller et al.*, No. 1:23-cv-00143-NT; *Hermon Sch. Dep't v. McBreairty*,

No. PENSC-CIV-2022-00056; ECF No. 23-1 ¶¶ 6-7 (indicating that McBreairty received a letter from Attorney Hewey on November 9, 2021, demanding he remove social media posts about individuals unrelated to this case); *id.*, Ex. A, at 2 ("I am very concerned about *additional* legal threat of *another* lawsuit by this government entity and lawyers DrummondWoodsum." (emphasis added)); ECF No. 25-1 ¶¶ 16-17 (stating that "[i]n three different situations," interested parties had tried to drown out McBreairty's attempts to "inform the public about the serious issue of female student safety and the trans-supremacy infecting local school policy").

While on the one hand alleging a fear of prosecution, McBreairty commenced this suit against the Brewer School Department on February 22, 2024. *See generally* ECF No. 1. McBreairty was a full-time activist who worked to monetize his expression and activism on these issues. *See id.* ¶¶ 67-68; ECF No. 74 at 8 (noting that McBreairty asserted his speech at issue was "financially beneficial" and that "a market" exists for it). On February 16, 2024, McBreairty made a guest appearance on the Stew Peters Show during which the photograph of the minor students in the Brewer High School bathroom was displayed (and thereafter viewable online, by virtue of his appearance). *See* ECF No. 16-3 ¶ 7. And as of February 27, 2024, with posts starting before he filed this suit, McBreairty continued to post that photograph on his X account. *See id.* ¶¶ 2-6.

**PROCEDURAL HISTORY**

McBreairty filed this civil action about one week after Attorney Hewey's second email. *See generally* ECF No. 1. He alleged the Brewer School Department's threat of litigation in Attorney Hewey's emails violated his rights to freedom of speech, expression, and petition under the United States and Maine Constitutions. *See id.* ¶¶ 79-95. He stated he intended to republish the article and email once he no longer faced that alleged threat of litigation, and sought to enjoin the defendants from interfering with his alleged right to do so. *See id.* ¶¶ 87, 95. He also requested nominal damages, reasonable attorney's fees and expenses, and actual damages, including

(as it pertains to this motion) damages for his emotional distress. *See id.* ¶¶ 86, 95, C-E.

On March 14, 2024, the Court held a hearing on McBreairty's motion for a temporary restraining order and preliminary injunction, which he filed alongside his complaint. *See generally* ECF Nos. 4, 28. A week later, the Court denied the temporary restraining order and reserved ruling on the preliminary injunction pending an evidentiary hearing. *See* ECF No. 30 at 4. On May 20, 2024, the defendants filed their answer. *See generally* ECF No. 46.

On June 3, 2024, McBreairty filed a motion requesting issuance of a scheduling order, which the Court granted. *See generally* ECF Nos. 47-48. McBreairty committed suicide that same day (though a suggestion of death was not filed until July 2, 2024). *See generally* ECF No. 52. On June 4, 2024, the Court issued a scheduling order which set the deadline for objecting to the scheduling order as June 24, 2024, the deadline for initial disclosures as July 1, 2024, and the deadline to complete discovery as October 21, 2024. *See* ECF No. 49 at 1-2. The defendants served initial disclosures on all parties on July 1, 2024, but the plaintiff, Patricia McBreairty, failed to provide initial disclosures at any time during the discovery period, despite being substituted as the plaintiff in this action on September 6, 2024. *See generally* ECF No. 57-58.

Shortly after she was substituted, and in lieu of turning to discovery, the plaintiff renewed her late husband's motion for a preliminary injunction, *see generally* ECF No. 59, which the Court ultimately denied because her "idea of a threat of officially-sponsored litigation undertaken by the individual defendants [was] illusory" and "the School Department's concession that it will not take further action related to the publication of the article, Mr. McBreairty's death, and the [named] Student's graduation from the school remove[d] from the case any threat of an imminent present or prospective harm in need of preliminary injunctive relief," ECF No. 74 at 14-15.

