## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| PATRICIA MCBREAIRTY, as | ) | |
| Personal Representative of the Estate | ) | |
| Of Shawn McBreairty, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00053-JAW |
| | ) | |
| BREWER SCHOOL DEPARTMENT, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF COMPENSATORY DAMAGES UNDER FED. R. CIV. P. 37(c)(1)**

In anticipation of trial, defendants filed a motion in limine seeking to prohibit plaintiff from introducing evidence of compensatory damages at trial for failure to comply with the disclosure mandates of Federal Rule of Civil Procedure 26(a). The court has already struck six out of thirteen of the plaintiff's proposed witnesses due to plaintiff's failure to provide the initial disclosures under Rule 26(a). Now defendants request exclusion of all evidence of compensatory damages, which, if granted, would effectively resolve the case in their favor. Despite plaintiff's failure to make adequate initial disclosures, the court denies the motion to exclude because the exclusion of six out of thirteen witnesses is sufficient to sanction the plaintiff's failure to comply with the initial disclosures under Rule 26(a), because caselaw has a higher standard for exclusion that results in dismissal, and because the defendants had actual or implicit knowledge of the potential evidence.

## I.    PROCEDURAL BACKGROUND

On February 22, 2024, Shawn McBreairty filed a verified complaint against Defendants Brewer School Department and Brewer Superintendent Gregg Palmer (collectively, Defendants) alleging that by threating litigation in response to an article he authored and posted concerning a transgender student's access to the girl's bathroom at Brewer High School, Defendants violated his First Amendment Rights. *Verified Comp. 42 U.S.C. § 1983 Compl. for Declaratory, Inj. Relief, and Damages* at 1, ¶¶ 46-78 (ECF No. 1) (*Compl.*).[1]  Shawn McBreairty's complaint sets fourth three causes of action; two remain: (1) retaliation against the exercise of First Amendment rights made applicable to the States under the Fourteenth Amendment, in violation of the United States Constitution, actionable under 42 U.S.C. § 1983; and (2) a parallel claim based on the Maine State Constitution, actionable under 5 M.R.S. § 4682.  *Id.* ¶¶ 79-101.  As relevant to this motion in limine, the complaint states Mr. McBreairty "is entitled to damages as a result of its actions, including, but not limited to, lost income, emotional distress and incurring legal fees."  *Id.* ¶¶ 86, 95.  Mr. McBreairty's complaint requests relief including "Actual Damages in an amount to be determined at trial," "Nominal Damages," and "further relief the Court deems appropriate."  *Id.* at 16.

---

[1]    The complaint additionally named Brewer High School Principal Brent Slowikowski and Brewer High School English Teacher Michelle MacDonald as defendants.  Mr. Slowikowski has been dismissed by order of this Court.  *See Order on Cross Mots. for Summ. J. and Mot. for Rule 56(d) Disc.* at 31 (ECF No. 117) (*Order on Cross Mots. for Summ. J.*).  The Court also granted Ms. MacDonald's motion for summary judgment.  *Order on Mot. for Summ. J. and Mot. for Rule 56(d) Disc.* at 8-9 (ECF No. 118) (*Order on Mot. for Summ. J.*).

On June 3, 2024, Shawn McBreairty died by suicide, *Suggestion of Death as to Pl. Shawn McBreairty* at 1 (ECF No. 52). That same day, Mr. McBreairty's counsel filed a motion requesting issuance of a scheduling order, *Pl.'s Mot. for Issuance of Sched. Order* (ECF No. 47), and the Court issued a scheduling order on June 4, 2024, which set the deadline for objecting to the scheduling order as June 24, 2024, the deadline for initial disclosures as July 1, 2024, and the deadline to complete discovery as October 21, 2024. *Sched. Order with Incorporated Rule 26(f) Order* (ECF No. 49) (*Sched. Order*). There was no objection to the scheduling order.

On August 15, 2024, Patricia McBreairty filed a motion to substitute herself, as personal representative of the Estate of Shawn McBreairty, in place of Shawn McBreairty as plaintiff in this case. *Mot. to Substitute Party* at 1 (ECF No. 57). On September 6, 2024, Ms. McBreairty (hereinafter, Plaintiff) was formally substituted as plaintiff, and she has continued to litigate this case on behalf of the estate of her late husband. *Order Granting Mot. to Substitute Party* (ECF No. 58).

Initially, Plaintiff pursued injunctive relief. *See Order on Recommended Decision* at 4 (ECF No. 106) ("Instead of pursuing discovery, [Plaintiff] pursued preliminary injunctive relief and filed notice of her intent to seek summary judgment, all without a mention of a need for discovery or evidence other than the exhibits attached to the pleadings"). It was only in January 2025 that Plaintiff filed a motion to continue the scheduling order, *Mot. for Continuance of Procedural Order and Reset Sched. Order* (ECF No. 76), which the Court denied. *Order on Mot. to Continue Procedural Order and Reset the Sched. Order* (ECF No. 86).

In February 2025, the parties filed cross motions for summary judgment. *See Def. Michelle MacDonald's Mot. for Summ. J.* (ECF No. 87); *Pl.'s Mot. for Partial Summ. J.* (ECF No. 90); *Mot. for Summ. J. of Defs.' Brewer Sch. Dept., Gregg Palmer, and Brent Slowikowski* (ECF No. 92). Plaintiff also filed a motion for leave to conduct Rule 56(d) discovery. *Mot. for Leave to Conduct Disc. to Respond to Brewer's Summ. J. Mot.* (ECF No. 103).

