UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA MCBREAIRTY, as  )<br>Personal Representative of the Estate  )<br>Of Shawn McBreairty,  )<br>   )<br>   Plaintiff,  )<br>   )<br>   v.  )<br>   )<br>BREWER SCHOOL DEPARTMENT, et al.  )<br>   )<br>   Defendants.  ) | No. 1:24-cv-00053-JAW |

**ORDER ON DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO SUICIDE AND STATEMENTS OF EMOTIONAL DISTRESS AND CAUSATION**

In anticipation of trial, defendants filed a motion in limine seeking to prohibit plaintiff from introducing evidence related to Shawn McBreairty's suicide. Because the general rule holds suicide as an independent intervening factor, severing causation, and that none of the exceptions applies, the court grants the motion. To the extent the parties seek a pretrial ruling on the admissibility of Ms. McBreairty's testimony about her husband's statements concerning his emotional state— unrelated to suicide—from February 2024 to June 2024, the court dismisses the motion as requiring a speculative and advisory ruling.

### I. PROCEDURAL BACKGROUND

On February 22, 2024, Shawn McBreairty filed a verified complaint against Defendants Brewer School Department and Brewer Superintendent Gregg Palmer (collectively, Defendants) alleging that by threating litigation in response to an article he authored and posted concerning a transgender student's access to the girl's

bathroom at Brewer High School, Defendants violated his First Amendment Rights. *Verified Comp. 42 U.S.C. § 1983 Compl. for Declaratory, Inj. Relief, and Damages* at 1, ¶¶ 46-78 (ECF No. 1) (*Compl.*).[1] Shawn McBreairty's complaint sets fourth three causes of action; two remain: (1) retaliation against the exercise of First Amendment rights made applicable to the States under the Fourteenth Amendment, in violation of the United States Constitution, actionable under 42 U.S.C. § 1983; and (2) a parallel claim based on the Maine State Constitution, actionable under 5 M.R.S. § 4682. *Id.* ¶¶ 79-101.

On June 3, 2024, Shawn McBreairty died by suicide, *Suggestion of Death as to Pl. Shawn McBreairty* at 1 (ECF No. 52). On September 6, 2024, Ms. McBreairty, as personal representative of Mr. McBreairty's Estate, (hereinafter, Plaintiff) was formally substituted as plaintiff. *Order Granting Mot. to Substitute Party* (ECF No. 58). On May 21, 2025, Plaintiff filed a final pretrial memorandum and served her initial disclosures. *Pl.'s Pretrial Mem.* (ECF No. 128). In that motion, she states she seeks "nominal damages" as well as "actual damages, including compensation for Mr. McBreairty's severe, debilitating, and fatal emotional distress, as well as punitive damages and attorneys' fees." *Id.* at 2.

This case is currently scheduled for trial in February 2026 on the remaining two counts. *Trial List* (ECF No. 189). Before the Court now is Defendants' motion in

---

[1] The complaint additionally named Brewer High School Principal Brent Slowikowski and Brewer High School English Teacher Michelle MacDonald as defendants. Mr. Slowikowski has been dismissed by order of this Court. *See Order on Cross Mots. for Summ. J. and Mot. for Rule 56(d) Disc.* at 31 (ECF No. 117) (*Order on Cross Mots. for Summ. J.*). The Court also granted Ms. MacDonald's motion for summary judgment. *Order on Mot. for Summ. J. and Mot. for Rule 56(d) Disc.* at 8-9 (ECF No. 118) (*Order on Mot. for Summ. J.*).

limine, seeking to exclude evidence of Mr. McBreairty's suicide and any out-of-court statements he made about his emotional distress or its cause. *Defs.' Mot.* in Lim. *to Exclude Evid. Related to Suicide and Statements of Emotional Distress and Causation* (ECF No. 173) (*Defs.' Mot.*). On November 26, 2025, Plaintiff submitted her response, *Opp'n to Defs.' Mot.* in Lim. *to Exclude Evid. Related to Suicide and Statements of Emotional Distress and Causation* (ECF No. 180) (*Pl.'s Opp'n*), and on December 3, 2025, Defendants replied. *Defs.' Reply to Pl.'s Opp'n to Defs.' Mot.* in Lim. *to Exclude Evid. Related to Suicide and Statements of Emotional Distress and Causation* (ECF No. 185) (*Defs.' Reply*). On December 9, 2025, the Court held oral argument. *Min. Entry* (ECF No. 186).

