UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA MCBREAIRTY, in her capacity as Personal Representative of the Estate of Shawn McBreairty,<br><br>Plaintiff,<br><br>v.<br><br>BREWER SCHOOL DEPARTMENT and GREGG PALMER,<br><br>Defendants. | No. 1:24-cv-00053-JAW |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PUNITIVE DAMAGES**

Superintendent Gregg Palmer and the Brewer School Department hereby submit this motion *in limine* seeking an order excluding evidence of punitive damages from trial and granting judgment as a matter of law in the defendants' favor on the plaintiff Patricia McBreairty's punitive damages claims. The grounds for this motion are set forth more fully in the memorandum below.

**BACKGROUND**

On February 12, 2024, Shawn McBreairty ("McBreairty") posted an article on his *[your]*NEWS website entitled "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present." ECF No. 1-3, at 2. Apart from publishing his views on issues related to transgender students' use of school bathrooms, McBreairty's article publicized an unauthorized photo of Brewer High School students—who were minors—inside the school's bathroom. *See id.* at 3-4. McBreairty also singled out one of those students by name and suggested they had engaged in sexual assault. *See id.* at 3. After the article was published, the minor student named in the article and shown in the photograph stopped attending school. *See* ECF No. 16-1 ¶ 8. The parents of the pictured

1

students also complained that the photograph violated their children's privacy rights. *See id.* ¶ 9. In response, the Brewer school administration directed its attorney, Melissa Hewey of Drummond Woodsum, to ask McBreairty to remove the photo and the minor student's name, telling McBreairty that he was otherwise entitled to publish his opinion. *See id.* ¶ 11; ECF No. 1-5, at 2.

Instead of taking down the unauthorized photograph and editing his article, McBreairty voluntarily removed the entire post and replaced it with a copy of Attorney Hewey's email to him. *See* ECF No. 16-1 ¶¶ 14-15. This prompted Attorney Hewey to send a follow up email, dated February 14, 2024, out of concern that McBreairty's gamesmanship in this respect still did not remove reference to the minor student's name. *See id.* ¶ 15; ECF No. 1-6, at 2. While McBreairty did remove that post, *see* ECF No. 16-1 ¶ 16, he made a guest appearance on the Stew Peters Show two days later, during which the photograph of the minor students in the Brewer High School bathroom was displayed (and was thereafter viewable online, by virtue of his appearance), *see* ECF No. 16-3 ¶ 7. And as of February 27, 2024, starting with posts he made before this suit, McBreairty continued to post the photograph on his X account. *See id.* ¶¶ 2-6.

McBreairty filed this civil rights action about one week after Attorney Hewey's second email. *See generally* ECF No. 1. He alleged that the Brewer School Department's threat of litigation in Attorney Hewey's emails violated his rights to freedom of speech, expression, and petition under the United States and Maine Constitutions. *See id.* ¶¶ 79-95. He stated he intended to republish the article and email once he no longer faced that alleged threat of litigation, and sought to enjoin the defendants from interfering with his alleged right to do so. *See id.* ¶¶ 87, 95. He also requested nominal damages, attorney's fees and costs, and pecuniary and non-pecuniary damages, including but not limited to damages for his lost income and emotional distress. *See id.* ¶¶ 86, 95, C-E. He did not request punitive damages in the complaint. *See generally id.*

On June 3, 2024, McBreairty filed a motion requesting issuance of a scheduling order, which the Court granted. *See generally* ECF Nos. 47-48. McBreairty committed suicide that same day (though a suggestion of death was not filed until July 2, 2024). *See generally* ECF No. 52. On June 4, 2024, the Court issued a scheduling order which set the initial disclosure deadline as July 1, 2024. *See* ECF No. 49 at 1-2. The defendants served initial disclosures on July 1, 2024, but the plaintiff, Patricia McBreairty, failed to provide initial disclosures during the discovery period, despite being substituted as the plaintiff on September 6, 2024. *See* ECF Nos. 57-58.

On May 21, 2025, after significant litigation related to injunctive relief, the close of the discovery period under the scheduling order, and summary judgment proceedings, this case was placed on the July 2025 trial list and the defendants filed a pretrial memorandum in which they argued recovery must be limited to nominal damages because the plaintiff failed to disclose any alleged damages as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).[1] *See* ECF No. 127 at 4; *see generally* ECF Nos. 4, 59, 76, 87, 90, 92, 97, 103. This prompted the plaintiff to file a final pretrial memorandum and send the defendants untimely "initial" disclosures later that day stating her intent to seek nominal damages, emotional distress damages, attorney's fees, and—for the first time—punitive damages. *See* ECF No. 128 at 2.

On January 7, 2026, this Court issued a final pretrial conference report and order stating that because the plaintiff has claimed punitive damages, it will bifurcate trial and proceed on that claim—instructing the jurors to use the evidence already before them and allowing both parties an opportunity to present further evidence and closing arguments on the issue—if the jury first returns a plaintiff's verdict on the issues of liability and compensatory damages. *See* ECF No. 205 at 5-6.

