IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA MCBREAIRTY, as personal representative of the Estate of Shawn McBreairty,<br><br>    Plaintiff,<br><br>  v.<br><br>BREWER SCHOOL DEPARTMENT, GREGG PALMER, in his personal and official capacities, BRENT SLOWIKOWSKI, in his personal and official capacities, MICHELLE MACDONALD, in her personal and official capacities,<br><br>    Defendants. | Case No. 1:24-cv-00053-JAW<br><br>**PLAINTIFF'S TRIAL BRIEF** |

Plaintiff, Patricia McBreairty, by and through undersigned counsel, provides her Trial Brief, pursuant to L.R. 16.5(d)(3) and the Court's Report of Final Pretrial Conference and Order (ECF No. 205).

**1.0   INTRODUCTION**

Plaintiff, in obtaining summary judgment and declaratory relief sought in Count III has already largely had the issues to be decided at trial determined.  Gregg Palmer is a government actor as Superintendent of Brewer School Department.  He was the final policymaker for Brewer School Department.  Their agent, Melissa Hewey, sent demands to Shawn McBreairty on account of speech that was protected under the First Amendment and Maine Constitution, resulting in a chilling of that speech.  Liability is near-certain; this is largely a damages trial.  This memorandum addresses some of the legal and evidentiary issues that may arise at trial, including specific issues the Court requested be included, highlight the counterparts in the proposed jury instructions.

## 2.0 PERTINENT FACTS

### 2.1. The Petition

Brewer School Department permits students to use the bathroom corresponding to their gender identity, rather than their biological sex. Verified Complaint at ¶ 10. HW and CG were students at Brewer High. *See* Complaint at ¶11; ECF No. 1-1, Declaration of HW ("HW Decl."). Hannah Wells (a testifying witness) and Connor Girard drafted and circulated a petition to try to convince Brewer High School to change school policy. *See* Complaint at ¶ 17-18; HW Decl. at ¶ 13-14. The Defendants led Hannah and Connor to believe that they would be prosecuted for a "hate crime" or sued by the school, and they would be disciplined by the school if they continued to circulate the petition. *See* Complaint at ¶ 31; HW Decl. at ¶ 21. Thereafter, Hannah and her father, Phil (a testifying witness) met with Superintendent Gregg Palmer and Brewer High School Principal Brent Slowikowski. Complaint at ¶ 36; HW Decl. at ¶ 25; ECF No. 1-2, Declaration of Phil Wells (hereinafter "PW Decl.") at ¶ 4. At the second meeting, Palmer and Slowikowski reiterated the Brewer School Department would not permit the petition being circulated. Complaint at ¶ 38; HW Decl. at ¶ 26; PW Decl. at ¶ 6. Palmer threatened adverse action taken against Hannah, and her father believed that those threats were aimed at him as well. *See* Complaint at ¶ 39; HW Decl. at ¶ 27; Decl. at ¶ 7. Phil then contacted Shawn McBreairty, who wrote about the incident. *See* Complaint at ¶ 43; PW Decl. at ¶ 10.

### 2.2. The Article

Shawn McBreairty (the named plaintiff until his death) was a journalist and an Educational Advocate who petitioned for change in education policy and law. Complaint at ¶ 9. After reviewing evidence, speaking to witnesses, and doing more than reasonable research, on February 12, 2024, Shawn published "Girl's Bathrooms are Not 'Safe Spaces' When Males are Present" on the website *[your]NEWS* (hereafter the "Article"). Complaint at ¶ 46; ECF No. 1-3. In the Article,

Shawn discussed his opinions about the underlying facts and concerns. Complaint at ¶ 49. Shawn reported on the students' petition that, over the course of three days, garnered hundreds of signatures. Complaint at ¶ 50. Shawn reported on threats to the students circulating the petition. He wrote about how Slowiskowki, precluded the students from circulating the petition. Complaint at ¶ 52. Shawn described a teacher by quoting the very text of this Court's description of her in *Macdonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 252 (D. Me. Jan. 12, 2023). Complaint at ¶ 53.

