### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| **PATRICIA MCBREAIRTY, in her capacity as Personal Representative of the Estate of Shawn McBreairty,**<br><br>**Plaintiff,**<br><br><br>**v.**<br><br><br>**BREWER SCHOOL DEPARTMENT and GREGG PALMER,**<br><br>**Defendants** | **No. 1:24-cv-00053-JAW** |

### DEFENDANTS' RESPONDING TRIAL BRIEF

Defendants Gregg Palmer and the Brewer School Department submit the following responding trial brief pursuant to ECF No. 205.

According to the Plaintiff's Trial Brief, this case is about Shawn McBreairty's "fear" of legal action, based on a letter he received from a private lawyer representing the Brewer School Department. Plaintiff's Trial Brief at 4 ("Shawn became fearful upon receipt of [a] threat [of legal action]. Shawn's fear was not in a vacuum."). That "fear" is the whole basis for the lawsuit; the only damage described in Plaintiff's Trial Brief is the "severe and debilitating emotional distress" she says her late husband "suffered . . . on account of Defendants' unconstitutional acts." *Id*.

The Defendants expect they will object to much of the evidence the Plaintiff intends to offer to support this claim of "severe and debilitating emotional distress." Because Shawn McBreairty is deceased, any description by him of his emotional distress must necessarily be presented, if at all, in the form of inadmissible hearsay testimony. Thus, the statement of facts in Plaintiff's Trial Brief raises very significant evidentiary issues for trial. Those issues impact the

1

scope of Plaintiff's opening statements, and the prospect that Plaintiff's case-in-chief at trial predominantly rests on inadmissible evidence. With these concerns in mind, we will first address evidentiary issues raised by the Plaintiff's Trial Brief. We then turn to other, more substantive issues, including the legal standards the jury will be called upon to apply when deciding issues of both liability and damages.

## EVIDENTIARY ISSUES

**1. The inadmissibility of the evidence the Plaintiff may offer in support of the emotional distress claim.**

   **a. Shawn McBreairty's prior written statements under oath are inadmissible.**

Prior affidavits and verified complaint allegations of Shawn McBreairty are now, with his passing, unquestionably inadmissible at trial if offered by the Plaintiff. Fed. R. Evid. 801(c); *House of Clean, Inc. v. St. Paul Fire and Marine Ins. Co, Inc.*, 775 F. Supp. 2d 302, 314-15 (D. Mass. 2011) (prior affidavits of plaintiff's later-deceased owner and manager were inadmissible hearsay, especially because deceased affiants could not be cross-examined at trial).

Federal courts consistently exclude affidavits and verified complaint allegations of deceased parties as inadmissible hearsay evidence at trial. *House of Clean*, 775 F. Supp. 2d at 314 (citing *Rodriguez–Laboy v. R & R Eng'g Prods.*, Civ. A. No. 03–1367, 2006 WL 852086, at *1, 2006 U.S. Dist. LEXIS 19561, at *2–3 (D.P.R. Mar. 30, 2006) (striking affidavit of deceased affiant as hearsay for the purposes of summary judgment); *Crittenden v. Children's Hosp.*, No. 96–CV–549S, 2004 WL 1529242, at *1–2, 2004 U.S. Dist. LEXIS 12944, at *4–6 (W.D.N.Y. June 30, 2004); *see also Estate of Browning v. Las Vegas Metropolitan Police Dept.*, 2024 WL 1345290 at *9, Case No. 2:20-cv-01381-KJD-MDC (D. Nev. Mar. 28, 2024) (in section 1983 action where plaintiff died during pendency of case and plaintiff's mother was substituted as representative of

his estate, ruling that "[b]ecause Browning is now deceased and was never deposed in this case, his Affidavit and testimony constitute inadmissible hearsay.").[1]

No hearsay exception applies. There is no former testimony of Shawn McBreairty by "trial, hearing, or lawful deposition" where the defense was present to cross-examine, under Fed. R. Evid. 804(b)(1).

The residual exception of the hearsay rule, Fed. R. Evid. 807, does not apply. First, Plaintiff has arguably still not provided notice under Rule 807(b). The case is one week away from trial. The subject matter pertains to a trial itself triggered by a late-disclosed theory of emotional distress damages recovery that the Court has allowed over the Defendants' objection, following a balanced Rule 26 sanction ruling, repeatedly addressed in limine. ECF Nos. 150, 169, 194. Plaintiff never indicated in these briefings and motions that they intended to make Shawn McBreairty a witness through use of pre-death affidavits or verified complaint allegations. It would be a fair conclusion that Plaintiff has forfeited reliance on Rule 807 residual hearsay exceptions.

In addition, even if the Plaintiff has preserved her argument, the verified complaint allegations and previous affidavits fail to meet Rule 807's "circumstantial guaranties of trustworthiness" test, which the First Circuit has said is "the most important part of the inquiry."

