## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

PATRICIA MCBREAIRTY, as personal
representative of the Estate of Shawn McBreairty,

      Plaintiff,

    v.

BREWER SCHOOL DEPARTMENT, GREGG
PALMER, in his personal and official capacities,
BRENT SLOWIKOWSKI, in his personal and
official capacities, MICHELLE MACDONALD,
in her personal and official capacities,

      Defendants.

Case No. 1:24-cv-00053-JAW

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' TRIAL BRIEF**

Pursuant to the Report of Final Pretrial Conference and Order, § III (H) (ECF No. 205), Plaintiff Patricia McBreairty responds to Defendants' Trial Brief (ECF No. 240) as follows:[1]

### I.    Response to Defendants' Statement of the Case

Defendants' Statement of the Case misses the mark. First, it refers to the publication of the photograph of students in the Brewer High School bathroom as "illicit" when there is nothing unlawful about it, and whatever "illicit" means, it is so milquetoast of an image that to call it "illicit" would require unreasonable sensibilities. Further, no matter what someone's subjective opinion of this photo might be, this is a court of law, not a court of taste. As the Court already found, "Shawn McBreairty obtained the image from another source. McBreairty's publication of the image did not offend 17-A M.R.S. § 511, contrary to what Attorney Hewey said in her demand letter, because § 511 criminalizes '[i]nstalling or us[ing] in a private place without the consent of the person or persons entitled to privacy in that place, any device for observing, photographing, recording' events in that place, something Shawn McBreairty did not do." *McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 410 (D. Me. 2025) (alteration in original). "If the First

---

[1] Non-response to any particular statement of fact or argument of law should not be deemed a concession thereof, as the Court's order made responses optional.

Amendment means anything in a situation like this, it is that public officials cannot — as they did here — threaten a person with legal action under an obviously inapt statute simply because he published speech they did not like." *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 43 (1st Cir. 2024). Palmer, acting for Brewer School Department, and acting through Hewey, violated the First Amendment by threatening Mr. McBreairty under a statute this Court deemed to be inapt.

Second, this is not just about a photograph, and Defendants attempt to mislead this Court when they omit any discussion of Defendants' other demands. Hewey's initial demand referred to the photograph as part of its "first" section. In the "second," Hewey demanded removal of statements regarding a) HD's use of the girls' bathroom; and b) concerns as to the risks HD's presence in the girls' bathroom may pose. In the "third," Hewey demanded removal of a statement regarding teacher Michelle MacDonald and her biased approach to the two Brewer High students who circulated the bathroom access petition. And, Defendants ignore Hewey's demand that Mr. McBreairty de-publish the February 13, 2024, demand. While that demand might not have come with the spin of a threat of criminal sanctions to effect a desired outcome, Hewey had already set the stage for Mr. McBreairty – the government will use criminal sanctions against you, or simply sue you, if you do not do what they tell you to.

Third, Defendants wrongly suggest that they can procure innumerate constitutional violations so long as they engage outside counsel to do so for them. They ignore that supervisory liability may be established where a subordinate (like Hewey) abridged a constitutional right, and where the supervisor's action or inaction, such as "supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference" made the supervisor culpable. *Parker v. Landry*, 935 F.3d 9, 14-15 (1st Cir. 2019) quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 47 (1st Cir. 2012)( cleaned up). Notably, throughout this litigation, Palmer has

repeatedly demonstrated he at least condoned and acquiesced in what Hewey and DrummondWoodsum did, repeatedly arguing that their actions were justified and that there was no conflict of interest that might even warrant disqualification. Just as the defendants in *Berge* lacked qualified immunity for their threats against the publication of speech on matters on public concern, with the right being clearly established at least as far back as 2007 per *Jean v. Mass. State Police*, 492 F.3d 24, 25 (1st Cir. 2007), so, too, can Palmer find no refuge.