On January 16, 2025, the plaintiff filed a motion to continue the procedural order setting

the Fed. R. Civ. P. 56(h) pre-conference filing deadline and to otherwise reset the scheduling order. *See generally* ECF No. 76. She argued the scheduling order "did not self-effectuate" because McBreairty's death precluded the parties from meeting and conferring. *Id.* at 1. Magistrate Judge Nivison denied her motion, noting the failure to confer did not invalidate the scheduling order because "in the absence of an objection, the order governs," and that if the plaintiff believed the circumstances of the case prevented her "from conferring with opposing counsel or from filing an objection to the Scheduling Order, [she] could have raised the issue with and requested appropriate relief from the Court." ECF No. 86 at 5. The Court overruled the plaintiff's objection to Judge Nivison's order, stating that she was substituted "with ample time remaining to attend to such matters," but that "[i]nstead of pursuing discovery, she [had] pursued preliminary injunctive relief and filed notice of her intent to seek summary judgment, all without a mention of a need for discovery or evidence other than the exhibits attached to the pleadings." ECF No. 106 at 4.

In February 2025, the parties filed cross motions for summary judgment, *see generally* ECF Nos. 87, 90, 92, and on March 13, 2025, the plaintiff filed a motion for leave to conduct Fed. R. Civ. P. 56(d) discovery, *see generally* ECF No. 103. The Court granted summary judgment as to two defendants (a teacher and the Brewer High School principal, whom McBreairty had joined in his suit). *See generally* ECF Nos. 117-118. Although the Court denied summary judgment to Palmer and the Brewer School Department, significantly the Court did not enter summary judgment in the plaintiff's favor on Counts I and II which allege violation of free speech rights.[1] *See* ECF No. 117 at 31. The Court also denied the plaintiff's motion for leave to conduct

---

[1] The Court did grant declaratory relief against the school department on Count III, which relates to the application of Maine statutes governing anti-bullying and anti-hazing of public school minor students in Maine. *See* ECF No. 117 at 27-31. While the defendants' arguments for error of law in this aspect of the summary judgment decision are preserved for later appeal, the Court's ruling on Count III does not foreclose judgment in the defendants' favors on pending Counts I and II, including whether, under the totality of the circumstances, the defendants were justified in addressing—by way of the anti-bullying and anti-hazing statutes that do apply to school officials—McBreairty's

Rule 56(d) discovery, noting that good cause for such discovery did not exist because the plaintiff had "neglected to conduct discovery during the scheduled discovery period." *Id.* at 27, 31.

The case was then placed on the July, August, and October 2025 trial lists, but each was continued at the plaintiff's request.[2] *See* ECF Nos. 119, 123, 130-131, 133-134, 139, 143, 145. On May 21, 2025, prior to the first continuance, the defendants filed a pretrial memorandum in which they argued that any recovery must be limited to nominal damages because the plaintiff failed to disclose any alleged damages as required by Fed. R. Civ. P. 26(a)(1)(A)(iii). *See* ECF No. 127 at 4. This prompted the plaintiff to send the defendants untimely "initial" disclosures later that day—more than 10 months after the relevant deadline, 9 months after she was substituted into the case, 7 months after discovery closed, 3 months after Judge Nivison denied her motion to continue the scheduling order, and 1 month before trial was set to begin—indicating her intent to seek emotional distress damages, punitive damages[3], and attorney's fees.

On July 31, 2025, the plaintiff filed a motion for an order clarifying whether her failure to timely serve initial disclosures barred her use of certain witnesses and exhibits at trial, which the Court granted in part and denied in part. *See* ECF No. 138, 150. The Court later dismissed the plaintiff's request to reconsider its decision to exclude Haily Keezer as a witness because her late disclosure was prejudicial and insufficiently justified. *See* ECF Nos. 150-151, 154, 159.