On May 6, 2025, this Court granted partial summary judgment in favor of Plaintiff on Mr. McBreairty's originally filed complaint, count three, *Order on Cross Mots. for Summ. J. and Mot. for Rule 56(d) Disc.* at 31 (ECF No. 117) (*Order on Cross Mots. for Summ. J.*), granted Michelle MacDonald's motion for summary judgment, and denied Plaintiff's motion for Rule 56(d) discovery. *Order on Mot. for Summ. J. and Mot. for Rule 56(d) Disc.* (ECF No. 118) (*MacDonald Summ. J. Order*). Specifically, the Court declared that certain Brewer School Department Policies did not apply to Shawn McBreairty or to his article and did not "oblige, compel, or justify the conduct by the Brewer School Department and its legal counsel that gave rise to this civil action." *Id.* The Court also denied Plaintiff's motion for leave to conduct Rule 56(d) discovery noting that Plaintiff "neglected to conduct discovery during the scheduled discovery period." *Id.* at 27.

On May 21, 2025, Plaintiff filed a final pretrial memorandum and served her initial disclosures. *Pl.'s Pretrial Mem.* (ECF No. 128). In that motion, she stated she was seeking "nominal damages" as well as "actual damages, including compensation for Mr. McBreairty's severe, debilitating, and fatal emotional distress, as well as

punitive damages and attorneys' fees." *Id.* at 2.  Plaintiff also itemized a more extensive list of witnesses than previously identified.  *Id.* at 3-4.  On September 24, 2025, the Court granted in part and denied in part that motion, excluding some witnesses.  *Order on Mot. for Order Regarding Trial Evid.* (ECF No. 150) (*Trial Evid. Order*).

This case is currently scheduled for trial in February 2026 on the remaining two counts.  *Trial List* (ECF No. 189).  Before the Court now is Defendants' motion in limine, *Defs.' Mot.* in Lim. *to Exclude Evid. of Compensatory Damages Under Fed. R. Civ. P. 37(c)(1)* (ECF No. 171) (*Defs.' Mot.*).    On November 26, 2025, Plaintiff submitted her response, *Opp'n to Defs.' Mot.* in Lim. *to Exclude Evid. of Compensatory Damages* (ECF No. 181) (*Pl.'s Opp'n*), and on December 3, 2025, Defendants' replied. *Defs.' Reply to Pl.'s Opp'n to Defs.' Mot.* in Lim. *to Exclude Evid. of Compensatory Damages* (ECF No. 184) (*Defs.' Reply*).  On December 9, 2025, the Court held oral argument.  *Min. Entry* (ECF No. 186).

## II.    THE FACTUAL RECORD[2]

### A.    The Underlying Facts

Brewer School Department permits students to use the restroom corresponding to their gender identity, rather than their biological circumstances. *Pl.'s Statement of Material Facts* (ECF No. 91) ¶ 1 (PSMF), *Sch. Defs.' Opp'n Statement of Material Facts* (ECF No. 102) ¶ 1 (DRPSMF).  HW and CG are students

---

[2]    The parties have not addressed what record the Court should rely on in resolving the motion in limine.  To provide context, the Court has elected to use the undisputed facts submitted by the parties in support of their motions for summary judgment.

at Brewer High School.  PSMF ¶ 2; DRPSMF ¶ 2.  HW and CG objected to the restroom policy and started a petition to oppose it.  PSMF ¶¶ 3-4; DRPSMF ¶¶ 3-4. Defendants admit that they said things to HW and CG that made them understand that they would not only be disciplined if they persisted with the petition but that they would also be either prosecuted for a "hate crime" or sued by the School Department, perhaps both.  PSMF ¶¶ 6, 10; DRPSMF ¶¶ 1, 10.  HW and CG immediately ceased promoting the petition.  PSMF ¶ 7; DRPSMF ¶ 7.

Shawn McBrearty wrote about the controversy.  PSMF ¶ 11; DRPSMF ¶ 11; *Statement of Material Facts of Defs. Brewer Sch. Dept., Gregg Palmer, and Brent Slowikowski in Support of Mot. for Summ. J.* (EC No. 93) ¶ 1 (DSMF); *Pl.'s Opposing Statement of Material Fact* (ECF. No. 105) ¶ 1 (PRDSMF).  After reviewing evidence, speaking to witnesses, and doing research, on February 12, 2024, Mr. McBrearty published "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present" on the website *[your]NEWS* (hereafter "the Article").  *Compl.*, Attach. 3, *Ex. 3 Article* (*McBrearty Article*); PSMF ¶ 13; DRPSMF ¶ 13.  In the Article, Mr. McBrearty expressed his opinions about the underlying facts and concerns related to what was happening at Brewer High School.  PSMF ¶ 14; DRPSMF ¶ 14.

Much of the content of Mr. McBrearty's Article was critical of the Brewer School Department's handling of the restroom access controversy related to student petition activity.  Mr. McBrearty reported how Brewer High School teacher Michelle MacDonald reacted negatively to the petition and claimed that Ms. MacDonald also threatened the students circulating the petition.  PSMF ¶¶ 16-17; DRPSMF ¶¶ 16-

17.    He wrote about how Principal Brent Slowikowski precluded students from circulating the petition.  PSMF ¶ 17; DRPSMF ¶ 17.