## II. THE FACTUAL RECORD

Brewer School Department's decision to allow students to use the restroom corresponding to their gender identity, rather than their biological circumstances stirred up controversy among students and members of the public. *Pl.'s Statement of Material Facts* (ECF No. 91) ¶¶ 1-4 (PSMF), *Sch. Defs.' Opp'n Statement of Material Facts* (ECF No. 102) ¶¶ 1-4 (DRPSMF). Shawn McBreairty wrote about the controversy. PSMF ¶ 11; DRPSMF ¶ 11; *Statement of Material Facts of Defs. Brewer Sch. Dept., Gregg Palmer, and Brent Slowikowski in Support of Mot. for Summ. J.* (EC No. 93) ¶ 1 (DSMF); *Pl.'s Opposing Statement of Material Fact* (ECF. No. 105) ¶ 1 (PRDSMF). After reviewing evidence, speaking to witnesses, and doing research, on February 12, 2024, Mr. McBreairty published "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present" on the website *[your]NEWS* (hereafter "the

3

Article"). *Compl.*, Attach. 3, *Ex. 3 Article* (*McBreairty Article*); PSMF ¶ 13; DRPSMF ¶ 13. In the Article, Mr. McBreairty expressed his opinions about the underlying facts and his concerns about what was happening at Brewer High School. PSMF ¶ 14; DRPSMF ¶ 14.

The Brewer School Department decided to try to get Mr. McBreairty to take down the portions of the Article that it believed qualified as defamatory or invaded the privacy rights of its students. PSMF ¶¶ 27-29; DRPSMF ¶¶ 27-29. The School Department requested that its counsel send Mr. McBreairty an email. PSMF ¶ 27; DRPSMF ¶ 27.

On February 13, 2024, Attorney Melissa Hewey, counsel for the Brewer School Department, sent Mr. McBreairty an email. *Compl.* Attach. 5, *Ex. 5 E-Mail from Melissa Hewey Feb. 13, 2024* (*First Hewey Email*); DSMF ¶ 8; PRDSMF ¶ 8. That email stated:

> Dear Mr. McBreairty,
>
> I am writing on behalf of our client the Brewer School Department to demand that you remove certain content from your February 12, 2024 online post entitled "Girl's Bathrooms Are Not 'Safe Spaces' When Males are Present." If you are represented by counsel in this matter, please let me know and I will be glad to direct my correspondence to them.
>
> Although we acknowledge that much of that post contains your opinions on matters of public concern and recognize your right to express them, there are certain portions that are not protected because they are either false or an impermissible invasion of the privacy of minors and have the effect of bullying and hazing a student and a teacher at the Brewer High School in violation of Board Policies ACAD, ACAF and JICK and Maine law. In particular:

<u>First</u>, there is a picture of Brewer High School students in the restroom. As we understand it, this picture was taken without their consent, presumably in violation of 17-A M.R.S. Section 511.

<u>Second</u>, there are the following two statements concerning a Brewer High School student that identifies the student specifically:

> [HD], aka "****" is a senior at Brewer High School. He goes by the pronouns they/them on Instagram and his profile name is "****." He's been allowed by the administration to continue to enter female spaces for the last three months. Even after students' concerns were reported. He once stated he was "too emo for this school," but now he is literally playing dress up, because the school policy allows it to continue and no one has the balls to stop it.

> There have been various social media posts that "... he is alleged to have touched some female student(s)." Additional, yet unconfirmed reports state he is accused online of a "sexual assault" of a fellow student "in late 2021." There was another post stating "... in September (sic) of 2022 i (sic) was taken advantage of by [HD]." Sources state these are "different people" making these serious claims. Is the school aware of these claims? Some say they are.

<u>Third</u>, there is a statement concerning the minor child of one of our teachers:

> MacDonald has a transgender child who attends a different school (Hampden Academy. She's a girl who pretends to be a boy on the male track team, usually coming in dead last).