---

[1] The trial date in this case was then continued several times and is now set for March 2026. *See* ECF No. 202.

## ARGUMENT

As a preliminary matter, the defendants lacked any notice prior to May 21, 2025, that the plaintiff intended to seek punitive damages. The complaint neither expressly requested punitive damages nor implied a basis for such relief by alleging that the defendants' conduct was in any way "motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to [McBreairty's] federally protected rights . . . ." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (outlining the evidentiary threshold a plaintiff must satisfy in a 42 U.S.C. § 1983 action before the jury is permitted to assess punitive damages); *see also Cabral v. U.S. Dep't of Just.*, 587 F.3d 13, 24 (1st Cir. 2009) (noting that the inquiry set forth in *Smith* "is based on the defendant's subjective knowledge or intent" that their conduct may violate federal law); *see generally* ECF No. 1.

Critically, the plaintiff has yet to generate a sufficient evidentiary foundation to rationalize putting the issue of punitive damages to the jury, and it is unlikely that she will be able to do so. When the plaintiff first indicated her intent to seek punitive damages in May 2025, she neglected to accompany that belated disclosure with identification of any documents or exhibits she relies on to support such an award or bearing upon the nature and extent of such damages. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). She is therefore left with a documentary record that consists primarily of the article McBreairty authored and the emailed letters Attorney Hewey sent to him. Attorney Hewey's February 13, 2024 communication expressly acknowledged McBreairty's right to voice his opinions—a far cry, as a matter of law, from a showing of "callous indifference" to his constitutional rights. *See* ECF No. 1-5 at 2 (stating "we acknowledge that much of that post contains your opinions on matters of public concern and recognize your right to express them"). Examining the sparse evidentiary record as a whole, there is simply nothing to suggest "evil motive" on the defendants' part, especially considering that it was eminently reasonable for

4

Superintendent Palmer to ask the Brewer School Department's attorney for assistance with McBreairty's article given his legal obligation as a superintendent to address incidents of cyberbullying that infringe on the rights of a student at school. *See generally* 20-A M.R.S. § 6554; 5 M.R.S. § 4602.

One substantial consequence of the plaintiff's failure to allege punitive damages—much less inform the Court or the defendants of her intent to pursue them until after the close of discovery and summary judgment briefing—is that the defendants had no opportunity to file a dispositive motion on their respective immunity to such damages. This is significant because, even if the plaintiff could carry the evidentiary burden described above, it would still be improper for the jury to assess punitive damages because municipalities and their departments are immune from such damages in actions brought pursuant to 42 U.S.C. § 1983. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258-71 (1981); *Lamboy-Ortiz v. Ortiz-Vélez*, 630 F.3d 228, 233 n.7 (1st Cir. 2010); *Godin v. Machiasport Sch. Dep't Bd. of Dirs.*, 831 F.Supp.2d 380, 390 (D. Me. 2011) (reiterating that the defendant, a municipal entity, was immune from punitive damages in a section 1983 case); *Boynton v. Casey*, 543 F.Supp. 995, 1003 n.10 (D. Me. 1982) (holding that, under *Newport*, the "plaintiffs' claim for punitive damages against the Board of Directors of School Administrative District 67 for the acts of the defendants in their official capacities [was] not maintainable").

Additionally, as will be expanded on in the forthcoming trial brief, Superintendent Palmer is protected from liability for punitive damages (as well as compensatory and nominal damages) by qualified immunity. *See District of Columbia. v. Wesby*, 583 U.S. 48, 62-63 (2018) (explaining that government officials are immune from suit under section 1983 unless they violate a constitutional right and the unlawfulness of their conduct was "clearly established" at the time, meaning "the law was sufficiently clear that every reasonable official would understand that what

[they are] doing is unlawful," placing the constitutionality of their conduct "beyond debate" (cleaned up)). And as argued above, regardless of qualified immunity, there is no evidence of subjective "evil motive" under *Smith* to support a bifurcated punitive damages jury trial against him.

## CONCLUSION

For the aforementioned reasons, the defendants respectfully request that this Court enter an order excluding evidence of punitive damages from trial and granting judgment as a matter of law in defendants' favor on the plaintiff's punitive damages claims. *See* Fed. R. Civ. P. 50(a).

Dated: February 9, 2026

Norman, Hanson & DeTroy, LLC
220 Middle Street, P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000

*/s/ Russell B. Pierce, Jr., Esq.*
Russell B. Pierce, Jr. – Bar No. 7322
rpierce@nhdlaw.com

Jonathan W. Brogan – Bar No. 3163
jbrogan@nhdlaw.com

Cecilia J. Shields-Auble – Bar No. 010696
cshields-auble@nhdlaw.com

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101
(207) 772-1941

Kasia S. Park, Esq.
kpark@dwmlaw.com

*Attorneys for Defendants Gregg Palmer and Brewer School Department*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will also notify counsel of record of the filing.

Dated:           February 9, 2026                                    */s/ Russell B. Pierce, Jr., Esq.*
                                                                     Russell B. Pierce, Jr. – Bar No. 7322