Shawn then reported on and reproduced a letter from Palmer and Slowikowski that was sent to Brewer School Department Families, Students, and Staff addressing "hate directed at members of our school committee," while acknowledging, at least on the surface, "competing viewpoints," and instructing recipients to "celebrate students" notwithstanding those competing viewpoints. Complaint at ¶ 55. Shawn reported on the poor academic outcomes at Brewer High School, criticized the Defendants' law firm, and criticized the Brewer School Committee and its chair, Kevin Forest. Complaint at ¶ 56. Shawn provided his understanding of the holding in *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11 (Me. 2014). Shawn described Brewer School Department policies as being unsafe. Complaint at ¶ 58. Shawn encouraged the public to attend the February 12, 2024, Brewer School Committee meeting and provide public comment for the issues under consideration. Complaint at ¶ 59.

### 2.3. Defendants' Demands

On February 13, 2024, counsel for the Defendants, Attorney Melissa Hewey of Drummond Woodsum, acting on their behalf, at their behest, under their actual and/or apparent authority, threatened Shawn that, if he did not remove the Article from circulation by noon the next day, Defendants would be "forced to take further action" against him. Complaint at ¶ 60; ECF No. 1-5. Specifically, Defendants claimed that the Article invaded a student's privacy, violated Brewer

School Department policies ACAD, ACAF, and JICK, and caused a student and a teacher severe distress under 20-A M.R.S. Section 6553 and 6554. Complaint at ¶ 62. Shawn became fearful upon receipt of this threat.

Shawn's fear was not in a vacuum. Previously, Hewey and Drummond Woodsum had filed a complaint against McBreairty seeking sanctions against him for violating identical policies in the Hermon school district. (ECF No. 23-1). The lower court had denied an Anti-SLAPP motion on those claims, and the Maine Supreme Court dismissed his appeal as moot when he perished. *Hermon School Dept. v. McBreairty,* Docket No. PENSC-CIV-2022-00056 (Penobscot Sup. Ct. May 16, 2023); *Hermon School Dept. v. Estate of Shawn McBreairty*, Docket No. Pen-23-191 (Me. Jan. 14, 2025).

Shawn lawfully obtained the photograph of HD, but Defendants asserted that Shawn could not lawfully publish it, claiming that he violated 17-A M.R.S. Section 511. Complaint at ¶ 63. 17-A M.R.S. Section 511 is a criminal statute. Shawn reluctantly and fearfully removed the article from publication. Complaint at ¶ 66.

In place of the Article, Shawn published a copy of Defendants' threat. Complaint at ¶ 71. Publishing the threatening email itself was reporting on an issue by a public body on a matter of public concern. Complaint at ¶ 73. On February 14, 2024, Defendants acknowledged the Article was removed, but newly demanded that the threatening email be removed because of the content they chose to identify and disclose. Complaint at ¶ 74; ECF No. 1-6. Shawn complied with this edict. Complaint at ¶ 76. Defendants' threats to sue to enforce the policies were real; counsel for Defendants, Attorney Hewey, confirmed such on February 22, 2024. *See* ECF No. 23-3. Shawn McBreairty suffered severe and debilitating emotional distress on account of Defendants' unconstitutional acts. ECF No. 1 at ¶ 95.

### 3.0 LAW APPLICABLE TO THE CAUSES OF ACTION

Having prevailed on the third count already (the only count on which Plaintiff sought summary judgment), Plaintiff brings two claims to trial against Defendants: a) First Amendment retaliation: 42 U.S.C. § 1983; and b) 5 M.R.S. § 4682 for violation of the First Amendment and of Art. I., §§ 4 & 15 of the Maine Constitution. 42 U.S.C. § 1983 provides a remedy for infringement of constitutional rights. *Alfano v. Lynch*, 847 F.3d 71, 74 n.1 (1st Cir. 2017). Plaintiff anticipates a directed verdict on the question of liability for Counts I and II. Plaintiff's proposed special verdict form otherwise guides the jury through its consideration of the below.