---

[1] The ruling in *Browning*, excluding both the affidavit and former testimony on summary judgment, were based also on Fed. R. Civ. P. 56(c)(4), which requires that affidavits on summary judgment, inter alia, "show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A deceased person is not "competent to testify" under Fed. R. Evid. 601. This rule appears to have been overlooked in the summary judgment proceedings in this case, but that is of no moment – the summary judgment ruling and record is not law of the case, as discussed further herein. *Bethlehem Steel Export Corp. v. Redondo Const. Corp.*, 140 F.3d 319, 321 (1st Cir. 1998) ("the denial of the summary judgment motions do not constitute the law of the case"). It is, however, another demonstration that the trial record will be different than the summary judgment record. Plaintiff's adherence to the summary judgment record as establishing liability and precluding a trial on liability is wrong. *See Fisher v. Trainor*, 242 F.3d 24, 29 n.5 (1st Cir. 2001) ("Plaintiff] is simply wrong that the court's earlier ruling constitutes the law of the case: 'an initial denial of summary judgment does not foreclose, as the law of the case, a subsequent grant of summary judgment on an amplified record.'").

*Bradley v. Sugarbaker*, 891 F.3d 29, 34 (1ˢᵗ Cir. 2018). "[W]hen statements are made for the purposes of litigation, the potential motivation of the affiant undermines the statements' trustworthiness." *House of Clean*, 775 F. Supp. 2d at 316 (citing *Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943)). Here, a verified complaint allegation or affidavits were most likely written by or with the close involvement of Shawn McBreairty's counsel, Randazza Legal Group (who also contemporaneously represented two of the listed witnesses in this case, Hannah and Phil Wells). As complaint allegations or litigation documents meant to advocate for McBreairty at case commencement or in pretrial motions in the adversarial process, the *guaranties* of trustworthiness are inherently stripped from the statements. The statements are self-serving statements, drafted by or with the help of a lawyer who remains trial counsel, *undermining* the "rationales behind the Federal Rules' enumerated exceptions to the hearsay rule." *Bradley*, 891 F.3d at 34; *Palmer*, 318 U.S. at 113-14. They cannot be used at trial because Shawn McBreairty is no longer with us for cross-examination. Defendants would be deprived of fundamental fairness and the right to cross-examination if these advocacy-based statements made in litigation were admitted into evidence.[2]

    b. Witness testimony about Shawn McBreairty's state of mind must be carefully limited.

The Plaintiff may offer evidence of statements Shawn McBreairty made about his state of mind, at the moment he made those statements. She may not, however, offer statements McBreairty made about what *caused* his state of mind. That dichotomy is required by Federal Rule of Evidence 803(3), which excepts from the prohibition against hearsay "[a] statement of the declarant's then-existing . . . emotional, sensory, or physical condition (such as mental feeling,

---

[2] Defendants, in contrast, may offer into evidence any out of court statement of Shawn McBreairty as a non-hearsay statement of a party opponent. Fed. R. Evid. 801(d)(2). The problem is that Plaintiff intends to offer the statements of Shawn McBreairty under Fed. R. Evid. 801(c), as Shawn McBreairty testimony in place of live testimony at trial. That is prohibited under the hearsay rules. Fed. R. Evid. 801(c).

pain, or bodily health), *but not including a statement of memory or belief to prove the fact remembered or believed* unless it relates to the validity or terms of the declarant's will." (emphasis added). For example, a witness may testify that a declarant said he was "afraid." That testimony may not, however, "include[ ] an assertion of *why* [the declarant] was afraid." *United States v. Joe*, 8 F.3d 1488, 1493 (10th Cir. 1993).

Thus, while the Plaintiff may, perhaps, offer hearsay testimony (her own, or another witness's) to support the proposition that Shawn McBreairty was sad, or mad, or anxious, she cannot offer testimony that he was sad, or mad, or anxious because of any interaction he had with Melissa Hewey, Gregg Palmer, or the Brewer School Department. Even if he had been, the only way any witness could have known that to be true was by hearing it from Shawn McBreairty, and that statement would not be encompassed by Rule 803(3). *See Commonwealth v. Fitzpatrick,* 255 A.3d 452, 479-80 (Pa. 2021) ("If [a] statement is a singular expression of the declarant's state of mind, *i.e.*, "I was sad," the court need only apply Rule 803(3). . . . On the other hand, if the statement is not a singular purpose statement, but instead contains both a state of mind component and a "fact-bound" component, it generally is inadmissible.") (citation omitted).

The Defendants also expect that they will object to testimony by Patricia McBreairty, or from anyone else, about their observations of Shawn McBreairty's behavior or demeanor, which may be offered on the theory that it supports the emotional distress claim.

> In order for lay jurors to be able to understand and observe a plaintiff's emotional injury without expert medical testimony or medical evidence, the alleged emotional injury must arise from a "single, concrete incident from which [the] plaintiff[ ] can trace [his] alleged injuries." *Kovacic v. Ponstingle*, No. 1:05-cv-2746, 2014 WL 4715859, at *4 (N.D. Ohio Sept. 22, 2014). Otherwise, lay jurors will have difficulty determining to what extent a plaintiff was harmed by a particular injury. *See Romaine v. St. Joseph Health Sys.*, 541 F. App'x 614 (6th Cir. 2013); *Rodgers v. Fisher Body Div., General Motors Corp.*, 739 F.2d 1102, 1108 (6th Cir. 1984); *Myers v. Illinois Ctr. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) ("[W]hen there is no obvious origin to

an injury and it has 'multiple potential etiologies, expert testimony is necessary to establish causation' ") (quoting *Willis v. Amerada Hess Corp.*, 379 F.3d 32, 46–47 (2d Cir. 2004)).

*Leath v. Webb*, 2018 WL 4440682, at *3 (E.D. Ky. Sept. 17, 2018).