## II.     Response to Defendants' Statement of Factual Issues

As with the statement of the case, Defendants again wrongly characterized the publication of the photograph, which was lawfully taken by a third party, as being "illicit." Defendants also falsely state that Mr. McBreairty accused H.D. of sexual assault; rather the article reports on an allegation that H.D. committed sexual assault, which has never been refuted by admissible evidence. And, while Defendants assert that H.D. met the requirements under Maine law to use the girls' bathroom, no credible or admissible evidence has been put forth that H.D.'s "psychological well-being and educational success depend upon being permitted to use" that bathroom. *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11, ¶ 24, 86 A.3d 600, 607 (2014). Defendants also omit from their summary that Defendants unconstitutionally threatened H.W. and her father, Philip Wells, with criminal action on account of the First Amendment-protected petition.[2]

While Defendants then speak of what happened at Brewer High School after the publication of the article, there is no credible or admissible evidence regarding such. Nor is it relevant to what happened next—making unconstitutional threats against Mr. McBreairty for

---

[2] It bears noting that the restriction on the petition itself was unconstitutional; restricting speech merely because it would cause offense or "hurt feelings" without any evidence of disruption, let alone a substantial one, is impermissible. *Doe v. Univ. of Mass.*, 145 F.4th 158, 171 (1st Cir. 2025). Even if *arguendo* Defendants were correct that they had to accommodate H.D.'s preference, and the petition would accomplish nothing, that is no reason to run roughshod over the First Amendment.

having published the article and for having published the threats. Defendants, however, do highlight that the decision to send the threats was Palmer's, and to the extent they are addressing Palmer's discussions with Melissa Hewey, they have waived attorney-client privilege. (ECF No. 204 at 5). And, while Defendants deny they demanded removal of the article, the demand threatens action unless "the referenced material" is removed (ECF No. 1-5). A reasonable person in Mr. McBreairty's shoes could readily understand the "material" to be the article, not merely portions of it, especially where those portions were not identified with precision.

Finally, while Defendants note that Mr. McBreairty did not remove the photograph from his X/Twitter account and went public with the story about Defendants' threats, this is not relevant. Defendants threatened McBreairty and demanded that he remove the photo from *his article*. They never mentioned X/Twitter. Whatever the reason it may have remained up, it does not minimize Defendants' unconstitutional actions. Defendants did not want the article up; they threatened Mr. McBreairty over the article. By Defendants' novel theory, no person who files suit to vindicate their First Amendment rights can prevail because the act of filing suit means they felt no chilling effect and they suffered no harm.[3]

## III.    Response to Defendants' Statement of Significant Legal Issues for Trial

### A.    Palmer was the Relevant Final Policymaker and Brewer School Department is subject to Monell Liability

Defendants claim that Brewer School Department is not liable because Palmer was not a "final policymaking authority[.]" ECF No. 240 at 8-9. However, this Court has already held that *Monell* liability attaches stating:

> the Brewer School Department can be liable where, as here, it is the driving force
> behind the alleged deprivation. Given that the alleged deprivation is the product of
> a demand and threat leveled by the Brewer School Department's retained legal

---

[3] As to what H.D. did afterward, it is immaterial and there is no admissible or relevant evidence regarding the same.

counsel at the Department's direction, Defendants' contention that there can be no municipal liability in this case makes no sense unless Defendants are toying with the notion that retained counsel acted at their own direction, which I will not indulge. Counsel's email on behalf of the School Department was, quite clearly, municipal action.

*McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 406 (D. Me. 2025) (internal citations omitted). Similarly, Defendants admit Palmer was authorized to retain Hewey to threaten Mr. McBreairty (ECF No. 240 at 9) in purported furtherance of Brewer School Department's policies. Thus, Brewer School Department is liable for the actions of Palmer and Hewey.