## ARGUMENT

### I.  Any mention of suicide should be excluded under Fed. R. Evid. 401 and 403.

In her pretrial memorandum and motions regarding trial evidence, the plaintiff newly

---

conduct of posting on the internet a photograph, taken-illegally, of minor children in a public school bathroom. Were it otherwise, the Court would have entered partial summary judgment on Counts I and II, which it clearly did not do.

[2] The case was most recently placed on the December trial list, but was continued to the January trial list at this Court's direction after all parties indicated they had significant scheduling conflicts. *See* ECF No. 153, 159-160, 164.

[3] Punitive damages were never alleged. *See* ECF No. 1 at 15-16.

asserts that she intends to introduce evidence supporting a theory that the school department's emails requesting removal of the photograph and references to the minor student's name caused McBreairty to commit suicide. *See* ECF No. 128 at 2-3; ECF No. 151 at 1-2. Evidence related to McBreairty's suicide should be excluded, however, because its cause is inherently speculative as a matter of law. And, even if there is some limited probative value to referencing McBreairty's suicide, that probative value is far outweighed by the evidence's potential to confuse the issues, mislead the jury, and unfairly prejudice the defendants. *See* Fed. R. Evid. 401, 403.

The plaintiff's claim for compensatory damages is cabined to the emotional distress, if any, that the alleged constitutional violation caused McBreairty in the three-and-a-half month period between February 13, 2024 (the date he received Attorney Hewey's first email) and June 3, 2024, the date of his suicide.[4] This limitation exists because the plaintiff cannot, as a matter of law, generate a triable issue of whether the defendants caused McBreairty's suicide.

As a general rule, "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages." *Acevedo-Luis v. Pagan*, 478 F.3d 35, 39 (1st Cir. 2007) (quoting *Memphis Cmty. Sch. Dist.*, 477 U.S. 299, 310 (1986)). The standard for recovering for emotional distress in a section 1983 "pre-enforcement" First Amendment case such as this still requires "proof of actual injury." *Id*. at 38 (quoting *Farrar v. Hobby,* 506 U.S. 103, 112 (1992)). In most cases, as is true here, "it may be appropriate to apply the tort rules of damages directly to the § 1983 action." *Carey v. Piphus*, 435 U.S. 247, 258 (1978).

Common law tort principles would not allow recovery for a suicide on this record as a

---

[4] The plaintiff is not pursuing a claim for pecuniary or financial compensatory damages. Even her late-served initial disclosures omitted such claims. To the extent the plaintiff asserted a similar interest as the ostensible basis for her continuing to press for injunctive relief after McBreairty's death, the Court denied the preliminary injunction primarily on the grounds that McBreairty's death and the named student's graduation (coupled with the school department's unequivocal denial of any interest in pursuing further action) mooted the need for such relief. *See* ECF No. 74 at 8-9.

matter of law.  The general rule is that a suicide is an independent, intervening act that severs any causal connection between a defendant's actions and a decedent's death.  *See Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778 (explaining that an actor's liability for another's injury depends on whether their conduct proximately caused the injury, such that it was "either a direct result or a reasonably foreseeable consequence" of their wrongful conduct, and that causal chain is "unbroken by an efficient intervening cause" (cleaned up)); *Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 287 (6th Cir. 2017) ("Because suicide is often an unforeseeable act, it is consistently recognized as an independent intervening cause that relieves a negligent actor from liability." (cleaned up)); *Story as Tr. for Story v. Marquette Univ.*, 728 F.Supp.3d 948, 955 (E.D. Wis. 2024) (same); *Anderson v. Ga. Dep't of Corr.*, 769 F.Supp.3d 1319, 1339 (N.D. Ga. 2025) (same); *Lilly v. Univ. of California-San Diego*, 751 F.Supp.3d 1056, 1083 (S.D. Cal. 2024) (same); *Sullivan. v. Truist Bank*, 715 F.Supp.3d 668, 677 (E.D. Penn. 2024) (same); Civil Liability for Death by Suicide, 11 A.L.R.2d 751, 756-57 (1950) (collecting cases supporting the "practically unanimous rule" that suicide severs causation, defeating liability).