Mr. McBreairty wrote much of the Article as a kind of exposé-style piece focused on the high school senior who was using the girls' restrooms.  Among other things, Mr. McBreairty revealed to his audience the first and last name of the student (whom, the Court refers to as HD), shared HD's Instagram username, and wrote that "[h]e goes by the pronouns they/them on Instagram."  *McBreairty Article* at 2.  Mr. McBreairty said:

> He's been allowed by the administration to continue to enter female spaces for the last three months.  Even after students' concerns were reported.  He once stated he was "too emo for this school," but now he is literally playing dress up, because the school policy allows it to continue and no one has the balls to stop it.

*Id*.  Mr. McBreairty continued:

> There have been various social media posts that "...he is alleged to have touched some female student(s)."  Additional, yet unconfirmed reports state he is accused online of a "sexual assault" of a fellow student "in late 2021."  There was another post stating "...in [S]eptember of 2022 [I] was taken advantage of by [HD]."

*Id*.  (punctuation and omissions in original).  Mr. McBreairty wrote that "[s]ources state these are 'different people' making these serious claims.  Is the school aware of these claims? Some say they are."  *Id*.[3]

Mr. McBreairty included in the Article a picture of four fully clothed students inside the girls' restroom who were standing around a paper towel dispenser with the

---

[3]    According to Superintendent Palmer, Mr. McBreairty's statement that HD had a documented history of sexual assault at Brewer High School is false.  *Mem. of Law in Opp'n to Mot. for TRO of Defs. Brewer Sch. Dept., Gregg Palmer, and Brent Slowikowski* (ECF No. 16), Attach. 1, *Decl. of Gregg Palmer* at ¶ 6 (*Palmer Decl.*).

caption: "Brewer, ME High School girls' bathroom photo of male [HD] (green hair and brown dress) provided by an anonymous source." *Id.* at 3. Mr. McBreairty also included a selfie picture of HD from Instagram with the caption, "[HD], a boy who is allowed to hang out in the girls room." *Id.*

Mr. McBreairty criticized the School Department's institution of a policy that would permit HD to access the girls' restroom, as well as its effort to quash a student-led, in-school petitioning effort opposed to the policy. *Id.* at 3-6. Mr. McBreairty criticized school personnel involved in that effort, specifically Michelle MacDonald, a teacher in the Brewer High School, Department Superintendent Gregg Palmer, and Brewer High School Principal Brent Slowikowski. *Id.*; PSMF ¶¶ 16-17; DRPSMF ¶¶ 16-17. Mr. McBreairty also criticized the law firm Drummond Woodsum for its role in counseling school clients to adopt such policies. PSMF ¶ 21; DRPSMF ¶ 21. Finally, in comments related to Ms. MacDonald, Mr. McBreairty took aim at Ms. MacDonald's minor child, who attended another area high school, calling out the child as transgender and making fun of the child's athletic performance. *McBreairty Article* at 3.

The Brewer School Department decided to try to get Mr. McBreairty to take down the portions of the Article that it believed qualified as defamatory or invaded the privacy rights of students. PSMF ¶¶ 27-29; DRPSMF ¶¶ 27-29. The School Department requested that its counsel send Mr. McBreairty an email. PSMF ¶ 27; DRPSMF ¶ 27.

On February 13, 2024, counsel for the Brewer School Department sent Mr. McBreairty an email. *Compl.* Attach. 5, *Ex. 5 E-Mail from Melissa Hewey Feb. 13, 2024* (*First Hewey Email*); DSMF ¶ 8; PRDSMF ¶ 8. That email stated:

Dear Mr. McBreairty,

I am writing on behalf of our client the Brewer School Department to demand that you remove certain content from your February 12, 2024 online post entitled "Girl's Bathrooms Are Not 'Safe Spaces' When Males are Present." If you are represented by counsel in this matter, please let me know and I will be glad to direct my correspondence to them.

Although we acknowledge that much of that post contains your opinions on matters of public concern and recognize your right to express them, there are portions that are not protected because they are either false or an impermissible invasion of the privacy of minors and have the effect of bullying and hazing a student and a teacher at the Brewer High School in violation of Board Policies ACAD, ACAF and JICK and Maine law. In particular:

First, there is a picture of Brewer High School students in the restroom. As we understand it, this picture was taken without their consent, presumably in violation of 17-A M.R.S. Section 511.

Second, there are the following two statements concerning a Brewer High School student that identifies the student specifically:

[HD], aka "****" is a senior at Brewer High School. He goes by the pronouns they/them on Instagram and his profile name is "****." He's been allowed by the administration to continue to enter female spaces for the last three months. Even after students' concerns were reported. He once stated he was "too emo for this school," but now he is literally playing dress up, because the school policy allows it to continue and no one has the balls to stop it.

There have been various social media posts that "... he is alleged to have touched some female student(s)." Additional, yet unconfirmed reports state he is accused online of a "sexual assault" of a fellow student "in late 2021." There was another post stating "... in September (sic) of 2022 i (sic) was taken advantage of by [HD]."

9

> Sources state these are "different people" making these serious claims.  Is the school aware of these claims?  Some say they are.

Third, there is a statement concerning the minor child of one of our teachers:

> MacDonald has a transgender child who attends a different school (Hampden Academy.  She's a girl who pretends to be a boy on the male track team, usually coming in dead last).

All of the above are invasions of privacy of the students you have referred to and are causing the Brewer High School student and the Brewer High School staff member who is the parent of the other student you refer to severe distress within the meaning of Maine statute, 20-A M.R.S. Sections 6553 and 6554.