All of the above are invasions of privacy of the students you have referred to and are causing the Brewer High School student and the Brewer High School staff member who is the parent of the other student you refer to severe distress within the meaning of Maine statute, 20-A M.R.S. Sections 6553 and 6554.

Please remove the referenced material by noon on February 14, 2024 and confirm to me that you have done so or we will be forced to take further action against you.

M

5

*First Hewey Email* at 2 (emphasis in original); DSMF ¶ 9; *PRDSMF* ¶ 9.

Mr. McBreairty reluctantly and fearfully removed the entire Article from the website *[your]NEWS* and published a copy of counsel's email dated February 13, 2024, on his Twitter/X account. *Compl.*, Attach. 6, *Ex. 6 E-mail from Melissa Hewey February 14, 2025* (*Second Hewey Email*); PSMF ¶ 32, 38; DRPSMF ¶ 32, 38; DSMF ¶ 11; PRDSMF ¶ 11.

On February 14, 2024, counsel for the School Department sent Mr. McBreairty a second email with the subject line "Brewer Follow-up." *Second Hewey Email* at 2; DSMF ¶ 12; PRDSMF ¶ 12. The full text of the February 14, 2024 email reads:

> Dear Mr. McBreairty,
>
> As an initial matter, I want to thank you for complying with our request to remove the image and certain content from your post in response to the email I sent you yesterday. I understand that instead, you posted a screenshot of the email I sent you. What you may not have been aware of is that my email quoted verbatim the inappropriate content so by posting the email on X, you have effectively re-posted the inappropriate content.
>
> Please redact the information regarding the BHS student from your second picture and the information regarding the staff member's child on the third page.
>
> Thank you for your prompt attention to this demand.

*Second Hewey Email* at 2; DSMF ¶ 13; PRDSMF ¶ 13.

Mr. McBreairty died by suicide on June 3, 2024. DSMF ¶ 16; PRDSMF ¶ 16.

### III. THE PARTIES' POSITIONS

#### A. Defendants' Motion to Exclude Evidence Related to Suicide

Defendants argue that all evidence related to Shawn McBreairty's "suicide should be excluded" under Federal Rules of Evidence 401 and 403, because "plaintiff

cannot, as a matter of law, generate a triable issue of whether the defendants caused McBreairty's suicide" and "even if there is some limited probative value to referencing McBreairty's suicide, that probative value is far outweighed by the evidence's potential to confuse the issues, mislead the jury, and unfairly prejudice the defendants." *Defs.' Mot.* at 7. Defendants further support their position with caselaw, explaining that, as a general rule, the law prohibits recovery for suicide, and none of the narrow exceptions to the general rule are applicable in this case.

Defendants also argue that any statement by Plaintiff or other witnesses relaying Mr. McBreairty's own statements about his alleged emotional distress is inadmissible hearsay under Federal Rules of Evidence 801(c) and 802. *Id.*

### B. Plaintiff's Opposition to Defendants' Motion to Exclude Evidence Related to Suicide

In her response, Plaintiff argues that Attorney Hewey "threatened Shawn McBreairty" and tried "to censor his writing" as "part of a pattern and practice" which "caused Mr. McBreairty to suffer such severe and debilitating emotional distress that he took his own life." *Pl.'s Opp'n* at 1. Plaintiff agrees that Defendants' cited caselaw forecloses wrongful death damages for suicide. *Id.* at 4. However, Plaintiff clarifies that she "is not seeking damages from the suicide" but rather "for the emotional distress . . . so severe that it *resulted in suicide*." *Id.* at 4 (emphasis in original). Plaintiff also suggests Defendants' prejudice argument is misguided, because the evidence of Mr. McBreairty's suicide his highly probative of "the extent of the harm," i.e., evidence of his emotional distress.

7

As to Defendants' hearsay argument, Plaintiffs argue Mr. McBreairty's statements of his mental well-being and the effect of Defendants' threats are admissible under Rule 803(3)'s state of mind exception and under Rule 807, the residual exception.