#### 3.1. Elements for a First Amendment Retaliation Claim Under 42 U.S.C. § 1983

For Count I, a § 1983 plaintiff must demonstrate "(1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law." *Cruz-Erazo v. Rivera-Montanez*, 212 F.3d 617, 621 (1st Cir. 2000). This issue is reflected in Plaintiff's proposed Jury Instruction numbers 4 and 5.

Municipal liability (*Monell* liability) may be imposed for a single decision by a final policy maker. *Rodríguez–García v. Miranda–Marín*, 610 F.3d 756, 770 (1st Cir. 2010). As the Court noted, "Superintendent Palmer is empowered under Maine law to 'enforce or cause to be enforced all rules of the school board,' 20-A M.R.A. § 1055(7)[.]" (ECF No. 74, PageID #: 662). Further, *Monell* liability is imposed where the municipality is the driving force. *McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 406 (D. Me. 2025) (*citing Wadsworth v. Nguyen*, 129 F.4th 38, 66 (1st Cir. 2025)). Thus, the Court determined "Counsel's email on behalf of the School Department was, quite clearly, municipal action." *Id.* This issue is reflected in Plaintiff's proposed Jury Instruction number 6.

By a similar token, the acts of Melissa Hewey, so long as she was, undoubtedly, acting within the scope of her authority, are attributed to her clients—Palmer and Brewer School

Department. *See Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 56-57 (1st Cir. 2012). This issue is reflected in Plaintiff's proposed Jury Instructions 11 & 12.

For a claim of First Amendment retaliation, a plaintiff must show that he has suffered a non-*de minimis* adverse action at the hands of defendants that is causally linked to his exercise of First Amendment rights. *See Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). An adverse act is not *de minimis* if it "'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Starr v. Dube*, 334 F. App'x 341, 342 (1st Cir. 2009) (citation omitted). This issue is reflected in Plaintiff's proposed Jury Instruction number 9.

### 3.2. Elements for a First Amendment and Main Constitutional Claim Under 5 M.R.S. § 4682

For Count II, under 5 M.R.S. § 4682, a plaintiff must show intentional interference with the plaintiff's constitutional rights, among other things, by threatening physical force or violence against a person or engaging in conduct that would cause a reasonable person to suffer emotional distress or bodily injury. *See* 5 M.R.S. § 4682; *Andrews v. Dep't of Envt. Prot.*, 1998 ME 198, ¶ 23, 716 A.2d 212. "[T]he protections provided by the Maine Civil Rights Act, including immunities, are coextensive with those afforded by 42 U.S.C. § 1983." *Est. of Bennett v. Wainwright*, 548 F.3d 155, 178-79 (1st Cir. 2008). This issue is reflected in Plaintiff's proposed Jury Instruction number 7.

Similarly, the Maine Law Court "has never drawn any distinction between the Maine Constitution and the Federal Constitution where First Amendment rights are concerned, and it has uniformly drawn on federal constitutional precedents in interpreting Sections 4 and 15 of Article I. *See, e.g., City of Bangor v. Diva's Inc.*, 2003 ME 51 P11, 830 A.2d 898 and n.4, 2003 ME 51, 830 A.2d 898, 902 and n.4; *State v. Janisczak*, 579 A.2d 736, 740 (Me. 1990); *City of Portland v. Jacobsky*, 496 A.2d 646, 648-49 (Me. 1985); *Solmitz v. Maine School Admin. District No. 59*, 495

A.2d 812, 816 n.2 (Me. 1985)." *OccupyMaine v. City of Portland*, 2012 Me. Super. LEXIS 1 (Cumberland Cty. Sup. Ct. Jan. 31, 2012). This issue is reflected in Plaintiff's proposed Jury Instruction number 8.