To be clear, the Defendants are not arguing that expert testimony is always, or even usually, necessary to support an emotional distress claim brought under Section 1983. We acknowledge that in some cases, the testimony of the person whose constitutional rights have been violated will be sufficient to substantiate the claim. *Turic v. Holland Hosp., Inc.,* 85 F.3d 1211, 1215 (6th Cir. 1996) ("A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden . . . ."). Here, though, Shawn McBreairty's absence from the trial, and the limits imposed by Rule 803(3), make it impossible for the Plaintiff to use McBreairty's own words to establish a causal connection between the Defendants' actions and his alleged distress. Simply put, although Shawn McBreairty's "state of mind" theoretically could come into evidence through Rule 803(3), no lay witness is competent to causally connect that state of mind – whether it is anger, or fear, or sorrow, or some combination – to the conduct of these Defendants, as opposed to other stressors in his life. And if there is no evidence linking McBreairty's state of mind to these Defendants, then even their testimony about his state of mind will be irrelevant.

      c. The Court's Order on the parties' cross-motions for summary judgment is not a proper subject of testimony or comment at trial.

In her Trial Brief (at pages 10-11) and in her Proposed Jury Instruction No. 14, the Plaintiff presumes that the jury should be informed of Chief Judge Walker's Order on the parties Cross-Motions for Summary Judgment. She would have the Court instruct the jury that:

- The Brewer School Department policies referred to in Melissa Hewey's letter to Shawn McBreairty did not apply to him, and they did not "oblige, compel, or justify the conduct by the Brewer School Department and its legal counsel";

- • "20-A M.R.S.A. Section 6533 and 6554 [did not] apply to Mr. McBreairty"; and

- • *Monell* liability attaches on account of the letter.

The Plaintiff's reliance on the summary judgment ruling is misplaced. Most fundamentally, "the denial of . . . summary judgment motions do not constitute the law of the case." *Bethlehem Steel Export Corp. v. Redondo Const. Corp.*, 140 F.3d 319, 321 (1st Cir. 1998); *see Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case."). That is partly because the record upon which a summary judgment has been denied may be expanded later in the litigation, *Fisher v. Trainor,* 242 F.3d 24, 29 (1st Cir. 2001) ("[A]n initial denial of summary judgment does not foreclose, as the law of the case, a subsequent grant of summary judgment on an amplified record."), and partly because the summary judgment standard differs from the standard applied at trial. *See Dessar v. Bank of Am. Nat. Tr. & Sav. Ass'n,* 353 F.2d 468, 470 (9th Cir. 1965) (a denial of summary judgment, which is predicated on the existence of a factual dispute, "merely postpones decision of any question; it decides none").

Here, there will be a marked difference between the summary judgment record and the trial record. For one thing, the allegations in Shawn McBreairty's verified complaint are inadmissible hearsay when offered by the Estate in its case-in-chief at trial.[3] There will also be substantial evidence that was not presented to the Court on the Cross-Motions for Summary Judgment.

Notably, this is true even with respect to Count III, which centered on the applicability of the school's policies to McBreairty's conduct: The jury will hear testimony – which was not part of the summary judgment record – that on February 12, 2024, the same day McBreairty posted the

---

[3] Most of the statements were not admissible on summary judgment either, under the last clause of Fed. R. Civ. P. 56(c)(4) requiring that the affiant be "competent to testify" at trial.

article that included a surreptitiously-taken photograph of students in a high school bathroom, he attended a school committee meeting on school grounds. The jury will also hear evidence that McBreairty's posting contributed directly to substantiated incidents of in-school bullying (which had begun in the days and weeks leading up to February 12th) of the student who was the subject of his post. By using his national platform to shame and intimidate a minor student, McBreairty added his voice to a chorus of objections to that student's use of a school facility they had a legal right to use. His actions compounded the student's injury and directly interfered with the student's rights of access to public education in public school.

This aspect of McBreairty's speech – posting the photograph and naming the student – was cyberbullying. These facts were not fully before the Court on summary judgment. Indeed, depending upon the jury verdict relating to cyberbullying (or the Court's ruling on a Rule 50 judgment as a matter of law), a reversal of the Court's declaratory judgment on Count III remains a potential outcome. The declaratory judgment on Count III is an interlocutory ruling subject to amendment under the discretionary doctrine of "law of the case" at any time before final judgment enters in the whole case. *Negron-Almeda v. Santiago*, 579 F.3d 45, 52 (1st Cir. 2009). Thus, if the trial results in findings of cyberbullying, based on an augmented trial record containing significant additional facts that were not squarely before the Court on summary judgment, then there would be a basis to reverse the judgment on Count III, and thereby erase inconsistencies between pretrial rulings and actual trial findings. *See id.* (reversing grant of summary judgment on official capacity claim under law of the case doctrine).[4]

---

[4] "[A]lthough the law of the case doctrine implements an important judicial policy against reconsidering settled matters, it 'is neither an absolute bar to reconsideration nor a limitation on a federal court's power.'" *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) (quoting in part *United States v. Rivera–Martinez*, 931 F.2d 148, 150–51 (1st Cir.), *cert. denied*, 502 U.S. 862 (1991). *See also U.S. v. Matthews*, 643 F.3d 9, 14 (1st Cir. 2011) ("The law of the case doctrine is not a straitjacket for a court" and "[t]here is a modest amount of play in the joints") (citations omitted). Furthermore, the factual record on the summary

In summary, any *legal* conclusions the Court articulated in its Order of May 6, 2025, do not constitute the "law of the case," and they are not binding, or even relevant to the jury's task in this case. And because the Court had the authority, under Fed. R. Civ. P. 56(g), to issue an order "stating any material fact . . . that [was] not genuinely in dispute and treating the fact as *established in the case*" (emphasis added), but it issued no such order, no statement of *fact* in that Order is either (a) binding on the jury or (b) helpful to the jury in exercising its factfinding function. *See also* D. Me. L.R. 56(g)(2) ("[f]acts deemed admitted solely for summary judgment will not be deemed admitted for any other purpose"); ECF No. 115 at 1.