### B.    Palmer Does Not Enjoy Qualified Immunity

While the summary judgment order does not *preclude* Palmer from offering qualified immunity as a defense, he has no new evidence and fares no better than before. He violated Mr. McBreairty's clearly established right to free speech when he had Hewey make baseless and chilling threats in retaliation for the publication of protected speech. Contrary to Defendants' assertions, Hewey's involvement is not a get-out-of-jail-free card. As noted above, freedom from threats against the publication of speech on matters on public concern has been clearly established for nearly 20 years. *See Jean v. Mass. State Police*, 492 F.3d 24, 25 (1st Cir. 2007). Such is why the First Circuit readily found that, in similar circumstance, that "[i]f the First Amendment means anything in a situation like this, it is that public officials cannot — as they did here — threaten a person with legal action under an obviously inapt statute simply because he published speech they did not like." *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 43 (1st Cir. 2024).

Palmer violated Mr. McBreairty's right to free speech. First, Defendants do not even attempt to defend their demands that, other than the photograph, the publication of the article or of the February 13 correspondence was not protected speech. Thus, even if they were right about the publication of the photograph, everything else was protected speech that was unconstitutionally infringed upon by Palmer's demands (conveyed via Hewey). Second, the publication of the

photograph was perfectly lawful.  As the Court found, "McBreairty's publication of the image did not offend 17-A M.R.S. § 511, contrary to what Attorney Hewey said in her demand letter, because § 511 criminalizes "[i]nstalling or us[ing] in a private place without the consent of the person or persons entitled to privacy in that place, any device for observing, photographing, recording" events in that place, something Shawn McBreairty did not do." *McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 410 (D. Me. 2025).  The statute (17-A M.R.S. § 511(1)(B)) by its text prohibits taking a photograph in a bathroom without consent, but there is no indication of a lack of consent.  As the photo itself shows, there are a number of people congregating in the bathroom area.  All are fully clothed, and none are in any state of engaging in a private act.  The statute only applies where there is a "justifiable expectation" of privacy (*State v. Strong*, 2013 ME 21, ¶ 17, 60 A.3d 1286, 1291), and per the First Circuit's decision in *Rivera-Rivera v. United States*, No. 11-2132, 2013 U.S. App. LEXIS 26419, at *1 (1st Cir. Nov. 5, 2013), there is no "legitimate expectation of privacy" in a "public restroom". [4]

And, as to common law invasion of privacy, the Court already determined there was no violation.  "Concerning content addressed to HD, the record does not compel the finding that Mr. McBreairty knew or acted in reckless disregard of the truth. And even though there is evidence that the Article was highly offensive to HD, it was also of legitimate concern to the public and related to HD's public life in the Brewer High School. As for the photograph of multiple students in the common area of a restroom, the content is not offensive, let alone highly offensive." *Id.* at 41.  There is no expectation of privacy in a public place—any girl (or, here, anyone who identifies themselves as female) could lawfully be present in the bathroom and observe who was there. *See*

---

[4] Nor is presence in a stall in a public restroom fully protected from outsiders.  "Even when an individual has entered a stall, there is no legitimate expectation of privacy to the extent he may be seen by someone in the common area of the restroom." *Wright v. Bella Vista Police Dep't*, 452 F. Supp. 3d 830, 841 (W.D. Ark. 2020), citing *United States v. White*, 890 F.2d 1012 (8th Cir. 1989).

*Rivera-Rivera*, *supra*. The fact that it is the public portion of *a bathroom* is of no moment— matters of public concern can occur there. This was not a photograph of individuals engaged in private acts.