There are two exceptions to this rule, neither of which apply to this case: civil liability may arise where (1) a *special relationship* exists between the decedent and the actor that created a duty in the actor to prevent suicide or similar harm, or (2) the wrongful act is so extraordinary that it creates an uncontrollable impulse or frenzy in the decedent, during which they commit suicide "without conscious volition to produce death."  *Story as Tr. for Story*, 728 F.Supp.3d at 955 (cleaned up).  Nothing about Attorney Hewey's letters to McBreairty, a vocal and experienced activist who sought the limelight with his causes, *see* ECF No. 16-3 ¶¶ 2-7, rationally raises even the remotest possibility of causing "a person of reasonable firmness," ECF No. 117 at 20, to commit suicide.  *Cf. MacDermid v. Discover Fin. Servs.*, 488 F.3d 721,

735-56 (6th Cir. 2007) (affirming summary judgment in the defendant's favor because the decedent's suicide severed causation where there was no evidence the defendant owed a duty to or had a special relationship with the decedent, or that the decedent had committed suicide after being driven to delirium or insanity by the defendant's threats of prosecuting her for credit card fraud).

Even if one of these exceptions applied—which the plaintiff has not alleged—a lay person's speculation or conjecture cannot as a matter of law support a finding that the defendants caused McBreairty's death, and the plaintiff has designated no expert witnesses. *See Merriam*, 2000 ME 159, ¶ 8, 757 A.2d 778 (stating a defendant is entitled to judgment when proximate cause is left to "speculation or conjecture, or even if the probabilities are balanced"); *see, e.g.*, *Anderson v. Bristol, Inc.*, 936 F.Supp.2d 1039, 1064-67 (S.D. Iowa 2013) (concluding expert testimony was required to determine which of the many stressors in the decedent's life caused his suicide); *Estate of Joshua T. v. State*, 150 N.H. 405, 408-09, 840 A.2d 768, 772 (2003) (concluding that assessing suicide causation absent expert testimony "would amount to speculation" because "the average person lacks the experience, training or education about the complexities of suicide to be able to assess whether [particular circumstances] . . . contributed to [an individual's] self-inflicted death or whether [they] would have committed suicide even absent the challenged circumstances").

Correspondingly, any limited probative value of introducing evidence of McBreairty's suicide is outweighed by its tendency to confuse the issues, mislead the jury, and unfairly prejudice the defendants. *See* Fed. R. Evid. 403. In this case, if the jury finds that the parts of McBreairty's article at issue (the photograph, references to the student by name, etc.) were protected speech, the jury will then be asked to determine whether the school department in fact chilled that speech and, if so, whether the plaintiff has proved, by a preponderance of the evidence, that (1) McBreairty suffered actual emotional distress and (2) that his distress was actually and proximately caused by

the school department's emails.  *See Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1250 (4th Cir. 1996) (interpreting Supreme Court precedent to require "evidence of emotional distress sufficient to convince the trier of fact that such distress did in fact occur and that its cause was the constitutional deprivation itself and cannot be attributable to other causes") (citing *Carey*, 435 U.S. at 258, 263-64, 264 n.20); *see, e.g.*, *Lawless v. Town of Freetown*, No. 1:18-cv-11089-IT, 2024 WL 3834885, at *1-2 (D. Mass. Aug. 15, 2024) (concluding the jury properly followed its compensatory damages instructions—which are repeated verbatim in the order—and found that the plaintiff had suffered a constitutional violation but had not proved emotional distress).  There is a clear, practical danger that if the plaintiff is permitted to introduce evidence of suicide, the jury will be misled as to the issues or improperly find facts related to the cause of McBreairty's death.