Please remove the referenced material by noon on February 14, 2024 and confirm to me that you have done so or we will be forced to take further action against you.

M

*First Hewey Email* at 2 (emphasis in original); *DSMF* ¶ 9; *PRDSMF* ¶ 9.

Mr. McBreairty reluctantly and fearfully removed the entire Article from the website *[your]NEWS* and published a copy of counsel's email dated February 13, 2024, on his Twitter/X account.  *Compl.*, Attach. 6, *Ex. 6 E-mail from Melissa Hewey February 14, 2025* (*Second Hewey Email*); PSMF ¶ 32, 38; DRPSMF ¶ 32, 38; DSMF ¶ 11; PRDSMF ¶ 11.  On February 14, 2024, counsel for the School Department sent Mr. McBreairty a second email with the subject line "Brewer Follow-up."  *Second Hewey Email* at 2; DSMF ¶ 12; PRDSMF ¶ 12.

The full text of the February 14, 2024 email reads:

Dear Mr. McBreairty,

As an initial matter, I want to thank you for complying with our request to remove the image and certain content from your post in response to

the email I sent you yesterday. I understand that instead, you posted a screenshot of the email I sent you. What you may not have been aware of is that my email quoted verbatim the inappropriate content so by posting the email on X, you have effectively re-posted the inappropriate content.

Please redact the information regarding the BHS student from your second picture and the information regarding the staff member's child on the third page.

Thank you for your prompt attention to this demand.

*Second Hewey Email* at 2; DSMF ¶ 13; PRDSMF ¶ 13.

Mr. McBreairty died by suicide on June 3, 2024. DSMF ¶ 16; PRDSMF ¶ 16. HD and the other students pictured in the Article no longer attend Brewer High School. DSMF ¶ 17; PRDSMF ¶ 17. Brewer High School has concluded that it has no obligation to protect former students and therefore it does not intend to try to prevent anyone from posting previously objected to content. DSMF ¶ 18.

On May 7, 2025 Attorney Melissa Hewey filed a motion to withdraw as counsel for Defendants, *Mot. to Withdraw* (ECF No. 121), and the Court granted the motion. *Order Granting Mot. by Att'y Melissa A. Hewey to Withdraw as Att'y* (ECF No. 122).

## B.    The Motion for TRO and Preliminary Injunction, the Scheduling Order, and Plaintiff's Late Rule 26 Disclosure

Mr. McBreairty filed his complaint on February 22, 2024. *Compl.* With the complaint, Mr. McBreairty filed a motion for temporary restraining order (TRO). *Emer. Mot. for a TRO and for a Prelim. Inj. or, in the Alternative, an Inj. Pending Appeal* (ECF No. 4). From February 22, 2024 through June 7, 2024, the focus of the litigation was on the motion for TRO and preliminary injunction. On March 1, 2024, Defendants opposed the motion for TRO, *Mem. of Def. Michelle McDonald in Opp'n*

11

to Pl.'s Mot. for TRO (ECF No. 15), *Mem. of Law in Opp'n to Mot. for TRO of Defs. Brewer Sch. Dep't, Gregg Palmer, and Brent Sloikowski* (ECF No. 16), and on March 6, 2024, Mr. McBreairty filed a reply. *Pl.'s Reply in Support of Emer. Mot. for a TRO and for a Prelim. Inj.* (ECF No. 23). On March 7, 2024, Chief Judge Walker ordered the parties to provide supplementary briefing, *Order* (ECF No. 24), and on March 12, 2024, the parties complied with his order. *Pl.'s Br. Addressing the Photograph in Pl.'s Article – and – the First Am. Protection* (ECF No. 25); *Mem. of Law Discussing Whether Pl.'s Use of the Photograph Seemingly Taken by Another Person in Violation of 17-A M.R.S. Section 511 is Entitled to First Am. Protection* (ECF No. 26); *Br. of Def. Michelle MacDonald Regarding First Am. Protection for Publication of Photograph of Minor Taken in Violation of 17-A M.R.S. § 511* (ECF No. 27). On March 28, 2024, Chief Judge Walker issued an order, denying the motion for TRO and reserving ruling on the motion for preliminary injunction. *Order on Pl.'s Mot. for a TRO and Prelim. Inj.* (ECF No. 30).

On March 29, 2024, Mr. McBreairty appealed Chief Judge Walker's March 28, 2024 order to the Court of Appeals for the First Circuit, *Notice of Appeal* (ECF No. 32), and he filed an emergency motion for injunction pending appeal. *Pl.'s Emer. Mot. for Inj. Pending Appeal* (ECF No. 33). After briefing, Chief Judge Walker denied the emergency motion on April 10, 2024. *Order on Emer. Mot. for Inj. Relief Pending Appeal* (ECF No. 41). On May 16, 2024, the First Circuit rejected the appeal. *J.* (ECF No. 43). The Court of Appeals issued its mandate, returning jurisdiction to the district court on June 7, 2024. *Mandate* (ECF No. 50).

While the motion for TRO and preliminary injunction were being litigated, the case was effectively held in abeyance. In fact, Defendants did not file an answer to the complaint until May 20, 2024, *Answer and Affirmative Defenses of Defs. Brewer Sch. Dep't, Gregg Palmer, and Brent Slowikowski* (ECF No. 46), and Ms. MacDonald did not file her answer until June 20, 2024. *Def. Michelle MacDonald's Answer to Pl.'s Compl.* (ECF No. 51).