### C. Defendant's Reply to Plaintiff's Opposition

In their reply, Defendants reiterate and expand upon their argument that the probative value of any evidence of Mr. McBreairty's suicide is far outweighed by the risk of unfair prejudice. *Defs.' Reply* at 4. They emphasize that to admit evidence of suicide, the Plaintiff would have had to produce expert testimony "to establish that the defendant's allege violation of McBreairty's constitutional rights was both a cause in fact and a proximate cause of his suicide." *Id.* at 3.

## IV. LEGAL STANDARD

42 U.S.C. § 1983 "is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). "The essential elements of a claim under section 1983 are: First, that the defendants acted under color of state law; and second, that the defendants' conduct worked a denial of rights secured by the Constitution or by federal law." *Rodríguez–Cirilo v. García*, 115 F.3d 50, 52 (1st Cir. 1997) (citing *Martínez v. Colón*, 54 F.3d 980, 984 (1st Cir.1995)).

Plaintiffs can recover damages in § 1983 cases. However, "the abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986). To collect compensatory damages, including for mental and emotional distress, in a § 1983 case a plaintiff must prove

the constitutional deprivation caused actual injury. *Carey v. Piphus*, 435 U.S. 247, 264 (1978). Absent causation and actual injury, a plaintiff can only recover nominal damages. *Stachura*, 477 U.S. 299 at 308 n.11.

As the Supreme Court explained, § 1983 actions are a "species of tort liability." *Carey*, 435 U.S. at 253 (citing *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Accordingly, "[t]he issue of causation of damages in a section 1983 suit is based on basic notions of tort causation." *Rodríguez–Cirilo,* 115 F.3d at 52 (citing *Maldonado Santiago v. Velázquez García*, 821 F.2d 822, 831 (1st Cir.1987)); *see also Stachura,* 477 U.S. at 306-08; *Carey*, 435 U.S. at 258; *Buenrostro v. Collazo*, 973 F.2d 39, 45 (1st Cir. 1992). Under traditional tort principles, "[c]ausation is binary, comprising causation in fact and proximate (or 'legal') causation." *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 836 (1st Cir. 1990). To establish causation, it must be shown both that the plaintiff's harm "would not have occurred 'but for' the [defendant's] breach [of a legal duty]" and that "the breach proximately caused the harm, that is, [that] the defendant should bear legal responsibility for the injury." *Id.*

"In applying basic tort principles to the facts raised by a particular section 1983 claim, the causation requirement may be fleshed out with reference to state law tort principles." *Rodríguez–Cirilo*, 115 F.3d at 52 (citing *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 561 (1st Cir. 1989)). In Maine, factual and legal causation are discussed under the umbrella term of "proximate cause." *Crowe v. Shaw*, 2000 ME 136, ¶ 10, 755 A.2d 509, 512 ("Evidence is sufficient to support a finding of proximate cause if the evidence and inferences that may reasonably be drawn from

9

the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence"). Proximate cause must be "unbroken by an efficient intervening cause." *Johnson v. Carleton*, 2001 ME 12, ¶ 12, 765 A.2d 571, 575 (quoting *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778, 780). For an intervening cause "to break that chain of causation" it "must also be a superseding cause, that is, neither anticipated nor reasonably foreseeable." *Ames v. DiPietro-Kay Corp.*, 617 A.2d 559, 561 (Me. 1992).

"Because suicide is often an unforeseeable act" courts consider it "an independent intervening cause that relieves a negligent actor from liability." *Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 287 (6th Cir. 2017); *see also Helie v. Richard E. Fisher,* Me. W.C.C. App. Div. 92-101 (Me.1992) (upholding, in worker's compensation context, findings "that the employee's failed suicide attempt was an independent, intervening cause sufficient to sever the causal connection between the employee's work-related injury and her earning incapacity").