### 3.3. The Law Governing Defendants' Threats

Defendants' threats were unconstitutional viewpoint discrimination. "[D]isfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (internal quotation marks omitted). The First Amendment "guarantees not only freedom from government censorship, but also freedom from official retaliation on the basis of protected speech." *Mattei v. Dunbar*, 217 F. Supp. 3d 367, 373 (D. Mass. 2016) (*citing Hartman v. Moore*, 547 U.S. 250, 256 (2006)). Defendants' threats, carrying the potential weight of imprisonment up to a year (*see* 17-A M.R.S. Section 511 and 160A M.R.S. Section 1704(4)) would deter any person of ordinary firmness from publishing. And Defendants' threats were adverse actions. *Berge v. Sch. Comm. of Gloucester*, 107 F.4th, 33, 44 (1st Cir. 2024); *Cantrell v. Brunswick Me. Police*, 2024 U.S. Dist. LEXIS 77118, at *19-20 (D. Me. Apr. 29, 2024).

### 3.4. The Protection Afforded Shawn McBreairty's Speech

Mr. McBreairty's speech was protected. Defendants claim it was actionable defamation; it was not. There is no "general exception to the First Amendment for false statements." *United States v. Alvarez*, 567 U.S. 709, 718 (2012). Further, the burden falls on the government to prove the statements are materially false, and there is no evidence of such. *Pan Am Sys. v. Atl. Northeast Rails & Ports, Inc.*, 804 F.3d 59, 66 (1st Cir. 2015) (discussing burden in defamation matters on statements of public concern). Defendants also have no evidence of fault, whether it be negligence or actual malice, on these matters of public concern, per *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974).

Nor did it constitute an invasion of privacy. The Court already determined Shawn did not violate 17-A M.R.S. § 511. *McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 410 (D. Me. 2025) Nor did he commit the tort of invasion of privacy. *Id.* at 411. Moreover, such state law claims yield to the First Amendment. "[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103 (1979). Shawn (and the Estate) had a clearly established right to publish lawfully-acquired information. *See, e.g., Berge v. Sch. Comm. of Gloucester,* 107 F.4th 33 (1st Cir. 2024); *Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007). This issue is reflected in Plaintiff's proposed Jury Instruction number 10.

### 3.5. Compensatory and Nominal Damages are Available

As for damages, Plaintiff seeks to recover for the emotional distress and mental anguish inflicted on Shawn. Ordinary rules of actual and proximate causation apply. *See, e.g., Rogers v. Cofield*, No. 08-10684-MBB, 2011 U.S. Dist. LEXIS 141083, at *103 and n.10 (D. Mass. Dec. 8, 2011). And, while Defendants appear to seek to argue intervening causation, they have not pleaded such as an affirmative defense (which may not even be available for constitutional torts) and have no known evidence of such. (*See, e.g., Pough v. DeWin*e, No. 2:21-CV-880, 2022 U.S. Dist. LEXIS 118232, at *10 (S.D. Ohio July 5, 2022). This issue is reflected in Plaintiff's proposed Jury Instruction number 15.

For emotional distress claims under Section 1983, a plaintiff need only show "genuine injury … evidenced by one's conduct and observed by others." *Carey v. Piphu*s, 435 U.S. 247, 264 n. 20 (1978). Emotional distress need not be "severe," "outrageous," or "extreme" to warrant damages; so long as "any harm is shown," "damages proportionate to that harm should be awarded." *Chatman v. Slagle*, 107 F.3d 380, 384-85 (6th Cir. 1997). Similarly, under Maine law,

for recovery of emotional distress in tort, the requirement is "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Schelling v. Lindell*, 2008 ME 59, ¶ 24, 942 A.2d 1226, 1233 (cleaned up). Contrary to the assertions of Defendants, no objective symptomatology is required. *Id.* Thus, Plaintiff anticipates a substantial award of emotional distress damages. This issue is reflected in Plaintiff's proposed Jury Instruction number 16.

Per the Court's request, Plaintiff has proposed a jury instruction number 17 to avoid potentially overlapping damages and double recovery. Of course, if emotional distress damages are not proven, the jury may and should award nominal damages. *See Cortes-Reyes v. Salas-Quintana*, 608 F.3d 41, 53 n.15 (1st Cir. 2010). This issue is reflected in Plaintiff's proposed Jury Instruction number 18.