### 2. The Court must take care to ensure that inadmissible evidence is not mentioned in opening statements.

"An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. . . . Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict." *U.S. v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring).

So here, if the Estate's counsel were to recite or paraphrase in opening statement inadmissible sentences from a Shawn McBreairty affidavit, or from the inadmissible allegations in the verified complaint, the opening statement would run contrary to these rules, quite possibly resulting in mistrial. *See id.* Likewise, Plaintiff's counsel should be cautioned not to tell the jury

---

judgment motion on Count III cannot be used at trial; it was expressly premised on Local Rule 56(g)(2) which provides that "[f]acts deemed admitted solely for summary judgment *will not be deemed admitted for any other purpose*." D. Me. L.R. 56(g)(2) (emphasis added); *School Defendants' Reply Statement of Material Facts on Plaintiff's Motion for Partial Summary Judgment* [ECF No. 115 at 1 (opening paragraph)].

that any witness will attribute Shawn McBreairty's state of mind to the action of either Defendant. Finally, there should be no mention in the opening statement of anything Chief Judge Walker wrote in his Order on the parties' cross-motions for summary judgment.

## SUBSTANTIVE LEGAL ISSUES

**3.  The conduct of the school department's attorney, Melissa Hewey, does not bind the school department (or Gregg Palmer) to an alleged constitutional violation as a "person" under section 1983.**

Plaintiff's Trial Brief makes several references to the Brewer School Department's lawyer, Melissa Hewey, as its "agent." Those references imply that Attorney Hewey's conduct as the school's lawyer legally binds the school to municipal-entity liability for damages under the prevailing *Monell* standards for suing a municipal entity for damages as a "person" under section 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1976). Plaintiff's theory of "municipal entity" liability is deficient, though, because Melissa Hewey is not a final policymaker of the school department, and there will be no evidence that she was carrying out a vote or decision made by the school's governing body, the school committee.

We reiterate, first, the basic principles: liability of the Brewer School Department cannot be based purely on respondeat superior or vicarious liability for the acts of the school department's agent-lawyer. *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005) (citing *Monell*, 436 U.S. at 691-95). There is no right of contribution in a section 1983 action either, so Attorney Hewey's conduct does not bind Gregg Palmer *to the alleged constitutional violation*. *Nga Truong v. Pageau*, 2013 WL 6122097 at **5-6, No. 12–12222–TSH (D. Mass. Nov. 19, 2013) (and cases cited therein). Attorney Hewey was the school department's lawyer, representing the school department as her client. While that attorney-client and agent-principal relationship is no doubt present in Attorney Hewey's conduct when she acts within her authority

in this representative capacity, she nonetheless does not bind the school department under section 1983 *to alleged constitutional violations for damages* if she is not a final policymaker for the school under *Monell* or acting upon a specific, voted-on directive to her by the school committee (the school department's governing policymaking body) to carry out a school board decision or policy. There is and will be no evidence at trial of such a school committee vote or directive in this case. The factual account in Plaintiff's Trial Brief references none, relying merely on Attorney Hewey's status as "an agent." Yes, she is an "agent;" but no, that agency cannot bind the school department as an entity to an alleged constitutional violation under *Monell*, which prohibits vicarious liability without proof of a formal decision of the municipal policymaking entity. *See Welch v. Ciampa*, 542 F.3d 927, 941-42 (1st Cir. 2008) (citing *Owen v. City of Independence*, 445 U.S. 622 (1980) and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 1988)); *Young*, 404 F.3d at 25 (citing *Monell*, 436 U.S. at 694).

When an alleged constitutional violation is based upon conduct of a municipal entity's lawyer, the issue becomes whether the attorney was acting pursuant to policymaker directives, per *Monell*, or merely providing legal representation. The latter does not trigger *Monell*-based entity liability. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019). In *Webb*, the plaintiff sued the town as a municipal entity under section 1983, alleging constitutional violations for the town's seeking to collect on a judgment in the town's favor. The "[t]own's attorney took most of the actions relevant to the case." *Id*. at 216. Following the *Monell* criteria, the Fifth Circuit affirmed the district's conclusion that the criteria for municipal liability were not met, because the town's lawyer was not a final policymaker.[5] *Id*. at 216. The Fifth Circuit in *Webb* was careful to

---

[5] It is undisputed in this case that Melissa Hewey, a private attorney at the firm of Drummond Woodsum, is not a final policymaker for the school department. She is not a member of the school department's governing body, the school committee, which is the only policymaking body that can decide to sue on behalf of the school. *See Webb*, 925 F.3d at 215-16 (discussing standards for determining who is a "final policymaker"

warn that the analysis should not "conflate[] policymaking authority with decision-making authority, something our caselaw counsels against." *Id.* at 217 & n.42 (citing *Valle v. City of Houston*, 613 F.3d 536, 543–44 (5th Cir. 2010) (discussing distinction between "decisionmaking" authority and "policymaking" authority, and holding "[a]lthough [the relevant ordinances] confer decisionmaking or operational command authority on [the official], it does not follow that [the official], or another person to whom such authority is delegated, acts in a policymaking capacity."). This is the flaw in Plaintiff's position in this case, too. Yes, Melissa Hewey was the school department's agent with decision-making authority to write to McBreairty and decide what to say to him; but no, she is not acting as a policymaker of the school board under *Monell* standards for municipal-entity liability for damages under section 1983.