Nor did 20-A M.R.S. § 6554 apply, with the Court stating, "Neither Maine law prohibiting hazing and bullying in schools nor school policies implemented pursuant to the same, grant to school boards or their counsel a license to threaten litigation whenever someone unaffiliated with the public schools speaks critically about a matter of public interest occurring in the schools and, in the process, identifies students or staff and criticizes them, even if the language employed would qualify as hazing or bullying in the context of school policies." 783 F. Supp. 3d at 415-16. And, to the extent that state law could even purport to restrict Mr. McBreairty,[5] the "First Amendment grants a robust right to publish information of public concern, *see Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103, (1979) (affirming that 'state officials may not constitutionally punish publication' of 'lawfully obtain[ed] truthful information about a matter of public significance,' 'absent a need to further a state interest of the highest order') — even including material that someone else stole, certainly at least where the publisher had no hand in the theft." *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 41 (1st Cir. 2024)(alterations in original). A "stranger's illegal conduct does not suffice to remove the First Amendment shield[.]" *Jean* at 25, quoting *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001). As in *Bartnicki*, "privacy concerns give way when balanced against the interest in publishing matters of public importance." 532 U.S. at 534.

Mr. McBreairty's rights were clearly established under *Jean* as reiterated in *Berge*. Defendants attempt to distinguish *Berge* but fail. Mr. McBreairty published lawfully obtained,

---

[5] Defendants note that Mr. McBreairty did not challenge the constitutionality of the Maine statutes—he did not need to as they did not apply to him. But, to the extent they might, they would be unconstitutional as-applied.

truthful information about a matter of public concern. This innocuous photograph is integral to the reporting on a matter of public concern. The article is about a school policy and a petition to change that policy. The photo documents the facts at issue in the Brewer High School students' petition. The photo shows that the students' and parents' concerns were not merely hypothetical. It shows a biological male using the girls' bathroom. It further shows that the issue was already a matter of public discussion, as it was previously circulating throughout the school. Mr. McBreairty could not have been reasonably expected to discuss the existence of the photo without showing the photo. *Jean* and *Bartnicki* are not an obscure thread in the law. The Supreme Court has established a robust First Amendment right to publish information—even illegal information— and has built strong, tall, and obvious barriers against any governmental intrusion into that right. *See e.g., Fla. Star v. B. J. F.,* 491 U.S. 524 (1989); *Smith v. Daily Mail Pub. Co*., 443 U.S. 97 (1979); *Okla. Pub. Co. v. Dist. Court of Okla*., 430 U.S. 308 (1977); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975); *Miami Herald v. Tornillo*, 418 U.S. 241 (1974); *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971); *N.Y. Times v. United States*, 403 U.S. 713 (1971) ("Pentagon Papers"); *N.Y. Times v. Sullivan*, 376 U.S. 254 (1964); *Grosjean v. Am. Press Co*., 297 U.S. 233 (1936); *Near v. Minnesota*, 283 U.S. 697 (1931).

Although Defendants argue that *Berge* was issued months after their threats, *Berge* merely reiterated the law that was already clearly established even prior to *Jean*, which is precisely why the *Berge* defendants enjoyed no qualified immunity – because the constitutional violation was that obvious. Where the government takes action to try to suppress information that has already reached the public, there is "a 'heavy presumption' against its constitutional validity" *Org. for a Better Austin*, 402 U.S. at 419 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1971)). Palmer did exactly what the First Circuit and Supreme Court said had already been clearly

established as unconstitutional: threatening Mr. McBreairty with legal action under an obviously inapt statute simply because he published speech Palmer did not like.

As to Hewey's involvement, Palmer cannot shift the blame. Hewey did what Palmer instructed her to do. The Court already rejected the "notion that retained counsel acted at their own direction." *McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 406 (D. Me. 2025). As noted above, supervisory liability may be established where a subordinate (like Hewey) abridged a constitutional right, and where the supervisor's action or inaction, such as "supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference" made the supervisor culpable. *Parker v. Landry*, 935 F.3d 9, 14-15 (1st Cir. 2019) quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 47 (1st Cir. 2012) (cleaned up).[6] Further, no advice of counsel defense has been raised and, even if it had been, it would be inapt. *Jean* could not have been clearer, which is why the *Berge* defendants resoundingly lost. Any attempt by Palmer to claim he reasonably believed Mr. McBreairty's speech was unprotected cannot be maintained; under *Jean*, such a belief was objectively unreasonable.