There is also a significant danger that introducing evidence of McBreairty's suicide will unfairly prejudice the defendants at trial.  This case inherently lacks shock value.  It is far from plausible that the emotional distress McBreairty experienced, if any, would not have occurred but for the school's emails about this issue.  As the record demonstrates, McBreairty initiated this litigation and had a history of litigating cases nearly identical to this one, often involving Attorney Hewey and Drummond Woodsum.  It also cannot escape notice that in March 2024, this Court denied McBreairty's emergency request to enjoin the defendants from taking legal action against him for publishing the article.  *See generally* ECF No. 30.  Would not the Court's own order denying him relief in this case, prior to his suicide, be a superior superseding and intervening cause of his same alleged emotional distress and suicide?  He was litigating a similar case during the relevant time period against defendants who were also represented by Attorney Hewey.  *See McBreairty v. Miller et al.*, No. 1:23-cv-00143-NT.  He was, while simultaneously filing this action, publishing on the internet the same speech his Estate now claims he was afraid to publish

because of the school's emails.  *See generally* ECF No. 16-3.  McBreairty was a litigation-hardened activist who sought the limelight and who sought to monetize his activism, and plaintiff should not be allowed to inflame the jury and gain from unfair prejudice by blaming his suicide on the school.

McBreairty's suicide does not change the nature of this litigation, as the plaintiff seems to suggest, and it certainly does not permit her to—in the eleventh hour—attempt to recover for his death by effectively suggesting that the defendants' conduct killed him.  Introducing evidence of McBreairty's suicide, likely through the plaintiff-widow's testimony, significantly alters how this case is presented to the jury by augmenting his alleged fear of facing yet another lawsuit to a fatal level of emotional distress.  Such evidence is blatantly designed to appeal to the jury's sympathies and strongly suggests to the jury that it should consider McBreairty's suicide in its damages calculations, which is wholly improper considering the plaintiff cannot, as a matter of law, recover for his death in this case.  *See United States v. Gaudet*, 933 F.3d 11, 17 (1st Cir. 2019) (defining undue prejudice in the Rule 403 context as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" (cleaned up)).

## II.    The hearsay rule excludes any statements by McBreairty about his distress.

In the event the plaintiff wants to testify about the effect, if any, that the school's emails in this case had on McBreairty, she will be barred by the hearsay rule from testifying about any out-of-court statements McBreairty made to her or to anyone else about his alleged emotional distress or, significantly, what caused it.  *See* Fed. R. Evid. 801(c) (explaining that hearsay is any statement "(1) the declarant does not make while testifying at the current trial or hearing" that "(2) a party offers in evidence to prove the truth of the matter asserted in the statement.") Any out-of-court statements by McBreairty that the plaintiff attempts to introduce at trial to prove that McBreairty experienced emotional distress actually and proximately caused by the school's emails during the relevant period is inadmissible hearsay.  *See* Fed. R. Evid. 802.

## CONCLUSION

We acknowledge that McBreairty's death created a rather insurmountable burden for the plaintiff-Estate to generate even a scintilla of evidence that his emotional distress was proximately caused by the defendants.  This is especially true given the limitations already imposed on the plaintiff's witnesses and exhibits by virtue of the parallel rulings limiting her case-in-chief due to her failure to comply with initial disclosure mandates.  *See generally* ECF Nos. 150, 169.  But McBreairty's death alone does not give his Estate license to reinterpret the events of record, or to blame the school for his suicide and seek compensatory damages for it.  Accordingly, the defendants respectfully request entry of an order excluding any evidence related to suicide and any out-of-court statements McBreairty made to the plaintiff or any other person about his emotional distress or its cause.

Dated: November 6, 2025

Norman, Hanson & DeTroy, LLC
220 Middle Street, P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101
(207) 772-1941

*/s/ Russell B. Pierce, Jr., Esq.*
Russell B. Pierce, Jr. – Bar No. 7322
rpierce@nhdlaw.com
Jonathan W. Brogan – Bar No. 3163
jbrogan@nhdlaw.com

Kasia S. Park, Esq.
kpark@dwmlaw.com

*Attorneys for Defendants Gregg Palmer and Brewer School Department*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2025, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will also notify counsel of record of the filing.

Dated: November 6, 2025

*/s/ Russell B. Pierce, Jr., Esq.*
Russell B. Pierce, Jr. – Bar No. 7322