Meanwhile, between May 16, 2024, the date of the Court of Appeals' decision, and June 7, 2024, the date of its mandate, Mr. McBreairty moved for the issuance of a scheduling order. *Pl.'s Mot. for Issuance of Scheduling Order* (ECF No. 47). On June 4, 2024, the Magistrate Judge issued a scheduling order. *Sched. Order* at 1-3. The scheduling order set June 17, 2024 as the deadline for conference of the parties pursuant to Federal Rule of Civil Procedure 26(f), July 1, 2024 as the deadline for initial disclosure pursuant to Federal Rule of Civil Procedure 26(a)(1), August 19, 2024 as the deadline for amendment of the pleadings and joinder of parties, August 19, 2024 as the deadline for Plaintiff to designate experts, September 23, 2024 as the deadline for Defendants to designate experts, October 21, 2024 as the deadline to complete discovery, October 28, 2024 as the deadline to file a notice of intent to file summary judgment, November 12, 2024 as the deadline for filing all dispositive and *Daubert*[4] motions, and set January 8, 2025 as the expected trial date. *Id.* at 2-3.

Tragically, Mr. McBreairty died on June 3, 2024, the day before the scheduling order issued. On July 2, 2024, Ms. McBreairty filed a suggestion of death, *Suggestion*

---

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

*of Death as to Pl. Shawn McBreairty*, and on July 2, 2024, Chief Judge Walker issued an order confirming that under Federal Rule of Civil Procedure 25(a)(1), that a motion for substitution must be filed within ninety days, making the motion for substitution due by September 30, 2024. *Order* (ECF No. 53). Ms. McBreairty filed a motion for substitution on August 15, 2024, which was granted on September 6, 2024. *Mot. to Substitute Party*; *Order Granting Mot. to Substitute Party*.

Ms. McBreairty then refiled a motion for preliminary injunction on September 30, 2024. *Updated Mot. for a Prelim. Inj. or, in the Alternative, an Inj. Pending Appeal* (ECF No. 59). The parties briefed and argued the motion for preliminary injunction, and on January 10, 2025, Chief Judge Walker issued an order denying the motion for preliminary injunction. *Order on Mot. for Prelim. Inj.* (ECF No. 74).

As noted above, the parties then engaged in an extended dispositive motion practice that resulted on May 6, 2025 with two orders from Chief Judge Walker. *Order on Cross Mots. for Summ. J.* at 1-31; *MacDonald Summ. J. Order* at 1-9. In his orders, Chief Judge Walker denied Ms. McBreairty's requests that she be allowed to conduct discovery under Federal Rule of Civil Procedure 56(d). *Order on Cross Mots. for Summ. J.* at 31; *MacDonald Summ. J. Order* at 9.

Following resolution of the motions for summary judgment, the case became vulnerable for trial, and on May 7, 2025, the Clerk's Office set the case for the July 2025 trial list. *Trial List* (ECF No. 119). On May 21, 2025, the parties filed pretrial memoranda. *Pretrial Mem. of Defs. Brewer Sch. Dep't and Gregg Palmer* (ECF No. 127) (*Defs.' Pretrial Mem.*); *Pl.'s Pretrial Mem.* On July 31, 2025, Ms. McBreairty

14

served her Rule 26 disclosures on defense counsel, and Defendants' counsel confirmed that they would object to the Rule 26 disclosure as untimely under the rules and the scheduling order. *See Mot. for Order Regarding Trial Evid.* (*Mot. for Order*), Attach. 1, *Emails between counsel* (ECF No. 138).

### C. Plaintiff's Motion for Order Regarding Trial Evidence and the Order on Motion Regarding Trial Evidence

On July 31, 2025, Plaintiff moved for an order regarding trial evidence, raising her failure to make timely initial disclosures and requesting an order clarifying that the timing of initial disclosures will not bar her presentation of identified witnesses and exhibits. *Mot. for Order* at 1-6. On August 21, 2025, Defendants objected. *Opp'n to Pl.'s Mot. for Order Regarding Trial Evid.* (ECF No. 146). On August 25, 2025, Plaintiff replied. *Reply in Support of Mot. for Order Regarding Trial Evid.* (ECF No. 148). On September 24, 2025, Chief Judge Walker issued an order in response to Ms. McBreairty's motion. *Trial Evid. Order*.

In his September 24, 2025 order, Chief Judge Walker carefully reviewed the travel of the case and came to an eminently practical resolution. Judge Walker analyzed the witnesses listed in Plaintiff's pretrial memorandum and concluded that "as to the core of the case the Defendants have never actually been at and will not prospectively face any disadvantage or prejudice." *Id.* at 5. By contrast, Judge Walker excluded the "newly proposed witnesses whose importance to the trial in questionable or not at all apparent." *Id.* At the same time, regarding exhibits, Judge Walker entered his order without prejudice because the order was based on his understanding of the case in that the parties had long identified and had long been

aware of the "relevant exhibits." *Id.* at 6. Thus, to that extent, Judge Walker entered the order "without prejudice to the Defendants ability to raise any such concern in the context of a motion in limine." *Id.*