V. **DISCUSSION**

    A. **Suicide and Causation**

Although proximate causation is generally a question of fact to be resolved by the jury, *Perron v. Peterson*, 593 A.2d 1057, 1058 (Me. 1991), Plaintiff's position fails because as a matter of law, suicide is an independent, intervening cause, and none of the limited exceptions to this rule applies in this case. The general rule is that suicide is an intervening force that severs the chain of causation. *See, e.g., Story as Tr. for*

*Story v. Marquette Univ.*, 728 F. Supp. 3d 948, 855 (E.D. Wis. 2024), *appeal dismissed*, No. 24-1600, 2024 U.S. App. LEXIS 20800, *1 (7th Cir. Aug. 16, 2024) (noting "the general rule that 'suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render the defendant civilly liable'") (quoting *Bogust v. Iverson*, 10 Wis. 2d 129, 102 N.W.2d 228 (1960) (applying Wisconsin law)); *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 442 (7th Cir. 2009) (commenting "courts have found suicide to be an unforeseeable act that breaks the chain of causation required by proximate cause"); *Wickersham v. Ford Motor Co.*, 738 F. App'x. 127, 132 (4th Cir. 2018) ("[T]he general rule is that suicide is an intervening act that breaks the chain of causation in wrongful death cases and precludes recovery"); *Anderson v. Georgia Dep't of Corr.*, 769 F. Supp. 3d 1319, 1339 (N.D. Ga. 2025) (noting the same under Georgia law); *Whooley v. Tamalpais Union High Sch. Dist.*, 399 F. Supp. 3d 986 (N.D. Cal. 2019) (noting "[i]n California, suicide has historically been viewed as an intervening event that always breaks the chain of causation, thereby precluding any tort liability for a suicide"); *see generally Civil Liability for Death by Suicide*, 11 A.L.R. 751 (1950).

    The rationale underlying this rule, as the Supreme Court of South Carolina observed, is that "so many elements may enter into a suicide that it is impossible to say that it was the natural and probable consequence of [defendant's action]," and reaching such a conclusion would require the court "to eliminate all those elements of feeling, temperament, disposition, emotional disorders, background and lack of self-control, which might of themselves have been sufficient to bring about the tragic

11

result . . . ." *Wickersham*, 783 F. App'x at 132 (quoting *Scott v. Greenville Pharmacy*, 212 S.C. 485, 48 S.E.2d 324, 328 (1948) (applying South Carolina law)).[2]

Thus, Plaintiff cannot use Mr. McBreairty's suicide or any prior suicidal ideation as evidence for emotional distress damages for the period between February 13, 2024 and June 3, 2024. Plaintiff seeks damages "for the emotional distress . . . so severe that *it resulted in suicide*" and considers suicide "evidence of the severity of the emotional distress." *Pl.'s Opp'n* at 4 (emphasis in original). But, although cleverly framed, the Court views this argument as indistinguishable from the argument that Defendants' conduct caused Mr. McBreairty's suicide. Moreover, this argument would fail under a Rule 403 analysis, since the probative value of this evidence is substantially outweighed by its prejudicial impact, planting the seed in the jurors' minds that Defendants caused Mr. McBreairty's tragic suicide.

There are two exceptions to this general rule, but neither applies here. Under the special relationship exception, a defendant can be civilly liable for suicide where the defendant and the deceased had a special relationship requiring the defendant take care to prevent harm or suicide. *Story as Trustee for Story*, 728 F. Supp. 3d at 955; *see e.g.*, *Hayes v. Town of Dalton*, No. 3:21-CV-30055-KAR, 2025 U.S. Dist. LEXIS 54987, *19 (D. Mass. Mar. 25, 2025) (recognizing exception); *Smith v. City of Chandler*, 794 F. App'x 594, 596 (9th Cir. 2019) (concluding that where the police

---

[2] At trial Plaintiff may seek to recover for the emotional distress Defendants allegedly caused Mr. McBreairty prior to his death on June 3, 2024. Defendants bring this motion in the alternative to their motion in limine to exclude evidence of compensatory damages at trial. *See Defs.' Mot.* in Lim. *to Exclude Evid. of Compensatory Damages Under Fed. R. Civ. P. 37(c)(1)* (ECF No. 171). As discussed in a separate order on that motion in limine, although Plaintiff failed to make adequate initial disclosures, the Court denied the motion because caselaw has a higher standard for exclusion that results in dismissal and because the Plaintiff has already been adequately sanctioned for her mistake.