### 3.6. Punitive Damages are Available

At the January 6, 2026, Final Pre-Trial Conference (Tr. 11:24-12:5), the Court requested the parties address the issue of punitive damages, trial on which has been bifurcated. This issue is reflected in Plaintiff's proposed Jury Instruction number 19. Plaintiff acknowledges that, under the current state of the law, punitive damages may not be awarded as against a municipal entity like Defendant Brewer School Department.[1] However, so long as any compensatory damages are awarded against Palmer, including nominal damages, an award of punitive damages is available. *See Powell v. Alexander*, 391 F.3d 1, 18 (1st Cir. 2004). They may be awarded "where a defendant's egregious intentional conduct itself demonstrates her perception of a risk that her actions would violate federal law." *Id.* at 19 (cleaned up). It may be demonstrated through both

---

[1] Plaintiff also acknowledges that if Palmer is entitled to qualified immunity, it precludes all damages, including punitive damages. However, as discussed below and as is otherwise apparent, he is not immune.

specific intent and reckless indifference to rights. *Id.* at 19-20. Factors a jury may consider in making an award include, but are not limited to, the nature of the defendant's conduct (how reprehensible or blameworthy was it), the impact of that conduct on Mr. McBreairty, the ratio between the actual compensatory damages and the punitive damages, the relationship between Mr. McBreairty and the Defendant, the likelihood that the Defendant or others would repeat the conduct if the punitive award is not made, and any other circumstances shown by the evidence, including any mitigating or extenuating circumstances that bear on the question of the size of such an award. A jury may determine reprehensibility by considering the nature and extent of the harm; whether the conduct showed indifference to or disregard for the health or safety of others; whether the conduct involved repeated actions or was an isolated instance; and whether the harm was the result of intentional malice. *See* Pattern Jury Instructions for Cases of Excessive Force in Violation of the Fourth, Eighth and Fourteenth Amendments for the District Courts of the United States Court of Appeals for the First Circuit § 7.1.

## 4.0    SPECIFIC ISSUES AND JURY INSTRUCTIONS REQUESTED BY THE COURT

At the January 6, 2026, Final Pre-Trial Conference and in the Report of Final Pre-Trial Conference and Order, the Court requested that the parties address certain other issues of law.

### 4.1.    How the Court should instruct the jury in a manner consistent with Chief Judge Walker's Orders dated May 6, 2025

Per the Report of Final Pre-Trial Conference and Order § III (J), Plaintiff proposed a 14th jury instruction that would instruct the jury regarding the May 6, 2025, summary judgment order regarding Defendants Brewer School Department and Gregg Palmer. The proposed jury instruction number 14 explains the ruling on Count III, informing the jury that is established that Brewer School Department Policies ACAD, ACAF, and JICK did not apply to Shawn McBreairty or his Article and did not oblige, compel, or justify the conduct by the Brewer School Department

and its legal counsel that gave rise to this civil action. Nor did 20-A M.R.S. Section 6553 and 6554 apply to Mr. McBreairty and that 17-A M.R.S. § 511 was not violated. It also explains that *Monell* liability attaches on account of the letter.

The proposed instruction is silent as to the orders regarding Defendants Michelle MacDonald and Brett Slowikowski. If anything, the jury should simply be instructed that Michelle MacDonald and Brett Slowikowski will not be treated as defendants at trial and they will not be called upon to adjudicate any claims against them.