Other courts have followed this precedent in determining whether an attorney's conduct binds the attorney's municipal-entity client to liability under section 1983. *Marentette v. City of Canandaigua,* 351 F.Supp.3d 410, 435 (W.D.N.Y. 2019) – a case akin to this one where the allegations of a First Amendment violation against a city under section 1983 were based on a written communication from the city's lawyer – the complaint failed to state a claim of municipal-entity liability because the attorney was not alleged to be a person acting with "final policymaking authority." *Id.* at 435 (citing *Staten v. Vill. of Monticello*, No. 14-CV-4766 (KMK), 2015 WL 6473041, at *11 (S.D.N.Y. Oct. 26, 2015) (noting that the "[p]laintiff makes no allegations suggesting that [the building inspector or the town attorney] had final decision-making authority").

---

under *Monell*, which begins with making the inquiry as a question of state law). State law here unquestionably vests the school committee with the final policymaking powers of municipal school units (now called school administrative units) like the Brewer School Department. 20-A M.R.S. § 1(28)-(29) and §1(26)(A); 20-A M.R.S. § 1001.

Notably the pleadings in this case, and even statements in Plaintiff's Trial Brief, lack the same plausible averments.[6]

We acknowledge that in its Order denying summary judgment, the Court chose not to dismiss the official capacity claim against Brewer School Department. ECF No. 117 at 11. For the reasons set forth above, however, that interlocutory decision is not the "law of the case." *Bethlehem Steel Export Corp. v. Redondo Const. Corp.*, 140 F.3d 319, 321 (1st Cir. 1998); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994).

First, the decision on this issue was made on a summary judgment record, expressly taking the summary judgment record in the light most favorable to the Estate as the non-moving party. ECF No. 117 at 9-10. The record did not contain evidence of a school board vote, or lack thereof, on this issue, or the state law vesting the policymaking authority of the Brewer School Department in its school committee. 20-A M.R.S. § 1(28)-(29) and §1(26)(A); 20-A M.R.S. § 1001. So the Court chose not to "indulge" [ECF No. 117 at 11] the view that Melissa Hewey was not acting at the specific direction of the school committee as required to meet the *Monell* standard.[7]  The trial

---

[6] Furthermore, private attorneys performing their traditional roles and functions as lawyers for a governmental client are generally not considered "state actors" under section 1983. *See, e.g., Polk County v. Dodson,* 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); *Page v. Sharpe*, 487 F.2d 567, 570 (1st Cir. 1973); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999); *Barnard v. Young,* 720 F.2d 1188, 1189 (10th Cir.1983); *Davis v. Theriault*, 2023 WL 5628193 at *62 1:22-cv-00275-JDL (D. Me. Aug. 31, 2023); *Aldrich v. Ruano*, 952 F. Supp. 2d 295, 301 (D. Mass. 2013) ("It is well-settled that a lawyer (even a court-appointed one) does not act under the color of state law in performing a lawyer's traditional function as counsel to a party.") Since Melissa Hewey is not deemed a state actor under section 1983, her same traditional role as attorney cannot be contorted into actions taken in an "official capacity" of her governmental-entity client.

[7] Respectfully, the Court appears to have made the analytical error of confusing Melissa Hewey's decisionmaking authority, as an attorney representing the school department, with the school department's policymaking authority under *Monell*. As explained above, Melissa Hewey was acting within her authority as the school department's lawyer; but that is not the question under *Monell* – the question under *Monell* is whether she was exercising *final policymaking* authority of the school committee, in order to bind it to an alleged constitutional violation. With no evidence that the school committee voted on the action she took or directed her to say what she said in her correspondence to Shawn McBreairty, there is no municipal-

record, together with defendants' further-developed explanation of the official capacity principles of *Monell* when applied to the conduct of the municipal-entity's private lawyer, should result in the opposite conclusion from the one made at summary judgment. *See Fisher v. Trainor*, 242 F.3d 24, 29 n.5 (1st Cir. 2001) ("'[A]n initial denial of summary judgment does not foreclose, as the law of the case, a subsequent grant of summary judgment on an amplified record.'") (quoting *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 955 F.Supp. 203, 210 (S.D.N.Y.1997)).

### 4. The Estate has the burden of proving that Shawn McBreairty's speech was protected, and that qualified immunity is inapplicable.