Finally, for the reasons previously argued relative to Defendants' pending motion *in limine*, punitive damages may be awarded as against Palmer. Punitive damages under Section 1983 survive death. *See e.g., Chaudhry v. City of L.A.*, 751 F.3d 1096, 1104-05 (9th Cir. 2014); *Berry v. Muskogee*, 900 F.2d 1489 (10th Cir. 1990); *Bell v. Milwaukee*, 746 F.2d 1205, 1241 (7th Cir. 1984); *McFadden v. Sanchez,* 710 F.2d 907, 910-11 (2d Cir. 1983). Further, it is a

---

[6] Defendants bring up the *Hermon* case here, but it has no relevance to qualified immunity. Rather, it shows that a reasonable person in Mr. McBreairty's shoes would take Defendants' threats seriously and be chilled by them because they hired the same lawyer who previously filed a retaliatory suit against Mr. McBreairty. And, one would think Hewey would have told Palmer that making these threats again would be spurious in light of the Maine Law Court having serious doubts on the standing of a school district to enforce its policies against non-school-related individuals.

misrepresentation of law to state that 18-C M.R.S. § 3-817 provides that survival of actions does not apply to "the recovery of penalties and fines under criminal statutes" (ECF No. 240 at 20). One need only read the next phrase "do not survive the death of the defendant." 18-C M.R.S. § 3-817(1). It is a shocking lack of candor to this tribunal. The defendants are not dead, only Mr. McBreairty is. Nor does Fed. R. Civ. P. 25(a) even speak to this issue, yet Defendants misleadingly suggest it supports their position. And Defendants' citation to *Light v. Town of Livermore*, No. 1:21-cv-00266-JAW, 2022 U.S. Dist. LEXIS 158735, at *50-51 (D. Me. Sep. 2, 2022), only means that, just as Mr. McBreairty would have been entitled to punitive damages against Palmer per the Verified Complaint, so, too, is the Estate.

## IV.    Response to Defendants' Additional Issues per Final Pretrial Conference Order

### A.    Plaintiff's Proposed Special Verdict Form Suffices on the Issue of Double Damages

Both parties addressed the question of double damages in their proposed special verdict forms. Plaintiff's iteration (ECF No. 237) leads the jury through the elements of the causes of action and the calculation of damages. In contrast, Defendants' proposed form (ECF No. 241) takes the jury on irrelevant side adventures addressed to issues of law on which the Court already found in Plaintiff's favor. Thus, the Court should adopt Plaintiff's form though, as a matter of law, Plaintiff anticipates the Court will instruct the jury to answer Questions 1-5 in the affirmative.

### B.    Plaintiff's Proposed Jury Instruction on Shawn McBreairty's Death Suffices

Even though proposed jury instructions were due on February 23, 2026, and Defendants offered none as to Mr. McBreairty's death at that time (ECF No. 227), they now make a proposal as to this issue. Plaintiff's proposed jury instruction number 1 (ECF No. 226 at 1) fully addresses the issue succinctly.

### C.    The Jury Should be Correctly Instructed as to the Court's Prior Determinations

Defendants made no prior proposed jury instruction as to the Court's Summary Judgment order.  The Court should instruct the jury as to the Summary Judgment order per Plaintiff's proposed jury instruction number 14.  The verified complaint is an exhibit in this case and it will be confusing to a jury that sees Count III to not know what happened.  Moreover, the Court made a number of legal conclusions in that order that apply directly to the issues under Counts I and II.  The jury may become confused by an attorney like Hewey testifying as to policies and law when the Court has already rejected those arguments and declared they did not apply to Mr. McBreairty.  Defendants cannot run away from these determinations.