## III.   THE PARTIES' POSITIONS

### A.   Defendants' Motion to Exclude Evidence of Compensatory Damages

Defendants argue that Plaintiff failed to disclose "any intent to seek compensatory damages until seven months after the close of discovery" and therefore that she should be prohibited from using the undisclosed information at trial. *Defs.' Mot.* at 10. Defendants acknowledge that "barring the plaintiff from presenting evidence of compensatory damages may carry the force of dismissal by defeating justiciability" because even if she could maintain Article III standing, she may walk away from the case if she only stands to recover nominal damages. *Id.* at 6-7. Nonetheless, Defendants argue such a harsh result is warranted under the balance of factors articulated in controlling caselaw. *Id.* at 6-10. Defendants argue that Plaintiff has a history of failure to comply with discovery. *Id.* at 7-8. In their view, Plaintiff's failure to disclose leaves defendants to prepare for "a trial by ambush on the issue of whether their conduct proximately caused McBreairty's alleged emotional distress . . . and, ultimately, his suicide." *Id.* at 9. Finally, Defendants argue "plaintiff's inability to meet basic discovery requirements . . . has expended a significant amount of the defendants' and this Court's time and will continue to do so absent preclusion." *Id.* at 10.

### B.   Plaintiff's Opposition to Defendants' Motion to Exclude Evidence of Compensatory Damages

In her response, Plaintiff admits that although she did not make a formal disclosure as to the computation of compensatory damages, Defendants were aware Plaintiff sought damages for emotional distress because it was identified in Plaintiff's complaint. *Pl.'s Opp'n.* at 2-3. Applying the controlling caselaw, Plaintiff argues none of those factors warrants exclusion. "As to history, emotional distress damages as a category was known from the Complaint." *Id.* at 3. "As to need for evidence . . . exclusion may have the force of dismissal." *Id.* at 3-4. "As to justification, neither plaintiff could have served timely disclosures. And, even though the Court determined that the scheduling order was operative, that does not undermine Plaintiff's good faith belief that it was not." *Id.* at 4. Finally, Plaintiff argues there is no prejudice to Defendants who "have known of the emotional distress." *Id.*

### C.   Defendants' Reply to Plaintiff's Opposition

In their reply, Defendants suggest "the plaintiff should be precluded from introducing evidence of compensatory damages at trial because the late disclosed emotional distress damages she now seeks to recover differ so materially from what was initially alleged in the complaint that they cannot reasonably have 'long been a basic component of this litigation.'" *Defs.' Reply* at 2 (citing *Trial Evid. Order*).

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 26 contains two required disclosure provisions relevant here. The first is Rule 26(a)(1)(A)(i), requiring the "name and, if known the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information-that the disclosing party

may use to support its claims . . ., unless the use would solely be for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i).

The second required disclosure provision is Rule 26(a)(1)(A)(iii), which mandates that a plaintiff include in her initial disclosures "a computation of each category of damages claimed" and to "make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." FED. R. CIV. P. 26(a)(1)(A)(iii). Rule 26 also specifies timing, instructing that generally the "initial disclosures" must be made "at or within 14 days after the parties' Rule 26(f) conference" unless a "stipulation or court order" provides otherwise or "a party objects during the conference that initial disclosures are not appropriate in this action." *Id.* at (a)(1)(C).

Typically, there are adverse consequences when a party ignores the required discovery provisions of Rule 26. "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "The baseline rule is that the required sanction in the ordinary case is mandatory preclusion." *Harriman v. Hancock Cty.*, 627 F.3d 22, 29 (1st Cir. 2010) (cleaned up).

At the same time, "district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations" that "range from limited exclusion to dismissal of the case." *Laplace-Bayard v. Batlle*, 295 F.3d 157, 162 (1st Cir. 2002) (citing *Ortiz–*

*Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir.2001)).  To determine if preclusion was warranted, the First Circuit considers several factors:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

*Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009).  These same factors guide district courts.  *See Doe v. Austin*, No. 2:22-CV-00368-NT, 2024 U.S. Dist. LEXIS 199423, *6 (D. Me. Nov. 1, 2024).  "Preclusion, however, 'is not a strictly mechanical exercise'" and "in its discretion, the district court may choose a less severe sanction."  *Esposito*, 590 F.3d at 77-78 (1st Cir. 2009) (citing *Santiago–Diaz v. Laboratorio Clinico Y De Referencia Del Este,* 456 F.3d 272, 276 (1st Cir.2006)).

Further, where sanctioning the party who failed to comply with discovery deadlines "carrie[s] the force of a dismissal, the justification for it must be comparatively more robust."  *Id.* at 79; *see also Joyce v. Postmaster Gen., U.S. Postal Serv.*, 846 F. Supp. 2d 268, 278 (D. Me. 2012) ("[W]here the document may affect whether summary judgment is granted, its exclusion is tested against a higher standard").  "The burden is on the party that has failed to comply with discovery deadlines to establish that his failure is harmless or substantially justified."  *U.S. Bank Nat'l Ass'n v. James*, Civil No. 09-84-P-JHR, 2010 U.S. Dist. LEXIS 34043, at *6 (D. Me. Apr. 5, 2010) (citing *Griffith v. Eastern Me. Med. Ctr.*, 599 F. Supp. 2d 59, 65 n.4 (D. Me. 2009)).