12

were called to respond to a suicidal subject, the failure of an officer to apply his training, resulting in the subject's injuries during a suicide attempt could form the basis of liability). The special relationship exception applies most often in custodial or supervisory relationships such as between jailor and inmate or a medical provider and institutionalized patient. *Id*; *see also Dux v. United States*, 69 F. Supp. 3d 781, 788 (N.D. Ill. 2014). There is no allegation of a special relationship between Defendants and Mr. McBreairty.

Under the second exception, a defendant may be liable if the wrongful act creates in the deceased a delirium or frenzy that causes the victim to commit suicide. *Story as Trustee for Story*, 728 F. Supp. 3d at 955. *See e.g.*, *Clift v. Narragansett Television L.P.*, 688 A.2d 805, 810 (R.I. 1996) (applying the exception); *Lilly v. Univ. of California-San Diego*, 751 F. Supp. 3d 1056, 1083 (S.D. Cal. 2024) (recognizing exception). Plaintiff has not alleged that Defendants' conduct caused a mental condition in which Mr. McBreairty could not control his suicidal impulses.

Given that neither exception applies, Mr. McBreairty's suicide broke the "chain of causation" because it was "neither anticipated nor reasonably foreseeable" as a matter of law. *Ames*, 617 A.2d at 561. As Defendants' point out, none of those exceptions applies here and even attempting to apply an exception would fail. *Defs.' Mot.* at 8-9. For example, Plaintiff has not designated expert witness, which would be necessary to establish causation (e.g., Defendants conduct caused McBreairty's suicide). *Id.* at 9 (citing caselaw).

13

Further, the facts here do not justify letting the jury speculate about why Mr. McBreairty committed suicide. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

As to unfair prejudice, Defendants argue that "plaintiff should not be allowed to inflame the jury and gain from unfair prejudice by blaming his suicide on the school." *Defs.' Mot.* at 11. Attorney Hewey sent two emails to Mr. McBreairty on February 13 and February 14, 2024, and Mr. McBreairty did not commit suicide until June 3, 2024, over three months later. The "controlling factor in determining whether there may be a recovery for a failure to prevent a suicide is whether the defendants reasonably should have anticipated that the deceased would attempt to harm himself." *Glenn v. Myers*, Civil Action No. 1:17-00194-JB-N, 2020 U.S. Dist. LEXIS 225006, at *22 (S.D. Ala. Nov. 30, 2020) (quoting *Popham v. City of Talladega*, 582 So. 2d 541, 543 (Ala. 1991)). Here, without pure speculation, there is no evidence that would allow a jury to conclude that Attorney Hewey's two February emails led to Mr. McBreairty's June suicide. *See Jamison v. Storer Broadcasting Co.*, 511 F. Supp. 1286, (E.D. Mich. 1981) (concluding that in an action against the deceased former employer alleging racial discrimination and wrongful death based on suicide of white male television sportscaster after he was discharged and replaced by Black male, causation was lacking as a matter of law where experiences contributing to decision to end life were multiple and could be tied to discharge only by speculation).

14

Plaintiff counters that Defendants' prejudice argument is misguided, explaining that just like "[a]n amputee in a tort case is allowed to state they are missing a limb" to show "the extent of the harm," so too can Plaintiff state [t]he fact of suicide as evidence of the emotional distress." *Pl.'s Opp'n* at 4-5. What would be unfairly prejudicial, according to Plaintiff, would be to bring "in the severed limb as an exhibit" in the amputee's case or "post mortem images of Mr. McBreairty with the gunshot wound and blood on the walls" in this case. *Id.* at 5-6. Defendants counter, and the Court agrees, that it is not "the shock value of the suicide evidence itself, but rather the strong likelihood that its introduction would appeal to jurors' sympathies and suggest that they should consider it in their damages calculation which . . . is improper because the plaintiff cannot recover for McBreairty's suicide as a matter of law." *Defs.' Reply* at 4.