### 4.2. How the Plaintiff wishes to address the fact of Shawn McBreairty's death and whether and how the Plaintiff wishes to address an instruction on the jury's consideration of the fact of Mr. McBreairty's death

Per the Report of Final Pre-Trial Conference and Order § III (J), plaintiff proposed an initial jury instruction explaining that Shawn McBreairty is deceased and that Patricia McBreairty is bringing the claims for the estate, with damages to be awarded as if the jury were directly awarding them to Mr. McBreairty. The proposed instruction ensures the jury is aware they must cut off damages at the point of his death. The Court has precluded evidence of Mr. McBreairty's suicide (and Plaintiff preserves her objection to that ruling). Plaintiff also proposes Jury Instruction number 2 to avoid any further prejudice—that the jury should not view the lack of evidence of his manner or cause of death or his inability to testify adversely. However, if Defendants open up the door, Plaintiff should be permitted to provide testimony, by way of rebuttal or otherwise, on the cause of death and its relation to Defendants' actions.

### 4.3. Whether and how the Plaintiff proposes to address the affirmative defense of qualified immunity for Mr. Palmer

Report of Final Pre-Trial Conference and Order § III (J), Plaintiff is not seeking an instruction on qualified immunity. Qualified immunity is not a question to be decided by the jury; Plaintiff reserved the right to propose interrogatories to the jury, but none are needed here. *See St.*

*Hilaire v. City of Laconia*, 71 F.3d 20, 24 n.1 (1st Cir. 1995) (noting that while qualified immunity is a question of law, "[s]ome courts, consonant with the Seventh Amendment, have preserved the fact finding function of the jury through special interrogatories to the jury as to the disputes of fact, reserving the ultimate law question to the judge"). Courts apply a two-prong analysis in determining qualified immunity. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). These prongs are "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Id*. Palmer is not entitled to qualified immunity. Palmer violated clearly established rights.

The right to publish without government interference under the First Amendment is clearly established, long-cherished, and jealously guarded. *See McMillan v. Carlson,* 369 F. Supp. 1182, 1185 (D. Mass. 1973) ("The right to publish is firmly embedded in the First Amendment and is central to the constitutional guarantee of free speech and a free press.") (collecting cases); see also *Red Linon Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 390 (1969) ("It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas.... It is the right of the public to receive suitable access to social, political, esthetic, moral and other ideas and experiences...."); *Branzburg v. Hayes*, 408 U.S. 665, 727 (1972) ("the right to publish is central to the First Amendment and basic to the existence of constitutional democracy."); *Kleindienst v. Mandel*, 408 U.S. 753, 771 (1972) ("The First Amendment involves not only the right to speak and publish but also the right to hear, to learn, to know."). "[S]peech that can be fairly considered as relating to any matter of political, social, or other concern to the community or that is a subject of legitimate news interest — i.e., a subject of general interest and of value and concern to the public — definitely fits the bill." *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 42 (1st Cir. 2024)(cleaned

up, and highlighting the protections in publishing on matters of public concern. Defendants admit that the publications were on matters of public concern. (ECF No. 92, PageID #: 821). Thus, "[i]f the First Amendment means anything in a situation like this, it is that public officials cannot — as they did here — threaten a person with legal action under an obviously inapt statute simply because he published speech they did not like." *Berge,* supra at 43.

It appears through proposed instructions that Defendants are attempting to argue to the jury that Defendant Palmer was justified. He was not and that is already the law of this case. As the Court pronounced, "[n]either Maine law prohibiting hazing and bullying in schools nor school policies implemented pursuant to the same, grant to school boards or their counsel a license to threaten litigation whenever someone unaffiliated with the public schools speaks critically about a matter of public interest occurring in the schools and, in the process, identifies students or staff and criticizes them, even if the language employed would qualify as hazing or bullying in the context of school policies." *McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 415-16 (D. Me. 2025). Thus, the Court rejected the qualified immunity defense, finding it "unconvincing based on the principles sent out in *Houston Community College System*, 595 U.S. at 474,[2] *Nieves*, 587 U.S. at 398,[3] and *Hartman*, 547 U.S. at 256,[4] as recently explained in *Berge*, 107 F.4th at 43. *See also Berge*, 107 F.4th at 44 'Surely no sensible official reading these long-on-the-books opinions could believe that that [threatening a baseless action] — assuming it represents an adverse action — was not a burden on Berge's First Amendment right to publish on a matter of public concern.')" *McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 413 n.14 (D. Me. 2025) (alteration in original). It may be that "a reasonable mistake of law does not defeat qualified