Again, the Court's decision denying summary judgment on qualified immunity grounds, and denying summary judgment to the school department on the issues of protected speech, are interlocutory decisions not subject to the law of the case doctrine. *Fisher*, 242 F.3d at 29 n.5; *Bethlehem Steel*, 140 F.3d at 321. Qualified immunity is, even independent of this principle excluding the summary judgment decision on Counts I and II from the scope of the law of the case doctrine, specially permitted to be resurrected at trial. *Miller v. Jackson*, 152 F.4th 258, 260 (1st Cir. 2025); *McKenney v. Mangino*, 873 F.3d 75, 85 (1st Cir. 2017).[8]

---

entity liability in this case. In the end, however, it is fair to read the Court's summary judgment ruling on this issue as simply not assuming facts that were not before it on summary judgment, especially when those facts and inferences would have been adverse to the Estate as the non-moving party. For these very reasons, though, the most important point is that the ruling denying summary judgment on the issue is outside the law of the case doctrine. *Fisher v. Trainor*, 242 F.3d 24, 29 n.5 (1st Cir. 2001); *Bethlehem Steel*, 140 F.3d at 321.

[8] The trial record will also potentially reopen judgment on Count III, as argued above, if the jury finds that the speech in issue was cyberbullying, based on a trial record that Shawn McBreairty clearly inserted himself into the school, appeared on school grounds on the very day of the post in issue *to discuss with the school board points he makes in the article in issue*, was known by many students, faculty, and administration, and inserted himself (knowingly or not) into extant substantiated incidents of student-to-student bullying on the exact subject of the illegal photograph of the inside of the school bathroom. The cyberbullying statute and related school policies reach him. At least there is a jury question on it. And at least no court had said "not so" in similar circumstances, thus entitling Gregg Palmer to qualified immunity on the "clearly-established" issue. One court – the Superior Court in *Hermon School Department v. McBreairty*, 2023 WL 6295977, No. PENSC-CIV-2022-00056 (Pen. Cty, May 16, 2023) (Mallonee, J.) – allowed a cyberbullying suit against McBreairty to go forward, denying his anti-SLAPP motion, even in a

All told then, the Estate has the burden of proof on the issue of "protected speech," *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012), and the burden of proof on avoiding qualified immunity, *Escalera-Salgado v. United States*, 911 F.3d 38, 41 (1st Cir. 2018) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable."). On that burden, a "matter of public concern" finding may not be relevant, as opposed to providing the background of the legal analysis the school's lawyer voiced in her communication to McBreairty. To be precise, all the speech that McBreairty made *which the school expressly did not challenge*, may be a matter of public concern; however, speech that consists of using a computer device to broadcast on the internet a secretly-shot photograph of unconsenting minors in a school bathroom – one of whom had been the subject of related, recent substantiated incidents of bullying within the school based on gender identity – may not be so readily characterized as either a matter of public concern or protected speech. A photograph taken in violation of invasion of privacy law (17-A M.R.S. § 511 and/or common law tort) and then broadcasted or amplified, including by naming the subject, for viewing on the internet by persons across the country, in violation of those same laws, is not clearly excused by a "matter of public concern" type of defense. Defendants do not concede that the conduct of Shawn McBreairty in issue (posting the illegal photograph and naming the student in it) is a "matter of public concern." But regardless of whether it is or it isn't, the conduct is not protected speech.

### 5. State privacy laws do not, as the Plaintiff argues, necessarily "yield to the First Amendment."

The First Amendment does not give everyone with a computer the unfettered right to defame whomever they wish, or to invade their privacy. The First Amendment does not protect

---

case without all the evidence of "visitor" status under the cyberbullying statute that McBreairty brought upon himself in this case.

against liability for the publication of "a knowing or reckless falsehood." *United States v. Alvarez,* 567 U.S. 709, 719 (citing *Sullivan v. New York Times Co.,* 376 U.S. 254, 280 (1964)). And even "speech that reveals truthful and accurate facts about a private individual can, consistently with the First Amendment, be regulated because of its constitutionally proscribable content." *Coplin v. Fairfield Pub. Access Television Comm.,* 111 F.3d 1395, 1404 (8th Cir. 1997) (citing *Gilbert v. Medical Economics Co.,* 665 F.2d 305, 308 (10th Cir.1981), where the Tenth Circuit Court of Appeals said that "dissemination of non-newsworthy private facts is not protected by the first amendment."); *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1232 (7th Cir. 1993) (the Supreme Court has been "careful not to hold that states can never provide a tort remedy to a person about whom truthful, but intensely private, information of some interest to the public is published") (citing *Florida Star v. B.J.F.,* 491 U.S. 524, 541 (1989)). Where the branch of privacy law involving "intrusion" by the publication of "highly offensive" facts is concerned:

> The two criteria, offensiveness and newsworthiness, are related. An individual, and more pertinently perhaps the community, is most offended by the publication of intimate personal facts when the community has no interest in them beyond the voyeuristic thrill of penetrating the wall of privacy that surrounds a stranger.