In their objections to the proposed instruction (ECF No. 235 at 12-13), Defendants argued that giving Plaintiff's proposed instruction would give the "impression that Superintendent Palmer knew, or should have known, that Shawn McBreiarty's [sic] publication of the student's photograph and his accusation that the student had engaged in sexual misconduct were constitutionally protected."  Frankly, they were protected under clearly established law (*Jean, supra*) and that is why the Court denied Defendants summary judgment.  While Defendants warn of a jury being misled, the only way they could be misled is if Defendants can pollute the jury's mind into thinking that it was fine for them to threaten Mr. McBreairty's constitutionally protected speech when the Court has already determined the contrary.

It is risible for Defendants to suggest that the Court's briefing orders, where the Court had not yet considered the issues, somehow meant that Mr. McBreairty's rights could not have been clearly established.  Once the Court had the full summary judgment record, it had no hesitation in declaring Defendants' actions improper.  Finally, Melissa Hewey is no expert; if she were, she would not have readily participated in a violation of Maine R. Prof. Conduct 3.1(b), threatening

him with criminal prosecution for a civil benefit, and 4.1, misrepresenting the law to Mr. McBreairty. The Court need not call Hewey a "bad lawyer," which Defendants fear. If Defendants want the Court to address how Attorney Hewey was characterized at summary judgment, the Court should simply tell the jury what Judge Walker's summary judgment order said about her:

- Given that the alleged deprivation is the product of a demand and threat leveled by the Brewer School Department's retained legal counsel at the Department's direction, Defendants' contention that there can be no municipal liability in this case makes no sense unless Defendants are toying with the notion that retained counsel acted at their own direction, which I will not indulge. Counsel's email on behalf of the School Department was, quite clearly, municipal action. *McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 406 (D. Me. 2025).

- The record does in fact indicate that Attorney Hewey delivered the demand and, more significantly, the first email's threat on behalf of the School Department. *Id.* at 412.

- Neither Maine law prohibiting hazing and bullying in schools nor school policies implemented pursuant to the same, grant to  school boards or their counsel a license to threaten litigation whenever someone unaffiliated with the public schools speaks critically about a matter of public interest occurring in the schools and, in the process, identifies students or staff and criticizes them, even if the language employed would qualify as hazing or bullying in the context of school policies. *Id.* at 415-16.

- To respond to bullying the School Department enlisted legal counsel to demand revision upon threat of further action, despite the School Department's blatant lack of standing to pursue relief under any of the statutory provisions it cited. The School Department and its counsel effectively determined that such a tactic was justified insofar as they would have performed some kind of public service. That behavior cannot be condoned under the statutes or policies on which the School Department relies and calls for declaratory relief to that effect. *Id.* at 416.

- Brewer School Department Policies ACAD, ACAF, and JICK did not apply to Shawn McBreairty or his Article and did not oblige, compel, or justify the conduct by the Brewer School Department and its legal counsel that gave rise to this civil action. *Id.* at 417.

- Whether counsel's underlying legal threat was frivolous or not, there is a fair inference that McBreairty correctly anticipated that counsel would file suit against him on behalf of the School Department if he did not comply with the demand. *Id.* at 405.

This is what the Court determined and the jury should be informed of this when Hewey is called to testify. Plaintiff's Proposed Jury Instruction Number 14 should otherwise be given during the charge to the jury.

Dated: March 16, 2026.

Respectfully Submitted,

/s/ Stephen C. Smith
Stephen C. Smith, Bar No. 8270
Steve Smith Trial Lawyers
191 Water Street
Augusta, ME 04330
info@americantrialgroup.com
Tel: (207) 622-3711
Fax: (207) 707-1036

Marc J. Randazza (*pro hac vice*)
*Lead Counsel*
Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
Email: ecf@randazza.com

*Attorneys for Plaintiff,*
*Patricia McBreairty*

Case No. 1:24-cv-00053-JAW

### CERTIFICATE OF SERVICE

I hereby certify that, on March 16, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Stephen C. Smith
Stephen C. Smith