## V.    DISCUSSION[5]

### A.    Chief Judge Walker's September 24, 2025 Order

The Court first addresses Plaintiff's contention that Chief Judge Walker already decided this issue on September 24, 2025 when he granted in part and denied in part Plaintiff's motion for order regarding trial evidence. *See Trial Evid. Order* at 1-6. Essentially, Judge Walker pored over the record and concluded that Defendants certainly knew about some witnesses and their centrality to the case from the allegations in the complaint and its extensive motion practice. If Defendants knew or should have known that a witness, such as Attorney Hewey, would be called at trial, Judge Walker made the practical decision that the failure of Plaintiff to make a timely Rule 26(a) disclosure early in the case did not actually affect Defendants' knowledge and ability to prepare for trial.

Thus, in his September 24, 2025 order, Chief Judge Walker included some witnesses and excluded others because of Plaintiff's failure to make timely initial disclosures. *Id.* at 3-6. Reviewing the list of thirteen witnesses in Plaintiff's pretrial memorandum, Judge Walker excluded six witnesses as a sanction for Plaintiff's failure to make timely initial disclosures.[6] *Id.* at 3, 5-6.

---

[5]    In this order, the Court is not addressing the admissibility of Mr. McBreairty's suicide at trial. *See Defs.' Mot.* This issue is the subject of a separate motion in limine and separate order. *See Defs.' Mot.* in Lim. *to Exclude Evid. Related to Suicide and Statements of Emotional Distress and Causation* (ECF No. 173). This order only addresses the admissibility of compensatory damages other than suicide.

[6]    Plaintiff's Final Pretrial Memorandum dated May 21, 2025 listed thirteen witnesses: (1) Patricia McBreairty, (2) Philp Wells, (3) Hannah Wells, (4) Connor Girard, (5) Hunter Dawson, (6) parent of Hunter Dawson, (7) Corporate Representative Nico Ventures, (8) Corporate Representative Maine Policy Institute, (9) Melissa Hewey, (10) Gregg Palmer, (11) Brent Slowikowski, (12) Michelle MacDonald, and (13) Haily Keezer. *Pl.'s Pretrial Mem.* at 3-4. Chief Judge Walker's September 24,

Judge Walker also raised the possibility of a motion in limine, but it is unclear whether he was discussing only exhibits or witnesses as well.  *Id.* at 6 ("My understanding of the case is that the relevant <u>exhibits</u> have long been identified and known to the parties, but my understanding may well fail to appreciate the existence of some <u>new evidentiary disclosure</u> that is unjustified for being unanticipated and prejudicial.  I therefore enter this Order without prejudice to Defendants' ability to raise <u>any such concern</u> in the context of a motion in limine") (emphasis supplied).

But it is clear from Chief Judge Walker's order that he had already imposed a significant sanction on Plaintiff for her failure to comply on a timely basis with Rule 26(a).  Defendants are now seeking the exclusion of any evidence of compensatory damage, a more dramatic remedy than the one Chief Walker imposed.

### B.    Chief Judge Walker's Analytic Path

In any event, assuming his invitation to file a motion in limine included witnesses as well as exhibits, the Court applies Chief Judge Walker's analytic path to Defendants' current motion, asking whether Defendants had actual knowledge of Plaintiff's claim, even if a formal disclosure was not made.  Here, the Court has little difficulty concluding that Defendants knew or should have known that Ms. McBrearty was going to testify about her late husband's emotional response to Defendants' actions in this case.  The complaint alleges that after receiving the first Hewey letter, Mr. McBrearty "suffered injuries that are non-pecuniary in nature, but

---

2025 order excluded (1) Connor Girard, (2) Hunter Dawson, (3) Hunter Dawson's mother, (4) Corporate Representative of Nico Ventures, (5) Corporate Representative of the Maine Policy Institute, and (6) Haily Keezer.  *Trial Evid. Order* at 5-6.

are even more important than his pecuniary losses." *Compl.* ¶ 69.  Mr. McBreairty alleged that he "suffered pecuniary and nonpecuniary damages as a result of Defendants' unconstitutional actions and is entitled to damages as a result of its actions, including, but not limited to, lost income, <u>emotional distress</u>, and incurring legal fees." *Id.* ¶¶ 86, 95 (emphasis supplied).  Finally, Mr. McBreairty claimed "Actual Damages in an amount to be determined at trial." *Id.* at 16.

In addition, during the motion for summary judgment process, Ms. McBreairty alleged in her responsive statement of material fact that her late husband had "suffered emotional distress on account of Defendants' unconstitutional actions." PSAMF ¶ 39.

Once Mr. McBreairty passed away, it would be a very short step for defense counsel to appreciate that Ms. McBreairty was going to testify to what her husband could not, namely about his emotional reactions to Defendants' positions.

Thus, applying Chief Judge Walker's analysis, the Court concludes that Defendants were on notice from the date of the filing of the complaint that Mr. McBreairty was going to claim emotional damages from their actions, and, after he died, that Ms. McBreairty would be the logical, essential witness in his place.

### C.    Other Factors, Including *Esposito*

The Court has considered other factors.  First, the period of Mr. McBreairty's emotional damages is extremely confined, namely between February 13, 2024, the date Attorney Hewey forwarded her first threatening email, and June 3, 2024, the date of his death.  Thus, only that three month and twenty-one-day period is relevant

in this order to Plaintiff's claim for compensatory damages on behalf of her late husband.