Evidence of Mr. McBreairty's suicide would also confuse the issues and mislead the jury. According to Plaintiff, she "does not seek an emotional judgment from the jury, but Defendants cannot hide the fact that their actions caused Mr. McBreairty so much distress that he committed suicide." *Pl.'s Opp'n* at 6. Defendants aptly point out that Plaintiff tries to "disavow[] any claim for traditional wrongful death damages" while simultaneously asking "the jury to decide whether the defendants are culpable for McBreairty's death." *Defs.' Reply* at 2. However, as discussed, suicide is an independent and intervening cause and for which Defendants are not civilly liable.

15

Plaintiff also argues "[i]t is not unusual for someone placed in the crosshairs of a government threatening them with criminal sanctions . . . [to] take their own life rather than face the unlimited resources of a state," *Pl.'s Opp'n* at 4. However, allowing the jury to evaluate that claim would also confuse and mislead the jury. Accordingly, the Court agrees with Defendants that "even if there is some limited probative value to referencing McBreairty's suicide, that probative value is far outweighed by the evidence's potential to confuse the issues, mislead the jury, and unfairly prejudice the defendants." *Defs.' Mot.* at 7.

### B. Hearsay Issues

Defendants next argue that, assuming Ms. McBreairty is allowed to bring a claim for Mr. McBreairty's emotional damages, she should be precluded from testifying about any statements Mr. McBreairty made to her about his emotional state between February and June 2024. Defendants quote Federal Rule of Evidence 801, which defines hearsay as a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c)(1)-(2). Defendants say that testimony from Ms. McBreairty about what her late husband said about his emotional condition before his death is classic hearsay and should be excluded. *Def.'s Mot.* at 11. Plaintiff in turn relies on a the "then-existing mental, emotional, or physical condition" exception to the rule against hearsay found in Rule 803(3). FED. R. EVID. 803(3).

Rule 803(3) provides:

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

*Id.* To be admissible under Rule 803(3), the statement must meet three requirements: (1) the statement must be contemporaneous with the mental state sought to be proven, (2) there must be no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent her thoughts, and (3) the declarant's state of mind must be relevant to an issue in the case. MARK S. BRODIN, JOSEPH M. MCLAUGHLIN, JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FED. EVID. § 803.05[2][a] (2d ed. 2024). In the words of the First Circuit, "Rule 803(3) requires 'contemporaneity between the event that gives rise to the state of mind or intention and the declarant's expression of that state of mind or intention.'" *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 91 (1st Cir. 2017) (citation omitted).

The parties have not placed any specific proposed testimony before the Court and therefore any ruling in advance of trial would be speculative and advisory. However, the Court will apply the admissibility requirements of Rule 803(3) to any testimony by Ms. McBreairty about statements of her late husband.

The residual exception of Rule 807 reads:

> **(a) In General.** Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>
> **(1)** the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

17

> **(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.
>
> **(b) Notice.** The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

FED. R. EVID. 807.

Ms. McBreairty has not mentioned what specific evidence she wishes to admit under the residual exception, and in addition to its reluctance to issue speculative and advisory rulings, the Court has not been provided with any information that she has complied with the notice provisions of Rule 807(b). The First Circuit observed that the admissibility of evidence under Rule 807 involves "considerations which are very trial-specific, such as the relative probative value of the hearsay statement and whether admitting the statement will best serve the 'interests of justice.'" *United States v. Doe*, 860 F.2d 488, 491 (1st Cir. 1988) (addressing former Rule 803(24), which was combined with Rule 804(b)(5) in 1997 and transferred to Rule 807). The Court declines to predict the admissibility at trial under Rule 807 of unknown statements. To the extent the parties seek a pretrial ruling on the admissibility of Ms. McBreairty's testimony about her husband's statements concerning his emotional state from February 2024 to June 2024, the Court dismisses the motion as requiring a speculative and advisory ruling.

## VI.   CONCLUSION

18

The Court GRANTS in part and DISMISSES in part Defendants Motion *in Limine* to Exclude Evidence Related to Suicide and Statements of Emotional Distress and Causation (ECF No, 173).

SO ORDERED.

                                          <u>/s/ John A. Woodcock, Jr.</u>
                                          JOHN A. WOODCOCK, JR.
                                          UNITED STATES DISTRICT JUDGE

Dated this 22nd day of December, 2025