---

[2] *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022).
[3] *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).
[4] *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

immunity." *Eves v. LePage*, 927 F.3d 575, 588 (1st Cir. 2019). However, Palmer could not have made a reasonable mistake of law; as Judge Walker said, Palmer could not have reasonably believed that making baseless threats against Mr. McBreairty in the face of long-on-the-books opinions establishing the right to publish, irrespective of what some state or local policy may otherwise encourage, was warranted by the law. The only question Judge Walker left for the jury was whether Mr. McBreairty suffered a burden on his rights (which he did). The jury requires no instruction and Palmer is not entitled to qualified immunity.

## 5.0   ADDITIONAL EVIDENTIARY ISSUES

A number of motions *in limine* regarding evidentiary and other issues are pending before the Court. Two other such motions have already been adjudicated. Plaintiff's arguments relative to each are incorporated herein by reference. In addition to those arguments, Plaintiff believes it proper to anticipatorily address the testimony regarding Shawn McBreairty's emotional distress and testimony by and regarding Melissa Hewey.

### 5.1.   Testimony Regarding Shawn McBreairty's Emotional Distress

Plaintiff anticipates that Patricia McBreairty, the widow of Shawn McBreairty, will offer testimony regarding Shawn's reaction to Defendants' threats and his downward emotional spiral directly caused by those threats, which ultimately led to his suicide (although she will not, unless the door is opened by Defendants, testify to the fact of his suicide per the Court's order). As to his demeanor, his behavior, and the changes to his physical appearance, there does not appear to be any concern. However, Defendants are expected to renew their objections regarding her repetition of his statements.

As previously argued, Mr. McBreairty's statements regarding his mental well-being and the effects of Defendants' threats are admissible under Fed. R. Evid. 803(3), which excepts from the rule against hearsay "[a] statement of the declarant's then-existing state of mind (such as

motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)[.]" The Court already considered this exception, noting:

> To be admissible under Rule 803(3), the statement must meet three requirements: (1) the statement must be contemporaneous with the mental state sought to be proven, (2) there must be no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent her thoughts, and (3) the declarant's state of mind must be relevant to an issue in the case. Mark S. Brodin, Joseph M. Mclaughlin, Jack B. Weinstein & Margaret A. Berger, Weinstein's Fed. Evid. § 803.05[2][a] (2d ed. 2024). In the words of the First Circuit, "Rule 803(3) requires 'contemporaneity between the event that gives rise to the state of mind or intention and the declarant's expression of that state of mind or intention." *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 91 (1st Cir. 2017) (citation omitted).

*McBreairty v. Brewer Sch. Dep't*, No. 1:24-cv-00053-JAW, 2025 U.S. Dist. LEXIS 265463, at *21-22 (D. Me. Dec. 22, 2025). Plaintiff anticipates the statements will have been contemporaneous, *i.e.* reflecting Shawn's state of mind from receiving the threats until his suicide. There is no known suspicious circumstances or motive to fabricate. And, Shawn's state of mind is directly relevant to the claim for emotional distress and mental anguish damages.

Moreover, as suicide is necessarily against one's own pecuniary interest, such statements are admissible under Rule 804(b)(3)(A). Such statements are otherwise admissible under the residual exception, Fed. R. Evid. 807. As the Court observed, "admissibility of evidence under Rule 807" involves "considerations which are very trial-specific, such as the relative probative value of the hearsay statement and whether admitting the statement will best serve the 'interests of justice.' *United States v. Doe*, 860 F.2d 488, 491 (1st Cir. 1988) (addressing former Rule 803(24), which was combined with Rule 804(b)(5) in 1997 and transferred to Rule 807)." *McBreairty v. Brewer Sch. Dep't*, No. 1:24-cv-00053-JAW, 2025 LX 519499, at *23 (D. Me. Dec. 22, 2025). Testimony by Mrs. McBreairty is sufficiently trustworthy and there is no more probative evidence than the testimony of Mr. McBreairty's spouse, considering Mr. McBreairty himself is unavailable to testify.