*Id.*

Here, the student who was the subject of Shawn McBreiarty's "journalism" was a private figure, just hoping and trying to exercise a right the Maine Supreme Judicial Court had recognized under the Maine Human Rights Act. McBreairty, along with others in the school and in the broader community, aggressively took the position that the student should not enjoy that right, regardless of what the Law Court had said. But "[t]here is no constitutional right to be a bully," and "schools are generally permitted to step in and protect students from abuse." *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 264 (3d Cir. 2002). *See Doe by & through Doe v. Hopkinton Pub. Schs.,* 490 F. Supp. 3d 448, 462 (D. Mass. 2020), *aff'd sub nom. Doe v. Hopkinton Pub. Schs.,*

19 F.4th 493 (1st Cir. 2021).[9]  Consistent with this principle, Gregg Palmer believed that he had

the right and the duty to aid the student – to protect them not only from bullying by other students,

but also from emotional abuse by self-proclaimed social activists – so they could receive the public

education to which they were entitled by law.  Whether or not, in retrospect, Palmer correctly

understood what his legal rights and duties were, the steps he took in response to McBreairty's

post were aimed solely at protecting the safety and privacy of his student.  The First Amendment

did not prohibit Palmer from doing what he could to mitigate the harm McBreairty had inflicted,

and was continuing to inflict, upon the student.

### 6. Gregg Palmer's focus on protecting a student in his care is relevant not only to the qualified immunity defense, but also to the threshold question of whether he engaged in "retaliation" at all.

In her Trial Brief, the Plaintiff says that the Defendants are barred from arguing that

"Defendant Palmer was justified."  She says it is the "law of the case" that Palmer was *not* justified

in acting as he did.  Plaintiff's Trial Brief at 13.  She then alludes to the Court's denial, on summary

judgment, of Palmer's qualified immunity defense, insinuating that his state of mind, and his

reasons for authorizing Melissa Hewey to communicate with McBreairty, are relevant only to that

defense. That contention is wrong on several levels.

First, as explained above, Chief Judge Walker's Order on the Cross-Motions for Summary

Judgment is not the "law of the case" and it established no facts for purposes of the trial.

Second, even *if* that Order *had* definitively established that Palmer was wrong on the law,

it would not establish that he intentionally retaliated against Shawn McBreairty, in violation of

McBreairty's first Amendment rights.  As the Defendants have pointed out in their Proposed Jury

---

[9] In *Doe*, the bullying that led to several students' suspension from school – a penalty that survived a First Amendment challenge – included "circulating" over the internet nonconsensual photographs of the plaintiff, much like what Shawn McBreairty did.  *Doe v. Hopkinton Pub. Schs.,* 19 F.4th at 507-508.

Instructions, in a retaliation case, a government actor's intent is key.  If a governmental employee "reasonably . . . believe[s]" that speech is unprotected, and if his belief is reasonable under the circumstances, action taken in response to that speech which has the effect of chilling future speech is not, within the meaning of the law, "retaliation" for the exercise of First Amendment rights. *Waters v. Churchill,* 511 U.S. 661, 682 (1994) (Souter, J. concurring) ("[A] public employer who reasonably believes . . . that an employee engaged in constitutionally unprotected speech may punish the employee . . . ."). "Thus, . . . governmental entities may act properly in furtherance of legitimate state interests, even though such state action incidentally chills First Amendment rights." *Greenwich Citizens Comm., Inc. v, Ctys. Of Warren and Washington Indus. Dev.,* 77 F.3d 26, 31 (2d Cir. 1996).

Consistent with these common-sense and well-established legal principles, the Defendants' position here is that Gregg Palmer "act[ed] properly in furtherance of legitimate state interests" when he intervened to protect a student in his charge.  The liability question that should be put to the jury is whether Palmer, after reasonable investigation, subjectively and reasonably believed that Shawn McBreairty's speech was unprotected – whether because it violated a student's right of privacy, or because it was contrary to the Maine Human Rights Act, or because it violated the cyberbullying law. If he did, then he acted *not* for the *improper* purpose of "retaliating" against McBreairty for his exercise of a constitutionally protected right, but for the *proper* purpose of protecting a vulnerable student.[10]

---

[10] At Page 7 of her Trial Brief, the Plaintiff also says: "Defendants' threats were unconstitutional viewpoint discrimination."  She is wrong. "The bedrock principle of viewpoint neutrality demands that the state not suppress speech where the real rationale for the restriction is disagreement with the *underlying ideology or perspective* that the speech expresses." *Ridley v. Massachusetts Bay Transp. Auth.,* 390 F.3d 65, 82 (1st Cir. 2004) (emphasis added) (citations omitted).  "A distinction is viewpoint based if it 'denies access to a speaker solely to suppress the point of view he espouses.'" *Id.* (quoting *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 806 (1985)). When the government does nothing more than prohibit language that "demean[s] or disparage[s ] an individual or group of individuals," it does not engage in

### 7. The evidence needed to substantiate a claim for emotional distress damages brought under Section 1983.

The Plaintiff should be required to prove that Shawn McBreairty suffered emotional distress severe enough to warrant recovery under Maine law. The legal principles governing actions brought under 42 U.S.C. §1983 are dictated by 42 U.S.C. §1988(a), which provides in part:

> The jurisdiction in [civil rights cases] shall be exercised and enforced in conformity with the laws of the United States, so far as such laws suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

As the Supreme Court has explained, a court adjudicating a Section 1983 claim must engage in a three-step analysis to determine whether to apply state or federal law:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Burnett v. Grattan,* 468 U.S. 42, 47-48 (1984).

---

viewpoint discrimination. *Id.* at 90-91. In that circumstance, "[s]ome kinds of *content* (demeaning and disparaging remarks) are being disfavored, but no *viewpoint* is being preferred over another." *Id.* at 91 (emphasis added).