The first *Esposito* factor—the litigation history—cuts both ways.  On the one hand, Defendants are correct, Plaintiff failed to meet the initial disclosure deadlines. The Court's June 4, 2024 scheduling order set July 1, 2024 as the deadline for initial disclosures and October 21, 2024 as the deadline to complete discovery.  *Sched. Order* at 2.  While Plaintiff was substituted as plaintiff in September of 2024, *Order Granting Mot. to Substitute Party*, she chose to pursue injunctive relief at the expense of moving discovery along.  *Order on Recommended Decision* at 4 (ECF No. 106) ("Instead of pursuing discovery, [Plaintiff] pursued preliminary injunctive relief and filed notice of her intent to seek summary judgment, all without a mention of a need for discovery or evidence other than the exhibits attached to the pleadings").  Plaintiff did not have to wait until January of 2025 to move to reset the scheduling order, *Mot. for Continuance of Procedural Order and Reset Sched. Order*, nor did she have to wait until May of 2025 to serve initial disclosures.  *See Pl.'s Pretrial Mem*.

On the other hand, Mr. McBreairty's death certainly complicated this case. Mr. McBreairty died on June 3, 2024 and the scheduling order issued on June 4, 2024, imposing a July 1, 2024 deadline for initial disclosures.  But Mr. McBreairty was tragically dead as of July 1, 2024, and Ms. McBreairty had not yet been substituted. Thus, as of the deadline for initial disclosure, technically, there was no plaintiff, Mr. McBreairty having died, and Ms. McBreairty having not yet been substituted for him. It is true that once Ms. McBreairty was formally substituted on September 6, 2024,

she did not then do anything to comply with Rule 26(a), either by providing the initial disclosure or by moving for a new deadline. But Mr. McBreairty's death complicated compliance with the initial disclosure in the scheduling order.

Although Defendants seem to criticize Ms. McBreairty for being too slow to move to substitute herself as personal representative of her late husband, the Court disagrees. The filing in Probate Court for status as a personal representative of an estate takes some time, and there is no evidence in this record that Ms. McBreairty did not act expeditiously in getting appointed the personal representative of his estate and filing the motion for substitution. In fact, Federal Rule of Civil Procedure 25(a) recognizes that there will be a delay between death and motion to substitute and fixes ninety days to file an appropriate motion. FED. R. CIV. P. 25(a). Indeed, as the advisory committee note clarifies, the ninety-day period runs not from the date of death but "after service of a statement noting the death," a change intended to mitigate the "hardships and inequities" of the former rule. *Id.* advisory committee's note to 1963 amendment. Here, Ms. McBreairty filed the motion for substitution five weeks after filing the suggestion of death, well within the ninety days allowed under Rule 25(a).

According to Defendants, Plaintiff did not "disclose any intent to seek compensatory damages until seven months after the close of discovery" when, on May 21, 2025, Plaintiff filed a final pretrial memorandum and served her initial disclosures. *Defs.' Mot.* at 10; *see also Pl.'s Pretrial Mem.* at 2 ("Plaintiff seeks at least nominal damages, but seeks and is entitled to actual damages, including

24

compensation for Mr. McBreairty's . . . emotional distress").  Although Defendants are technically correct that Plaintiff did not make time Rule 26(a) disclosures, the Court cannot agree that Plaintiff never disclosed this information, since it has been clear since the filing of the complaint that this lawsuit seeks damages compensating Shawn McBreairty for emotional distress.

Moving to the other *Esposito* factors, the second factor—Plaintiff's "need for the . . . evidence," *Esposito*, 590 F.3d at 78—strongly favors allowing evidence of compensatory damages.  Both parties agree, barring evidence of compensatory damages would be tantamount to dismissal.  *See Defs.' Mot.* at 6-7 ("barring the plaintiff from presenting evidence of compensatory damages may carry the force of dismissal by defeating justiciability" or because "plaintiff may have little interest in prosecuting this case for only nominal damages"); *Pl.'s Opp'n* at 2.  Because preclusion would carry the force of dismissal, the Court uses a higher standard for each exclusion factor.  *Esposito*, 590 F.3d at 79.

The remaining *Esposito* factors—Plaintiff's justification for her late disclosure, prejudice to Defendants, and burden on this Court's docket—do not outweigh the importance of the compensatory damages evidence to Plaintiff.  To be sure, Plaintiff's justification for delay is weak.  She says she did not believe the scheduling order was operative after her husband's death, and although she acknowledges "the Court determined that the scheduling order was operative" she insists "that does not undermine Plaintiff's good faith belief that it was not." *Pl.'s Opp'n* at 4.  Plaintiff could have moved to clarify or amend the scheduling order deadlines between

25

September 6, 2024, the date of her substitution, and October 21, 2024, the discovery deadline. Hindsight has demonstrated that attending to discovery, even while pursuing injunctive relief, would have been the more prudent course of action.

Here, Plaintiff's failure to make timely initial disclosures, although not commendable, "is not enough to overcome the strong presumption in favor of deciding cases on the merits." *Corinth Pellets, LLC v. Andritz, Inc.*, No. 1:20-cv-00082-NT, 2022 U.S. Dist. LEXIS 230150, at *9 (D. Me. Dec. 22, 2022). Chief Judge Walker already sanctioned Plaintiff significantly for her Rule 26(a) failure, striking six out of thirteen of her witnesses. Thus, the Court determines that the sanctions imposed by Chief Judge Walker are sufficient to punish Plaintiff's initial disclosure failure, and greater sanctions, which would be tantamount to dismissal, are not justified.

## VI.    CONCLUSION

The Court DENIES Defendants Motion *in Limine* to Exclude Evidence of Compensatory Damages Under Fed. R. Civ. P. 37(c)(1) (ECF No. 171).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of December, 2025