### 5.2. Any Invocation of Attorney-Client Privilege Must be Narrowly Cabined or Deemed Waived

Attorney Melissa Hewey and her client, Defendant Gregg Palmer, will be called as a fact witness. In the event that either witness or the defense invokes attorney-client privilege, it must be properly cabined. It "only applies when a lawyer acts as a lawyer, communications regarding business strategy are not governed by the attorney-client privilege." *ChampionsWorld, LLC v. United States Soccer Fed'n*, 276 F.R.D. 577, 589 (N.D. Ill. 2011). "And the privilege does not protect facts that an attorney obtains from independent sources and conveys to his client." *Id.* Thus, any information Hewey gave to Palmer about Shawn McBreairty is not privileged. Further, the Court may need to interrogate the scope of the communication, including the parties and the purpose. And, while there is caselaw suggesting an adverse inference should not be drawn by the invocation of the privilege, the jury should not be permitted to draw a positive inference from it either.

Additionally, Defendants have not offered an advice-of-counsel defense and a motion to exclude evidence regarding such an unpleaded defense is pending (ECF No. 216). However, to the extent that Defendants directly or indirectly argue that their actions should be excused because they relied on Hewey's advice, the privilege is waived. *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003) (noting that the assertion of an advice-of-counsel defense waives the attorney-client privilege between the defendant and the attorney whose advice he or she relied on; "[w]ere the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process."); *see also* 1 McCormick On Evid. § 93 (7th ed.) (in actions where "a party interjects that the 'advice of counsel' as an essential element of a claim or defense, then that party waives the privilege as to all advice received concerning the same subject matter."). Nor can

a witness engage in selective disclosure, revealing some communications and claiming the privilege as to others. *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d at 26. Thus, any invocation of privilege should be narrowly cabined or, if Defendants claim reliance on Hewey, deemed waived.

### 5.3. Melissa Hewey is Not an Expert

Again, Defendants have not offered an advice-of-counsel defense and a motion to exclude evidence regarding such an unpleaded defense is pending (ECF No. 216). Nevertheless, Attorney Melissa Hewey will be called as a fact witness. No party has disclosed her as an expert witness and the deadline for doing so in the Scheduling Order (ECF No. 49) was August 19, 2024. *See* Fed. R. Civ. P. 26(a)(2). Hewey, therefore, should not be permitted to provide an expert opinion.

Further, it is the province of the Court to instruct the jury as to what the law is. *See, e.g., Bacchi v. Mass. Mut. Life Ins. Co.,* No. 12-cv-11280-DJC, 2016 U.S. Dist. LEXIS 37772, at *9 (D. Mass. Mar. 23, 2016). This issue is reflected in Plaintiff's proposed Jury Instruction number 3. Hewey was, as Judge Walker determined, quite wrong about the law and "[a]n expert cannot simply opine as to his or her view of a disputed point of law[.]" *Adams v. New Eng. Scaffolding, Inc.*, Civil Action No. 13-12629-FDS, 2015 U.S. Dist. LEXIS 170688, at *16 (D. Mass. Dec. 22, 2015).

Dated: March 2, 2026.     Respectfully Submitted,

/s/ Stephen C. Smith
Stephen C. Smith, Bar No. 8270
Steve Smith Trial Lawyers
191 Water Street
Augusta, ME 04330
info@americantrialgroup.com
Tel: (207) 622-3711
Fax: (207) 707-1036

Marc J. Randazza (*pro hac vice*)
  *Lead Counsel*
Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
Email: ecf@randazza.com

Attorneys for Plaintiff,
Patricia McBreairty

Case No. 1:24-cv-00053-JAW

## CERTIFICATE OF SERVICE

I hereby certify that, on March 2, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Stephen C. Smith
Stephen C. Smith

RANDAZZA | LEGAL GROUP