Here, the Defendants made no effort to limit McBreairty's expression of his social, philosophical, or political viewpoint – that boys who transition to girls are predators who should not be allowed in girls' bathrooms, because if they are allowed to enter, they are likely to commit sexual offenses. To the contrary, the Defendants, through Attorney Hewey, made it clear that they respected McBreairty's right to espouse that view. They objected *only* to McBreairty's publication of (1) a photograph taken in a high school bathroom, apparently without the consent of the students in the picture, and (2) his accusation that a transgender student *had* engaged in sexual misconduct.

Section 1983 is itself completely silent on the question of whether the emotional distress resulting from a violation of a constitutional right must be "severe" – and, if so, how severe it must be – to warrant compensation by an award of money damages. *See Meredith v. Jefferson Cnty. Bd. of Educ.,* 2007 WL 3342258, at *6 (W.D. Ky. Nov. 9, 2007) ("Section 1983 provides no guidance for how to evaluate damages."). The Plaintiff cites *Carey v. Piphus*, 435 U.S. 247 (1978), for the proposition that *any* distress, no matter how transient or trivial, is compensable under Section 1983, as long as it is "evidenced by one's conduct and observed by others." Plaintiff's Trial Brief at 8. Notably, though, in *Carey v. Piphus* the Supreme Court did not purport to establish a standard governing the recovery of emotional distress damages. In that case, the Court simply held that damages for emotional distress, although recoverable under Section 1983, could not be presumed to flow from a violation of the Constitution. *See Spence v. Bd. of Educ. of Christina Sch. Dist.,* 806 F.2d 1198, 1200 (3d Cir. 1986) (claim of First Amendment violation "does not fall within the narrow category of cases in which damages may be presumed"). The language the Plaintiff has extracted from *Carey* appeared in a footnote, where the Court explained that the term "distress" includes "mental suffering or emotional anguish," which, "although essentially subjective, . . . *may* be evidenced by one's conduct and observed by others." *Id*. at 264 n. 20 (emphasis added). The Court did not say that *any* "subjective" distress is necessarily compensable. To the contrary, the Court emphasized that "[j]uries must be guided by appropriate instructions, and an award of damages must be supported by competent evidence concerning the injury." *Id.* The Court did not, however, say how a jury should be instructed; or what sort of evidence would be "competent" to establish an injury.

As the Plaintiff observes in her Trial Brief, a single federal appellate court has said that a plaintiff suing for emotional distress damages under Section 1983 need not prove that his injury

was "extreme." *Chatman v. Slagle,* 107 F.3d 380, 384 (6th Cir. 1997).[11]  The research of undersigned counsel has not revealed other authority, outside the Sixth Circuit, either following or diverging from that principle.  There appears to be no established rule in the First Circuit.

In the absence of a clear rule, it is proper to fill that "gap" by applying the common law of Maine.  Insofar as the Plaintiff's Section 1983 claim is concerned, then, the Plaintiff can recover damages for Shawn McBreairty's emotional distress only if it finds that he suffered distress that was "severe," as defined in Defendants' Jury Instruction No. 9 (ECF 227 at 14).  *See Haskell v. Kline,* No. BCD-CIV-2023-00032, 2025 WL 3524915, at *1 (Me.B.C.D. Dec. 04, 2025) (applying severity requirement to claim for damages due to breach of fiduciary duty, as well as to claims for negligent and intentional infliction of emotional distress).  Where, as here, a defendant has not acted in a way that can fairly be characterized as "extreme and outrageous," Maine law requires a plaintiff to "prove that that her emotional distress was so severe as to have manifested objective symptoms demonstrating shock, illness, or other bodily harm."  *Lyman v. Huber,* 2010 ME 139, ¶ 23, 10 A.3d 707, 713. Plaintiff's Trial Brief discloses no such competent, admissible evidence.

---

[11] The *Chatman* Court said that it had "often upheld damages under §1983" without requiring the plaintiff to show "extreme" injury.  For the most part, however, in the cases the Court cited for that proposition, the plaintiffs had offered evidence that their distress was, in fact, severe.  See, e.g., *Meyers v. City of Cincinnati,* 14 F.3d 1115 (6th Cir.1994) (plaintiff suffered weight loss and insomnia);  *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996) ("Witnesses testified that Turic was extremely upset and frightened after being discharged, and that she ran from the meeting in tears. . . . Further, Turic testified that she continued to suffer nightmares, weight loss during her pregnancy (an undesirable occurrence often leading to low birth weight of the baby), and excessive nervousness.").

Dated: March 16, 2026

Norman, Hanson & DeTroy, LLC
220 Middle Street, P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000

*/s/  Russell B. Pierce, Jr., Esq.*
Russell B. Pierce, Jr. – Bar No. 7322
rpierce@nhdlaw.com

Jonathan W. Brogan – Bar No. 3163
jbrogan@nhdlaw.com

Cecilia J. Shields-Auble – Bar No. 010696
cshields-auble@nhdlaw.com

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101
(207) 772-1941

Kasia S. Park, Esq.
kpark@dwmlaw.com

*Attorneys for Defendants Gregg Palmer
and Brewer School Department*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I electronically filed the foregoing Defendants'

Responding Trial Brief with the Clerk of Court using the CM/ECF system, which will also notify

counsel of record of the filing.

Dated: March 16, 2026                              */s/ Russell B. Pierce, Jr., Esq.*
                                                    Russell B. Pierce, Jr. – Bar No. 7322

22